# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| CENTER FOR WORKPLACE COMPLIANCE (f/k/a EQUAL EMPLOYMENT ADVISORY COUNCIL), Plaintiff, | |
| v. | Case No. 1:20-cv-01387-AJT-JFA |
| LITTLER MENDELSON, P.C., LANCE E. GIBBONS, THERESA GOKTURK (a/k/a CHRIS GOKTURK), and DOE DEFENDANTS 1-10, INCLUSIVE, | |
| Defendants. | JURY TRIAL DEMANDED |

**FIRST SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.　INTRODUCTION ................................................................................................ 1

II.　PARTIES ............................................................................................................ 5~~5~~

III.　JURISDICTION AND VENUE ......................................................................... 7~~7~~

IV.　FACTUAL BACKGROUND .............................................................................. 9~~9~~

　　A.　CWC Background .................................................................................. 9~~9~~

　　B.　CWC Membership ................................................................................ 9~~9~~

　　　　1.　Application and Approval Process Based on Eligibility
　　　　　　Requirements ............................................................................... 9~~9~~

　　　　2.　Law Firms Are Ineligible for Membership ......................... 10~~10~~

　　C.　CWC's Members-Only Site and Resources ...................................... 11~~11~~

　　D.　Former CWC Staff Members Lance E. Gibbons and Chris Gokturk Join
　　　　Littler ........................................................................................... 14~~14~~

　　E.　Unlawful Conduct Using Littler's Infrastructure, Platform and Resources
　　　　to Obtain and Use CWC's Information and Infringe Copyrighted Materials
　　　　Related to Littler's Practice Areas, Business Interests and Profits ....... 17~~17~~

　　F.　Obtaining and Using CWC Information and Infringing CWC materials to
　　　　Promote Littler's Business Interests and Profits ............................ 23~~23~~

　　G.　Littler Presentations Promoting Littler's Business Interests and Profits ...... 25~~25~~

　　H.　Littler Publications Promoting Littler's Business Interests and Profits .......... 34~~34~~

　　I.　Early Efforts to Obtain CWC's Intellectual Property, Make False and
　　　　Misleading Statements and Ask Others to Engage in Copyright
　　　　Infringement and Violations of Law and the CWC Restrictions to the
　　　　Members-Only Site ........................................................................ 35~~35~~

　　J.　Willfully Pursuing Other Avenues to Obtain Information and Infringe
　　　　Intellectual Property on the CWC Members-Only Site ................... 38~~38~~

　　K.　False and Misleading Statements, Deceit and Concealment to Obtain
　　　　CWC's Intellectual Property ........................................................ 41~~41~~

　　L.　Password Changes .......................................................................... 44~~44~~

　　　　1.　Password Change:  June 5, 2019 ........................................ 46~~46~~

　　　　2.　Password Change:  September 27, 2019 .............................. 47~~47~~

　　　　3.　Password Change:  February 19, 2020 ................................ 48~~48~~

　　M.　Infringement Committed Willfully and with Intent to Engage in Other
　　　　Unlawful Activity .......................................................................... 49~~49~~

-i-

# TABLE OF CONTENTS
(continued)

Page

N.    Littler's Access to the CWC Members-Only Confidential Connect Communications Platform .................................................................. 51~~51~~

O.    Discovery of the Littler Infringement of the 2017 CWC Pre-Existing Big Data Analytics Presentation ................................................................ 53~~53~~

V.    COPYRIGHTED WORKS ........................................................................ 60~~60~~

VI.    COUNT 1: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF WORKS FROM THE CWC MEMBERS-ONLY SITE (Defendants Littler, Gibbons and Does 1-10) ........................................................................ 61~~61~~

VII.    COUNT 2: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(2)(C) OBTAINING INFORMATION FROM THE CWC MEMBERS-ONLY SITE (Defendants Littler, Gibbons and Does 1-10) ........................................ 65~~65~~

VIII.    COUNT 3: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(4) COMPUTER FRAUD (Defendants Littler, Gibbons and Does 1-10) ...... 67~~67~~

IX.    COUNT 4: FRAUD (Defendants Littler, Gibbons and Does 1-10) ........................... 69~~69~~

X.    COUNT 5: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF THE 2017 CWC PRE-EXISTING BIG DATA ANALYTICS PRESENTATION (Defendants Littler, Gokturk, and Does 1-10) ............................ 72~~72~~

XI.    COUNT 6: ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202 (Defendants Littler, Gokturk, and Does 1-10) ................................................................................ 75~~75~~

XII.    COUNT 7:  VICARIOUS COPYRIGHT INFRINGEMENT OF CWC WORKS (Defendant Littler and Does 1-10) .............................................................. 76~~76~~

PRAYER FOR RELIEF ............................................................................. 80~~80~~

Plaintiff non-profit Center for Workplace Compliance ("CWC," "Association," or "Plaintiff"), by and through their undersigned counsel, brings this action against Defendants Littler Mendelson, P.C. ("Littler"), Defendant Littler Shareholder Lance E. Gibbons ("Gibbons"), and Defendant Littler Principal Theresa Gokturk (a/k/a Chris Gokturk) ("Gokturk" or "Chris Gokturk") (collectively, "Littler Defendants"), on the grounds and seeking the relief as set forth below:

## I.      INTRODUCTION

1.      This case involves the misappropriation of a voluminous amount of CWC's intellectual property and information that was infringed and unlawfully obtained by, and used for the benefit and profit of, Defendant Littler.   As set forth below, the recurring and extensive misappropriation of CWC's intellectual property by the Littler Defendants occurred each and every month during the seventeen months from November 2018 through March 2020.[1]

2.      For more than forty years, Plaintiff non-profit CWC has been serving its member employers by helping them understand and manage their workplace compliance requirements and risks, primarily but not exclusively in the areas of equal employment opportunity and affirmative action.

3.      For just as long, the Association's membership eligibility rules have prohibited law firms, consulting firms, and certain other organizations who provide employers with workplace legal and compliance services from becoming Association members, and from accessing the restricted content from the CWC's password-protected and member-restricted website ("CWC Members-Only Site") generated exclusively for the benefit of CWC's member employers and paid for by their membership dues.[2]

---

[1] *See* Exhibit A (List of CWC Information Obtained by the Littler IP Address), attached hereto and incorporated herein; *see also* Exhibit B (CWC Copyright Registrations), attached hereto and incorporated herein.
[2] *See* Exhibit C (CWC Membership Application), attached hereto and incorporated herein.

4.      Given the Association's clear and longstanding rules prohibiting law firms from accessing its member-restricted content, CWC was surprised to discover that one or more users operating through an IP address belonging to Defendant Littler, self-described as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[3] had been used to download and infringe what was initially believed to be a limited number of member-restricted materials from the CWC Members-Only Site.

5.      The scale and scope of this unlawful conduct from the Littler IP address was extraordinary.  Over the course of approximately seventeen (17) months beginning at least by November 16, 2018, Defendant Littler's servers were used to unlawfully obtain CWC Members-Only Site materials approximately four hundred ~~forty two~~twenty-six (~~442~~426) times, and to unlawfully infringe CWC works approximately four hundred and ~~twenty~~ seventeen (~~420~~417) times.  The period of infringement and obtaining CWC information spanned 489 days.  This misappropriated content consisted of proprietary and member-restricted materials more than 2,100 pages including memoranda, templates, checklists, guides, and other resources that CWC produced for the exclusive use and benefit of its member employers.

6.      Further infringement of other materials was uncovered.  CWC discovered that Defendant Littler's recurring misappropriation of CWC's intellectual property had been facilitated by at least two Littler representatives and agents, both of whom were former CWC staff members: Defendant Littler Shareholder Lance E. Gibbons, who previously served as CWC's Assistant General Counsel, and Defendant Littler Principal Chris Gokturk, who previously served as CWC's Senior Advisor, Compliance Solutions.

---

[3] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018) ("Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020), attached hereto and incorporated herein; *see also* note 11, *infra*.

7.      As former CWC staff members, both Defendant Gibbons and Defendant Gokturk were familiar with the proprietary nature of the CWC intellectual property, the manner in which the intellectual property was created, and the restrictions on its access and use.

8.      Using Littler's information technology and other resources, Defendants Littler, Gibbons, and Gokturk engaged in an extensive campaign to misappropriate, infringe and use CWC's material and information in at least five distinct ways for the benefit and profit of Littler:

a.      First, Defendants Littler and Littler Shareholder Gibbons, using a Littler IP address,[4] accessed, selected, obtained, viewed, downloaded, retained, printed, used, and/or infringed CWC's information and copyrighted materials from the CWC Members-Only Site, which they were prohibited from doing so.

b.      Second, Defendants Littler and Littler Shareholder Gibbons used the CWC information and copyrighted materials that was infringed, unlawfully obtained, and downloaded to provide Littler clients with oral and written legal services and work product, which Littler billed for.

c.      Third, in 2019 Defendants Littler and Littler Principal Chris Gokturk infringed CWC material by using it to create derivative works, including Littler presentations shown to prospective and current Littler clients.  For example, as further detailed below, Defendants Littler and Defendant Gokturk infringed the copyright in a 2017 CWC Pre-Existing Big Data Analytics Presentation[5] by creating derivative works, including at least one Littler presentation entitled "Technology in Recruiting and Hiring:  Hidden Legal Risks," dated October 18, 2019 ("October 2019 Infringing Littler Presentation").  The infringing 2019 Littler presentation falsely represented Littler as the original author of content copied directly from the 2017 CWC Pre-Existing Big Data Analytics

---

[4] IP address, 199.108.124.252, registered to Littler in 2014 ("Littler IP address"), as further described below.
[5] "Big Data Analytics and Artificial Intelligence:  The Compliance and Diversity Implications Of Automating Early State Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252).

Presentation, and from CWC member-restricted memoranda, and were presented for purposes of engaging prospective and current Littler clients.

        d.     Fourth, on March 18, 2020, Defendants Littler and Littler Shareholder Lance E. Gibbons accessed and obtained information from CWC's highly confidential Connect CWC Collaboration Center Communication Platform which is a confidential online community for CWC members, and only CWC members, to share ideas, benchmark, and connect with each other, as described below.

        e.     Fifth, CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that all of the Littler Defendants produced an indeterminate number of infringing derivative works in client communications or other work product produced within the course and scope of Defendant Gibbons's and Defendant Gokturk's employment and for the benefit of Littler, with the actual or implied knowledge of Littler, as further described below.

        9.     With the explicit or tacit approval of Defendant Littler, Defendants Gibbons and Gokturk engaged in this unlawful conduct while serving as Littler representatives and agents, providing legal and related services, promoting and pursuing the interests and profits of Littler to obtain, infringe, and use CWC's information and copyright protected materials related directly to (1) the practice areas of the Littler Defendants; (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

        10.     The Littler Defendants, using the Littler IP address and Littler resources, engaged in fraud to access, select, obtain, view, download, use, and/or infringe CWC's information and copyrighted materials.  For example, as further described below, some or all of the Littler Defendants individually and/or collectively have falsely represented that Littler was the original author of content copied from CWC materials.  The relevant conduct has included a series of false and misleading

statements to an organization that was both a Littler client and a CWC member for the purpose of obtaining and retaining use of login credentials of an individual employed by that organizations to access the CWC Members-Only Site without authorization and in violation of CWC's membership policies.  In using the login credentials of another individual, the Defendants falsely represented that the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site.  The Defendants concealing the fact that they were actually making access to the CWC Members-Only Site since they were ineligible to do so.

11.     Plaintiff Center for Workplace Compliance, by and through its undersigned counsel, brings this action to identify, recover, and enjoin the further use of CWC's information and copyrighted materials; to recover appropriate statutory, punitive and other damages and costs suffered as a result of the Defendants' unlawful conduct, including reasonable attorney's fees; and to compel a full accounting of all CWC information and materials, including but not limited to derivative works, within Littler's possession custody or control, and that were provided to any Littler shareholders, associates, attorneys, principals, employees, and/or agents, or that were provided by Littler to clients and any other third parties, along with a full accounting of any monetary or other benefits received by each Defendant as a result of their unlawful acts, as set forth below.

## II.     PARTIES

12.     Plaintiff CWC is a non-profit association incorporated in the District of Columbia, with its principal place of business at 1501 M Street, N.W., Washington, DC 20005.

13.     Defendant Littler is a professional corporation incorporated in the State of California, with a principal office address of 333 Bush Street, 34th Floor, San Francisco, California, 94104. Littler's Workplace Policy Institute® (WPI™) provides guidance on legislative and regulatory workplace issues on local, state and federal labor policy developments.  (Littler and Littler's Workplace Policy Institute® (WPI™) are collectively referred to herein as "Littler").  Among

5

Littler's many offices are the Littler Washington, DC Office, located at 815 Connecticut Avenue NW, Suite 400, Washington, DC 20006, and the Littler Tysons Corner Office, located at 1650 Tysons Boulevard, Suite 700, Tysons Corner, VA  22102.

14.     Defendant Lance E. Gibbons is an individual residing at 19198 Chartier Drive, Leesburg, Virginia, 20176, and served as a Littler Shareholder during July 25, 2018 to the beginning of April 2020 in the Littler Washington, DC and Tysons Corner Offices, and during June 2007 to July 2015 in Littler's Pittsburgh, PA Office.  From approximately October 1, 2017 to July 20, 2018, Defendant Gibbons served as an Assistant General Counsel of CWC, and in other roles with CWC's affiliated organizations.  During July 25, 2018 to the beginning of April 2020, Defendant Gibbons was acting as a shareholder, representative, and agent of Littler and within the course and scope of his employment with Littler as further described below.

15.     Defendant Chris Gokturk is an individual residing at 4908 Montgomery Street, Annandale, Virginia, 22003, and since February 26, 2019 has served as a Littler Principal in the Littler Tysons Corner Office.  During 2002 to February 2019, Defendant Gokturk served as a staff member of CWC and its affiliated organizations, most recently as a CWC Senior Advisor, Compliance Solutions.  During February 26, 2019 to the present, Defendant Gokturk was acting as a principal, representative and agent of Littler and within the course and scope of her employment with Littler as further described below.

16.     Doe Defendants 1-10 are as-yet-unidentified individuals who are Littler shareholders, associates, attorneys, principals, employees, and/or agents, who participated and aided and abetted in the counts alleged in this Complaint.  CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that each of the Doe Defendants is responsible in some manner for the events and acts alleged herein, or may have engaged in further misappropriation of CWC intellectual

property once the full scope of the conduct is determined, in a scope to be fully determined at trial. CWC will seek leave to amend the Complaint to allege the true names and capacities of Doe Defendants 1 to 10 when their identities are ascertained.  At all times relevant, the Doe Defendants were acting as shareholders, associates, attorneys, principals, employees, representatives, or agents of Littler, and acted within the course and scope of their employment with Littler as further described below.

## III.   JURISDICTION AND VENUE

17.    This is a civil action for damages and injunctive relief against Defendants Littler, Gibbons and Gokturk arising under the Copyright Act, 17 U.S.C. § 101, *et seq*., and against Defendants Littler and Gibbons under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(g), and fraud, and against Defendants Littler and Gokturk under the Alteration or Removal of Copyright Management Information, 17 U.S.C. § 1202, brought due to the infringement of CWC's copyrighted works and the unauthorized access to information.

18.    This Court has federal question jurisdiction over Plaintiff's Copyright Act, Computer Fraud and Abuse Act, Alteration or Removal of Copyright Management Information counts pursuant to 28 U.S.C. § 1331, and original jurisdiction over the Copyright Act claim pursuant to 28 U.S.C. § 1338.  This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff CWC is a citizen of the District of Columbia, and Defendant Littler, upon information and belief, is a citizen of California, and Defendants Gibbons and Gokturk are citizens of Virginia, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

19.    This Court has supplemental jurisdiction over Plaintiff's claim for fraud which arises from the same set of operative facts as at least some of Plaintiff's counts under the Computer Fraud and Abuse Act, such that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Littler because it (1) directly or through its shareholders, associates, attorneys, principals, employees, and/or agents accessed through Littler's computer network infrastructure the servers that host CWC's website, located in Ashburn, Virginia, including the CWC Members-Only Site that are password-protected and restricted only to CWC's members, (2) maintains an office at 1650 Tysons Boulevard, Suite 700, Tysons Corner, Virginia 22102 at which Defendant Gibbons, Defendant Gokturk, and/or Does 1-10, at least in part committed the acts constituting violations of the Copyright Act, Computer Fraud and Abuse Act, Alteration or Removal of Copyright Management Information and fraud alleged in this Complaint, and/or (3) has otherwise established minimum contacts with Virginia and/or this judicial district such that the exercise of personal jurisdiction over Littler would not offend traditional notions of fair play and justice.

21.     This Court has personal jurisdiction over Defendants Gibbons and Gokturk because, as noted, they are both residents of Virginia and of this judicial district, and a substantial part of the events or omissions giving rise to CWC's claims occurred within this district and/or a substantial part of the property that is the subject of the action is situated within this district.

22.     Venue is proper in this Court as to all parties pursuant to 28 U.S.C. § 1391, as each Defendant is subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to this action occurred in this district.  Venue for the Copyright Act and Alteration or Removal of Copyright Management Information counts also is prepare in this Court as to all parties pursuant to 28 U.S.C. § 1400(a),  Pursuant to Local Civil Rule 3 and 28 U.S.C. § 1391, venue is proper as to all parties in the Alexandria Division of the Eastern District of Virginia given that a substantial portion of the events or omissions giving rise to CWC's claims occurred in the Alexandria Division of the Eastern District of Virginia, including at Littler's Tysons Corner office,

and the servers hosting CWC's website are both located in the Alexandria Division, and because Defendants Gibbons and Gokturk are both residents of the Alexandria Division.

## IV.   FACTUAL BACKGROUND

### A.   CWC Background

23.     Founded in 1976, CWC is a non-profit association dedicated to helping its member employers understand and manage their workplace compliance requirements and risks.  CWC is committed to effective labor and employment compliance, lawful diversity and inclusion efforts, and the sensible regulation of the U.S. workplace.

24.     Since its founding in 1976, CWC's membership has included and CWC has served hundreds of the nation's largest employers and organizations of all sizes, including employers from all major U.S. sectors and industries and many Fortune 500 organizations.

25.     For many years, CWC has held three annual conferences, including an annual Policy Conference (focusing on labor and employment policy and generally open only to CWC members), an annual Compliance Conference (concerning compliance and diversity management and generally open only to CWC members), and a Talent Acquisition Compliance Summit (addressing the unique requirements affecting talent acquisition and open to both members and non-members).

### B.   CWC Membership

#### 1.   Application and Approval Process Based on Eligibility Requirements

26.     Prospective CWC members complete an application that confirms eligibility requirements and provides additional information including name, company, and e-mail address.  The membership application is reviewed by the membership services team.  The CWC board of directors reviews and provides final approval of each new membership application before an organization is permitted to join the Association.

27.     Each CWC member employer designates a Primary Representative (or "Prime Rep") to serve as the principal membership contact for the employer.  Prime Reps receive "prime-rep-only" communications, vote on proposed changes to CWC by-laws, and manage membership renewals.

### 2.     Law Firms Are Ineligible for Membership

28.     Law firms are expressly excluded from membership under the CWC membership guidelines and requirements.  Specifically, CWC's membership eligibility policy states that "[l]aw firms, consulting firms, and other organizations providing workplace legal and compliance services are not eligible for membership."[6]  This policy has existed since the Association's founding in 1976 to prevent law firms and consulting firms from using CWC's proprietary material to provide legal services for their clients and to facilitate the candid and open discussion of workplace compliance and risk management issues by the Association's member employers.

29.     For example, CWC members use CWC's content to promote and manage their workplace compliance requirements and risks.  Active participants employed by CWC's members typically include human resource employees and in-house labor and employment attorneys focused on issues such as compensation, talent acquisition, compliance, equal employment opportunities/affirmative action, diversity and inclusion, training and development, and related topics.

30.     Unlike CWC's member employers, who use the CWC's materials to manage their workplace compliance needs, a law firm's business is focused on providing employment-related legal advice, counsel, services, and representation to employers like those who are members of CWC.

---

[6] *See* Exhibit C (CWC Membership Application).

31.     Defendant Littler, along with its shareholders, associates, attorneys, principals, employees, and agents, as well as Defendants Gibbons and Gokturk, are ineligible from being members of CWC based on the CWC's membership restrictions.

32.     If Littler had applied for membership, Littler would have been denied under the established rules governing membership.  Specifically, the application would have been screened for eligibility, a process that includes review by CWC's board of directors.

33.     As former CWC staff members, both Defendant Gibbons and Defendant Gokturk were familiar with CWC's membership restrictions.  Because Defendants Gibbons and Gokturk were aware of the law firm membership restriction, they knew that Littler was ineligible for CWC membership.

34.     In this case, as described below, the Littler Defendants used CWC's information and materials to profit and benefit in the delivery of Defendant Littler's legal business.  Avoiding this type of unauthorized use of CWC's materials—which undermines its business—is directly contrary to the purpose of CWC's membership restrictions.

**C.      CWC's Members-Only Site and Resources**

35.     For more than twenty (20) years, CWC has provided valued, timely, and proprietary workplace compliance information through the CWC Members-Only Site.  Many of these materials have been provided in the form of weekly memoranda, which in the early years of the CWC Members-Only Site were featured through a service known as "Memos On-Line."  Members use CWC's content to promote workplace compliance.  Members have exclusive access to a substantial amount of CWC intellectual property and other information, including through the following site resources:

a.      **CWC Publications/Memos On-Line**:  Copyright-protected memoranda and other materials providing topical analysis of key compliance and workplace risk issues.  Weekly

11

memoranda provide updates on the latest legal, regulatory, and policy developments affecting employer compliance, diversity, and risk management programs.

(i)  An extensive library of thousands of copyrighted memoranda and other materials, spanning more than 20 years, can be located through a convenient search tool on the Association's online publications page.  The library was previously known as EEAC Memos On-Line.

(ii)  Each memorandum provides notice of the copyright restrictions such as:

> Copyright 2020 by the Center for Workplace Compliance (CWC®). All rights reserved.  Formerly EEAC. No part of this document may be reproduced without permission of CWC.

b.  **CWC "Confidential Connect Communications Platform" or "Platform"**: A confidential online community, available only for CWC members, to share ideas, benchmark, and connect with fellow members at any time.  The communications are made through a secure, password-protected and member-restricted Connect CWC Collaboration Center Communication Platform.  The Platform allows CWC members to privately share information and ask questions on various workplace compliance and diversity issues.  Members communicate with each other and with CWC's staff in a confidential setting that is only viewable by CWC members.  In the Platform's secured communications, the name of the user and their company or organization are identified along with a timestamp of the communication.

c.  **CWC  Compliance  Tools**:  Copyright-protected  checklists,  templates, policies, procedures, and guides covering a broad range of workplace compliance and diversity and inclusion issues.  The Compliance Tools are available for the internal use of member organizations.

d.  **CWC Data Center**:  An online hub of compliance and diversity benchmark data, federal enforcement statistics, state-level compliance requirements, and graduate diversity data.

12

Benchmark data examples include workforce demographics, educational attainment demographics, state standards, and enforcement agency performance.

      e.    **CWC Education and Training**:  A comprehensive curriculum of online, classroom, and customized training solutions on workplace compliance issues, made exclusively available for CWC members.

36.    The CWC Members-Only Site, including the information and copyrighted memoranda, is exclusively available to member organizations (including member employers and their designated employees).  CWC members have access to a comprehensive suite of resources to help them manage workplace compliance and risk.

37.    Non-Members do not have access to the intellectual property and information on the password-protected CWC Members-Only Site.  Non-Members may register and attend certain conferences and training programs that are open to non-Members.

38.    As noted, organizations that are not eligible for membership include "[l]aw firms, consulting firms, and other organizations providing workplace legal and compliance services."[7]

39.    Access to the CWC Members-Only Site is restricted to members and their employees through a password-protected, members-only portion of the website located at www.cwc.org.  Login is required to access members-only content.  Access is made by logging in with the member's username and password.

40.    CWC's copyrighted materials, including those available through the CWC Members-Only Site, also confirm that the content may not be reproduced or distributed to anyone outside of the member employer without the express written consent of CWC.

---

[7] *See* Exhibit C (CWC Membership Application).

### D.    Former CWC Staff Members Lance E. Gibbons and Chris Gokturk Join Littler

41.    Defendants Gibbons and Gokturk, as former CWC staff members, were familiar with the proprietary nature of the CWC intellectual property, the processes used to create and protect CWC's intellectual property, and the limitations on its use including on the CWC Members-Only Site.  After Defendant Gibbons rejoined Littler as a shareholder on July 25, 2018 and Defendant Gokturk joined Littler as a principal on February 26, 2019, they used Littler's "robust platform and resources"[8] to obtain, infringe and/or use CWC's information and copyrighted materials to benefit and profit Littler directly and indirectly and themselves as a Littler shareholder and principal.  As further described below, the former CWC staff members at Littler were acting as a shareholder or principal, representative and agent of Littler and within the course and scope of their employment with Littler.

42.    During July 2015 to July 20, 2018, Defendant Gibbons served as a staff member of CWC, first as Senior Counsel and later as Assistant General Counsel.  As Assistant General Counsel at CWC, Defendant Gibbons was aware of and responsible for helping to manage the Association's policies and practices concerning the protection of CWC's intellectual property.  He also had responsibility for workplace compliance requirements and risks including the Office of Federal Contract Compliance Programs (OFCCP), government contracts, anti-discrimination laws and affirmative action regulations, among other responsibilities.

43.    When Defendant Gibbons resigned and departed CWC on July 20, 2018, his credentials and system access, including access to CWC's computers, its network and the CWC Members-Only Site, were terminated and revoked.  The termination was made consistent with the

---

[8] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020) (Defendant Gibbons noting his plans to use "Littler's robust platform and resources to serve clients").

policy that applied to departing employees and staff members, a policy with which Defendant Gibbons was very familiar.

44.     During 2002 to the beginning of February 2019, Defendant Gokturk served as a staff member of CWC and its affiliated organizations.  In this position, Defendant Gokturk provided services consistent with her experience in the areas of human resources compliance and data-related services, affirmative action plan preparation, compensation analyses, training, and OFCCP compliance review management.

45.     When Defendant Gibbons rejoined Defendant Littler as a shareholder on July 25, 2018, Littler issued a press announcement, "Littler Adds Shareholder Lance Gibbons in Washington, D.C."[9] highlighting Mr. Gibbon's background, practice areas, and experience and his ability to assist Littler clients by using the Littler platform and resources.

    a.     The Littler announcement emphasized Defendant Gibbons's "extensive experience before the U.S. Department of Labor's Office of Federal Contract Compliance Programs [OFCCP]" and his ability to assist clients "on anti-discrimination laws and affirmative action regulations," "compliance with the array of employment-related requirements associated with government contracts, as well as in preparing for and resolving OFCCP audits," and "other workplace regulatory and enforcement agencies, including the Equal Employment Opportunity Commission."

    b.     In the Littler announcement, Defendant Gibbons stated: "In addition to drawing on Littler's robust platform and resources to serve clients, I look forward to supporting the

---

[9] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc  (last accessed on April 5, 2020); *see also* Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020), attached hereto and incorporated herein.

firm's efforts to engage with the government on behalf of employers on labor and employment related developments."

        c.     The Littler announcement underscored that "Gibbons will work closely with members of Littler's Workplace Policy Institute® (WPI™), which serves as a resource for employers to ensure that they have a voice in legislative and regulatory developments that impact their workplaces and business strategies." Defendant Littler listed Defendant Gibbons as a member of the Workplace Policy Institute® (WPI™).

        d.     The Littler announcement highlighted Defendant Gibbons's role at CWC: "Gibbons also served as assistant general counsel to the Center for Workplace Compliance, where he assisted the association's members in understanding and managing their workplace compliance requirements and risks."

        e.     As reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), the CWC information and copyrighted materials that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed, related to the practice areas that the Littler July 25, 2018 press announcement highlighted when Defendant Gibbons returned to Littler.

     46.     Defendant Lance E. Gibbons previously served as a Littler shareholder during June 2007 to July 2015 in Littler's Pittsburgh, PA Office. As a Littler shareholder, he became familiar with Littler information technology platforms and resources to assist prospective and current Littler client's including how to use those resources to communicate directly with clients, engage in promotional activities, provide legal services to clients, and use information to benefit Littler directly and indirectly.

47.     On February 26, 2019, Littler issued a press announcement, "Littler Adds Chris Gokturk in Northern Virginia,"[10] emphasizing that Defendant Gokturk, as a Littler principal, had "more than 20 years of experience in compliance, enterprise risk management and statistical analyses."

a.      The Littler announcement noted Defendant Gokturk's background and highlighted her history of assisting clients "on all phases of the OFCCP compliance review process," including reviews of compliance with affirmative action regulations and anti-discrimination laws.

b.      The Littler announcement stated that Defendant Gibbons previously worked with Defendant Gokturk.  In the Littler announcement, Defendant Gibbons is quoted highlighting Defendant Gokturk's "extensive experience advising on OFCCP matters, risk management and analyses of employment data."

**E.      Unlawful Conduct Using Littler's Infrastructure, Platform and Resources to Obtain and Use CWC's Information and Infringe Copyrighted Materials Related to Littler's Practice Areas, Business Interests and Profits**

48.     Established in 1942, Littler describes itself as a law firm with "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[11] and as a firm which provides workplace legal and compliance services.

---

[10] *See* Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020), attached hereto and incorporated herein; *see also* Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020), attached hereto and incorporated herein.

[11] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018) ("Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020); *see also* Exhibit H ("Littler Adds Healthcare Industry Veteran William Vail") (May 6, 2019) (referring to Littler as "the world's largest employment and labor law practice representing management"), accessible at https://www.littler.com/publication-press/press/littler-adds-healthcare-industry-veteran-william-vail (last viewed Nov. 9, 2020); ("Littler Adds Shareholder Jaime Laurent in Los Angeles") (Aug. 20, 2018) (referring to Littler as "the world's largest employment and labor law practice representing management"; "Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-jaime-laurent-los-angeles (viewed Nov. 9, 2020); ("Littler Mendelson Continues High-Profile Lateral Growth; JoAnna Brooks Joins in San Francisco") (June 17, 2013) (referring to Littler as "the world's largest employment and labor law firm representing management"; "Littler

49.     Littler and Littler's Workplace Policy Institute® (WPI™) compete directly with CWC for the resources of employers seeking guidance concerning workplace legal and compliance requirements and related matters.

50.     Littler's practice areas include: "Affirmative Action/ Office of Federal Contract Compliance Programs (OFCCP) Compliance"; "Corporate Compliance and Ethics, Discrimination and Harassment, Employment Practices Audits"; "Labor Management Relations, Legislative and Regulatory Practice"; "Robotics, Artificial Intelligence (AI) and Automation"; "Training - Compliance, Ethics, Leadership"; "Unfair Competition and Trade Secrets"; "Workplace Privacy and Data Security"; and "Workplace Safety and Health (Occupational Safety and Health Administration (OSHA) & Mine Safety and Health Administration (MSHA))".[12]

51.     Littler publicly highlights and promotes its "robust platform and resources" that it provides its shareholders, associates, attorneys, principals, employees, and agents to serve clients and provide legal services.[13]  In fact, as described above, in rejoining Littler as a shareholder in July 2018,

---

Mendelson is the world's largest labor and employment law firm exclusively devoted to representing management. With over 980 attorneys and 57 offices throughout the U.S. and globally, Littler has extensive resources to address the needs of U.S.-based and multi-national clients from navigating domestic and international employment laws and labor relations issues to applying corporate policies worldwide. Established in 1942, the firm has litigated, mediated and negotiated some of the most influential employment law cases and labor contracts on record."), accessible at https://www.littler.com/publication-press/press/littler-mendelson-continues-high-profile-lateral-growth-joanna-brooks-joins- (viewed Nov. 9, 2020), attached hereto and incorporated herein.

[12] *See, e.g.*, Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020), attached hereto and incorporated herein.

[13] *See, e.g.*, Exhibit H ("Littler Adds Healthcare Industry Veteran William Vail") (May 6, 2019) (referring to "Littler's robust platform and resources"), accessible at https://www.littler.com/publication-press/press/littler-adds-healthcare-industry-veteran-william-vail (viewed Nov. 9, 2020); "Littler Adds Shareholder Jaime Laurent in Los Angeles" (Aug. 20, 2018) (noting "the firm's robust national and global platform and dedication to innovation in the delivery of legal services"), https://www.littler.com/publication-press/press/littler-adds-shareholder-jaime-laurent-los-angeles (viewed Nov. 9, 2020); "Littler Mendelson Continues High-Profile Lateral Growth; JoAnna Brooks Joins in San Francisco" (June 17, 2013) (describing "Littler's global platform, innovative resources and depth of our subject matter expertise"), accessible at https://www.littler.com/publication-press/press/littler-mendelson-continues-high-profile-lateral-growth-joanna-brooks-joins- (viewed Nov. 9, 2020).

Defendant Gibbons expressly noted that he looked forward to "drawing on Littler's robust platform and resources to serve clients."[14]

52.     Defendants Gibbons and Gokturk used the "robust platform and resources" of Littler to misappropriate and use CWC's intellectual property and commit the unlawful acts described in this Complaint.  For example, Defendants Gibbons and Gokturk used Littler resources in providing legal services and related services, including as their Littler computers, email addresses, telephones, text communications, the Littler IP address and other network resources, printers, staff resources, among other resources to create presentations and communicate with current and prospective Littler clients concerning the content of the CWC materials.  Littler used CWC's materials and information to profit and benefit from the provision of its legal business.

53.     Defendant Littler initially selected, hired, and engaged former CWC staff members Gibbons and Gokturk to serve as a Littler shareholder and a Littler principal, respectively, as well as Littler agents and representatives in Littler's legal business.  Littler provided them with compensation for their services on behalf of Littler, including by providing terms and parameters to generate business and obtain profits for Littler.  Littler retained the ability to discharge them.  Littler established parameters for the delivery of Littler services, exercising control over their services consistent with Littler's standards.

54.     The infringement of CWC's copyrighted materials and unlawful obtaining of CWC's information by Littler shareholder Gibbons and Littler principal Gokturk was incident to the business of Littler in providing legal and related services.  The conduct was committed while Littler shareholder Gibbons and Littler Principal Gokturk were acting in their capacities as a shareholder

---

[14] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020).

and principal respectively, promoting Littler's business with a view to further Littler's interests, and during prospective and existing client solicitations, meetings and communications.  This conduct further promoted Littler's interests and profits as Littler clients were charged based on services provided using CWC's information and copyrighted materials.

55.     In particular, as further described in this Complaint, Defendants Gibbons and Gokturk engaged in this conduct while serving as a Littler shareholder and Littler principal respectively, and as Littler representatives and agents, and while providing legal and related services on behalf of Littler, promoting and pursuing the interests and profits of Littler, and using Littler's platforms and resources to obtain, infringe, and use CWC's information and copyrighted materials in the performance of duties directly related to (1) the practice areas of the Littler Defendants;[15] (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.  Illustratively, and among the instances further described below, this includes (A) after being thwarted in his efforts to obtain intellectual property from the CWC Members-Only Site, Defendant Gibbons, acting in his capacity as a Littler shareholder and to generate profits for Littler, made a series of false and misleading statements to an organization that was both a Littler client and CWC member to obtain a user name and password for accessing the CWC Members-Only Site, which he in turn used to infringe and obtain CWC information and copyrighted materials unlawfully; (B) after fraudulently obtaining the credentials of another person to access the CWC Members-Only Site, Defendant Gibbons used the credentials to misappropriate

---

[15] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020); Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

more than 2,100 pages of CWC's information and intellectual property that was infringed and unlawfully obtained and used for the benefit and profit of Littler; (C) Defendant Gibbons and Defendant Gokturk, using Littler resources, infringed CWC information and copyrighted materials relating to particular Littler presentations designed to communicate with prospective and current Littler clients; (D) Defendant Gibbons, using Littler resources, infringed and obtained CWC information and copyrighted materials relating to particular Littler publications designed to communicate with prospective and existing clients and generate business for Littler; (E) Defendant Gibbons and Defendant Gokturk disregarded, altered and removed the CWC copyright notices on CWC materials before using them for Littler; and (F) Defendant Gokturk engaged in copyright infringement of a 2017 CWC Pre-Existing Big Data Analytics Presentation by using it for a 2019 Littler presentation for current prospective and current Littler clients and falsely represented Littler as the original author of content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation, and allowed other Littler shareholders, associates, attorneys and agents to use the infringed CWC material to advance the business interests of Defendant Littler.

56.     One of the primary objectives of the unlawful conduct in this matter was to benefit Littler by generating additional profits, including under 17 U.S.C. § 504(a)(1).

57.     Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed the CWC materials in his practice including to provide legal services to Littler clients, which Littler billed for, to present in Littler presentations to prospective and current Littler clients, and to create infringing derivative works.

58.     Defendant Littler, with "the largest global employment and labor law practice,"[16] advises employers on how to implement safeguards to prevent and detect the misappropriation of

---

[16] *See* note 11 (Littler publications making this statement), *supra*.

intellectual property and information by new employees, and about the "legal risks" of hiring employees from competitors.[17]  Illustrating Littler's subject matter expertise in this area, for example, Littler has warned that "companies should caution new employees to refrain from using their former employer's information and not bring any such information with them."[18]  Littler also has highlighted "the risks of hiring from competitors without a rigorous risk assessment and protocol for rejecting the use of a prior employer's trade secrets,"[19] guidance that applies to other forms of intellectual property and information.  Littler further recommends that employers "[e]xamine hiring and on-boarding procedures to make sure that reasonable steps are being taken to avoid newly hired employees bringing trade secrets of a prior employer into the workplace or using them,"[20] which also applies to other forms of intellectual property and proprietary information.  Littler has advised that "Employers should also consider establishing procedures to monitor and regulate employee access privileges."[21]

59.    Defendant Littler failed to implement appropriate controls and reasonable safeguards including best practices for employers to avoid the recurring and voluminous misappropriation of intellectual property of CWC by Defendant Gibbons and Defendant Gokturk, along with possibly other employees, over a substantial period of time.

---

[17] *See* Exhibit J (Littler Unfair Competition and Trade Secrets) ("When a company wants to hire an employee from a competitor, we can provide advice on the best approach so that a client can maximize legitimate competitive advantage and minimize litigation risk."), accessible at https://www.littler.com/practice-areas/unfair-competition-and-trade-secrets (viewed on Nov. 9, 2020), attached hereto and incorporated herein; *see also* Exhibit J (Legal Risks of Hiring Competitors Employees, Littler Mendelson P.C. (April 25, 2019) (listing presenter Danielle L. Kitson), accessible at accessible at https://www.littler.com/people/danielle-l-kitson (viewed on Nov. 9, 2020).

[18] *See* Exhibit J (Littler News & Analysis Insight, "How Not to Hire Employees from a Competitor," (April 30, 2005), accessible at https://www.littler.com/publication-press/publication/how-not-hire-employees-competitor (viewed on Nov. 9, 2020).

[19] *See* Exhibit J (Littler ASAP, "Court Finds Texas Company Stole Trade Secrets after Hiring Employee from Competitor" (May 30, 2012), accessible at https://www.littler.com/publication-press/publication/court-finds-texas-company-stole-trade-secrets-after-hiring-employee (viewed on Nov. 9, 2020).

[20] *See* Exhibit J (Littler Insight, "Trade Secrets Finally Get Federal Law Protection, (May 2, 2016), accessible at https://www.littler.com/publication-press/publication/trade-secrets-finally-get-federal-law-protection (viewed on Nov. 9, 2020).

[21] *See* Exhibit J (Littler ASAP, "Recent Study Reveals Troubling Amount of Employee Misuse and Theft of Company Data" (March 19, 2013), accessible at https://www.littler.com/publication-press/publication/recent-study-reveals-troubling-amount-employee-misuse-and-theft (viewed on Nov. 9, 2020).

60.     Notwithstanding Littler's sophistication and self-described expertise in employment law, workplace privacy, and data security, Littler failed to prevent and permitted Defendant Gibbons for approximately seventeen (17) months to repeatedly access CWC's secured computer systems without authorization and infringe its copyrighted works.  In this case, Littler failed to implement appropriate safeguards and controls to detect, prevent and monitor the misappropriation of a voluminous amount of CWC's intellectual property.

61.     Defendant Littler's disregard for CWC's intellectual property fits a broader pattern of misappropriation of CWC's information and materials by Littler and its shareholders, associates, attorneys, principals, employees, and agents.  As further described below, in the course of reviewing the misconduct described in this Complaint, CWC discovered that Defendant Littler has also infringed other CWC intellectual property and proprietary content.  As described below, the Littler misappropriation included copyright infringement of at least one CWC presentation by Defendants Littler and Gokturk to create an infringing presentation to promote Littler's services to current and prospective Littler clients.  Defendant Littler failed to prevent and allowed Defendant Gokturk to bring and use CWC materials and information to Littler and on the Littler platform and resources.

62.     The scale and scope of the Littler infringement and misappropriation of CWC information and materials, along with the involvement by other Littler shareholders, associates, attorneys, principals, employees, and agents, and the amount and extent of Littler profits and damages to CWC will be fully determined at trial and following a full accounting.

**F.      Obtaining and Using CWC Information and Infringing CWC materials to Promote Littler's Business Interests and Profits**

63.     As reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), the CWC information and copyrighted materials that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, retained, printed, used,

23

and/or infringed, related to the practice areas of Defendants Littler and Gibbons.[22]  Importantly, as only a few examples, the materials relate to Affirmative Action/OFCCP Compliance, Investigations, Discrimination and Harassment, Labor Management Relations, Workplace Policy Institute, and Government Contractors, which are practice areas of Defendants Littler and Gibbons, and they bill clients for services related to such practice areas.[23]

64.    CWC is informed and believes and, based thereon, alleges, to be fully determined at trial, that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, retained, printed, used, and/or infringed (including by creating derivative works) CWC's information and copyrighted materials from the CWC Members-Only Site including in communications with prospective and existing Littler clients and other third parties, in providing legal services to Littler clients, and for use in his Littler office while serving as a Littler shareholder and to further Littler's business interests.

65.    Defendants Littler and Gibbons used the CWC information and copyrighted materials that he unlawfully obtained to provide oral and written legal services and work product to Littler clients.  In doing so, Defendant Gibbons and Does 1-10 used the CWC information and copyrighted materials for the benefit of Littler.  Defendant Littler billed clients for Defendant Gibbons's legal services which used the CWC information and infringed CWC materials.

66.    In using the CWC information and copyrighted materials in communications with clients, Defendants Littler and Gibbons sought to insulate these communications from further review under the attorney client privilege, work product doctrine and other legal protections.  However, the Littler Defendants knew or should have known that any legal protections do not cover many, and

---

[22] *See* Exhibit I; Exhibit E; *see also* Exhibit D.
[23] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020).

likely all, of these communications and their efforts to insulate these communications would not be successful.

### G.   Littler Presentations Promoting Littler's Business Interests and Profits

67.   The Defendants obtained and infringed CWC's information and materials which were used for Littler presentations to prospective and current Littler clients and to generate business for Littler.   These presentations were made for and on behalf of Littler using Littler resources and branding materials.

68.   As one example, in 2019 Defendants Littler and Gokturk infringed a CWC presentation entitled "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252), by copying, reproducing, and using the presentation and/or content within the presentation at Littler including for promotional purposes with prospective and current Littler clients and for the benefit and profit of Littler, as further described below.

69.   Defendant Gibbons also presented at several Littler programs and forums and made corresponding downloads of related CWC information and materials to promote Littler's business and practice to prospective and current Littler clients.

a.   Illustratively, among many other examples,[24] on September 13, 2019, Defendants Littler and Defendant Gibbons gave a presentation on Defendant Littler's behalf entitled

---

[24] Several other examples are confirmed based on a comparison of the Littler speaking engagements for Defendant Gibbons with the CWC materials and information that were infringed and obtained through the Littler IP Address prior to the speaking engagements.  *Compare* Exhibit D (listing Speaking Engagements), *with* Exhibit A (List of CWC Information Obtained by the Littler IP Address).

"Government Contractor Update:  What is going on at the OFCCP?" ("2019 Littler Government Contractor Update Presentation"), at the Indiana Industry Liaison Group.[25]

      b.    In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials directly related to OFCCP and Federal Contractor matters and the specific topics he presented on, including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~193~~178 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members (No. 19-177) | 09/06/19 |
| ~~195~~180 | President Obama Issues Executive Order To Increase Minimum Wage for Employees of Federal Contractors and Subcontractors (No. 14-048 ) | 09/04/19 |
| ~~197~~182 | CWC's Primer on Federal Contractor Obligations Under the McNamara-O'Hara Service Contract Act (No. 17-264) | 09/04/19 |
| ~~198~~183 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 (No. 18-187) | 09/04/19 |
| ~~208~~193 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance- Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review (No. 19-090) | 08/30/19 |
| ~~210~~195 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members (No. 19-177) | 08/30/19 |
| ~~213~~198 | New OFCCP Opinion Letter Says Federal Contractors Can Submit Pay Analysis Groupings for Review and Agency Feedback (No. 19-152) | 08/27/19 |

---

[25] Exhibit M (Littler Presentation:  "Government Contractor Update:  What is going on at the OFCCP?"), attached hereto and incorporated herein.

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~214~~199 | CWC's Written Comments to OMB Urge Rejection of OFCCP's Burdensome Proposed Changes to "Focused Review" Scheduling Letters (No. 19-158) | 08/27/19 |
| ~~215~~200 | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year (No. 19-161) | 08/27/19 |
| ~~216~~201 | OFCCP Names Ombud, Marcus Stergio, Who Will Now Design, Implement, and Execute Agency's Previously Announced Ombud Service (No. 19-167) | 08/27/19 |
| ~~218~~203 | Illinois Is First State To Restrict the Use of Artificial Intelligence-Driven Video Interview Systems (No. 19-172) | 08/27/19 |
| ~~219~~204 | Reviewing Physical and Mental Job Requirements Under OFCCP's Section 503 and Section 4212 Affirmative Action Program Requirements (No. 13-131) | 08/20/19 |
| ~~220~~205 | EEAC's Checklist for Reviewing Physical and Mental Qualifications Under New Paragraph 22 of OFCCP's Revised Scheduling Letter (No. 15-025) | 08/20/19 |
| ~~224~~209 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 08/17/19 |
| ~~225~~210 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year (No. 18-071) | 08/17/19 |
| ~~227~~212 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% (No. 15-079) | 08/16/19 |
| ~~228~~213 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year (No. 19-064) | 08/16/19 |
| ~~247~~232 | OFCCP Gets Approval From OMB To Move Forward With Changes to Functional Affirmative Action Program Designed To Increase Contractor Participation (No. 19-138) | 07/13/19 |

70.    As another example, on August 20, 2019 Defendants Littler and Gibbons gave a Littler presentation entitled "Government Contractor Update | An Energized OFCCP Changes Compliance Requirements and Enforcement Standards," in Tysons Corner, Virginia.

a.    In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and

Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC information and copyrighted materials directly related to OFCCP matters including :

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 224209 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 08/17/19 |
| 225210 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year (No. 18-071) | 08/17/19 |
| 227212 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% (No. 15-079) | 08/16/19 |
| 228213 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year (No. 19-064) | 08/16/19 |
| 230215 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations (No. 14-018) | 07/19/19 |
| 232217 | OFCCP Litigation Watch: EEOC and OFCCP Enter Into Rare "Joint" Conciliation Agreement with Federal Contractor Asbestos Specialists (No. 16-126) | 07/19/19 |
| 233218 | OFCCP's Decision To Begin Publishing Complaint Investigation Financial Settlements Sheds Light on a Little Known Area of Agency Enforcement (No. 19-034) | 07/19/19 |
| 234219 | OFCCP's Final Jobs for Veterans Act (JVA) Regulations Respond to Concerns Expressed By EEAC About Potential Burden, Will Give Contractors Welcome Flexibility in Complying (No. 07-169) | 07/17/19 |
| 235220 | OFCCP Posts FAQ Announcing That Enforcement of New JVA Self- ID Requirements Will Be Delayed Until JVA Reporting Requirements Are Finalized (No. 08-001) | 07/17/19 |
| 236221 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule (No. 12-148) | 07/17/19 |
| 237222 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule (No. 12-148) | 07/17/19 |

71.     Other examples involving Littler presentations include the following:

a.      On June 7, 2019, Defendant Gibbons gave a Littler presentation entitled "Attention Government Contractors: OFCCP Update," at the 2019 Mid-Atlantic Employer Conference, in Bethesda, MD.

28

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials directly related to OFCCP matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|------|----------------------------------------------------|----------------------|
| ~~284~~269 | EEAC's Guide to OFCCP Notice Posting Requirements (No. 16-109) | 05/23/19 |
| ~~288~~273 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" (No. 18-162) | 05/23/19 |
| ~~289~~274 and ~~293~~278 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions (No. 19-101) | 05/23/19 and 05/22/19 |
| ~~291~~276 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 15-235) | 05/22/19 |
| ~~292~~277 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 05/22/19 |
| ~~296~~281 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) (No. 19-093) | 05/10/19 |

b.      On June 6, 2019, Defendant Gibbons gave a Littler presentation entitled "Attention Government Contractors: OFCCP Policy Changes," at the 2019 Contract Security Washington Summit, in Washington, DC.

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to OFCCP matters including:

29

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~284~~269 | EEAC's Guide to OFCCP Notice Posting Requirements (No. 16-109) | 05/23/19 |
| ~~288~~273 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" (No. 18-162) | 05/23/19 |
| ~~289~~274 and ~~293~~278 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions (No. 19-101) | 05/23/19 and 05/22/19 |
| ~~291~~276 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 15-235) | 05/22/19 |
| ~~292~~277 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 05/22/19 |
| ~~296~~281 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) (No. 19-093) | 05/10/19 |

      c.      On May 9, 2019, Defendant Gibbons gave a Littler presentation entitled "Help Wanted: How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance," at the 2019 Executive Employer Conference in Phoenix, Arizona.

      (i)      Prior to the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to OFCCP matters including:  "Big Data" Analytics and Its EEO Implications for Employment Practices (No. 16-257) (access/download date 03/08/19).

      d.      On May 8, 2019, Defendant Gibbons gave a Littler presentation entitled "Federal Contractor Roundtable," at the 2019 Littler Executive Employer Conference, in Phoenix, Arizona.

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC information and copyrighted material related to Federal Contractor matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~312~~297 | Labor Department Issues Final Rule Requiring Covered Federal Contractors To Provide Employees With up to 56 Hours of Paid Sick Leave Annually (No. 16-201) | 04/23/19 |
| ~~316~~301 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 (No. 18-187) | 04/23/19 |

e.      On April 9, 2019, Defendant Gibbons gave a Littler presentation entitled "The Latest Developments in Federal Labor Policy: A Workplace Policy Institute Briefing."

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to Federal Labor Policy matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~356~~341 | EEOC Plans To Open 2018 EEO-1 Filing Season Next Week, Even as What Happens Next Is Up in Air After Federal Court Orders Reinstatement of Expanded Obama-Era Revisions (No. 19-054) | 03/16/19 |
| ~~353~~368 and ~~370~~355 | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31,2018 (No. 16-196) | 03/06/19 and 3/05/19 |

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~371~~356 | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 (No. 17-182) | 03/05/19 |
| ~~372~~357 | Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report (No. 17-248) | 03/05/19 |

f.       On March 20, 2019, Defendant Gibbons gave a Littler presentation entitled "Preparing for an Increase in OFCCP Audit Activity: CSALs, Focused Reviews, VERPs, and More."

(i)       In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to OFCCP Audit matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~359~~344 | A Recommended Process for Auditing Your Company's Compliance With OFCCP's Internet Applicant Rule (No. 10-162) | 03/08/19 |
| ~~383~~368 | Most Recent OFCCP Financial Settlements Continue To Wrap Up Years-Old Audits (No. 18-168) | 03/04/19 |
| ~~384~~369 | OFCCP Financial Settlement Update: Focus Continues To Be on Disposal of "Aged" Audits (No. 18-239) | 03/04/19 |
| ~~385~~370 | OFCCP's FY 2018 Enforcement Numbers Show Completed Audits Dropped by One-Third From Previous Year (No. 19-002) | 03/04/19 |

       g.     On March 19, 2019, Defendant Gibbons gave a Littler presentation entitled "Understanding the Impact of OFCCP's Recent Policy Changes on Federal Contractors Association of Builders and Contractors Webinar."

       (i)     In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to OFCCP matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~347~~332 | Department of Labor Finalizes New Rule Requiring Federal Contractors To Inform Employees of Their Union Organizing Rights (No. 10-093) | 03/18/19 |
| ~~348~~333 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 14-155) | 03/18/19 |
| ~~353~~338 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations (No. 15-170) | 03/16/19 |
| ~~357~~342 | OFCCP's Final "Internet Applicant" Regulation Establishes Compliance Framework for Federal Contractors' Electronic Recruitment and Selection Practices (No. 05-227) | 03/08/19 |
| ~~379~~364 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations (No. 15-170) | 03/04/19 |
| ~~404~~389 | New OFCCP Directive Signals Agency's Intent To Implement Voluntary Compliance Program for "High-Performing" Contractors (No. 19-039) | 02/25/19 |
| ~~405~~390 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 14-155) | 02/21/19 |
| ~~406~~391 | OFCCP Gets Approval To Use New Scheduling Letter Identifying Contractors for Section 503 "Focused Reviews" (No. 18-248) | 02/08/19 |

**H.** **Littler Publications Promoting Littler's Business Interests and Profits**

72. The CWC information and copyrighted materials that Defendants Littler and Gibbons accessed, selected, obtained, viewed, downloaded, used, and/or infringed, while using the Littler IP address, also related to particular Littler publications designed to communicate with prospective and current Littler clients.[26] For example, Defendant Gibbons published articles, promoted on the Littler website and using Littler publications (such as Littler ASAP and Littler Podcast),[27] and made corresponding downloads of related CWC information and materials to promote Littler's business and practice to prospective and current Littler clients:

a. As one example among many others, on July 2, 2019, Defendant Littler published a Littler ASAP publication authored by Defendant Gibbons, entitled "EEOC Provides Additional Guidance on EEO-1 Component 2 Information."

(i) In the weeks before the publication, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to EEO-1 Component 2 matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 246261 | EEOC Advises Court Overseeing EEO-1 "Component 2" Litigation That Online Filing System May Not Be Fully Operational Until Mid-August, Despite September 30, 2019 Filing Deadline (No. 19-126) | 06/26/19 |

---

[26] Numerous other examples are confirmed based on a comparison of the Littler publications for Defendant Gibbons with the CWC materials and information that were infringed and obtained through the Littler IP Address. *Compare* Exhibit E (listing Publications & Press of shareholder Gibbons) *with* Exhibit A (List of CWC Information Obtained by the Littler IP Address).

[27] Exhibit E (listing Publications & Press of shareholder Gibbons).

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| ~~271~~256, ~~279~~264, and ~~281~~266 | CWC's Tips for Collecting EEO-1 "Component 2" Data (No. 19-116) | 06/12/19, 06/10/19, and 06/07/19 |

**I.      Early Efforts to Obtain CWC's Intellectual Property, Make False and Misleading Statements and Ask Others to Engage in Copyright Infringement and Violations of Law and the CWC Restrictions to the Members-Only Site**

73.      Defendant Gibbons was directly engaged in infringing and obtaining a substantial amount of CWC's information and copyrighted materials from the CWC Members-Only Site for the benefit and profit of Defendant Littler.[28]

74.      Shortly after rejoining Littler, and beginning at a time unknown and at least by September 2018, Defendant Gibbons willfully persisted in making a series of requests for, and attempted to access and obtain, and induce others to provide and engage in the infringement CWC Members-Only Site materials.

75.      For example, on Tuesday, September 4, 2018, Defendant Gibbons used his Littler email address (LGibbons@littler.com) to send an email to an attorney working on behalf of CWC, asking if he could access a specific 50-state affirmative action policy survey.

76.      This request for information from the CWC Members-Only Site related directly to the practice areas of Defendants Littler and Gibbons,[29] and the legal services business of Littler.

---

[28] As noted, the identity and extent of the involvement of DOE Defendants 1 to 10 remains pending confirmation.
[29] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

77.     No response was given to Defendant Gibbons's request for CWC intellectual property. The recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

78.     On Friday, September 7, 2018, Defendant Gibbons, using the Littler IP address, attempted twice to access member-restricted content.  The documents were two CWC Memoranda: (1) "OFCCP Mails First Round of FY 2018 'Advance Notice' Letters; Agency Will Offer Technical Assistance Before Sending Scheduling Letters to the 1,000 Contractor Establishments Flagged for an Audit" (Memo No. 18-026), and (2) "New OFCCP Directive Aims To Resurrect Recognition of Exemplary Contractor Programs" (Memo No. 18-184).  Access was denied.  Member credentials were required to access, obtain, download, and use these restricted memoranda.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

79.     Later that day, Defendant Gibbons, using Littler resources, sent a text message to an attorney at CWC asking for the first of the two copyrighted memoranda noted above.  Defendant Gibbons asked:  "Can you send me memo 18-026?"

80.     Defendant Gibbons was expressly asking the attorney at CWC to at best make an exception to, and at worst violate, CWC restrictions on access to CWC's member-restricted content. Defendant Gibbons was aware that reproducing and distributing CWC copyrighted information to a Non-Member or to a law firm was not in conformance with CWC's policies.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

81.     Defendant Gibbons knew that the person he asked to send the memo was not authorized and would not be authorized by CWC to do so.

82.     No response was given to Defendant Gibbons's request for CWC intellectual property. The recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.

83.     On Tuesday, November 13, 2018, Defendant Gibbons, using Littler resources, sent a text message to an attorney at CWC requesting a different member-restricted CWC memorandum, as reproduced below:

| | |
|---|---|
| Defendant Gibbons | "Can you track down a memo for me? I don't ask for much." |
| CWC Attorney | "Hey Lance.  Happy to help you out of course … but can't send a memo.  What are you looking for?" |
| Defendant Gibbons | "Killing me.  I wanted the memo that we wrote that talked about steps to audit your AAP in preparation for a new plan year." |
| CWC Attorney | [No response.] |
| Defendant Gibbons | "Don't worry about it.  Don't want to get anyone in trouble." |

84.     Once again, the recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.

85.     In contrast, Defendant Gibbons, while using Littler resources and acting to promote the interests of Littler, showed no reluctance to ask someone else to violate the CWC restrictions and to engage in copyright infringement.  Defendant Gibbons was familiar with the restrictions as a former CWC Assistant General Counsel.

86.     While Defendant Gibbons was initially unable to obtain the CWC intellectual property he requested from the CWC Members-Only Site, by asking a CWC staff member to violate CWC

37

restrictions, Defendant Gibbons willfully persisted in his efforts to infringe and unlawfully obtain CWC information and materials.

87.     After Defendant Gibbons was unsuccessful in inducing others to violate the Copyright Act and the restrictions to the CWC Members-Only Site, he pursued other avenues to obtain the intellectual property of CWC.

88.     On Wednesday, November 14, 2020, Defendant Gibbons, again using Littler resources, attempted to access CWC copyright-protected memoranda.  Access was not allowed. Defendant Gibbons was redirected to the Login Page.  Without member credentials, Defendant Gibbons was unable to access the intellectual property on the CWC Members-Only Site.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

**J.     Willfully Pursuing Other Avenues to Obtain Information and Infringe Intellectual Property on the CWC Members-Only Site**

89.     After being denied access to the CWC Members-Only Site, Defendant Gibbons contacted an employee of a company that had been a long-standing CWC member (referred to as "Company A Employee").  Defendant Gibbons had known the Company A Employee for several years.

90.     Defendant Gibbons, using Littler resources, made false and misleading statements to obtain the login credentials of the Company A Employee.  Defendant Gibbons claimed that he needed the credentials of Company A Employee to access and download only a particular CWC memorandum to assist the Company A Employee.  Defendant Gibbons's request for the credentials was made in his capacity as a Littler shareholder and to generate profits for Littler.  In fact, as reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendant Gibbons used the fraudulently obtained credentials to access, select, obtain, view, download, use, and/or infringe a

voluminous amount of CWC information and copyrighted materials for the benefit and profit of Littler.

91.    As noted, as a former CWC staff member, Defendant Gibbons was familiar with the CWC restrictions which prohibited Non-Members and law firms from accessing the CWC Members-Only Site.  For example, as a former CWC staff member, Defendant Gibbons was familiar with EEAC and CWC's practice of marking EEAC and CWC materials with copyright notices.  Defendant Gibbons had drafted CWC materials that bore these copyright notices.

92.    Defendant Gibbons's other efforts to obtain intellectual property from the CWC Members-Only Site had been thwarted.  Given his continuing objective to obtain access, Defendant Gibbons demonstrated no reluctance in asking the Company A Employee to violate the CWC restrictions on access to intellectual property on the CWC Members-Only Site.

93.    Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the credentials to Defendant Gibbons for the CWC Members-Only Site.

94.    No CWC member employee may share access credentials with any non-members, including employees of law firms, and law firms are not eligible for membership in CWC.

95.    On November 16, 2018, Defendant Gibbons, using the Littler IP address, used the login credentials of the Company A Employee to connect to the CWC Members-Only Site.  During the next 22 minutes, Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed six copyright-protected and member-restricted documents.

96.    In fact, this was only the beginning of the infringement and obtaining of CWC information.  During the 489 days of the period of infringement and obtaining CWC information, from November 16, 2018 to March 18, 2020, the Littler IP address was used to access, select, obtain,

view, download, use, and/or infringe information and copyrighted materials from the CWC Members-Only Site approximately four hundred forty-two (442) times.  The CWC materials Defendant Gibbons accessed, selected, obtained, viewed, downloaded, used, and/or infringed beginning on November 16, 2018 through March 18, 2020 related directly to (1) the practice areas of Defendants Littler and Gibbons;[30] (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

97.    For example, Defendants Littler and Gibbons, using Littler resources, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC materials and information from the CWC Members-Only Site as follows:

| Total CWC Information Obtained and/or Infringed by the Littler IP Address By Month | | |
|---|---|---|
| No. | Month | Totals (Approx.) |
| 1 | Nov. 2018 | ~~9~~10 |
| 2 | Dec. 2018 | 5 |
| 3 | Jan. 2019 | 12 |
| 4 | Feb. 2019 | 22 |
| 5 | March 2019 | 56 |
| 6 | April 2019 | 40 |
| 7 | May 2019 | 16 |
| 8 | June 2019 | 23 |
| 9 | July 2019 | 29 |
| 10 | Aug. 2019 | 24 |
| 11 | Sept. 2019 | 31 |
| 12 | Oct. 2019 | 13~~15~~ |
| 13 | Nov. 2019 | 52 |
| 14 | Dec. 2019 | 9 |
| 15 | Jan. 2020 | 34 |
| 16 | Feb. 2020 | 39~~52~~ |
| 17 | Mar. 1-18, 2020 | 12 |

---

[30] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

98.     On a number of occasions, Defendants Littler and Gibbons, using the Littler IP address, logged into the CWC Members-Only Site to access, obtain, download, infringe and use the same CWC Title on more than one occasion.   For example, Exhibit B (CWC Copyright Registrations), and Exhibit N (CWC Information Obtained And/Or Infringed By The Littler IP Address on More Than One Occasion), identify approximately ninety-six (96) registered CWC works that were downloaded, obtained and infringed on more than one occasion.

99.     Defendant Gibbons's use of the CWC Members-Only Site to select, obtain, view, download, retain, print, use, and/or infringe (including creating derivative works of) CWC information and materials related directly to the practice areas of Defendants Littler and Gibbons.[31] For example, some of the listed practice areas for Defendant Gibbons include OFCCP matters (including desk audit submissions, on-site audits, responding to requests and negotiating resolutions), compliance with the National Labor Relations Act (NLRA), "all workplace compliance requirements applicable to federal government contractors," analyses of compensation data, "statistical disparity analyses for reductions in force," training concerning government contractor obligations, "[d]eveloping and implementing compliant diversity and inclusion programs."

### K.     False and Misleading Statements, Deceit and Concealment to Obtain CWC's Intellectual Property

100.     As part of the unlawful conduct in this matter, Defendant Gibbons made a series of false and misleading statements to infringe and obtain CWC information and copyrighted materials unlawfully.

---

[31] *See* Exhibit I (Littler Practices); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (summarizing practice areas); Exhibit E (summarizing practice areas of Shareholder Lance E. Gibbons).

101.    The Login process for the CWC Members-Only Site requires the member to "login with your CWC account."  On the Login Page, the member enters his or her user name and password (not the account of another member or member account holder).  Only CWC members have access to Members-Only content. For visitors who are not members, the Login Page provides information about how to become a member.  The Login Page, accessible from the Sign In Tab, is reproduced below.



102.    After making fraudulent statements to obtain the login credentials of the Company A Employee (as described below), during the login process, Defendant Gibbons falsely represented that he had a CWC member account, that he was the account holder, and that he was entitled to access the CWC Members-Only Site.

103.    Defendant Gibbons concealed his true identity in accessing the CWC account.  As a former CWC staff member, Defendant Gibbons was aware that (1) only members could access

CWC's member-restricted content; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

104.     Having authored a number of CWC memoranda during his tenure as a CWC Assistant General Counsel, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

105.     Additionally, for each CWC memorandum that Defendant Gibbons infringed and unlawfully obtained from the CWC Members-Only Site as a Littler shareholder, he was further aware that each memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

106.     CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendant Gibbons used and benefitted from the CWC information and copyrighted materials concealed from third parties, including Littler clients, that the information was infringed and obtained by fraud and unlawful conduct and represented the information as Littler's.

107.     The multiple false and misleading statements that Defendant Gibbons made to obtain the CWC information and materials further reflects his intent to violate the Counts in this Complaint and demonstrates his commitment to engage in willful infringement and to promote the interests of Littler.

108.     Based on the frequency of Defendant Gibbons's unauthorized access from Littler's IP address, and the quantity of CWC materials downloaded to and using Littler's computer and network resources, Defendant Littler was or should have been aware of Defendant Gibbons's conduct.

43

L.       **Password Changes**

109.     Since November 2018, the password for the Company A Employee credentials used by Defendant Gibbons changed three times: (1) June 5, 2019, (2) September 27, 2019, and (3) February 19, 2020.

110.     Each time the password was changed, Defendant Gibbons made fraudulent representations to the Company A Employee to request and obtain the new password.  For example, Defendant Gibbons claimed that he solely needed the new password to access and download a particular CWC memorandum to assist the Company A Employee when in fact he accessed, selected, obtained, viewed, downloaded, used, and/or infringed many more CWC copyright-protected memoranda and continued to do so for months after his request for the new password and until the next password change.  Each request for the credentials after the password was changed was made in Defendant Gibbons's capacity as a Littler shareholder and to promote the interests of and generate profits for Littler.

111.     Each time Defendant Gibbons requested the new password he concealed from the Company A Employee that he in fact had been using the prior credentials before the password change to download a substantial amount of CWC intellectual property.  For example, during the period from November 16, 2018 through May 23, 2019, Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed approximately 160 CWC materials from the CWC Members-Only Site.

112.     Defendant Gibbons also concealed from the Company A Employee that he would in fact use the credentials to continue to download a substantial amount of CWC intellectual property.

113.     As Defendant Gibbons was aware, the Company A Employee in fact lacked authorization to provide the credentials to allow him to access and obtain CWC's member-restricted intellectual property.  Defendant Gibbons was aware that (1) only members could access the CWC

44

Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

114.    Having authored a number of CWC Memos-Online during his tenure as a CWC Assistant General Counsel, and having infringed and unlawfully obtained CWC memoranda and other proprietary and member-restricted content as a Littler shareholder, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

115.    Defendants Littler and Gibbons accessed, obtained, downloaded and used CWC memoranda in (1) the practice areas of Defendants Littler and Gibbons;[32] (2) the business of Littler and legal services provided to prospective and current Littler clients; (3) the areas in which Littler competes with CWC; or (4) for any other purpose.

116.    By using the credentials of someone else, Defendant Gibbons sought to conceal that he in fact was initiating and downloading a substantial amount of CWC intellectual property from the CWC Members-Only Site.  Defendant Gibbons understood that his downloads would point to the user credentials that he was using.  Defendant Gibbons hoped to conceal the fact that he was the one who was initiating and directing the access to obtain the CWC intellectual property.

---

[32] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

117.    To bypass these restrictions, Defendant Gibbons devised a fraud scheme to obtain the credentials which he used to unlawfully infringe and obtain a substantial amount of CWC intellectual property for approximately seventeen (17) months.

118.    Defendant Gibbons engaged in fraud, deceit and concealment in order to obtain the new password to gain access to the restricted materials on the CWC Members-Only Site.  Defendant Gibbons was aware that (1) only members could access the CWC's member-restricted content; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

### 1.    Password Change:  June 5, 2019

119.    On June 5, 2019, the Company A Employee initiated a password change.

120.    On June 6, 2019, Defendant Gibbons, using the Littler IP address, unsuccessfully tried to access the Login Page to gain access to restricted content on the CWC Members-Only Site. Because a password change had been made the day before, Defendant Gibbons was unable to access the restricted content on the CWC Members-Only Site.

121.    Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the restricted content on the CWC Members-Only Site.  Defendant Gibbons fraudulently stated that he needed to get access to a particular CWC memorandum to assist the Company A Employee.  Defendant Gibbons concealed that he would continue to use the credentials to continue to access a substantial amount of CWC intellectual property.  Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler.

122.    Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the new password to Defendant Gibbons .

123.     On June 7, 2019, with the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and/or infringed one CWC copyright-protected memorandum.

124.     Defendant Gibbons continued to use the fraudulently obtained credentials to download more CWC copyright-protected memoranda.  For example, from June 9, 2019 to June 26, 2019, Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed approximately twenty-one member-restricted memoranda from the CWC Members-Only Site.  Defendant Gibbons continued to access and download additional memoranda from the restricted portions of CWC Members-Only Site for additional months before the next password change on September 27, 2019.

### 2.     Password Change:  September 27, 2019

125.     On September 27, 2019, the Company A Employee initiated a password change for the CWC Members-Only Site.

126.     On October 8, 2019, Defendant Gibbons, using the Littler IP address, unsuccessfully tried to access the Login Page of the CWC Members-Only Site.  Because a password change had been previously made, Defendant Gibbons was unable to access the CWC Members-Only Site.

127.     Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the CWC Members-Only Site.  Defendant Gibbons fraudulently represented that he needed to access to a particular CWC memorandum to assist the Company A Employee. Defendant Gibbons concealed that he would continue to use the credentials to access a substantial amount of CWC intellectual property.  Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler

128.     Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the new password to Defendant Gibbons.

47

129.    On October 15, 2019, with the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed six CWC copyright-protected memoranda.

130.    Defendant Gibbons continued to use the credentials to download more CWC copyright-protected memoranda.  For example, during October 18, 2019 through February 13, 2020, Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and infringed approximately 118 memoranda from the CWC Members-Only Site. Defendant Gibbons continued to access and download additional memoranda from the CWC Members-Only Site for additional months before the next password change on February 19, 2020.

### 3.    Password Change:  February 19, 2020

131.    On February 18, 2020, certain users of CWC's website, including the Company A Employee, received a notification to update their CWC website passwords.  The notification also stated:  "Remember to never share your username and password with anyone outside or even within your organization. If any of your coworkers need access to our members-only content, it's easy for them to setup a new account…."

132.    On February 19, 2020, Defendant Gibbons used the Littler IP address and unsuccessfully attempted to access the CWC Members-Only Site.  Because a required password reset was imposed on February 18, 2020 and the Company A Employee had not reset their password, Defendant Gibbons was unable to access the CWC Members-Only Site

133.    Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the CWC Members-Only Site.  Defendant Gibbons fraudulently stated that he needed to get access to a particular CWC memorandum.  Defendant Gibbons concealed that he would use the credentials to continue to access a substantial amount of CWC intellectual property.

Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler.

134.     After Defendant Gibbons contacted the Company A Employee, and relying on the fraudulent representations of Defendant Gibbons, the employee used the employee's credentials to access the CWC Members-Only Site and reset the password.  The Company A Employee then provided the new password to Defendant Gibbons.

135.     With the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed nine CWC copyright-protected memoranda on February 19, 2020.

136.     Defendant Gibbons continued to use the credentials to download more CWC copyright-protected memoranda.  For example, on February 20, 2020 through February 28, 2020, Defendant Gibbons used the Littler IP address to access and download 25 additional memoranda from the CWC Members-Only Site.  Defendant Gibbons continued to access and download additional memoranda from the CWC Members-Only Site through March 18, 2020.

**M.     Infringement Committed Willfully and with Intent to Engage in Other Unlawful Activity**

137.     The acts of infringement of the copyrighted works listed in Exhibits A (List of CWC Information Obtained by the Littler IP Address) and B (List of CWC's registered works) were committed willfully by Defendants Littler and Gibbons under 17 U.S.C. § 504(c)(2).  This same conduct was also committed with the intent to engage in the unlawful activity described in the Complaint.

138.     As a former CWC staff member and Assistant General Counsel, Defendant Gibbons was aware that accessing, selecting, obtaining, viewing, downloading, retaining, printing, using, infringing (including creating derivative works of) the materials from the CWC Members-Only Site

49

was against CWC's policies, and constituted copyright infringement.  For example, Defendant Gibbons was aware that (1) only members could access restricted content on the CWC Members-Only Site; (2) Defendant Gibbons was not an employee of a CWC member employer and was ineligible to become one based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

139.    Having authored a number of CWC Memos-Online during his tenure as a CWC Assistant General Counsel, and having infringed and unlawfully obtained CWC materials as a Littler shareholder, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

140.    Yet, with Defendant Littler's actual or constructive knowledge, Defendant Gibbons continued to access, select, obtain, view, download, use and/or infringe the restricted CWC information and copyrighted works approximately four hundred forty-two (~~442~~426) times for approximately seventeen (17) months as reflected in Exhibit A (List of CWC Information Obtained by the Littler IP Address).  During this period, CWC copyrighted works were infringed approximately four hundred and twenty (~~420~~417) times as reflected in Exhibit B (CWC Copyright Registrations).

141.    Furthermore, Defendant Gibbons's early attempts to obtain information and infringe materials from the CWC Members-Only Site directly from CWC staff member were rejected, and in the process Defendant Gibbons acknowledged this behavior had the potential to "get [some]one in trouble."

142.    Defendant Gibbons persisted in trying to obtain restricted content from the CWC Members-Only Site until he was able to obtain the credentials to which he used to access the CWC Members-Only Site by making false and misleading statements to the Company A Employee.

143.    As noted, the password for the user credentials fraudulently used by Defendant Gibbons was reset three times.  Defendant Gibbons made multiple false and misleading statements to obtain the new password each time the password he had obtained from the Company A Employee had been reset.

144.    As further evidence of willfulness and intent to engage in unlawful behavior, Defendant Gibbons committed the conduct for purposes of commercial advantage or private financial gain and also in furtherance of other tortious and criminal acts.  For example, after the initial download and infringement of CWC materials, Defendant Gibbons retained, printed, and used the CWC materials in Littler's practice for the commercial advantage or private financial gain of Littler. Additionally, CWC is informed and believes and, based thereon, alleges, after the initial downloads and infringement of the CWC materials, Defendant Gibbons engaged in subsequent acts of infringement of CWC materials including by reproducing, copying and creating derivative works from the initial downloaded of the CWC copyrighted material.

**N.    Littler's Access to the CWC Members-Only Confidential Connect Communications Platform**

145.    In addition to infringing the intellectual property and obtaining information from the CWC Members-Only Site, on March 18, 2020 Defendants Littler and Gibbons, using the Littler IP address and Littler's information technology resources, also intentionally accessed the CWC Members-Only Confidential Connect Communications Platform.

146.    The access to the CWC Members-Only Confidential Connect Communications Platform by Defendants Littler and Gibbons was intentional and highly invasive.  The unauthorized access to the Platform by the Littler IP address allowed Littler to access, view, monitor, and observe private member communications on workplace compliance issues.  The members in the platform did not know that someone using the Littler IP address was accessing, viewing, monitoring and observing

51

their confidential communications. This intrusion by the Littler IP address violated the security and privacy that CWC has established for its members to communicate confidentially with one another.

147.    As a result of the fraud previously described, Defendants Littler and Gibbons obtained restricted, confidential and private information from the CWC Members-Only Confidential Connect Communications Platform.    By accessing the CWC Members-Only Confidential Connect Communications Platform, Defendants Littler and Gibbons had access to view, monitor, and observe confidential communications of CWC Members. The CWC Members were unaware that a member of the Littler law firm could view their private and communications on workplace compliance and risk management issues.  The exposure to the private confidential CWC Member communications allowed Defendants Littler and Gibbons to seek business opportunities with potential clients by learning the confidential communications of CWC Members.

148.    As a former CWC staff member, Defendant Gibbons was aware that his access to the CWC Members-Only Confidential Connect Communications Platform was unauthorized.  Defendant Gibbons was aware that (1) only members could access the CWC Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler was ineligible to be a member as a law firm.

149.    Additionally, on July 9, 2019, Defendant Gibbons, using the Littler IP address, accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed the following CWC Memorandum:  "CWC Members Are Sharing Best Practices Via Our Online Collaboration Center, 'CWC Connect'" (No. 18-129), which described the benefits and options in using the Platform and expressly noted that "CWC Connect is a secure online platform

available only to CWC members and includes a Best Practices community that provides our members the opportunity to directly communicate, benchmark, and share ideas with each other."

O.   **Discovery of the Littler Infringement of the 2017 CWC Pre-Existing Big Data Analytics Presentation**

150.   Further infringement of CWC material was uncovered involving Littler and its shareholders, associates, attorneys, principals, employees, representatives and agents including Littler principal Defendant Gokturk.

151.   On May 11-12, 2017, CWC hosted its third annual Talent Acquisition Compliance Summit ("TACS") in Dallas, Texas.

152.   Defendant Gibbons attended and presented at the 2017 TACS as CWC Senior Counsel.  Defendant Gokturk attended and presented as a CWC Senior Advisor.

153.   On May 12, 2017 at TACS, a CWC copyright-protected presentation was made by two CWC Senior Counsel, entitled "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" ("2017 CWC Pre-Existing Big Data Analytics Presentation").

154.   The 2017 CWC Pre-Existing Big Data Analytics Presentation was drafted exclusively for and on behalf of EEAC (now CWC) with the understanding that EEAC (now CWC) would retain the full ownership and the copyright of the 2017 CWC Pre-Existing Big Data Analytics Presentation and any subsequent versions.

155.   As the copyright owner for the 2017 CWC Pre-Existing Big Data Analytics Presentation, only EEAC (now CWC) could provide permission for further use of the work.  EEAC (now CWC) retained full copyright ownership in the work.

156.   The Power Point presentation for the 2017 CWC Pre-Existing Big Data Analytics Presentation bears the copyright notice of CWC's predecessor in the footer of the slides.

a.    As an example, as depicted, the presentation slides bear the footer:

COPYRIGHT 2017 EEAC



157.    The presentation of the 2017 EEAC copyright notice confirmed the copyright ownership by EEAC.

158.    CWC holds the copyright registration to the 2017 CWC Pre-Existing Big Data Analytics Presentation:  Copyright Registration No. TX0008882252.

159.    Defendant Chris Gokturk was familiar with the 2017 CWC Pre-Existing Big Data Analytics Presentation.  She attended the 2017 TACS.

160.    Defendant Gokturk received and obtained a copy of the 2017 CWC Pre-Existing Big Data Analytics Presentation bearing the EEAC copyright notice.

54

161.   Defendant Gokturk was aware of the 2017 EEAC copyright notice on the 2017 CWC Pre-Existing Big Data Analytics Presentation.  As a former CWC staff member, Defendant Gokturk was familiar with EEAC and CWC's practice of marking EEAC and CWC materials with copyright notices.

162.   Defendant Gokturk had no role in creating or presenting the 2017 CWC Pre-Existing Big Data Analytics Presentation.

a.   Defendant Gokturk was not an author of the 2017 CWC Pre-Existing Big Data Analytics Presentation.

b.   Defendant Gokturk did not contribute any content to the 2017 CWC Pre-Existing Big Data Analytics Presentation.

163.   CWC never granted permission to Defendant Littler nor Defendant Gokturk to copy the 2017 CWC Pre-Existing Big Data Analytics Presentation, or any portion, variation or derivative work thereof.

a.   CWC never granted permission to Defendant Littler nor Defendant Gokturk to copy or reproduce the 2017 CWC Pre-Existing Big Data Analytics Presentation with any prospective or current Littler clients or third parties or entities.

164.   In 2019, Defendants Littler and Gokturk infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation by copying and reproducing the presentation at Littler including for promotional purposes for the benefit and profit of Littler.

165.   In May 2020, CWC discovered a Littler presentation entitled "Technology in Recruiting and Hiring:  Hidden Legal Risks," dated October 18, 2019 ("October 2019 Infringing

Littler Presentation"), presented by Littler shareholder Charles (Chad) E. Reis, IV, and Littler associate Lillian T. Manning.[33]

166.    A review of the October 2019 Infringing Littler Presentation confirms that several of the presentation slides infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation.

a.    For example, a side-by-side comparison shows the infringement, including entire phrases and sentences have been copied directly from the CWC presentation into the infringing Littler presentation, with trivial at most modifications:

// // //

---

[33] *See* Exhibit K (Littler Presentation:  "Technology in Recruiting and Hiring:  Hidden Legal Risks" (Oct. 18, 2019)).



167.   The October 2019 Infringing Littler Presentation infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation.

57

168.    The footer for most of the slides of the October 2019 Infringing Littler Presentation, including slides with infringed content, bears this designation:

© Littler Mendelson, P.C. | 2019 Proprietary and Confidential

169.    The October 2019 Infringing Littler Presentation infringes content from the 2017 CWC Pre-Existing Big Data Analytics Presentation and presents the content in these slides as "Proprietary and Confidential" to Littler along with a Littler copyright notice.   The Littler presentation falsely represents Littler as the original author of content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation.

170.    Defendant Littler, Defendant Gokturk and Doe Defendants removed the EEAC copyright notice from the 2017 CWC Pre-Existing Big Data Analytics Presentation and substituted the Littler copyright notice on the October 2019 Infringing Littler Presentation.

171.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendant Littler has infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation on other occasions.   For example, a presentation, entitled "Technology in Hiring and Recruiting," was made in August 2019 by Littler shareholder Charles (Chad) E. Reis,[34] and another presentation, entitled, "How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance," was made in May 2019 in Phoenix, Arizona by Defendant Gibbons and Defendant Gokturk,[35] among possibly other presentations.

172.    Defendant Gokturk's acts of infringement of the copyrighted 2017 CWC Pre-Existing Big Data Analytics Presentation were committed willfully under 17 U.S.C. § 504(c)(2).   This same

---

[34] *See* Exhibit L (Littler Bio for Shareholder Charles (Chad) E. Reis), accessible at https://www.littler.com/people/charles-chad-e-reis-iv (viewed on Nov. 9, 2020).
[35] *See* Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

conduct was also committed with the intent to engage in the unlawful activity described in the Complaint.

173.   For example, Defendant Gokturk was required to obtain prior approval before divulging proprietary information to anyone.   Defendant Gokturk was also required to obtain permission before appropriating the proprietary information to any other client, firm, or other entity.

174.   Defendant Gokturk was also prohibited from soliciting, inducing, or attempting to induce any past or current firm clients, or any prospective clients, including CWC.

175.   In 2019, neither Defendant Littler nor Defendant Gokturk sought the prior approval or permission of CWC to divulge and use the 2017 CWC Pre-Existing Big Data Analytics Presentation in (1) the practice areas of Defendants Littler and Gokturk;[36] (2) the business of Littler and legal services provided to prospective and current Littler clients; (3) the areas in which Littler competes with CWC; or (4) for any other purpose.

176.   At no time during her tenure at CWC did Defendant Gokturk contend or claim that she had an ownership interest in the 2017 CWC Pre-Existing Big Data Analytics Presentation.   As noted, Defendant Gokturk had no role in the 2017 CWC Pre-Existing Big Data Analytics Presentation.

177.   By infringing the 2017 CWC Pre-Existing Big Data Analytics Presentation for and on behalf of Defendant Littler, Defendant Gokturk disregarded the copyright notice of EEAC.

178.   By infringing the 2017 CWC Pre-Existing Big Data Analytics Presentation, Defendants Littler and Gokturk falsely represented that Littler was the original author of the content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation.   In fact, in receiving a

---

[36] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

copy of the 2017 CWC Pre-Existing Big Data Analytics Presentation bearing the EEAC copyright notice, she knew and understood that EEAC was the copyright owner of the work.

179.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler and Gokturk have infringed other CWC presentations and materials in the same manner on other occasions.  For example, CWC is informed and believes that former CWC staff members and Defendants Gibbons and Gokturk brought to Defendant Littler other CWC information and materials that were used, copied, reproduced and shared with others at Littler for the benefit and profit of Littler.

## V.    COPYRIGHTED WORKS

180.    CWC is the owner of the copyrights to the works identified in Exhibit B (CWC Copyright Registrations), and each of the works have been duly registered with the United States Copyright Office.

181.    CWC has the exclusive right to, among other things, reproduce, distribute, publicly display, and create derivative works from CWC's Copyright Works.

182.    Exhibit B lists each registered work as follows:  (1) Column 1 providing the claim number, (2) Column 2 providing the title of the work infringed, (3) Column 3 providing the CWC Memorandum Number, if any, for the work infringed, (4) Column 4 providing the date of publication, (5) Column 5 providing the date of registration, (6) Column 6 providing the copyright registration number(s) for the work, (7) Column 7 providing the date on which infringement occurred, or CWC believes infringement to have first occurred, and (8) Column 8 providing the number of times each CWC work was downloaded.

183.    For each work identified in Exhibit B, on or about the date(s) listed on Column 5, CWC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificates of Registration bearing the number(s) listed on Column 6.

## VI.    COUNT 1: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT
### OF WORKS FROM THE CWC MEMBERS-ONLY SITE
#### (Defendants Littler, Gibbons and Does 1-10)

184.    CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-183, as though set forth herein in full.

185.    As alleged above, CWC owns registered copyrights for the CWC Copyrighted Works for each of the Claim Numbers listed in Exhibit B (CWC Copyright Registrations).

186.    Beginning at a time unknown, but at least by November 16, 2018 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10, using the Littler IP reproduced, distributed, displayed, and made derivative works of these works, which were located in the CWC Members-Only Site.

187.    The unauthorized reproduction, distribution, display and creation of a derivative work by Defendants Littler, Gibbons, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act.

188.    Each infringement was done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

189.    Each of these discrete acts constitutes infringement of CWC's copyrights in those works, and CWC alleges willful copyright infringement based on these acts for Claim Numbers 1 to 90 and 92 to 253 listed in Exhibit B (CWC Copyright Registrations).

190.    Each act of infringement occurred using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

191.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendants Littler, Gibbons, and Does 1-10 produced an indeterminate number of infringing derivative works based on one or more of the CWC Copyrighted Works for the Claim Numbers listed

61

in Exhibit B (CWC Copyright Registrations) in client communications or other work product produced for the benefit of Littler.

192.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

193.    The specific acts of copyright infringement alleged in the Complaint have caused and are causing CWC great and incalculable damage.  The scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

194.    The acts of infringement by Defendants Littler, Gibbons, and Does 1-10 were committed "willfully" under 17 U.S.C. § 504(c)(2).

195.    CWC is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), with respect to each applicable work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

196.    The following facts and factors, among others to be proven at trial, are relevant to statutory damages pursuant to 17 U.S.C. § 504(c):

a.    The circumstances of the infringement involve former CWC staff members who were familiar with the proprietary nature of the CWC intellectual property, the manner in which the intellectual property was created, and the restrictions on its use.

b.    The extent and duration of the infringement involves a recurring infringement and of a voluminous amount of CWC material and information over an extended period of time from at least November 2018 through the beginning of March 2020.

      c.     The expenses saved by the Defendants by infringing the CWC material and information.

      d.     The profits and benefits to the Defendants including to promote (1) the practice areas of the Littler Defendants; (2) the business of Littler and legal and related services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

      e.     Multiple misleading or false statements made by the Defendants as part of the copyright infringement as noted above, including but not limited to falsely representing that Defendant Littler was the original author of content copied from CWC.

      f.     The fact that the CWC materials bore copyright notices which were disregarded or removed in creating and using new Littler materials for the use and profit by Littler.

      g.     The fact that Defendant Littler advises employers how to avoid the unlawful conduct that occurred in this case.

      h.     The size, resources and revenues[37] of Defendant Littler as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[38] including the ability to pay damages.[39]

      i.     The need to deter the Defendants and other potential infringers.[40]

197.   CWC is entitled to its actual damages and disgorgement of any profits of the Defendants with respect to each applicable work infringed, as will be proven at trial, under 17 U.S.C. §§ 504(a), 504(b).

---

[37] The National Law Journal reported that Littler had $590,038,000 in gross revenue in 2019. *See* Law.com Littler Firm Profile, https://www.law.com/law-firm-profile/?id=186&name=Littler-Mendelson (viewed Nov. 9, 2020).

[38] *See* note 11 (Littler publications making this statement), *supra*.

[39] *See, e.g., Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004) (in affirming copyright statutory damages, noting "[t]he wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award") (collecting other cases).

[40] *See, e.g., F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 234 (1952) ("[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy.").

198.   Defendants Littler, Gibbons and Does 1-10 had knowledge of the infringing activity. For example, each CWC copyrighted work bore a copyright notice identifying Plaintiff as the owner of the copyright protected work.  The copyright notices were removed or disregarded so the CWC content could be used for the benefit and profit of Defendant Littler including the creation and use of derivative works.

199.   Defendant Gibbons also was familiar with the steps taken by CWC to protect its intellectual property.  Defendant Gibbons had drafted CWC materials that bore these copyright notices.

200.   CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler, Gibbons and Does 1-10 induced, caused or materially contributed to the infringing conduct of another.  For example, once the CWC works were introduced to the Littler infrastructure, platform and resources, the CWC works became available to others either by reproducing, distributing, sharing or making them available to others at Littler.

201.   Defendant Littler facilitated, encouraged and materially contributed to such infringement by continuing to provide its network and the facilities necessary for the recurring and ongoing infringements on the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

202.   Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

203.   CWC is entitled to its costs, including reasonable attorneys' fees, under 17 U.S.C. § 505, where applicable.

204.   The conduct Defendants Littler, Gibbons, and Does 1-10 caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or

measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## VII.   COUNT 2: COMPUTER FRAUD AND ABUSE ACT
## UNDER 18 U.S.C. § 1030(a)(2)(C) OBTAINING INFORMATION FROM THE CWC MEMBERS-ONLY SITE
### (Defendants Littler, Gibbons and Does 1-10)

205.   CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-204, as though set forth herein in full.

206.   During the period from November 16, 2019 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10 intentionally accessed the CWC Members-Only Site, without authorization, or exceeding authorized access, and thereby obtained information from the protected computer in violation of 18 U.S.C. § 1030(a)(2)(C).

207.   Defendants Littler, Gibbons, and Does 1-10 used Littler's robust platform and resources, including the Littler IP address, to access, select, obtain, view, download, retain, print, and use restricted CWC information and copyrighted materials to benefit Defendant Littler directly and indirectly and themselves as a Littler shareholder.  For example, this included using Littler computers, computers systems and the Littler IP address to access without authorization, and exceeding any authorized access, restricted content on the CWC Members-Only Site.

208.   Defendants Littler, Gibbons, and Does 1-10 used the Littler IP address and resources to obtain the information listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address).

209.   As described above, the intentional access, without authorization or exceeding authorized access, included the highly invasive access on March 18, 2020 to CWC's Connect communications platform, which is a highly confidential online community for CWC members.  The

CWC Members did not know that a member of the Littler law firm could view their private and confidential communications on workplace compliance and risk management issues.

210.    Each unauthorized access occurred using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

211.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

212.    Defendant Gibbons was aware that his access to the CWC Members-Only Site was unauthorized.  Defendant Gibbons was aware that (1) only members could access the CWC Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at Defendant Littler; and (3) Defendant Littler as a law firm was ineligible to be a member.

213.    Consequently, Defendant Gibbons asked others to obtain CWC member-restricted information for him.

214.    Defendant Gibbons recognized that asking others to obtain for his and Defendant Littler's benefit CWC member-restricted content may cause "trouble."

215.    Undeterred, Defendant Gibbons sought to use the credentials of another individual who was employed at Company A to obtain restricted content from the CWC Members-Only Site. Defendant Gibbons on multiple occasions made false and misleading statements to obtain the login credentials of the Company A Employee.

216.    CWC's proprietary and other information are stored on the CWC Members-Only Site to make those materials accessible to its members through a password-protected portion of its

website.  The CWC Members-Only Site is a "protected computer," under 18 U.S.C. § 1030(e)(2)(B), in that the computer is used in or affecting interstate or foreign commerce or communication and is connected to the Internet.

217.    As a result, CWC has suffered a "loss", under 18 U.S.C. § 1030(e)(11), which exceeds $5,000 based on reasonable costs including the cost of responding to the offense, investigating the incident, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.  For example, CWC and external resources were committed to respond to the offense, investigate the incident, conduct a damage assessment and restore the system and information.  CWC initiated an internal investigation and engagement of outside resources to determine who was responsible for the unauthorized access to information and materials on the CWC Members-Only Site, and the scope of the information accessed and obtained.

218.    The loss to CWC or more persons during any one-year period aggregating at least $5,000 in value, under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

219.    Pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, CWC is entitled to compensatory damages, injunctive relief or other equitable relief, attorney's fees and costs, where applicable, and all other appropriate relief.

### VIII.   COUNT 3: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(4) COMPUTER FRAUD (Defendants Littler, Gibbons and Does 1-10)

220.    CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-219, as though set forth herein in full.

221.    During the period from November 16, 2019 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10 knowingly and with intent to defraud accessed the CWC Members-Only Site, a protected computer, without authorization, or exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained anything of value, that is the information

reflected in Exhibit A (List of CWC Information Obtained by the Littler IP Address), in violation of 18 U.S.C. § 1030(a)(4).

222.    The intended fraud included during each unauthorized access to the CWC Members-Only Site, Defendants Littler, Gibbons, and Does 1-10 falsely represented that the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site.

223.    The intended fraud included during each unauthorized access to the CWC Members-Only Site, Defendants Littler, Gibbons, and Does 1-10 in using the credentials of the Company A Employee, falsely represented that the Company A employee was accessing the CWC Members-Only Site and concealing the fact that the Defendants were actually making unauthorized access to the CWC Members-Only Site.

224.    The intended fraud included making fraudulent statements to obtain the login credentials of the Company A Employee.

225.    As a result of the fraud, Defendants Littler and Gibbons obtained restricted information from the CWC Members-Only Site which they used to benefit and profit Littler.

226.    The value of the information substantially exceeded $5,000.  For example, the cost of development or production of the information exceeds $5,000.

227.    Defendants Littler and Gibbons recognized the value of the information as they used it in their legal services with clients and other third parties.

228.    Defendants Littler and Gibbons used Littler's robust platform and resources to access, obtain, download, infringe and use restricted CWC information and copyrighted materials to benefit Defendant Littler directly and indirectly and themselves as a Littler shareholder and principal.  For example, this included using Littler computers, computers systems and the Littler IP address.

68

229.     As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

230.     The CWC Members-Only Site is a "protected computer," under 18 U.S.C. § 1030(e)(2)(B), in that the computer is used in or affecting interstate or foreign commerce or communication and is connected to the Internet.

231.     As a result, CWC has suffered a "loss", under 18 U.S.C. § 1030(e)(11), which exceeds $5,000 based on reasonable costs including the cost of responding to the offense, investigating the incident, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.  For example, CWC and external resources were committed to respond to the offense, investigate the incident, conduct a damage assessment and restore the system and information.  CWC initiated an internal investigation and engagement of outside resources to determine who was responsible for the unauthorized access to information and materials on the CWC Members-Only Site, and the scope of the information accessed and obtained.

232.     The loss to CWC or more persons during any one-year period aggregating at least $5,000 in value, under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

233.     Pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., CWC is entitled to compensatory damages, injunctive relief or other equitable relief, attorney's fees and costs, where applicable, and all other appropriate relief.

## IX.     COUNT 4: FRAUD
### (Defendants Littler, Gibbons and Does 1-10)

234.     CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-233, as though set forth herein in full.

235.    During the period from November 16, 2019 through March 18, 2020, for each and every access to the CWC Members-Only Site Defendants Littler, Gibbons, and Does 1-10 intentionally and knowingly, and with the intent to mislead, made false representations of a material fact that (1) the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site; and (2) in using the credentials of the Company A Employee, representing that the Company A employee was accessing the CWC Members-Only Site and concealing the fact that the Defendants were actually making access to the CWC Members-Only Site.

236.    The dates of each fraudulent access to the CWC Members-Only Site are reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address).

237.    The Defendants made these false statements of a material fact for the purpose of accessing, selecting, obtaining, viewing, downloading, retaining, printing, and using information and materials from the CWC Members-Only Site

238.    At the time the false statements of a material fact were made, the Defendants knew them to be false, and did so with the intent to deceive and mislead CWC.

239.    The false representations and concealed facts were material.  Defendants Littler, Gibbons, and Does 1-10 would not have been allowed access to the CWC Members-Only Site had CWC known the true identity since the Defendants were ineligible for CWC membership.

240.    CWC relied on the false representations of a material fact understanding that the access was based on the Company A employee and not on Defendants Littler, Gibbons, and Does 1-10.  CWC understood the credentials were used by a CWC member when in fact the credentials were used by individuals associated with a law firm that was ineligible for CWC membership.

241.    As part of the intent to defraud and intent to mislead, as described above, Defendant Gibbons made fraudulent statements to obtain the login credentials of the Company A Employee.  By

using the credentials of another individual, Defendant Gibbons sought to bypass the restriction that law firms and its shareholders "are not eligible for [CWC] membership"[41] or to access and obtain information and copyright materials from the CWC Members-Only Site.

242.    The fraud by Defendants Littler, Gibbons, and Does 1-10 resulted in damages to CWC as a voluminous amount of CWC's intellectual property and information was misappropriated and obtained by, and used for the benefit and profit of, Defendant Littler.

243.    The Defendants benefitted at the expense of CWC by obtaining, using and the CWC information and materials.  The Defendants were unjustly enriched by obtaining the value of the information, including based on the production costs of CWC to create the content.

244.    The Defendants acted under circumstances amounting to a willful and wanton disregard for CWC's rights.  As noted above, Defendant Gibbons made repeated false statements to obtain the credentials from the Company A employee which he used to access the CWC Members-Only Site.  After obtaining the credentials, he used them repeatedly over seventeen (17) months to fraudulently access, download and/or infringe CWC restricted content which he used to benefit and profit Defendant Littler.  CWC is informed and believes and, based thereon, he reproduced and created derivative works from the CWC materials, used the CWC information and materials in Littler's legal business with Littler clients and others.  As a result of the fraud, Defendants Littler and Gibbons obtained restricted information from the CWC Members-Only Site which they used to benefit and profit Littler.

245.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

---

[41] *See* Exhibit C (CWC Membership Application).

246.     CWC has suffered damages as a direct and proximate result of the misleading and fraudulent statements.

247.     CWC is entitled to recover appropriate damages, interest, costs and attorney's fees, where applicable, from the Defendants.

248.     CWC is entitled to punitive damages against the Defendants to be determined by the jury in its sole discretion.

249.     CWC seeks equitable relief, including disgorgement of profits, as the court deems appropriate.

## X.     COUNT 5: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF THE 2017 CWC PRE-EXISTING BIG DATA ANALYTICS PRESENTATION (Defendants Littler, Gokturk, and Does 1-10)

250.     CWC re-alleges and incorporates by reference paragraphs 1-68, 150-183, as though set forth herein in full.

251.     In 2019, Defendants Littler, Gokturk, and Does 1-10 infringed (including creating derivative works of) the 2017 CWC Pre-Existing Big Data Analytics Presentation, a copyrighted work listed in Exhibit B (CWC Copyright Registrations),[42] attached hereto and incorporated herein.

252.     The unauthorized reproduction, distribution, display and creation of a derivative work by Defendants Littler, Gokturk, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act.

253.     These acts were done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

---

[42] "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252).

254.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendants Littler, Gokturk, and Does 1-10 produced an indeterminate number of infringing derivative works based on one or more of the 2017 CWC Pre-Existing Big Data Analytics Presentation in client communications or other work product produced for the benefit of Littler.  Thus, Defendants Littler, Gokturk, and Does 1-10 have committed and/or are liable for copyright infringement.

255.    Defendants Littler, Gokturk and Does 1-10 had knowledge of the infringing activity. For example, each CWC copyrighted work bore a copyright notice identifying Plaintiff as the owner of the copyright protected work.  The copyright notices were removed or disregarded so the CWC content could be used for the benefit and profit of Defendant Littler including the creation and use of derivative works.

256.    Defendant Gokturk also was familiar with the steps taken by CWC to protect its intellectual property.  Defendant Gokturk had drafted CWC materials that bore these copyright notices.

257.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler, Gokturk and Does 1-10 induced, caused or materially contributed to the infringing conduct of another.  For example, once the CWC works were introduced to the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), the CWC works became available to others either by reproducing, distributing, sharing or making them available to others at Littler.

258.    Defendant Littler facilitated, encouraged and materially contributed to such infringement by continuing to provide its network and the facilities necessary for the recurring and

ongoing infringements on the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

259.    Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

260.    The specific acts of copyright alleged in the Complaint, as well as Defendants Littler, Gokturk, and Does 1-10's entire course of conduct, have caused and are causing CWC great and incalculable damage.  To date, despite CWC's attempt to receive a complete accounting from Littler of any and all potential derivative uses of the works listed in Exhibit B (CWC Copyright Registrations), the scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

261.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

262.    As previously described, Defendants Littler, Gokturk, and Does 1-10's acts of infringement were committed willfully.

263.    CWC is entitled to actual damages and any additional profits of Defendants under 17 U.S.C. § 504(a).

264.    Defendants Littler, Gokturk, and Does 1-10's conduct caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent

injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## XI.   COUNT 6: ALTERATION OR REMOVAL OF
## COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202
### (Defendants Littler, Gokturk, and Does 1-10)

265.   CWC re-alleges and incorporates by reference paragraphs 1-68, 150-183, 250-264, as though set forth herein in full.

266.   The 2017 CWC Pre-Existing Big Data Analytics Presentation contained copyright notices identifying Plaintiff as the owner of the copyright protected presentation.

267.   The inclusion of a copyright notice, including the identity of Plaintiff, constitutes "copyright management information" as defined in 17 U.S.C. § 1202(c).

268.   Defendants Littler, Gokturk, and Does 1-10 without authority of Plaintiff or the law, intentionally removed and/or altered and has caused and induced others to remove and/or alter such copyright management information from Plaintiff's subject works, and has thereafter distributed the improperly modified works, having reasonable grounds to know that such acts will induce, enable, facilitate or conceal an infringement of copyright in violation of 17 U.S.C. § 1202(b)(l) and (3).

269.   Defendants Littler, Gokturk, and Does 1-10's removal or alteration of copyright management information from Plaintiff's subject works, and its subsequent distribution of the improperly modified, works was, and is, willful and intentional, and was, and is, executed with full knowledge of Plaintiff's rights under copyright law, and in disregard of Plaintiff's rights.

270.   As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

271.   Plaintiff is entitled to recover its actual damages suffered as a result of the violation and any profits of Defendants Littler, Gokturk, and Does 1-10 attributable to the violation and not

taken into account in computing actual damages, or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

272.    Plaintiff is entitled to recover costs and attorneys' fees from the Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5).

273.    Defendants Littler, Gokturk, and Does 1-10's violations of 17 U.S.C. §§ 1202(b)(l) and (3) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Plaintiff not fully compensable in monetary damages. Pursuant to 17 U.S.C. § 1203(b)(l), Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants Littler, Gokturk, and Does 1-10 from further such violations.

### XII.    COUNT 7:  VICARIOUS COPYRIGHT INFRINGEMENT OF CWC WORKS (Defendant Littler and Does 1-10)

274.    CWC re-alleges and incorporates by reference all of the foregoing paragraphs, as though set forth herein in full.

275.    As alleged above, CWC owns registered copyrights for the CWC Copyrighted Works for each of the Claim Numbers listed in Exhibit B (CWC Copyright Registrations).

276.    Beginning at a time unknown, but at least by November 16, 2018 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10, using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), reproduced, distributed, displayed, and made derivative works of these works, which were located in the CWC Members-Only Site, and as otherwise described above.   The unauthorized reproduction, distribution, display, and/or creation of a derivative work by Defendants Littler, Gibbons, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act. This conduct constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

277.    The copyright infringement in this case was voluminous, persistent, and extensive, involving different forms of infringement as described above and spanning over 489 days during the period of infringement from November 16, 2018 through March 18, 2020.

278.    Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

279.    Each infringement was done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

280.    Under a claim of vicarious copyright infringement, knowledge of the infringing conduct is not required.[43]  Instead, the focus is on whether the defendant profited directly from the infringement and had the *right* and *ability* to supervise the infringing activity as described in this First Amended Complaint.

281.    Defendant Littler had the right and ability to supervise, control and terminate the voluminous and extensive infringing conduct described in this First Amended Complaint, as further described below, that took place using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), and is liable as a vicarious copyright infringer for the direct infringements described above.

282.    Defendant Littler controls and supervises the day-to-day activities taking place in the Littler law firm and owns and operates the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials) through which each act of the copyright infringement took place in this case for the benefit and profit of Defendant Littler.

---

[43] *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005) (noting the vicarious copyright liability theory "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, *even if the defendant initially lacks knowledge of the infringement*") (emphasis added).

283.    Defendant Littler had a supervisory and controlling relationship over Defendants Gibbons, Gokturk and Does 1-10 concerning the legal and other services they provide on behalf of Littler, as agents and representatives of Litter, and their interactions and communications with current and prospective Littler clients.

284.    For example, Defendant Littler had the right and ability to supervise and control the infringing conduct for the benefit and profit of, Defendant Littler, in the name or on behalf of Defendant Littler or using the resources of Defendant Littler through a variety of means including (1) by hiring, promoting, providing bonuses and determining compensation for its shareholders, associates, attorneys, principals or employees, or other agents; (2) through employment and other agreements with its shareholders, associates, attorneys, principals or employees, or other agents; (3) by providing, permitting, conditioning, restricting or limiting access to the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials); (4) by allowing and blocking access to a particular environment or site for any reason; (5) through financial and staff support to its shareholders, associates, attorneys, principals or employees, or other agents in the performance of their duties and the delivery of legal services to current and prospective clients; (6) through policies that apply to its shareholders, associates, attorneys, principals or employees, or other agents; (7) by establishing parameters for the delivery of Littler services, exercising control over the services consistent with Littler's standards; (8) by providing terms and parameters to generate business and obtain profits for Littler; (9) by establishing processes and procedures to review and approve client invoices and oversee other financial aspects in which Littler manages its business and the provision of legal services; (10) through the ability to discharge, terminate or modify Defendant Littler's relationship with its shareholders, associates, attorneys, principals or employees, or other agents; and (11) through the

ability to monitor and supervise the conduct of its shareholders, associates, attorneys, principals or employees, or other agents in the performance of their duties.

285.    Defendant Littler, self-described as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide," provides employers with legal advice on how to avoid the type of infringement of copyrighted content along with other forms of the misappropriation of intellectual property that occurred in this case.  Defendant Littler also provides legal guidance to employers about the legal risks in hiring employees from competitors.

286.    As described above, Defendant Littler possessed an obvious and direct financial interest in the infringing activity.  The infringement of CWC works was conducted by Defendants Gibbons, Gokturk and Does 1-10 using the name and resources of Defendant Litter, promoting the legal business of Defendant Littler, and billing for legal serves on behalf of Defendant Littler.

287.    Defendant Littler benefitted financially since the availability of the infringing materials was made and used to draw and maintain current or prospective clients.

288.    Defendant Littler billed Littler clients using the infringed CWC works in this case in providing legal and other services.

289.    Defendant Littler derived revenues by using the infringed CWC works in this case in providing legal and other services.

290.    The specific acts of copyright infringement alleged in the Complaint have caused and are causing CWC great and incalculable damage.  The scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

291.    As described above, the acts of infringement by Defendants Littler, Gibbons, and Does 1-10 were committed "willfully" under 17 U.S.C. § 504(c)(2).

292.    CWC is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), with respect to each applicable work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

293.    CWC is entitled to its actual damages and disgorgement of any profits of the Defendants with respect to each applicable work infringed, as will be proven at trial, under 17 U.S.C. §§ 504(a), 504(b).

294.    CWC is entitled to its costs, including reasonable attorneys' fees, under 17 U.S.C. § 505, where applicable.

295.    The conduct Defendants Littler, Gibbons, and Does 1-10 caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## PRAYER FOR RELIEF

WHEREFORE, CWC requests that the Court grant the following relief:

A.    Enter judgment in CWC's favor on each count;

B.    Enter judgment against Defendant Littler that it is has infringed CWC's copyrighted works, violated the Computer Fraud and Abuse Act, engaged in the Alteration or Removal of Copyright Management Information, and engaged in Fraud;

C.    Enter judgment against Defendant Gibbons that he has infringed CWC's copyrighted works, violated the Computer Fraud and Abuse Act, and engaged in Fraud;

D.      Enter judgment against Defendant Gokturk that she has infringed CWC's copyrighted works, and engaged in the Alteration or Removal of Copyright Management Information;

E.      An order for an accounting (1) to identify, recover and return all misappropriated CWC information and material, including but not limited to derivative works, in the possession, custody and control of the Defendants and any third parties that the Defendants provided, reproduced, or shared CWC information and material, (2) of any monetary benefits, and (3) other benefits received by each Defendant as a result of their unlawful acts;

F.      Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, from (i) making any unauthorized access to any CWC protected computer system, (ii) all further unauthorized reproduction of any works published by CWC, display of works published by CWC, and distribution of copies of works published by CWC or preparation of derivative works from works published by CWC, and (iii) assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ii) above; and (b) ordering Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, to permanently delete and destroy any of CWC's copyrighted works within their possession with a signed affidavit certifying completion of such deletion/destruction;

G.      Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, from (i) directly or indirectly continuing to violate 17 U.S.C. §§ 1202(b)(1) and (3), and (ii) assisting, aiding, or abetting any other

person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) above;

H.      Order the impounding of all copies made or derivative works of CWC's copyrights in violation of the exclusive rights of CWC and records documenting the manufacture, sale, or receipt of things involved in any such violation, under 17 U.S.C. § 503(a);

I.      Order the "destruction or other reasonable disposition of all copies" that were "made or used in violation of" CWC's exclusive copyright rights, under 17 U.S.C. § 503(b);

J.      Enter judgment against Defendants and in favor of CWC for compensatory damages;

K.      An award of statutory damages of $1.65 million as a result of Defendants' willful infringement of CWC's copyrighted works;

L.      An award of statutory damages as a result of the Alteration or Removal of Copyright Management Information;

M.      Order the Defendants to file with the Court and serve upon CWC, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which each Defendant has complied with the provisions set forth in Paragraphs F, G, H, and I of this Prayer for Relief;

N.      An award for the costs of this action, including reasonable attorneys' fees, where applicable, pursuant to 17 U.S.C. § 505, 18 U.S.C. § 1030, 17 U.S.C. § 1203, and other applicable laws;

O.      Enter judgment against Defendants and in favor of CWC for pre-judgment and post-judgment interest and costs; and

P.      Any such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims and issues so triable by right to a jury in accordance with Rule 38 of the Federal Rules of Civil Procedure.

Dated:  December 8, 2020

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP
By: _____/s/ Mark L. Krotoski_____
_____/s/ J. Kevin Fee_____
Mark L. Krotoski (*pro hac vice*)
J. Kevin Fee (Virginia Bar. No. 88376)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: +1.202.739.3000
Facsimile:  +1.202.739.3001

Thomas Y. Nolan (*pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone: +1.650.843.4000
Facsimile:  +1.650.843.4001
mark.krotoski@morganlewis.com
kevin.fee@morganlewis.com
thomas.nolan@morganlewis.com

*Attorneys for Plaintiff Center for Workplace Compliance*

83

# Exhibit A

**Exhibit A**
**List of CWC Information Obtained by the Littler IP Address**

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 1 | Connect Platform | N/A | 3/18/2020 |
| 2 | OFCCP Grants Temporary Waiver of Written AAP Requirement for California Wildfire Relief Contracts | 18-246 | 3/18/2020 |
| 3 | EEAC's "AAP Tune-Up" Series:  EEAC's Guide to Reviewing Your EEO-1 Categories | 16-163 | 3/10/2020 |
| 4 | "OFCCP Compliance Primer" Series:  The "Job Group Analysis" | 16-105 | 3/10/2020 |
| 5 | EEO-1 Update: EEOC Gets Court Permission To Close "Component 2" Filing Deadline for 2017-2018 Data, Effective February 14;  2019 Reporting Requirements for "Component 1" Data Remain On Hold Until EEOC Takes Further Action | 20-034 | 3/10/2020 |
| 6 | Factors To Consider When Thinking About Supplementing Applicant Pools With More Diverse Candidates | 12-074 | 3/6/2020 |
| 7 | Practicing Affirmative Action Within the Law — An Employer's Guide To Navigating the Continuously Evolving Legal Environment | 08-095 | 3/6/2020 |
| 8 | Affirmative Action Post- Ricci :  The Impact of the Supreme Court's Reverse Discrimination Ruling in  Ricci v. DeStefano | 09-228 | 3/6/2020 |
| 9 | Winning or Losing a Discrimination Lawsuit Hinges on Whether Parties Meet Their Burden of Proof; EEAC's New Matrix Maps Out the Basics | 05-278 | 3/2/2020 |
| 10 | EEAC's Guide To Preparing an Effective Response to OFCCP Allegations of Systemic Discrimination | 08-075 | 3/2/2020 |
| 11 | Increasing Enforcement Emphasis by OFCCP on Systemic Discrimination Highlights Value of "Mantel-Haenszel" and "Breslow-Day" Tests in Evaluating Selection Patterns | 08-182 | 3/2/2020 |
| 12 | CWC Urges OFCCP To Revise Proposed Procedures for Resolving Alleged "Material" Violations To Make Them Consistent With Title VII Principles | 20-033 | 3/2/2020 |
| 13 | Ruling by Administrative Law Judge in  OFCCP v. Analogic Corp.  Hands Victory to Federal Contractor, Finds Agency Failed To Prove Systemic Compensation Discrimination | 19-074 | 2/28/2020 |
| 14 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Proposed Rule To Revise and Codify Its Procedures for Resolving Alleged "Material" Violations Found During a Compliance Audit | 20-001 | 2/28/2020 |
| 15 | EEAC's Template for Complying With OFCCP's New Section 503/4212 Vendor and Subcontractor Notification Requirement | 14-055 | 2/27/2020 |
| 16 | EEAC's Wide Array of "503/4212" Resource Materials and Compliance Templates | 15-053 | 2/27/2020 |
| 17 | EEAC's Updated Resource Materials and Templates for Complying With OFCCP's Revised "503/4212" Regulations | 15-260 | 2/27/2020 |
| 18 | MEMBER FEEDBACK REQUESTED: CWC's Digest of State Affirmative Action Requirements | 19-226 | 2/27/2020 |
| 19 | MEMBER FEEDBACK REQUESTED: CWC's Digest of State Affirmative Action Requirements | 19-226 | 2/27/2020 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 20 | MEMBER FEEDBACK REQUESTED: CWC's Digest of Local Affirmative Action Requirements | 19-239 | 2/27/2020 |
| 21 | Factors To Consider When Thinking About Supplementing Applicant Pools With More Diverse Candidates | 12-074 | 2/26/2020 |
| ~~22~~ | ~~OFCCP Personnel Update: Director Craig Leen Tapped for New Job by President Trump, Will Continue To Serve Until Senate Confirmation; Appointment of New Career Deputy Director Is Among Other Key Staff Changes~~ | ~~20-039~~ | ~~2/26/2020~~ |
| ~~23~~ | ~~OFCCP Personnel Update: Director Craig Leen Tapped for New Job by President Trump, Will Continue To Serve Until Senate Confirmation; Appointment of New Career Deputy Director Is Among Other Key Staff Changes~~ | ~~20-039~~ | ~~2/26/2020~~ |
| 22~~24~~ | CWC Members-Only Data Services - IPEDS 5:02 PM to 5:26 UTC | N/A | 2/25/2020 |
| 23~~25~~ | EEAC's Updated Guide To Setting — or Resetting — Your Annual AAP Cycle | 14-006 | 2/21/2020 |
| 24~~26~~ | President Obama Issues Executive Order To Increase Minimum Wage for Employees of Federal Contractors and Subcontractors | 14-048 | 2/21/2020 |
| 25~~27~~ | Labor Department Issues Final Rule Raising Minimum Wage on Certain Federal Contracts | 14-205 | 2/21/2020 |
| 26~~28~~ | Federal Contractor Minimum Wage Will Increase From $10.60 to $10.80 an Hour on January 1, 2020 | 19-195 | 2/21/2020 |
| 27~~29~~ | CWC's Quick Reference Guide To Setting – or Resetting – Your Annual AAP Cycle | 20-017 | 2/21/2020 |
| 28~~30~~ | MEMBER FEEDBACK REQUESTED: White House Office of Management and Budget Asking for Public Input on Reform of Federal Agency Adjudicatory Process | 20-037 | 2/21/2020 |
| 29~~31~~ | OFCCP Personnel Update: Director Craig Leen Tapped for New Job by President Trump, Will Continue To Serve Until Senate Confirmation; Appointment of New Career Deputy Director Is Among Other Key Staff Changes | 20-039 | 2/21/2020 |
| 30~~32~~ | OFCCP Continues To Give Contractors Option of Submitting Either "Incoming" or "Outgoing" AAP When Scheduling Letter Is Received Within 30 Days of Annual Update | 14-007 | 2/20/2020 |
| 31~~33~~ | OFCCP Continues To Give Contractors Option of Submitting Either "Incoming" or "Outgoing" AAP When Scheduling Letter Is Received Within 30 Days of Annual Update | 14-007 | 2/20/2020 |
| 32~~34~~ | EEAC's New "OFCCP Desk Audit Submission Checklist" | 15-058 | 2/20/2020 |
| 33~~35~~ | OMB Approves OFCCP's Revised Scheduling Letter and Itemized Listing, Effective for Three Years | 16-131 | 2/20/2020 |
| 34~~36~~ | EEAC's Guide To Handling an OFCCP Notice To Audit a Closed Facility | 16-243 | 2/20/2020 |
| 35~~37~~ | OFCCP Confirms That It Will No Longer Mail Out "Advance Notice" Letters; Forthcoming Audit List Will Be Published Online | 19-035 | 2/20/2020 |
| 36~~38~~ | MEMBER FEEDBACK REQUESTED:  What To Expect During an OFCCP "Compliance Check" | 19-070 | 2/20/2020 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 37~~39~~ | MEMBER FEEDBACK REQUESTED:  OFCCP Seeking Approval To Make Major Changes to Its Compliance Evaluation Scheduling Letters | 19-080 | 2/20/2020 |
| 38~~40~~ | CWC Submits Written Comments to the EEOC Supporting Agency's Announced Intent To Seek Three-Year Extension of EEO-1 Component 1 Data Reporting Without Component 2 Pay Data Collection Provision | 19-238 | 2/19/2020 |
| 39~~41~~ | EEO-1 Update: EEOC Gets Court Permission To Close "Component 2" Filing Deadline for 2017-2018 Data, Effective February 14;  2019 Reporting Requirements for "Component 1" Data Remain On Hold Until EEOC Takes Further Action | 20-034 | 2/19/2020 |
| ~~42~~ | ~~2016 Federal Posting Requirements.docx~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~43~~ | ~~Disability and Veteran AAP Implementation Guide.doc~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~44~~ | ~~Summary of Federal Recordkeeping Obligations.doc~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~45~~ | ~~VETS-4212_Requirements.htm~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~46~~ | ~~2016 Federal Posting Requirements.docx~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~47~~ | ~~Disability and Veteran AAP Implementation Guide.doc~~ | ~~N/A~~ | ~~2/19/2020~~ |
| ~~48~~ | ~~Good Faith Outreach Letter.doc~~ | ~~N/A~~ | ~~2/19/2020~~ |
| 40~~49~~ | EEAC's New "503/4212 Implementation Guide" | 13-219 | 2/13/2020 |
| 41~~50~~ | EEAC's Guide to Complying With the New 503/4212 Requirement to Document Annual Assessment of Outreach Efforts | 14-050 | 2/13/2020 |
| 42~~51~~ | EEAC's Guide to Preparing "Action-Oriented Programs" To Meet OFCCP's AAP Requirements | 15-183 | 2/13/2020 |
| 43~~52~~ | EEAC's Updated Resource Materials and Templates for Complying With OFCCP's Revised "503/4212" Regulations | 15-260 | 2/13/2020 |
| 44~~53~~ | EEAC's "OFCCP Compliance Primer" Series:  Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations | 16-205 | 2/13/2020 |
| 45~~54~~ | EEAC's "AAP Tune-Up" Series:  Reviewing Your Good Faith Efforts | 16-251 | 2/13/2020 |
| 46~~55~~ | Best Practices for Centrally Managing and Tracking "Good Faith Efforts" To Meet OFCCP Requirements | 17-262 | 2/13/2020 |
| 47~~56~~ | MEMBER FEEDBACK REQUESTED: "CWC Reference" Tool Has Been Expanded To Add AAP Requirements for Individuals with Disabilities and Protected Veterans | 18-136 | 2/13/2020 |
| 48~~57~~ | CWC_41_CFR_60-300.htm | N/A | 2/13/2020 |
| ~~58~~ | ~~Physical and Mental Qualifications Review Checklist.doc~~ | ~~N/A~~ | ~~2/12/2020~~ |
| ~~59~~ | ~~Federal Contractor Minimum Wage Notice and Posting Requirements.docx~~ | ~~N/A~~ | ~~2/12/2020~~ |
| ~~60~~ | ~~OFCCP Compliance Primer series - Disability and Veterans AAP Obligations~~ | ~~N/A~~ | ~~2/12/2020~~ |
| ~~61~~ | ~~503-4212_AAP_Requirements.htm~~ | ~~N/A~~ | ~~2/12/2020~~ |

3

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 49~~62~~ | 20-028 | 20-027 | 2/7/2020 |
| 50~~63~~ | MEMBER FEEDBACK REQUESTED: OFCCP Submits Revised "Voluntary Self-ID of Disability Form" (Form CC-305) With Minor Improvements to OMB for Approval; Advises Employers To Use Technically Expired Form For Now | 20-029 | 2/7/2020 |
| 51~~64~~ | MEMBER FEEDBACK REQUESTED: OFCCP Submits Revised "Voluntary Self-ID of Disability Form" (Form CC-305) With Minor Improvements to OMB for Approval; Advises Employers To Use Technically Expired Form For Now | 20-029 | 2/7/2020 |
| 52~~65~~ | Distinguishing "Basic" Versus "Minimum" Qualifications for Purposes of Complying With OFCCP's Internet Applicant Regulation | 08-190 | 1/30/2020 |
| 53~~66~~ | "Pre-Screening" Online Job Seekers Can Help To Reduce Recordkeeping Obligations Under OFCCP's Internet Applicant Rule | 09-015 | 1/30/2020 |
| 54~~67~~ | A Recommended Process for Auditing Your Company's Compliance With OFCCP's Internet Applicant Rule | 10-162 | 1/30/2020 |
| 55~~68~~ | Timing of a Job Seeker's Withdrawal From Consideration Is Relevant for Purposes of Complying With OFCCP's Internet Applicant Rule | 11-195 | 1/30/2020 |
| 56~~69~~ | Atypical Selection Practices and Compliance With OFCCP's Recordkeeping Requirements | 12-196 | 1/30/2020 |
| 57~~70~~ | EEAC's Updated Guide to Responding to OFCCP Requests for Information (RFIs) | 15-083 | 1/30/2020 |
| 58~~71~~ | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 1/30/2020 |
| 59~~72~~ | CWC's Quick Reference Guide To Setting – or Resetting – Your Annual AAP Cycle | 20-017 | 1/30/2020 |
| 60~~73~~ | New Edition!  "EEO Essentials for Recruiters"  Manual — Guidance Provided on OFCCP's New Internet Applicant Regulation | N06-42 | 1/30/2020 |
| 61~~74~~ | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 1/24/2020 |
| 62~~75~~ | EEAC's Guide to OFCCP Notice Posting Requirements | 16-109 | 1/24/2020 |
| 63~~76~~ | MEMBER FEEDBACK REQUESTED:  The Compliance Implications of Job Descriptions, Part V: Auditing Your Job Descriptions | 17-253 | 1/21/2020 |
| 64~~77~~ | CWC Files Comments With OFCCP Asking Agency To Allow Contractors More Flexibility in Complying With Disability Self-Identification Requirements | 19-257 | 1/20/2020 |
| 65~~78~~ | MEMBER FEEDBACK REQUESTED: CWC Asks OFCCP To Allow an Additional 30 Days for Comments on Its Proposed Rule To Revise the Procedures for Resolving Alleged "Material" Violations | 20-014 | 1/20/2020 |
| 66~~79~~ | Compliance Alert: OFCCP's Revised Section 503 Regulations Will Mandate Disability Resurvey of All Current Employees During a Contractor's Next AAP Cycle | 19-048 | 1/17/2020 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 6780 | Disability Self-ID Communications.doc | N/A | 1/17/2020 |
| 6881 | OMB Extends OFCCP's Disability Self-ID Form for Three More Years Without Change; Forms Must Display New Expiration Date Going Forward | 17-023 | 1/16/2020 |
| 6982 | MEMBER FEEDBACK REQUESTED: OFCCP Is Proposing Minor Changes to Its Disability Self-ID Form CC-305, Seeking Comments on Possible Further Improvements | 19-207 | 1/16/2020 |
| 7083 | CWC Files Comments With OFCCP Asking Agency To Allow Contractors More Flexibility in Complying With Disability Self-Identification Requirements | 19-257 | 1/16/2020 |
| 7184 | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 15-249 | 1/13/2020 |
| 7285 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule | 12-148 | 1/13/2020 |
| 7386 | OFCCP Makes Technical Change to Its Prescribed "Pay Transparency" Language | 17-034 | 1/13/2020 |
| 7487 | CWC's Guide to Wisconsin State Contractor Affirmative Action Requirements | 17-204 | 1/9/2020 |
| 7588 | New Settlements Shed More Light on OFCCP's Enforcement Approach to Employment Testing, Minority Subgroup Statistical Analyses | 12-171 | 1/6/2020 |
| 7689 | EEAC's Updated "Internet Applicant" Checklist | 16-063 | 1/6/2020 |
| 7790 | OMB Extends OFCCP's Disability Self-ID Form for Three More Years Without Change; Forms Must Display New Expiration Date Going Forward | 17-023 | 1/6/2020 |
| 7891 | OFCCP Settlement Update: Latest Cases Show Continuing Focus on Compensation and Steering Claims | 17-237 | 1/6/2020 |
| 7992 | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 1/6/2020 |
| 8093 | CWC Files Comments With OFCCP Asking Agency To Allow Contractors More Flexibility in Complying With Disability Self-Identification Requirements | 19-257 | 1/6/2020 |
| 8194 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Proposed Rule To Revise and Codify Its Procedures for Resolving Alleged "Material" Violations Found During a Compliance Audit | 20-001 | 1/3/2020 |
| 8295 | "Must-Pass" FY 2020 Defense Bill Signed by President Trump Contains Federal Contractor "Ban-the-Box" Mandate, 12 Weeks of Paid Parental Leave for Federal Employees | 20-002 | 1/3/2020 |
| 8396 | Federal Trial Court Rules OFCCP Must Turn Over EEO-1 Reports in Response to Freedom of Information Act Request, Concludes Key FOIA Exemption Does Not Apply | 20-003 | 1/3/2020 |
| 8497 | Congress, Trump Administration Reach Agreement on Deal To Fund Government Through September 30, 2020; OFCCP, EEOC, Wage and Hour All Get Spending Increases | 20-004 | 1/3/2020 |
| 8598 | EEAC's Guide to Preparing "Action-Oriented Programs" To Meet OFCCP's AAP Requirements | 15-183 | 1/2/2020 |
| 8699 | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 12/27/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 87~~100~~ | Close to Half the States Now Have Some Form of Voluntary Private Sector "Veterans' Preference" Laws | 15-090 | 12/18/2019 |
| 88~~101~~ | CWC's State and Local Employment Law Round-Up, 2019 Mid-Year Edition | 19-159 | 12/18/2019 |
| 89~~102~~ | EEAC Comments on &#8220;60-2&#8221; Proposal Urge OFCCP To Allow Consolidated and Functional AAPs Rather Than Limiting AAPs to EEO-1 Establishments | 00-118 | 12/5/2019 |
| 90~~103~~ | OFCCP Posts New FAQs on Employer-Employee Relationship To Provide Guidance to Contractors on Who Must Be Included in an AAP | 14-166 | 12/5/2019 |
| 91~~104~~ | OFCCP Posts New FAQs on Employer-Employee Relationship To Provide Guidance to Contractors on Who Must Be Included in an AAP | 14-166 | 12/5/2019 |
| 92~~105~~ | "OFCCP Compliance Primer" Series:  The "Job Group Analysis" | 16-105 | 12/5/2019 |
| 93~~106~~ | OFCCP Publishes New "Back to School" Resources, Including FAQs Offering Guidance on "Campus AAPs" | 19-193 | 12/5/2019 |
| 94~~107~~ | Workforce Demographic Benchmarks (EEO-1) 12:13 to 12:24 UTC | N/A | 12/3/2019 |
| 95~~108~~ | New OFCCP Opinion Letter Says Federal Contractors Can Submit Pay Analysis Groupings for Review and Agency Feedback | 19-152 | 11/27/2019 |
| 96~~109~~ | EEAC's Updated Primer on the Basic Scope of OFCCP Jurisdiction | 14-113 | 11/26/2019 |
| 97~~110~~ | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 11/26/2019 |
| 98~~111~~ | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 11/26/2019 |
| 99~~112~~ | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 11/26/2019 |
| 100~~113~~ | EEAC's "AAP Tune-Up" Series:  Reviewing Your Good Faith Efforts | 16-251 | 11/26/2019 |
| 101~~114~~ | Best Practices for Centrally Managing and Tracking "Good Faith Efforts" To Meet OFCCP Requirements | 17-262 | 11/26/2019 |
| 102~~115~~ | MEMBER FEEDBACK REQUESTED:  CWC's Guide to the Compliance Implications of Campus Recruiting | 18-048 | 11/26/2019 |
| 103~~116~~ | In Newly Released Frequently Asked Questions, OFCCP Reaffirms That VEVRAA Prohibits Employment Discrimination Against Military Spouses | 19-105 | 11/26/2019 |
| 104~~117~~ | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year | 19-161 | 11/26/2019 |
| 105~~118~~ | Union Notification Template.doc | N/A | 11/26/2019 |
| 106~~119~~ | Vendor Notification Template.doc | N/A | 11/26/2019 |
| 107~~120~~ | EO AAP Policy Statement for Vets and Ind with Disabilities Template.doc | N/A | 11/26/2019 |
| 108~~121~~ | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 11/22/2019 |

6

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 109~~122~~ | OFCCP's Increasing Use of Early Resolution Procedures (ERPs) To Settle Enforcement Actions Highlights Program's Pros and Cons | 19-241 | 11/22/2019 |
| 110~~123~~ | MEMBER FEEDBACK REQUESTED: New OFCCP Directive Instructs Compliance Officers To Ask Questions To Determine Whether a Contractor Is Discriminating Against Spouses of Protected Veterans | 19-243 | 11/22/2019 |
| 111~~124~~ | The Compliance Implications of OFCCP's Internet Applicant Rule When Job Seekers Are "Added" or "Referred" to a Job Requisitio | 09-107 | 11/20/2019 |
| 112~~125~~ | What Are the OFCCP Compliance Implications of Making "Atypical" Selection Decisions? | 12-118 | 11/20/2019 |
| 113~~126~~ | Atypical Selection Practices and Compliance With OFCCP's Recordkeeping Requirements | 12-196 | 11/20/2019 |
| 114~~127~~ | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 11/20/2019 |
| 115~~128~~ | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 11/20/2019 |
| 116~~129~~ | The Compliance Implications of Job Descriptions, Part I | 17-063 | 11/20/2019 |
| 117~~130~~ | EEAC's Guide to OFCCP Recordkeeping Implications When Changing ATS or HRMS Platforms | 17-131 | 11/20/2019 |
| 118~~131~~ | MEMBER FEEDBACK REQUESTED:  The Compliance Implications of Job Descriptions, Part V: Auditing Your Job Descriptions | 17-253 | 11/20/2019 |
| 119~~132~~ | MEMBER FEEDBACK REQUESTED:  The Compliance Implications of Job Descriptions, Part V: Auditing Your Job Descriptions | 17-253 | 11/20/2019 |
| 120~~133~~ | Conducting Internal Résumé Database Searches Compliant With OFCCP Recordkeeping Requirements | 12-052 | 11/19/2019 |
| 121~~134~~ | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 11/19/2019 |
| 122~~135~~ | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 11/19/2019 |
| 123~~136~~ | "The Compliance Implications of Job Descriptions," Part II:  15 Things Every Employer Should Consider When Drafting, Implementing, and Auditing Job Qualifications | 17-090 | 11/19/2019 |
| 124~~137~~ | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 11/19/2019 |
| 125~~138~~ | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 11/19/2019 |
| 126~~139~~ | Understanding the Compliance Risks of "1-to-1" Applicant to Hire Ratios | 15-089 | 11/18/2019 |
| 127~~140~~ | Increasing Use of Artificial Intelligence in Employee Selection Practices Serves as Backdrop for New OFCCP FAQs Reminding Contractors of Their Obligations Under the "Uniform Guidelines" | 19-187 | 11/18/2019 |
| 128~~141~~ | CWC's Pointers for Protecting EEO-1 Data From Release Under the Freedom of Information Act | 19-197 | 11/18/2019 |
| 129~~142~~ | MEMBER FEEDBACK REQUESTED: OFCCP Is Proposing Minor Changes to Its Disability Self-ID Form CC-305, Seeking Comments on Possible Further Improvements | 19-207 | 11/18/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 130~~143~~ | President Trump Signs Three New Executive Orders To Further Implement Administration's Regulatory Reform Agenda, With Focus on So-Called Guidance Documents | 19-218 | 11/18/2019 |
| 131~~144~~ | OFCCP Litigation and Settlement Update: Latest Developments Feature Large Financial Settlements, Increase in Early Resolution Procedures (ERP) Settlements | 19-219 | 11/18/2019 |
| 132~~145~~ | MEMBER FEEDBACK REQUESTED: CWC's Digest of State Affirmative Action Requirements | 19-226 | 11/18/2019 |
| 133~~146~~ | EEO-1 "Component 2" Update: Court Denies EEOC's Claim That Data Collection Is Complete, Orders Agency To Keep Filing Portal Open | 19-228 | 11/18/2019 |
| 134~~147~~ | President Trump Revokes Union-Endorsed Obama-Era Executive Order Requiring "Successor" Service Contractors To Retain Predecessor's Employees | 19-231 | 11/18/2019 |
| 135~~148~~ | MEMBER FEEDBACK REQUESTED: OFCCP, Reversing Course, Proposes Rule To Give Up Any Claim of Jurisdiction Over TRICARE Providers | 19-233 | 11/18/2019 |
| 136~~149~~ | OFCCP Posts Supplemental Corporate Scheduling Announcement List Flagging 500 Contractor Establishments for VEVRAA Focused Reviews | 19-237 | 11/18/2019 |
| 137~~150~~ | CWC Submits Written Comments to the EEOC Supporting Agency's Announced Intent To Seek Three-Year Extension of EEO-1 Component 1 Data Reporting Without Component 2 Pay Data Collection Provision | 19-238 | 11/18/2019 |
| 138~~151~~ | EEAC's New "OFCCP Compliance Primer" Series: The "Workforce Analysis" | 16-073 | 11/6/2019 |
| 139~~152~~ | EEAC's Analysis of OFCCP's Final Revised "60-2"; Affirmative Action Program Regulations | 00-210 | 11/5/2019 |
| 140~~153~~ | OFCCP Releases First Substantive Update to Its Federal Contract Compliance Manual (FCCM) in Fifteen Years | 13-169 | 11/5/2019 |
| 141~~154~~ | OFCCP's Revised Compliance Manual Provides Guidance on How Agency Resolves Findings of Noncompliance | 15-139 | 11/5/2019 |
| 142~~155~~ | EEAC's New "OFCCP Compliance Primer" Series: The "Workforce Analysis" | 16-073 | 11/5/2019 |
| 143~~156~~ | Federal Government Issues Final FAR Rule Requiring E-Verify Participation by Covered Federal Contractors | 08-243 | 11/3/2019 |
| 144~~157~~ | USCIS Issues Guidance on Its E-Verify Auditing and Compliance Assistance Procedures, Updates Federal Contractor E-Verify User Manual | 13-011 | 11/3/2019 |
| 145~~158~~ | USCIS Rolls Out Enhancements to E-Verify Program, Unveils Redesigned Website | 18-088 | 11/3/2019 |
| 146~~159~~ | Partial Government Shutdown Enters Third Week; EEOC, Immigration Enforcement Agencies Among Those Affected, and E-Verify Has Been Suspended | 19-005 | 11/3/2019 |
| 147~~160~~ | Atypical Selection Practices and OFCCP's Good Faith Efforts Requirements | 12-167 | 10/29/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 148~~161~~ | Establishing OFCCP-Compliant Recordkeeping Practices for Handling Unsolicited Résumés and Other Uninvited Expressions of Interest | 13-059 | 10/29/2019 |
| 149~~162~~ | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 10/29/2019 |
| 150~~163~~ | EEAC's Updated "Internet Applicant" Checklist | 16-063 | 10/29/2019 |
| 151~~164~~ | Retaining Interview Notes, Drafts, and other Informal Employment Records | 16-097 | 10/29/2019 |
| 152~~165~~ | OFCCP Publishes New "Back to School" Resources, Including FAQs Offering Guidance on "Campus AAPs" | 19-193 | 10/29/2019 |
| ~~166~~ | ~~President Trump Signs Three New Executive Orders To Further Implement Administration's Regulatory Reform Agenda, With Focus on So-Called Guidance Documents~~ | ~~19-218~~ | ~~10/23/2019~~ |
| ~~167~~ | ~~Federal Contractor Minimum Wage Notice and Posting Requirements.docx~~ | ~~N/A~~ | ~~10/23/2019~~ |
| 153~~168~~ | MEMBER FEEDBACK REQUESTED: OFCCP Is Proposing Minor Changes to Its Disability Self-ID Form CC-305, Seeking Comments on Possible Further Improvements | 19-207 | 10/18/2019 |
| 154~~169~~ | OFCCP Launches Expansion of Its "Mega Construction Project Program" | 16-200 | 10/15/2019 |
| 155~~170~~ | OFCCP Extends Written AAP Waivers to Hurricane Maria Relief Contracts; Audit Moratorium for Impacted Establishments Also Extended | 17-206 | 10/15/2019 |
| 156~~171~~ | CWC's Primer on Federal Contractor Obligations Under the McNamara-O'Hara Service Contract Act | 17-264 | 10/15/2019 |
| 157~~172~~ | OFCCP Proposing New "Notification of Construction Contract Award Portal" in Conjunction with Routine Request To Extend Construction Contractor Paperwork Requirements | 18-072 | 10/15/2019 |
| 158~~173~~ | CWC's Comments to OFCCP on Proposed "Compliance Check" Scheduling Letter for Federal Construction Contractors Urge Revisions To Reduce the Burden Imposed | 19-124 | 10/15/2019 |
| 159~~174~~ | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year | 19-161 | 10/15/2019 |
| 160~~175~~ | EEAC's Side-by-Side Analysis of OFCCP's Final Section 503 Disability Regulations | 13-183 | 9/27/2019 |
| 161~~176~~ | EEAC's New "503/4212 Implementation Guide" | 13-219 | 9/27/2019 |
| 162~~177~~ | Fifth and Final Installment of CWC's "Annotated Code of OFCCP's Regulations" — 41 CFR § 60-741, "Affirmative Action And Nondiscrimination Obligations Of Federal Contractors And Subcontractors Regarding Individuals With Disabilities" — Is Now Available on CWC's Website | 17-152 | 9/27/2019 |
| 163~~178~~ | Best Practices for Centrally Managing and Tracking "Good Faith Efforts" To Meet OFCCP Requirements | 17-262 | 9/27/2019 |
| 164~~179~~ | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 9/27/2019 |
| 165~~180~~ | Compliance Alert: OFCCP's Revised Section 503 Regulations Will Mandate Disability Resurvey of All Current Employees During a Contractor's Next AAP Cycle | 19-048 | 9/27/2019 |
| 166~~181~~ | CWC_41_CFR_60-741.htm | N/A | 9/27/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 167182 | Developing and Implementing a Menu of Disposition Codes That Facilitates Compliance With OFCCP's Internet Applicant Rule | 10-053 | 9/26/2019 |
| 168183 | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 9/26/2019 |
| 169184 | EEAC's Updated Guide to OFCCP Corporate Management Compliance Evaluations (CMCEs) | 14-068 | 9/24/2019 |
| 170185 | OFCCP Posts New Set of FAQs on Corporate Management Compliance Evaluation (CMCE) Process, Overhauling Previous Guidance | 14-144 | 9/24/2019 |
| 171186 | Compliance Alert: OFCCP's Revised Section 503 Regulations Will Mandate Disability Resurvey of All Current Employees During a Contractor's Next AAP Cycle | 19-048 | 9/24/2019 |
| 172187 | OFCCP Issues Promised Guidance on Section 503 Focused Reviews in Advance of Posting New Audit Scheduling List | 19-052 | 9/24/2019 |
| 173188 | OFCCP Posts Its New Scheduling List Targeting 3,500 Contractor Entities for Compliance Evaluations; Audits To Begin Mid-May 2019 | 19-065 | 9/24/2019 |
| 174189 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance-Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review | 19-090 | 9/24/2019 |
| 175190 | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year | 19-161 | 9/24/2019 |
| 176191 | EEOC Releases Much-Anticipated File Specifications for "Component 2" Data Upload Filing Option | 19-141 | 9/12/2019 |
| 177192 | 2019 VETS-4212 Filing Season Now Underway; Filing Deadline With DOL-VETS Is September 30 | 19-163 | 9/12/2019 |
| 178193 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members | 19-177 | 9/6/2019 |
| 179194 | President Obama Revokes "Beck" Requirements and Orders Federal Contractors To Inform Employees of Their NLRA Rights | 09-028 | 9/4/2019 |
| 180195 | President Obama Issues Executive Order To Increase Minimum Wage for Employees of Federal Contractors and Subcontractors | 14-048 | 9/4/2019 |
| 181196 | DOL "All Agency" Memo Regarding Interaction of Benefits Under Service Contract Act Suggests Contractor Paid Sick Leave Rule Is Here To Stay for Now | 17-203 | 9/4/2019 |
| 182197 | CWC's Primer on Federal Contractor Obligations Under the McNamara-O'Hara Service Contract Act | 17-264 | 9/4/2019 |
| 183198 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 | 18-187 | 9/4/2019 |
| 184199 | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 | 17-182 | 9/3/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 185~~200~~ | EEOC Posts New Guidance Confirming That Employers Have More Than One Option Regarding EEO-1 Reporting of Employees Who Work at Client Sites | 18-043 | 9/3/2019 |
| 186~~201~~ | EEOC Plans To Open 2018 EEO-1 Filing Season Next Week, Even as What Happens Next Is Up in Air After Federal Court Orders Reinstatement of Expanded Obama-Era Revisions | 19-054 | 9/3/2019 |
| 187~~202~~ | 2018 EEO-1 Filing Season Now Underway for "Component 1" Data; No Decision Yet from EEOC on Whether "Component 2" Pay Data Must Also Be Submitted | 19-059 | 9/3/2019 |
| 188~~203~~ | EEOC Announces Employers Must Submit "Component 2" Pay and Hours- Worked Data for Both 2017 and 2018 on Revised EEO-1 Report by September 30, 2019 | 19-091 | 9/3/2019 |
| 189~~204~~ | Justice Department To Appeal Rulings Ordering EEOC To Collect EEO-1 "Component 2" Pay and Hours-Worked Data; September 30 Reporting Deadline Is Still in Effect | 19-096 | 9/3/2019 |
| 190~~205~~ | DOJ, Business Community File Briefs With D.C. Circuit Arguing Lower Court Erred in Ordering EEO-1 Component 2 Data Reporting; September 30 Deadline for Submitting Component 2 Reports Not Impacted | 19-178 | 9/3/2019 |
| 191~~206~~ | EEAC's Guide to Understanding and Responding to Some of the Most Commonly Requested Reasonable Accommodations | 09-155 | 8/30/2019 |
| 192~~207~~ | EEAC's Model AAP Audit and Reporting System Template | 15-048 | 8/30/2019 |
| 193~~208~~ | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance-Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review | 19-090 | 8/30/2019 |
| 194~~209~~ | Recently Released NLRB "Advice Memos" Address Legality of Workplace Rules Under Federal Labor Law | 19-175 | 8/30/2019 |
| 195~~210~~ | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members | 19-177 | 8/30/2019 |
| 196~~211~~ | CWC_41_CFR_60-741.htm | N/A | 8/30/2019 |
| 197~~212~~ | CWC_41_CFR_60-741.htm | N/A | 8/30/2019 |
| 198~~213~~ | New OFCCP Opinion Letter Says Federal Contractors Can Submit Pay Analysis Groupings for Review and Agency Feedback | 19-152 | 8/27/2019 |
| 199~~214~~ | CWC's Written Comments to OMB Urge Rejection of OFCCP's Burdensome Proposed Changes to "Focused Review" Scheduling Letters | 19-158 | 8/27/2019 |
| 200~~215~~ | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year | 19-161 | 8/27/2019 |
| 201~~216~~ | OFCCP Names Ombud, Marcus Stergio, Who Will Now Design, Implement, and Execute Agency's Previously Announced Ombud Service | 19-167 | 8/27/2019 |
| 202~~217~~ | EEO-1 Component 2 Filing Update: Online Filing Portal Now Updated To Permit Use of Popular Data File Upload | 19-168 | 8/27/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 203218 | Illinois Is First State To Restrict the Use of Artificial Intelligence-Driven Video Interview Systems | 19-172 | 8/27/2019 |
| 204219 | Reviewing Physical and Mental Job Requirements Under OFCCP's Section 503 and Section 4212 Affirmative Action Program Requirements | 13-131 | 8/20/2019 |
| 205220 | EEAC's Checklist for Reviewing Physical and Mental Qualifications Under New Paragraph 22 of OFCCP's Revised Scheduling Letter | 15-025 | 8/20/2019 |
| 206221 | DOL-VETS Officially Launches 2015 Filing Season Featuring New VETS-4212 Report | 15-153 | 8/20/2019 |
| 207222 | MEMBER FEEDBACK REQUESTED:  The Compliance Implications of Job Descriptions, Part V: Auditing Your Job Descriptions | 17-253 | 8/20/2019 |
| 208223 | DOL-VETS Issues Final Rule Implementing New VETS-4212 Report for 2015 Filing Cycle; Rule Contains Positive Changes in Response to EEAC's Comments | 14-193 | 8/17/2019 |
| 209224 | EEAC's "OFCCP Compliance Primer" Series:  Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations | 16-205 | 8/17/2019 |
| 210225 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year | 18-071 | 8/17/2019 |
| 211226 | DOL-VETS Issues Final Rule Implementing New VETS-4212 Report for 2015 Filing Cycle; Rule Contains Positive Changes in Response to EEAC's Comments | 14-193 | 8/16/2019 |
| 212227 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% | 15-079 | 8/16/2019 |
| 213228 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year | 19-064 | 8/16/2019 |
| 214229 | President Trump To Nominate Management Lawyer and Former DOL Top Lawyer Eugene Scalia as Next Secretary of Labor | 19-151 | 8/11/2019 |
| 215230 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations | 14-018 | 7/19/2019 |
| 216231 | Close to Half the States Now Have Some Form of Voluntary Private Sector "Veterans' Preference" Laws | 15-090 | 7/19/2019 |
| 217232 | OFCCP Litigation Watch:  EEOC and OFCCP Enter Into Rare "Joint" Conciliation Agreement with Federal Contractor Asbestos Specialists | 16-126 | 7/19/2019 |
| 218233 | OFCCP's Decision To Begin Publishing Complaint Investigation Financial Settlements Sheds Light on a Little Known Area of Agency Enforcement | 19-034 | 7/19/2019 |
| 219234 | OFCCP's Final Jobs for Veterans Act (JVA) Regulations Respond to Concerns Expressed By EEAC About Potential Burden, Will Give Contractors Welcome Flexibility in Complying | 07-169 | 7/17/2019 |
| 220235 | OFCCP Posts FAQ Announcing That Enforcement of New JVA Self-ID Requirements Will Be Delayed Until JVA Reporting Requirements Are Finalized | 08-001 | 7/17/2019 |
| 221236 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule | 12-148 | 7/17/2019 |
| 222237 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule | 12-148 | 7/17/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 223238 | EEAC's "Executive Summary" of OFCCP's Revised Veterans and Disability Regulations | 14-016 | 7/17/2019 |
| 224239 | EEAC's Model Employment Service Delivery System Notification Template | 14-062 | 7/17/2019 |
| 225240 | EEAC's Updated Guide to Responding to OFCCP Requests for Information (RFIs) | 15-083 | 7/17/2019 |
| 226241 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 7/17/2019 |
| 227242 | EEAC's Guide to OFCCP Compliance Requirements Regarding Job Postings | 16-034 | 7/17/2019 |
| 228243 | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 7/17/2019 |
| 229244 | EEAC's Updated  Affirmative Action Due Diligence Guidelines  for Assessing the AA Compliance of a Potential Acquisition | 15-204 | 7/15/2019 |
| 230245 | MEMBER FEEDBACK REQUESTED: CWC's New Website Offers a Number of Innovative Tools Designed To Help Members Manage Their Workplace Compliance Challenges | 18-106 | 7/15/2019 |
| 231246 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance-Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review | 19-090 | 7/15/2019 |
| 232247 | OFCCP Gets Approval From OMB To Move Forward With Changes to Functional Affirmative Action Program Designed To Increase Contractor Participation | 19-138 | 7/13/2019 |
| 233248 | MEMBER FEEDBACK REQUESTED: OFCCP Scales Back Burdensome Proposed Changes to Its Scheduling Letters, Submits Final Versions to OMB for Formal Approval | 19-140 | 7/12/2019 |
| 234249 | EEAC's Updated Guide to OFCCP Corporate Management Compliance Evaluations (CMCEs) | 14-068 | 7/9/2019 |
| 235250 | OFCCP Posts New Set of FAQs on Corporate Management Compliance Evaluation (CMCE) Process, Overhauling Previous Guidance | 14-144 | 7/9/2019 |
| 236251 | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 7/9/2019 |
| 237252 | Two Recent High-Profile Court Settlements Highlight Potential Cost Exposure Employers Can Face for Alleged Pay Discrimination | 18-092 | 7/9/2019 |
| 238253 | CWC Members Are Sharing Best Practices Via Our Online Collaboration Center, "CWC Connect" | 18-129 | 7/9/2019 |
| 239254 | Sample Sex Race Ethnicity Self-ID Form.doc | N/A | 7/9/2019 |
| 240255 | OFCCP Desk Audit Checklist.doc | N/A | 7/9/2019 |
| 241256 | DOL-VETS Raises Threshold for Filing VETS-4212 Report From $100,000 to $150,000 Effective October 1, 2015 | 16-094 | 7/5/2019 |
| 242257 | EEOC Clarifies Instructions to New EEO-1 Report To Confirm That There Is No Bar to Visual ID of Sex | 16-212 | 7/5/2019 |
| 243258 | 2018 EEO-1 Filing Season Now Underway for "Component 1" Data; No Decision Yet from EEOC on Whether "Component 2" Pay Data Must Also Be Submitted | 19-059 | 7/5/2019 |
| 244259 | CWC's Comments to OFCCP Urge the Agency To Reconsider Burdensome Proposed Scheduling Letter Changes | 19-121 | 6/26/2019 |

13

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 245~~260~~ | CWC's Comments to OFCCP on Proposed "Compliance Check" Scheduling Letter for Federal Construction Contractors Urge Revisions To Reduce the Burden Imposed | 19-124 | 6/26/2019 |
| 246~~261~~ | EEOC Advises Court Overseeing EEO-1 "Component 2" Litigation That Online Filing System May Not Be Fully Operational Until Mid-August, Despite September 30, 2019 Filing Deadline | 19-126 | 6/26/2019 |
| 247~~262~~ | New Memoranda Series: EEAC's Guide to State AAP Requirements; EEAC's Guide to New Jersey State Contractor Affirmative Action Requirements | 17-067 | 6/24/2019 |
| 248~~263~~ | CWC's Guide to Wisconsin State Contractor Affirmative Action Requirements | 17-204 | 6/24/2019 |
| 249~~264~~ | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 6/20/2019 |
| 250~~265~~ | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 6/20/2019 |
| 251~~266~~ | EEAC's "AAP Tune-Up" Series:  Following Up on Mandated Job Listings To Make Sure They Have Been Posted | 16-173 | 6/18/2019 |
| 252~~267~~ | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 6/18/2019 |
| 253~~268~~ | EEAC's "Pay Equity" Legislation Status Report:  A Look at Where We Are Today and What May Be Ahead | 17-132 | 6/12/2019 |
| 254~~269~~ | EEOC Has Stepped Up Its Equal Pay Act Litigation Activity, and Employers Should Take Notice | 17-257 | 6/12/2019 |
| 255~~270~~ | As Expected, House Passes "Paycheck Fairness Act" on Party-Line Vote; Republicans Introduce Alternative Bill | 19-073 | 6/12/2019 |
| 256~~271~~ | CWC's Tips for Collecting EEO-1 "Component 2" Data | 19-116 | 6/12/2019 |
| 257~~272~~ | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 6/11/2019 |
| 258~~273~~ | EEAC Files Comments With OFCCP Requesting Additional Flexibility Regarding Section 503/4212 Compliance Requirements, Including Use of Self-Identification Form CC-305 | 16-215 | 6/11/2019 |
| 259~~274~~ | EEAC Comments to OFCCP re 503 4212 ICR | N/A | 6/11/2019 |
| 260~~275~~ | Financial Reform Law Sets Up New Affirmative Action and Diversity Requirements for Regulated Businesses and Contractors | 10-134 | 6/10/2019 |
| 261~~276~~ | EEAC's Updated Model Equal Employment Opportunity and Affirmative Action Union Notification Template | 14-023 | 6/10/2019 |
| 262~~277~~ | Maine, Washington, and Colorado Join Growing Number of States Barring Employers From Asking Applicants About Salary History | 19-112 | 6/10/2019 |
| 263~~278~~ | CWC's Comments to OMB Support OFCCP's FAAP Program Revisions, Urge Further Improvements | 19-115 | 6/10/2019 |
| 264~~279~~ | CWC's Tips for Collecting EEO-1 "Component 2" Data | 19-116 | 6/10/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 265280 | Final Diversity Standards for Dodd-Frank Regulated Entities Stress Flexibility and Voluntary Compliance | 15-125 | 6/9/2019 |
| 266281 | CWC's Tips for Collecting EEO-1 "Component 2" Data | 19-116 | 6/7/2019 |
| 267282 | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 15-249 | 5/23/2019 |
| 268283 | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 15-249 | 5/23/2019 |
| 269284 | EEAC's Guide to OFCCP Notice Posting Requirements | 16-109 | 5/23/2019 |
| 270285 | EEAC's Updated Digest of State Affirmative Action Requirements | 16-249 | 5/23/2019 |
| 271286 | EEAC's Updated Digest of State Affirmative Action Requirements | 16-249 | 5/23/2019 |
| 272287 | EEAC's Updated Digest of Local Affirmative Action Requirements | 17-004 | 5/23/2019 |
| 273288 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 5/23/2019 |
| 274289 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions | 19-101 | 5/23/2019 |
| 275290 | EEAC's Guide to Complying With the New 503/4212 Requirement to Document Annual Assessment of Outreach Efforts | 14-050 | 5/22/2019 |
| 276291 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 5/22/2019 |
| 277292 | EEAC's "OFCCP Compliance Primer" Series:  Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations | 16-205 | 5/22/2019 |
| 278293 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions | 19-101 | 5/22/2019 |
| 279294 | Referencing EEAC's Guidance As You Prepare To File Your 2007 EEO-1 Forms | 07-134 | 5/13/2019 |
| 280295 | 2018 EEO-1 Filing Season Now Underway for "Component 1" Data; No Decision Yet from EEOC on Whether "Component 2" Pay Data Must Also Be Submitted | 19-059 | 5/13/2019 |
| 281296 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) | 19-093 | 5/10/2019 |
| 282297 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance-Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review | 19-090 | 5/3/2019 |
| 283298 | EEAC's Updated Guide to Responding to OFCCP Requests for Information (RFIs) | 15-083 | 4/24/2019 |
| 284299 | OFCCP Posts New Sample AAP Narratives Reflecting Revised 503/4212 Regulations; Non-Mandatory Items Included | 15-117 | 4/24/2019 |
| 285300 | EEAC's Guide to Preparing "Action-Oriented Programs" To Meet OFCCP's AAP Requirements | 15-183 | 4/24/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 286301 | OFCCP Compliance Template Series:  EEAC's Streamlined Sample AAP Narrative Template for Women and Minorities To Help Facilitate Compliance | 16-246 | 4/24/2019 |
| 287302 | OFCCP Compliance Template Series:  EEAC's Revised and Streamlined Sample AAP Narrative Template for Protected Veterans and Individuals with Disabilities | 17-006 | 4/24/2019 |
| 288303 | Assessing Sex-Based Compensation Discrimination Claims Often Requires Understanding of the Interplay Between Title VII and the Equal Pay Act | 07-049 | 4/23/2019 |
| 289304 | EEAC's Updated Primer on the Basic Scope of OFCCP Jurisdiction | 14-113 | 4/23/2019 |
| 290305 | Labor Department Issues Final Rule Raising Minimum Wage on Certain Federal Contracts | 14-205 | 4/23/2019 |
| 291306 | Valuing Federal Contracts To Determine Whether OFCCP Coverage Applies | 15-007 | 4/23/2019 |
| 292307 | EEAC's Updated Summary of Recordkeeping Requirements Under Federal Fair Employment and Affirmative Action Laws | 15-203 | 4/23/2019 |
| 293308 | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 4/23/2019 |
| 294309 | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 4/23/2019 |
| 295310 | EEAC's Written Comments to DOL on Proposed Paid Sick Leave Regulations Urge Clear Exemption for Covered Contractors That Already Comply | 16-079 | 4/23/2019 |
| 296311 | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31, 2018 | 16-196 | 4/23/2019 |
| 297312 | Labor Department Issues Final Rule Requiring Covered Federal Contractors To Provide Employees With up to 56 Hours of Paid Sick Leave Annually | 16-201 | 4/23/2019 |
| 298313 | OFCCP Jurisdiction Extends to Contracts With "Government Corporations" | 17-087 | 4/23/2019 |
| 299314 | EEAC's EEO-1 Filing Season Update | 17-145 | 4/23/2019 |
| 300315 | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 | 17-182 | 4/23/2019 |
| 301316 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 | 18-187 | 4/23/2019 |
| 302317 | House Labor Committee Approves "Paycheck Fairness Act" on Party-Line Vote; House Passage Likely, But Senate Outlook Is Murky | 19-049 | 4/23/2019 |
| 303318 | MEMBER FEEDBACK REQUESTED:  OFCCP Seeking Approval To Make Major Changes to Its Compliance Evaluation Scheduling Letters | 19-080 | 4/23/2019 |
| 304319 | MEMBER FEEDBACK REQUESTED:  What To Expect During an OFCCP "Compliance Check" | 19-070 | 4/10/2019 |
| 305320 | OFCCP's Revised Compliance Manual Provides Guidance on How Agency Resolves Findings of Noncompliance | 15-139 | 4/9/2019 |
| 306321 | EEAC's Guide to OFCCP's Formal Administrative Enforcement Process | 16-060 | 4/9/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 307~~322~~ | EEAC's Guide to OFCCP Notice Posting Requirements | 16-109 | 4/9/2019 |
| 308~~323~~ | Fine for Failure To Post "EEO is the Law" Poster Increased to $525 | 16-115 | 4/9/2019 |
| 309~~324~~ | 503-4212_AAP_Requirements.htm | N/A | 4/9/2019 |
| 310~~325~~ | 11246_AAP_Requirements.htm | N/A | 4/9/2019 |
| 311~~326~~ | VETS-4212_Requirements.htm | N/A | 4/9/2019 |
| 312~~327~~ | Factors To Consider When Thinking About Supplementing Applicant Pools With More Diverse Candidates | 12-074 | 4/8/2019 |
| 313~~328~~ | Atypical Selection Practices and OFCCP's Good Faith Efforts Requirements | 12-167 | 4/8/2019 |
| 314~~329~~ | D.C. Circuit in Shea v. Kerry Reaffirms "Weber/Johnson" Analytical Framework in Finding That Voluntary Affirmative Action Program Does Not Violate Title VII | 15-166 | 4/8/2019 |
| 315~~330~~ | OFCCP Proposing New "Notification of Construction Contract Award Portal" in Conjunction with Routine Request To Extend Construction Contractor Paperwork Requirements | 18-072 | 4/8/2019 |
| 316~~331~~ | 11246_AAP_Requirements.htm | N/A | 4/8/2019 |
| 317~~332~~ | CWC_41_CFR_60-2.htm | N/A | 4/8/2019 |
| 318~~333~~ | 11246_AAP_Requirements.htm | N/A | 4/8/2019 |
| 319~~334~~ | 503-4212_AAP_Requirements.htm | N/A | 4/8/2019 |
| 320~~335~~ | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 4/4/2019 |
| 321~~336~~ | OFCCP Finalizes New "Pay Secrecy" Rule | 15-187 | 4/1/2019 |
| 322~~337~~ | OFCCP Makes Technical Change to Its Prescribed "Pay Transparency" Language | 17-034 | 4/1/2019 |
| 323~~338~~ | OFCCP Finalizes "Compliance Check" Regulation To Allow Contractors To Opt for Off-Site Records Review | 05-144 | 3/29/2019 |
| 324~~339~~ | OFCCP Litigation Watch:  DOL's Administrative Review Board Issues Final Ruling in Decades-Old NationsBank Litigation, Opening Up Case for Federal Court Review | 16-108 | 3/28/2019 |
| 325~~340~~ | Federal Court in Baker DC Rules That OFCCP Violated Construction Contractor's Constitutional Rights | 18-075 | 3/28/2019 |
| 326~~341~~ | OFCCP Publishes Detailed Methodology for FY 2018 Audit Selection Process, Signaling Agency's Commitment to Greater Transparency Under New Director Ondray Harris | 18-080 | 3/28/2019 |
| 327~~342~~ | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 14-002 | 3/25/2019 |
| 328~~343~~ | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 15-249 | 3/25/2019 |
| 329~~344~~ | This Week's Federal Register Publication of OFCCP's Final Veterans and Disability Rules Officially Triggers Compliance Deadlines | 13-188 | 3/22/2019 |

17

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 330345 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 3/22/2019 |
| 331346 | Update on Recent Actions Taken by Dodd-Frank Law's Offices of Minority and Women Inclusion | 17-043 | 3/19/2019 |
| 332347 | Department of Labor Finalizes New Rule Requiring Federal Contractors To Inform Employees of Their Union Organizing Rights | 10-093 | 3/18/2019 |
| 333348 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 14-155 | 3/18/2019 |
| 334349 | EEAC's Updated Listing of Federal Employment-Related Notice Posting Requirements | 16-146 | 3/18/2019 |
| 335350 | Preparing To Comply With the New Data Collection Analysis Requirements Under OFCCP's Revised Section 503/4212 Regulations | 14-118 | 3/16/2019 |
| 336351 | OFCCP Posts Two New FAQs Providing Additional (and Helpful) Guidance on Agency's Revised Disability and Veteran Regulations | 14-212 | 3/16/2019 |
| 337352 | EEAC's Model AAP Audit and Reporting System Template | 15-048 | 3/16/2019 |
| 338353 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations | 15-170 | 3/16/2019 |
| 339354 | OFCCP Issues Promised Guidance on Section 503 Focused Reviews in Advance of Posting New Audit Scheduling List | 19-052 | 3/16/2019 |
| 340355 | OFCCP Director Craig Leen Provides Update on Latest Agency Developments, Solicits Feedback from Attendees, During Two Separate Sessions at CWC's 2019 Policy Conference | 19-053 | 3/16/2019 |
| 341356 | EEOC Plans To Open 2018 EEO-1 Filing Season Next Week, Even as What Happens Next Is Up in Air After Federal Court Orders Reinstatement of Expanded Obama-Era Revisions | 19-054 | 3/16/2019 |
| 342357 | OFCCP's Final "Internet Applicant" Regulation Establishes Compliance Framework for Federal Contractors' Electronic Recruitment and Selection Practices | 05-227 | 3/8/2019 |
| 343358 | The Compliance Implications of OFCCP's Internet Applicant Rule When Job Seekers Are "Added" or "Referred" to a Job Requisitio | 09-107 | 3/8/2019 |
| 344359 | A Recommended Process for Auditing Your Company's Compliance With OFCCP's Internet Applicant Rule | 10-162 | 3/8/2019 |
| 345360 | Atypical Selection Practices and Compliance With OFCCP's Recordkeeping Requirements | 12-196 | 3/8/2019 |
| 346361 | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 3/8/2019 |
| 347362 | The Importance of Employing Good Recordkeeping Practices in the Talent Acquisition Process | 15-177 | 3/8/2019 |
| 348363 | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 3/8/2019 |
| 349364 | EEAC's Updated "Internet Applicant" Checklist | 16-063 | 3/8/2019 |
| 350365 | "Big Data" Analytics and Its EEO Implications for Employment Practices | 16-257 | 3/8/2019 |
| 351366 | EEAC's Guide to OFCCP Recordkeeping Implications When Changing ATS or HRMS Platforms | 17-131 | 3/8/2019 |

18

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 352~~367~~ | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 3/8/2019 |
| 353~~368~~ | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31, 2018 | 16-196 | 3/6/2019 |
| 354~~369~~ | EEOC Proposes Significant Expansion of EEO-1 Report To Begin Collecting Employee Compensation Data | 16-021 | 3/5/2019 |
| 355~~370~~ | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31, 2018 | 16-196 | 3/5/2019 |
| 356~~371~~ | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 | 17-182 | 3/5/2019 |
| 357~~372~~ | Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report | 17-248 | 3/5/2019 |
| 358~~373~~ | Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report | 17-248 | 3/5/2019 |
| 359~~374~~ | EEAC's Review of Latest OFCCP Settlements Confirms Agency's Aggressive Litigation Enforcement Agenda | 13-224 | 3/4/2019 |
| 360~~375~~ | EEAC's Guide to Complying With the New 503/4212 Requirement to Document Annual Assessment of Outreach Efforts | 14-050 | 3/4/2019 |
| 361~~376~~ | EEAC's Model Template for Demonstrating Assessment of Personnel Processes With Respect to Individuals With Disabilities and Veterans | 14-252 | 3/4/2019 |
| 362~~377~~ | EEAC's Checklist for Reviewing Physical and Mental Qualifications Under New Paragraph 22 of OFCCP's Revised Scheduling Letter | 15-025 | 3/4/2019 |
| 363~~378~~ | OFCCP's Revised Compliance Manual Provides Guidance on How Agency Resolves Findings of Noncompliance | 15-139 | 3/4/2019 |
| 364~~379~~ | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations | 15-170 | 3/4/2019 |
| 365~~380~~ | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 3/4/2019 |
| 366~~381~~ | EEAC's Guide to OFCCP's Formal Administrative Enforcement Process | 16-060 | 3/4/2019 |
| 367~~382~~ | EEAC's Guide to OFCCP's Formal Administrative Enforcement Process | 16-060 | 3/4/2019 |
| 368~~383~~ | Most Recent OFCCP Financial Settlements Continue To Wrap Up Years-Old Audits | 18-168 | 3/4/2019 |
| 369~~384~~ | OFCCP Financial Settlement Update: Focus Continues To Be on Disposal of "Aged" Audits | 18-239 | 3/4/2019 |
| 370~~385~~ | OFCCP's FY 2018 Enforcement Numbers Show Completed Audits Dropped by One-Third From Previous Year | 19-002 | 3/4/2019 |

19

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 371386 | CWC's OFCCP Settlement Update: Recently Posted Cases for First Time Include Complaint Investigation Financial Settlement Agreements | 19-015 | 3/4/2019 |
| 372387 | OFCCP's Decision To Begin Publishing Complaint Investigation Financial Settlements Sheds Light on a Little Known Area of Agency Enforcement | 19-034 | 3/4/2019 |
| 373388 | OFCCP's Forthcoming "CSAL" List Will Include Focused Reviews and Compliance Checks in Addition to Standard Compliance Reviews | 19-045 | 3/4/2019 |
| 374389 | EEAC's Written Comments on OFCCP's Proposed Overhaul of Section 503 Regulations, Contending That Benefits Do Not Outweigh Added Costs, Urge Agency To Work With Us To Craft an Effective Alternative | 12-037 | 3/2/2019 |
| 375390 | OFCCP Issues New Directive Governing Investigation and Analysis of Contractor Compensation Practices; 2006 Compensation Standards No Longer in Effect | 13-040 | 3/2/2019 |
| 376391 | This Week's  Federal Register  Publication of OFCCP's Final Veterans and Disability Rules Officially Triggers Compliance Deadlines | 13-188 | 3/2/2019 |
| 377392 | How Does OFCCP Calculate Remedies for Discrimination? | 15-190 | 3/2/2019 |
| 378393 | Conciliation Agreements Negotiated With OFCCP Have Teeth, and the Agency Has Shown Its Intent To Enforce Them | 19-043 | 3/1/2019 |
| 379394 | EEAC's Analysis of OFCCP's Final Revised "60-2" Affirmative Action Program Regulations | 00-210 | 2/26/2019 |
| 380395 | EEAC's Updated Guide to Responding to OFCCP Requests for Information (RFIs) | 15-083 | 2/26/2019 |
| 381396 | CWC_41_CFR_60-2.htm | N/A | 2/26/2019 |
| 382397 | Understanding the Compliance Risks of "1-to-1" Applicant to Hire Ratios | 15-089 | 2/25/2019 |
| 383398 | EEAC's Guide to OFCCP Compliance Requirements Regarding Job Postings | 16-034 | 2/25/2019 |
| 384399 | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 2/25/2019 |
| 385400 | "OFCCP Compliance Primer" Series:  The "Job Group Analysis" | 16-105 | 2/25/2019 |
| 386401 | CWC's Guide To Assigning Census Occupational Classification Codes (OCCs) To Achieve Reliable Availability Analyses | 17-271 | 2/25/2019 |
| 387402 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 2/25/2019 |
| 388403 | OFCCP Litigation Update: The Latest on the High Profile  Google, Convergys, and Oracle Lawsuits | 19-038 | 2/25/2019 |
| 389404 | New OFCCP Directive Signals Agency's Intent To Implement Voluntary Compliance Program for "High-Performing" Contractors | 19-039 | 2/25/2019 |
| 390405 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 14-155 | 2/21/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 391406 | OFCCP Gets Approval To Use New Scheduling Letter Identifying Contractors for Section 503 "Focused Reviews" | 18-248 | 2/8/2019 |
| 392407 | EEAC's Guide to Minnesota State Contractor Affirmative Action Requirements | 17-119 | 2/7/2019 |
| 393408 | OFCCP Issues Final "Interpretive Standards" for Investigating Systemic Compensation Discrimination | 06-134 | 2/4/2019 |
| 394409 | OFCCP's Final Voluntary "Self-Evaluation Guidelines" for Reviewing Compensation Practices | 06-139 | 2/4/2019 |
| 395410 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations | 14-018 | 2/4/2019 |
| 396411 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations | 14-018 | 2/4/2019 |
| 397412 | OFCCP's Compliance Manual Provides Guidance on What Contractors Can Expect During an Agency Discrimination Investigation | 15-148 | 2/4/2019 |
| 398413 | EEAC's "Federal Compliance Initiative Scorecard" Summarizing Major Employment-Related Regulatory and Policy Actions Undertaken During the Obama Administration | 16-127 | 2/4/2019 |
| 399414 | OMB Approves OFCCP's Revised Complaint Form CC-4 | 17-121 | 2/4/2019 |
| 400415 | CWC's OFCCP Settlement Update: Recently Posted Cases for First Time Include Complaint Investigation Financial Settlement Agreements | 19-015 | 2/4/2019 |
| 401416 | OFCCP's New Directive 2019-02, "Early Resolution Procedures" | 18-252 | 1/23/2019 |
| 402417 | OFCCP Publishes Three New Directives, Formally Rescinding "Active Case Enforcement" Procedures, Establishing New "Early Resolution Procedures," and Inaugurating Informal Opinion Letters | 18-253 | 1/23/2019 |
| 403418 | EEOC Asks for Three-Year Extension of "Uniform Guidelines"; So (One More Time), What Are They and What Do They Require? | 15-021 | 1/15/2019 |
| 404419 | EEAC's Guide on Steps To Take When "Top-Line" Impact Ratio Analyses Produce "Hot" Results | 17-112 | 1/15/2019 |
| 405420 | EEAC's Model Template for Demonstrating Assessment of Personnel Processes With Respect to Individuals With Disabilities and Veterans | 14-252 | 1/14/2019 |
| 406421 | EEAC's Model AAP Audit and Reporting System Template | 15-048 | 1/14/2019 |
| 407422 | EEAC's Updated  OFCCP Compliance Evaluation Checklist | 16-083 | 1/14/2019 |
| 408423 | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 1/10/2019 |
| 409424 | CWC's Guide To Assigning Census Occupational Classification Codes (OCCs) To Achieve Reliable Availability Analyses | 17-271 | 1/10/2019 |
| 410425 | EEAC's "AAP Tune-Up" Series:  EEAC's Guide to Reviewing Your EEO-1 Categories | 16-163 | 1/7/2019 |
| 411426 | EEAC's "AAP Tune-Up" Series: Handling Applicant Reasonable Accommodation Requests | 16-191 | 1/7/2019 |

| Number | Title of Information Obtained | Memo. Number | Date Accessed |
|---|---|---|---|
| 412~~427~~ | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 1/7/2019 |
| 413~~428~~ | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year | 18-071 | 12/17/2018 |
| 414~~429~~ | OFCCP Litigation Update: Fate of Two Pending High Profile Cases Currently Rests With DOL's Administrative Review Board | 18-109 | 12/11/2018 |
| 415~~430~~ | OFCCP's Revised Compliance Manual Provides Guidance on How Agency Resolves Findings of Noncompliance | 15-139 | 12/10/2018 |
| 416~~431~~ | EEAC's Guide to Preparing an Effective Response to OFCCP Allegations of Systemic Discrimination | 16-006 | 12/10/2018 |
| 417~~432~~ | EEAC's Guide to OFCCP's Formal Administrative Enforcement Process | 16-060 | 12/10/2018 |
| ~~433~~ | ~~Divided Eleventh Circuit Panel Rules in Gogel v. Kia MotorsThat HR Manager Engaged in Protective Activity by Giving Co-Employee Hame of Plantiff's Lawyer~~ | ~~18-234~~ | ~~11/29/2018~~ |
| 418~~434~~ | Making Downsizing and Promotion Decisions in Light of the Reemployment and Job Retention Rights of Military Personnel Under USERRA | 02-003 | 11/27/2018 |
| 419~~435~~ | Close to Half the States Now Have Some Form of Voluntary Private Sector "Veterans' Preference" Laws | 15-090 | 11/27/2018 |
| 420~~436~~ | OMB Approves OFCCP's Revised Scheduling Letter and Itemized Listing, Effective for Three Years | 16-131 | 11/17/2018 |
| 421~~437~~ | EEAC's Guide To "Closing Out" Your Prior Year's AAP | 14-001 | 11/16/2018 |
| 422~~438~~ | EEAC's Updated Guide To Setting — or Resetting — Your Annual AAP Cycle | 14-006 | 11/16/2018 |
| 423~~439~~ | EEAC's Guide To Performing Mid-Year Monitoring To Enhance AAP Compliance | 16-143 | 11/16/2018 |
| 424~~440~~ | EEAC's "AAP Tune-Up" Series:  EEAC's Guide to Reviewing Your EEO-1 Categories | 16-163 | 11/16/2018 |
| 425~~441~~ | EEAC's "AAP Tune-Up" Series:  Following Up on Mandated Job Listings To Make Sure They Have Been Posted | 16-173 | 11/16/2018 |
| 426~~442~~ | EEAC's "AAP Tune-Up" Series:  Reviewing Your Good Faith Efforts | 16-251 | 11/16/2018 |

# Exhibit B

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 1 | White House Office of Management and Budget Asking for Public Input on Reform of Federal Agency Adjudicatory Process | 20-037 | 2/21/2020 | 4/24/2020 | TX0008868399 | 2/21/2020 | 1 |
| 2 | OFCCP Personnel Update: Director Craig Leen Tapped for New Job by President Trump, Will Continue To Serve Until Senate Confirmation; Appointment of New Career Deputy Director Is Among Other Key Staff Changes | 20-039 | 2/21/2020 | 4/24/2020 | TX0008868394 | 2/21~~26~~/2020 | 1~~3~~ |
| 3 | CWC Urges OFCCP To Revise Proposed Procedures for Resolving Alleged "Material" Violations To Make Them Consistent With Title VII Principles | 20-033 | 2/14/2020 | 4/24/2020 | TX0008868403 | 3/2/2020 | 1 |
| 4 | EEO-1 Update: EEOC Gets Court Permission To Close "Component 2" Filing Deadline for 2017-2018 Data, Effective February 14; 2019 Reporting Requirements for "Component 1" Data Remain On Hold Until EEOC Takes Further Action | 20-034 | 2/14/2020 | 4/24/2020 | TX0008868400 | 2/19/2020 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 5 | MEMBER FEEDBACK REQUESTED: OFCCP Submits Revised "Voluntary Self-ID of Disability Form" (Form CC-305) With Minor Improvements to OMB for Approval; Advises Employers To Use Technically Expired Form For Now | 20-029 | 2/7/2020 | 4/24/2020 | TX0008868407 | 2/7/2020 | 2 |
| 6 | CWC's Quick Reference Guide To Setting – or Resetting – Your Annual AAP Cycle | 20-017 | 1/24/2020 | 4/10/2020 | TX0008861107 | 2/21/2020 | 2 |
| 7 | MEMBER FEEDBACK REQUESTED: CWC Asks OFCCP To Allow an Additional 30 Days for Comments on Its Proposed Rule To Revise the Procedures for Resolving Alleged "Material" Violations | 20-014 | 1/17/2020 | 4/10/2020 | TX0008861104 | 1/20/2020 | 1 |
| 8 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Proposed Rule To Revise and Codify Its Procedures for Resolving Alleged "Material" Violations Found During a Compliance Audit | 20-001 | 1/3/2020 | 3/30/2020 | TX0008858503 | 2/28/2020 | 2 |

2

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 9 | "Must-Pass" FY 2020 Defense Bill Signed by President Trump Contains Federal Contractor "Ban-the-Box" Mandate, 12 Weeks of Paid Parental Leave for Federal Employees | 20-002 | 1/3/2020 | 3/30/2020 | TX0008859306 | 1/3/2020 | 1 |
| 10 | Federal Trial Court Rules OFCCP Must Turn Over EEO-1 Reports in Response to Freedom of Information Act Request, Concludes Key FOIA Exemption Does Not Apply | 20-003 | 1/3/2020 | 3/30/2020 | TX0008858474 | 1/3/2020 | 1 |
| 11 | Congress, Trump Administration Reach Agreement on Deal To Fund Government Through September 30, 2020; OFCCP, EEOC, Wage and Hour All Get Spending Increases | 20-004 | 1/3/2020 | 3/30/2020 | TX0008858463 | 1/3/2020 | 1 |
| 12 | CWC Files Comments With OFCCP Asking Agency To Allow Contractors More Flexibility in Complying With Disability Self-Identification Requirements | 19-257 | 12/13/2019 | 7/28/2020 | TX0008885982 | 1/20/2020 | 3 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 13 | In Newly Released Frequently Asked Questions, OFCCP Reaffirms That VEVRAA Prohibits Employment Discrimination Against Military Spouses | 19-105 | 11/22/2019 | 6/2/2020 | TX0008884866 | 11/26/2019 | 1 |
| 14 | OFCCP's Increasing Use of Early Resolution Procedures (ERPs) To Settle Enforcement Actions Highlights Program's Pros and Cons | 19-241 | 11/22/2019 | 7/24/2020 | TX0008886087 | 11/22/2019 | 1 |
| 15 | MEMBER FEEDBACK REQUESTED: New OFCCP Directive Instructs Compliance Officers To Ask Questions To Determine Whether a Contractor Is Discriminating Against Spouses of Protected Veterans | 19-243 | 11/22/2019 | 7/24/2020 | TX0008886509 | 11/22/2019 | 1 |
| 16 | CWC Submits Written Comments to the EEOC Supporting Agency's Announced Intent To Seek Three-Year Extension of EEO-1 Component 1 Data Reporting Without Component 2 Pay Data Collection Provision | 19-238 | 11/15/2019 | 6/17/2020 | TX0008883367 | 2/19/2020 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 17 | OFCCP Posts Supplemental Corporate Scheduling Announcement List Flagging 500 Contractor Establishments for VEVRAA Focused Reviews | 19-237 | 11/15/2019 | 6/23/2020 | TX0008880986 | 11/18/2019 | 1 |
| 18 | President Trump Revokes Union-Endorsed Obama-Era Executive Order Requiring "Successor" Service Contractors To Retain Predecessor's Employees | 19-231 | 11/8/2019 | 7/24/2020 | TX0008886092 | 11/18/2019 | 1 |
| 19 | MEMBER FEEDBACK REQUESTED: OFCCP, Reversing Course, Proposes Rule To Give Up Any Claim of Jurisdiction Over TRICARE Providers | 19-233 | 11/8/2019 | 7/24/2020 | TX0008886508 | 11/18/2019 | 1 |
| 20 | MEMBER FEEDBACK REQUESTED: CWC's Digest of State Affirmative Action Requirements | 19-226 | 11/1/2019 | 6/17/2020 | TX0008883784 | 2/27/2020 | 3 |
| 21 | EEO-1 "Component 2" Update: Court Denies EEOC's Claim That Data Collection Is Complete, Orders Agency To Keep Filing Portal Open | 19-228 | 11/1/2019 | 6/23/2020 | TX0008880989 | 11/18/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 22 | President Trump Signs Three New Executive Orders To Further Implement Administration's Regulatory Reform Agenda, With Focus on So-Called Guidance Documents | 19-218 | 10/18/2019 | 10/25/2020 | TX0008907971 | 11/18/2019 | 12 |
| 23 | OFCCP Litigation and Settlement Update: Latest Developments Feature Large Financial Settlements, Increase in Early Resolution Procedures (ERP) Settlements | 19-219 | 10/18/2019 | 6/2/2020 | TX0008884733 | 11/18/2019 | 1 |
| 24 | OFCCP Is Proposing Minor Changes to Its Disability Self-ID Form CC-305, Seeking Comments on Possible Further Improvements | 19-207 | 10/11/2019 | 6/2/2020 | TX0008876868 | 1/16/2020 | 3 |
| 25 | CWC's Pointers for Protecting EEO-1 Data From Release Under the Freedom of Information Act | 19-197 | 9/27/2019 | 6/2/2020 | TX0008884869 | 11/18/2019 | 1 |
| 26 | OFCCP Publishes New "Back to School" Resources, Including FAQs Offering Guidance on "Campus AAPs" | 19-193 | 9/20/2019 | 7/28/2020 | TX0008886095 | 12/5/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 27 | Increasing Use of Artificial Intelligence in Employee Selection Practices Serves as Backdrop for New OFCCP FAQs Reminding Contractors of Their Obligations Under the "Uniform Guidelines" | 19-187 | 9/13/2019 | 6/2/2020 | TX0008884868 | 11/18/2019 | 1 |
| 28 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members | 19-177 | 8/30/2019 | 6/2/2020 | TX0008876867 | 9/6/2019 | 2 |
| 29 | DOJ, Business Community File Briefs With D.C. Circuit Arguing Lower Court Erred in Ordering EEO-1 Component 2 Data Reporting; September 30 Deadline for Submitting Component 2 Reports Not Impacted | 19-178 | 8/30/2019 | 10/25/2020 | TX0008907989 | 9/3/2019 | 1 |
| 30 | Recently Released NLRB "Advice Memos" Address Legality of Workplace Rules Under Federal Labor Law | 19-175 | 8/30/2019 | 10/25/2020 | TX0008908223 | 8/30/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 31 | Illinois Is First State To Restrict the Use of Artificial Intelligence-Driven Video Interview Systems | 19-172 | 8/23/2019 | 6/2/2020 | TX0008884731 | 8/27/2019 | 1 |
| 32 | EEO-1 Component 2 Filing Update: Online Filing Portal Now Updated To Permit Use of Popular Data File Upload | 19-168 | 8/16/2019 | 10/25/2020 | TX0008907991 | 8/27/2019 | 1 |
| 33 | OFCCP Names Ombud, Marcus Stergio, Who Will Now Design, Implement, and Execute Agency's Previously Announced Ombud Service | 19-167 | 8/16/2019 | 6/2/2020 | TX0008884732 | 8/27/2019 | 1 |
| 34 | 2019 VETS-4212 Filing Season Now Underway; Filing Deadline With DOL-VETS Is September 30 | 19-163 | 8/9/2019 | 10/25/2020 | TX0008908155 | 9/12/2019 | 1 |
| 35 | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year | 19-161 | 8/9/2019 | 6/2/2020 | TX0008884862 | 11/26/2019 | 4 |
| 36 | CWC's State and Local Employment Law Round-Up, 2019 Mid-Year Edition | 19-159 | 8/9/2019 | 6/17/2020 | TX0008883400 | 12/18/2019 | 1 |
| 37 | CWC's Written Comments to OMB Urge Rejection of OFCCP's Burdensome Proposed Changes to "Focused Review" Scheduling Letters | 19-158 | 8/2/2019 | 10/25/2020 | TX0008908220 | 8/27/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 38 | New OFCCP Opinion Letter Says Federal Contractors Can Submit Pay Analysis Groupings for Review and Agency Feedback | 19-152 | 7/26/2019 | 6/2/2020 | TX0008884865 | 11/27/2019 | 2 |
| 39 | President Trump To Nominate Management Lawyer and Former DOL Top Lawyer Eugene Scalia as Next Secretary of Labor | 19-151 | 7/26/2019 | 10/25/2020 | TX0008908210 | 8/11/2019 | 1 |
| 40 | EEOC Releases Much-Anticipated File Specifications for "Component 2" Data Upload Filing Option | 19-141 | 7/12/2019 | 10/25/2020 | TX0008908128 | 9/12/2019 | 1 |
| 41 | MEMBER FEEDBACK REQUESTED: OFCCP Scales Back Burdensome Proposed Changes to Its Scheduling Letters, Submits Final Versions to OMB for Formal Approval | 19-140 | 7/12/2019 | 10/25/2020 | TX0008908147 | 7/12/2019 | 1 |
| 42 | EEOC Advises Court Overseeing EEO-1 "Component 2" Litigation That Online Filing System May Not Be Fully Operational Until Mid-August, Despite September 30, 2019 Filing Deadline | 19-126 | 6/21/2019 | 10/25/2020 | TX0008908142 | 6/26/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 43 | CWC's Comments to OFCCP on Proposed "Compliance Check" Scheduling Letter for Federal Construction Contractors Urge Revisions To Reduce the Burden Imposed | 19-124 | 6/14/2019 | 6/23/2020 | TX0008881001 | 10/15/2019 | 2 |
| 44 | CWC's Comments to OFCCP Urge the Agency To Reconsider Burdensome Proposed Scheduling Letter Changes | 19-121 | 6/14/2019 | 10/25/2020 | TX0008908226 | 6/26/2019 | 1 |
| 45 | Maine, Washington, and Colorado Join Growing Number of States Barring Employers From Asking Applicants About Salary History | 19-112 | 6/7/2019 | 10/25/2020 | TX0008907963 | 6/10/2019 | 1 |
| 46 | CWC's Comments to OMB Support OFCCP's FAAP Program Revisions, Urge Further Improvements | 19-115 | 6/7/2019 | 10/25/2020 | TX0008908179 | 6/10/2019 | 1 |
| 47 | CWC's Tips for Collecting EEO-1 "Component 2" Data | 19-116 | 6/7/2019 | 6/23/2020 | TX0008881002 | 6/12/2019 | 3 |
| 48 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions | 19-101 | 5/17/2019 | 7/28/2020 | TX0008886068 | 5/23/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 49 | Justice Department To Appeal Rulings Ordering EEOC To Collect EEO-1 "Component 2" Pay and Hours-Worked Data; September 30 Reporting Deadline Is Still in Effect | 19-096 | 5/10/2019 | 10/25/2020 | TX0008908113 | 9/3/2019 | 1 |
| 50 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) | 19-093 | 5/10/2019 | 10/25/2020 | TX0008908217 | 5/10/2019 | 1 |
| 51 | EEOC Announces Employers Must Submit "Component 2" Pay and Hours- Worked Data for Both 2017 and 2018 on Revised EEO-1 Report by September 30, 2019 | 19-091 | 5/3/2019 | 10/25/2020 | TX0008908208 | 9/3/2019 | 1 |
| 52 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance-Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review | 19-090 | 5/3/2019 | 6/17/2020 | TX0008884736 | 9/24/2019 | 4 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 53 | MEMBER FEEDBACK REQUESTED:  OFCCP Seeking Approval To Make Major Changes to Its Compliance Evaluation Scheduling Letters | 19-080 | 4/19/2019 | 7/28/2020 | TX0008885976 | 2/20/2020 | 2 |
| 54 | As Expected, House Passes "Paycheck Fairness Act" on Party-Line Vote; Republicans Introduce Alternative Bill | 19-073 | 4/12/2019 | 10/25/2020 | TX0008908088 | 6/12/2019 | 1 |
| 55 | MEMBER FEEDBACK REQUESTED:  What To Expect During an OFCCP "Compliance Check" | 19-070 | 4/5/2019 | 6/17/2020 | TX0008884789 | 2/20/2020 | 2 |
| 56 | 2018 EEO-1 Filing Season Now Underway for "Component 1" Data; No Decision Yet from EEOC on Whether "Component 2" Pay Data Must Also Be Submitted | 19-059 | 3/22/2019 | 7/28/2020 | TX0008886096 | 9/3/2019 | 3 |
| 57 | EEOC Plans To Open 2018 EEO-1 Filing Season Next Week, Even as What Happens Next Is Up in Air After Federal Court Orders Reinstatement of Expanded Obama-Era Revisions | 19-054 | 3/15/2019 | 6/2/2020 | TX0008884864 | 9/3/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 58 | OFCCP Issues Promised Guidance on Section 503 Focused Reviews in Advance of Posting New Audit Scheduling List | 19-052 | 3/15/2019 | 7/28/2020 | TX0008886073 | 9/24/2019 | 2 |
| 59 | Compliance Alert: OFCCP's Revised Section 503 Regulations Will Mandate Disability Resurvey of All Current Employees During a Contractor's Next AAP Cycle | 19-048 | 3/8/2019 | 7/28/2020 | TX0008886075 | 1/17/2020 | 3 |
| 60 | New OFCCP Directive Signals Agency's Intent To Implement Voluntary Compliance Program for "High-Performing" Contractors | 19-039 | 2/22/2019 | 10/25/2020 | TX0008908082 | 2/25/2019 | 1 |
| 61 | OFCCP Confirms That It Will No Longer Mail Out "Advance Notice" Letters; Forthcoming Audit List Will Be Published Online | 19-035 | 2/15/2019 | 7/28/2020 | TX0008886077 | 2/20/2020 | 1 |
| 62 | OFCCP's Decision To Begin Publishing Complaint Investigation Financial Settlements Sheds Light on a Little Known Area of Agency Enforcement | 19-034 | 2/15/2019 | 7/28/2020 | TX0008886079 | 7/19/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 63 | CWC's OFCCP Settlement Update: Recently Posted Cases for First Time Include Complaint Investigation Financial Settlement Agreements | 19-015 | 1/18/2019 | 7/28/2020 | TX0008886080 | 3/4/2019 | 2 |
| 64 | OFCCP's New Directive 2019-02, "Early Resolution Procedures" | 18-252 | 12/7/2018 | 10/25/2020 | TX0008908079 | 1/23/2019 | 1 |
| 65 | OFCCP Gets Approval To Use New Scheduling Letter Identifying Contractors for Section 503 "Focused Reviews" | 18-248 | 11/30/2018 | 10/25/2020 | TX0008908002 | 2/8/2019 | 1 |
| 66 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 | 18-187 | 9/14/2018 | 7/28/2020 | TX0008885961 | 9/4/2019 | 2 |
| 67 | CWC Reference - VETS-4212 Annual Report from Federal Contractors | N/A | 8/24/2018 | 8/11/2020 | TX0008893320 | 4/9/2019 | 2 |
| 68 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" | 18-162 | 8/10/2018 | 6/23/2020 | TX0008880965 | 11/22/2019 | 5 |
| 69 | CWC Reference - 503/4212 Affirmative Action Program Requirements for Individuals with Disabilities and Disabled Veterans | N/A | 7/6/2018 | 8/12/2020 | TX0008893319 | 4/8/2019 | 3 |

14

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 70 | CWC's Guide to OFCCP Compliance Obligations With Regard to "Temp-to-Perm" Conversions | 18-125 | 6/15/2018 | 6/17/2020 | TX0008882287 | 1/6/2020 | 6 |
| 71 | CWC Reference - EO 11246 Supply and Service (Non-Construction) AAP Requirements for Women and Minorities | N/A | 6/1/2018 | 8/12/2020 | TX0008893346 | 4/8/2019 | 3 |
| 72 | Two Recent High-Profile Court Settlements Highlight Potential Cost Exposure Employers Can Face for Alleged Pay Discrimination | 18-092 | 5/4/2018 | 10/25/2020 | TX0008907997 | 7/9/2019 | 1 |
| 73 | OFCCP Publishes Detailed Methodology for FY 2018 Audit Selection Process, Signaling Agency's Commitment to Greater Transparency Under New Director Ondray Harris | 18-080 | 4/20/2018 | 10/25/2020 | TX0008908168 | 3/28/2019 | 1 |
| 74 | Federal Court in Baker DC Rules That OFCCP Violated Construction Contractor's Constitutional Rights | 18-075 | 4/13/2018 | 10/25/2020 | TX0008907968 | 3/28/2019 | 1 |

15

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 75 | OFCCP Proposing New "Notification of Construction Contract Award Portal" in Conjunction with Routine Request To Extend Construction Contractor Paperwork Requirements | 18-072 | 4/6/2018 | 6/23/2020 | TX0008880985 | 10/15/2019 | 2 |
| 76 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year | 18-071 | 4/6/2018 | 7/28/2020 | TX0008886012 | 8/17/2019 | 2 |
| 77 | EEOC Posts New Guidance Confirming That Employers Have More Than One Option Regarding EEO-1 Reporting of Employees Who Work at Client Sites | 18-043 | 3/2/2018 | 7/28/2020 | TX0008886025 | 9/3/2019 | 1 |
| 78 | CWC's Guide To Assigning Census Occupational Classification Codes (OCCs) To Achieve Reliable Availability Analyses | 17-271 | 12/29/2017 | 6/17/2020 | TX0008883377 | 2/25/2019 | 2 |
| 79 | Best Practices for Centrally Managing and Tracking "Good Faith Efforts" To Meet OFCCP Requirements | 17-262 | 12/15/2017 | 6/23/2020 | TX0008880973 | 2/13/2020 | 3 |
| 80 | CWC's Primer on Federal Contractor Obligations Under the McNamara-O'Hara Service Contract Act | 17-264 | 12/15/2017 | 6/23/2020 | TX0008880982 | 10/15/2019 | 2 |

16

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 81 | MEMBER FEEDBACK REQUESTED: The Compliance Implications of Job Descriptions, Part V: Auditing Your Job Descriptions | 17-253 | 12/1/2017 | 6/17/2020 | TX0008884799 | 1/21/2020 | 4 |
| 82 | Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report | 17-248 | 11/22/2017 | 7/28/2020 | TX0008886055 | 3/5/2019 | 2 |
| 83 | CWC's Guide to Wisconsin State Contractor Affirmative Action Requirements | 17-204 | 9/22/2017 | 6/17/2020 | TX0008883398 | 1/9/2020 | 2 |
| 84 | OFCCP Extends Written AAP Waivers to Hurricane Maria Relief Contracts; Audit Moratorium for Impacted Establishments Also Extended | 17-206 | 9/22/2017 | 6/23/2020 | TX0008881009 | 10/15/2019 | 1 |
| 85 | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 | 17-182 | 9/1/2017 | 7/28/2020 | TX0008886056 | 9/3/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 86 | Fifth and Final Installment of CWC's "Annotated Code of OFCCP's Regulations" — 41 CFR § 60-741, "Affirmative Action And Nondiscrimination Obligations Of Federal Contractors And Subcontractors Regarding Individuals With Disabilities" — Is Now Available on CWC's Website | 17-152 | 7/21/2017 | 6/17/2020 | TX0008884840 | 9/27/2019 | 1 |
| 87 | EEAC's Guide to OFCCP Recordkeeping Implications When Changing ATS or HRMS Platforms | 17-131 | 6/23/2017 | 7/28/2020 | TX0008886003 | 11/20/2019 | 2 |
| 88 | OMB Approves OFCCP's Revised Complaint Form CC-4 | 17-121 | 6/9/2017 | 10/25/2020 | TX0008908137 | 2/4/2019 | 1 |
| 89 | EEAC's Guide to Minnesota State Contractor Affirmative Action Requirements | 17-119 | 6/2/2017 | 6/17/2020 | TX0008883422 | 2/7/2019 | 1 |
| 90 | EEAC's Guide on Steps To Take When "Top-Line" Impact Ratio Analyses Produce "Hot" Results | 17-112 | 5/26/2017 | 6/23/2020 | TX0008880972 | 1/15/2019 | 1 |

18

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 91 | BIG DATA ANALYTICS AND ARTIFICIAL INTELLIGENCE: THE COMPLIANCE AND DIVERSITY IMPLICATIONS OF AUTOMATING EARLY STAGE RECRUITMENT. | N/A | 5/11/2017 | 6/30/2020 | TX0008882252 | 2019 | |
| 92 | "The Compliance Implications of Job Descriptions," Part II: 15 Things Every Employer Should Consider When Drafting, Implementing, and Auditing Job Qualifications | 17-090 | 4/28/2017 | 6/17/2020 | TX0008884818 | 11/19/2019 | 1 |
| 93 | The Compliance Implications of Job Descriptions, Part I | 17-063 | 3/24/2017 | 7/24/2020 | TX0008886352 | 11/20/2019 | 1 |
| 94 | New Memoranda Series: EEAC's Guide to State AAP Requirements; EEAC's Guide to New Jersey State Contractor Affirmative Action Requirements | 17-067 | 3/24/2017 | 7/24/2020 | TX0008886507 | 6/24/2019 | 1 |
| 95 | OFCCP Makes Technical Change to Its Prescribed "Pay Transparency" Language | 17-034 | 2/10/2017 | 10/25/2020 | TX0008886510 | 1/13/2020 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 96 | OMB Extends OFCCP's Disability Self-ID Form for Three More Years Without Change; Forms Must Display New Expiration Date Going Forward | 17-023 | 2/3/2017 | 7/28/2020 | TX0008886334 | 1/16/2020 | 2 |
| 97 | OFCCP Compliance Template Series:  EEAC's Revised and Streamlined Sample AAP Narrative Template for Protected Veterans and Individuals with Disabilities | 17-006 | 1/13/2017 | 6/17/2020 | TX0008884809 | 4/24/2019 | 1 |
| 98 | EEAC's Updated Digest of Local Affirmative Action Requirements | 17-004 | 1/6/2017 | 6/17/2020 | TX0008883430 | 5/23/2019 | 1 |
| 99 | EEAC's "AAP Tune-Up" Series:  Reviewing Your Good Faith Efforts | 16-251 | 12/23/2016 | 6/10/2020 | TX0008878230 | 2/13/2020 | 3 |
| 100 | EEAC's Updated Digest of State Affirmative Action Requirements | 16-249 | 12/16/2016 | 6/17/2020 | TX0008883436 | 5/23/2019 | 2 |
| 101 | EEAC's Guide To Handling an OFCCP Notice To Audit a Closed Facility | 16-243 | 12/9/2016 | 6/17/2020 | TX0008883414 | 2/20/2020 | 1 |
| 102 | EEAC's "AAP Tune-Up" Series:  Ensuring Your "Applicant Dispositions" Work for You | 16-225 | 11/18/2016 | 6/10/2020 | TX0008878403 | 11/26/2019 | 5 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 103 | EEOC Clarifies Instructions to New EEO-1 Report To Confirm That There Is No Bar to Visual ID of Sex | 16-212 | 10/28/2016 | 10/25/2020 | TX0008908165 | 7/5/2019 | 1 |
| 104 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations | 16-205 | 10/21/2016 | 6/17/2020 | TX0008883451 | 2/13/2020 | 3 |
| 105 | OFCCP Launches Expansion of Its "Mega Construction Project Program" | 16-200 | 10/7/2016 | 6/23/2020 | TX0008880980 | 10/15/2019 | 1 |
| 106 | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31, 2018 | 16-196 | 10/7/2016 | 7/28/2020 | TX0008886337 | 4/23/2019 | 3 |
| 107 | EEAC's "AAP Tune-Up" Series:  Following Up on Mandated Job Listings To Make Sure They Have Been Posted | 16-173 | 9/2/2016 | 6/17/2020 | TX0008883448 | 6/18/2019 | 2 |
| 108 | EEAC's "AAP Tune-Up" Series:  EEAC's Guide to Reviewing Your EEO-1 Categories | 16-163 | 8/19/2016 | 6/17/2020 | TX0008883445 | 1/7/2019 | 3 |

21

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 109 | EEAC's Guide To Performing Mid-Year Monitoring To Enhance AAP Compliance | 16-143 | 7/22/2016 | 6/17/2020 | TX0008883418 | 11/16/2018 | 1 |
| 110 | OMB Approves OFCCP's Revised Scheduling Letter and Itemized Listing, Effective for Three Years | 16-131 | 7/8/2016 | 10/25/2020 | TX0008908175 | 2/20/2020 | 2 |
| 111 | EEAC's "Federal Compliance Initiative Scorecard" Summarizing Major Employment-Related Regulatory and Policy Actions Undertaken During the Obama Administration | 16-127 | 6/30/2016 | 6/17/2020 | TX0008883450 | 2/4/2019 | 1 |
| 112 | OFCCP Litigation Watch: EEOC and OFCCP Enter Into Rare "Joint" Conciliation Agreement with Federal Contractor Asbestos Specialists | 16-126 | 6/24/2016 | 10/25/2020 | TX0008908172 | 7/19/2019 | 1 |
| 113 | OFCCP Litigation Watch: DOL's Administrative Review Board Issues Final Ruling in Decades-Old NationsBank Litigation, Opening Up Case for Federal Court Review | 16-108 | 6/3/2016 | 10/25/2020 | TX0008908215 | 3/28/2019 | 1 |
| 114 | EEAC's Guide to OFCCP Notice Posting Requirements | 16-109 | 6/3/2016 | 7/28/2020 | TX0008886340 | 1/24/2020 | 3 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 115 | EEAC's Updated Listing of Federal Employment-Related Notice Posting Requirements | 16-146 | 6/3/2016 | 6/10/2020 | TX0008878337 | 3/18/2019 | 1 |
| 116 | "OFCCP Compliance Primer" Series:  The "Job Group Analysis" | 16-105 | 5/27/2016 | 7/28/2020 | TX0008886341 | 12/5/2019 | 3 |
| 117 | Retaining Interview Notes, Drafts, and other Informal Employment Records | 16-097 | 5/20/2016 | 6/17/2020 | TX0008883779 | 10/29/2019 | 1 |
| 118 | EEAC's New "OFCCP Compliance Primer" Series: The "Workforce Analysis" | 16-073 | 4/15/2016 | 6/17/2020 | TX0008883426 | 11/6/2019 | 2 |
| 119 | EEAC's Updated "Internet Applicant" Checklist | 16-063 | 4/1/2016 | 6/10/2020 | TX0008878306 | 1/6/2020 | 3 |
| 120 | EEAC's Guide to OFCCP's Formal Administrative Enforcement Process | 16-060 | 3/25/2016 | 6/10/2020 | TX0008878275 | 4/9/2019 | 4 |
| 121 | EEAC's New "OFCCP Compliance Guide" for Recruiters | 16-053 | 3/18/2016 | 6/9/2020 | TX0008878253 | 11/26/2019 | 7 |
| 122 | EEAC's Guide to OFCCP Compliance Requirements Regarding Job Postings | 16-034 | 2/19/2016 | 6/10/2020 | TX0008878800 | 7/17/2019 | 2 |
| 123 | EEAC's Guide to Preparing an Effective Response to OFCCP Allegations of Systemic Discrimination | 16-006 | 1/15/2016 | 6/10/2020 | TX0008878794 | 12/10/2018 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 124 | EEAC's Updated Resource Materials and Templates for Complying With OFCCP's Revised "503/4212" Regulations | 15-260 | 12/31/2015 | 6/17/2020 | TX0008883437 | 2/27/2020 | 2 |
| 125 | Understanding the Rules Pertaining to Mandated Invitations to "Self-Identify" | 15-258 | 12/31/2015 | 7/28/2020 | TX0008886345 | 11/20/2019 | 5 |
| 126 | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 15-249 | 12/18/2015 | 6/9/2020 | TX0008878798 | 1/13/2020 | 5 |
| 127 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 15-235 | 11/25/2015 | 6/10/2020 | TX0008878789 | 1/24/2020 | 7 |
| 128 | EEAC's Updated Affirmative Action Due Diligence Guidelines for Assessing the AA Compliance of a Potential Acquisition | 15-204 | 10/16/2015 | 6/10/2020 | TX0008878787 | 7/15/2019 | 1 |
| 129 | EEAC's Updated Summary of Recordkeeping Requirements Under Federal Fair Employment and Affirmative Action Laws | 15-203 | 10/9/2015 | 6/17/2020 | TX0008883438 | 4/23/2019 | 1 |
| 130 | OFCCP Finalizes New "Pay Secrecy" Rule | 15-187 | 9/18/2015 | 6/10/2020 | TX0008878742 | 4/1/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 131 | EEAC's Guide to Preparing "Action-Oriented Programs" To Meet OFCCP's AAP Requirements | 15-183 | 9/11/2015 | 6/10/2020 | TX0008878739 | 1/2/2020 | 3 |
| 132 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations | 15-170 | 8/28/2015 | 6/9/2020 | TX0008878799 | 3/16/2019 | 2 |
| 133 | EEAC's Guide to Maintaining OFCCP-Compliant Records Where Contractor Engages in "Passive" Recruiting Practices | 15-164 | 8/21/2015 | 6/17/2020 | TX0008883421 | 1/30/2020 | 5 |
| 134 | D.C. Circuit in  Shea v. Kerry  Reaffirms "Weber/Johnson"  Analytical Framework in Finding That Voluntary Affirmative Action Program Does Not Violate Title VII | 15-166 | 8/21/2015 | 6/23/2020 | TX0008881004 | 4/8/2019 | 1 |
| 135 | DOL-VETS Officially Launches 2015 Filing Season Featuring New VETS-4212 Report | 15-153 | 8/7/2015 | 10/25/2020 | TX0008908177 | 8/20/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 136 | OFCCP's Revised Compliance Manual Provides Guidance on How Agency Resolves Findings of Noncompliance | 15-139 | 7/17/2015 | 6/9/2020 | TX0008878736 | 11/5/2019 | 4 |
| 137 | EEAC Comments on "60-2" Proposal Urge OFCCP To Allow Consolidated and Functional AAPs Rather Than Limiting AAPs to EEO-1 Establishments | 00-118 | 7/7/2000 | 10/29/2020 | TX0008909977 | 6/16/2020 | 1 |
| 138 | Making Downsizing and Promotion Decisions in Light of the Reemployment and Job Retention Rights of Military Personnel Under USERRA | 02-003 | 1/4/2002 | 10/29/2020 | TX0008909971 | 11/27/2018 | 1 |
| 139 | OFCCP Finalizes "Compliance Check" Regulation To Allow Contractors To Opt for Off-Site Records Review | 05-144 | 7/1/2005 | 10/29/2020 | TX0008909899 | 3/29/2019 | 1 |
| 140 | OFCCP's Final "Internet Applicant" Regulation Establishes Compliance Framework for Federal Contractors' Electronic Recruitment and Selection Practices | 05-227 | 10/14/2005 | 10/29/2020 | TX0008909873 | 3/8/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 141 | OFCCP Issues Final "Interpretive Standards" for Investigating Systemic Compensation Discrimination | 06-134 | 6/23/2006 | 10/29/2020 | TX0008909901 | 2/4/2019 | 1 |
| 142 | Assessing Sex-Based Compensation Discrimination Claims Often Requires Understanding of the Interplay Between Title VII and the Equal Pay Act | 07-049 | 3/9/2007 | 10/29/2020 | TX0008909967 | 4/23/2019 | 1 |
| 143 | Referencing EEAC's Guidance As You Prepare To File Your 2007 EEO-1 Forms | 07-134 | 6/22/2007 | 10/29/2020 | TX0008909954 | 5/13/2019 | 1 |
| 144 | OFCCP Posts FAQ Announcing That Enforcement of New JVA Self-ID Requirements Will Be Delayed Until JVA Reporting Requirements Are Finalized | 08-001 | 1/4/2008 | 10/29/2020 | TX0008909942 | 7/17/2019 | 1 |
| 145 | Distinguishing "Basic" Versus "Minimum" Qualifications for Purposes of Complying With OFCCP's Internet Applicant Regulation | 08-190 | 9/12/2008 | 10/29/2020 | TX0008909936 | 1/30/2020 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 146 | "Pre-Screening" Online Job Seekers Can Help To Reduce Recordkeeping Obligations Under OFCCP's Internet Applicant Rule | 09-015 | 1/16/2009 | 10/29/2020 | TX0008909929 | 1/30/2020 | 1 |
| 147 | President Obama Revokes "Beck" Requirements and Orders Federal Contractors To Inform Employees of Their NLRA Rights | 09-028 | 2/6/2009 | 10/29/2020 | TX0008909924 | 9/4/2019 | 1 |
| 148 | Conducting Internal Resume Database Searches Compliant With OFCCP Recordkeeping Requirements | 12-052 | 3/16/2012 | 10/29/2020 | TX0008909904 | 11/19/2019 | 1 |
| 149 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule | 12-148 | 8/3/2012 | 10/29/2020 | TX0008909909 | 7/17/2019 | 3 |
| 150 | New Settlements Shed More Light on OFCCP's Enforcement Approach to Employment Testing, Minority Subgroup Statistical Analyses | 12-171 | 9/7/2012 | 10/29/2020 | TX0008909908 | 1/6/2020 | 1 |
| 151 | USCIS Issues Guidance on Its E-Verify Auditing and Compliance Assistance Procedures, Updates Federal Contractor E-Verify User Manual | 13-011 | 1/18/2013 | 10/29/2020 | TX0008909907 | 11/3/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 152 | OFCCP Issues New Directive Governing Investigation and Analysis of Contractor Compensation Practices; 2006 Compensation Standards No Longer in Effect | 13-040 | 3/1/2013 | 10/29/2020 | TX0008909865 | 3/2/2019 | 1 |
| 153 | Establishing OFCCP-Compliant Recordkeeping Practices for Handling Unsolicited Resumes and Other Uninvited Expressions of Interest | 13-059 | 3/22/2013 | 10/29/2020 | TX0008909864 | 10/29/2019 | 1 |
| 154 | Reviewing Physical and Mental Job Requirements Under OFCCP's Section 503 and Section 4212 Affirmative Action Program Requirements | 13-131 | 7/3/2013 | 10/29/2020 | TX0008909860 | 8/20/2019 | 1 |
| 155 | EEAC's Side-by-Side Analysis of OFCCP's Final Section 503 Disability Regulations | 13-183 | 9/20/2013 | 10/29/2020 | TX0008909980 | 9/27/2019 | 1 |
| 156 | EEAC's Updated Model Equal Employment Opportunity and Affirmative Action Union Notification Template | 14-023 | 1/31/2014 | 10/29/2020 | TX0008909697 | 6/10/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 157 | Preparing To Comply With the New Data Collection Analysis Requirements Under OFCCP's Revised Section 503/4212 Regulations | 14-118 | 6/13/2014 | 10/29/2020 | TX0008909688 | 3/16/2019 | 1 |
| 158 | DOL-VETS Issues Final Rule Implementing New VETS-4212 Report for 2015 Filing Cycle; Rule Contains Positive Changes in Response to EEAC's Comments | 14-193 | 9/26/2014 | 10/29/2020 | TX0008909681 | 8/16/2019 | 2 |
| 159 | OFCCP Posts Two New FAQs Providing Additional (and Helpful) Guidance on Agency's Revised Disability and Veteran Regulations | 14-212 | 10/24/2014 | 10/29/2020 | TX0008909854 | 3/16/2019 | 1 |
| 160 | Valuing Federal Contracts To Determine Whether OFCCP Coverage Applies | 15-007 | 1/9/2015 | 10/29/2020 | TX0008909836 | 4/23/2019 | 1 |
| 161 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% | 15-079 | 4/24/2015 | 10/29/2020 | TX0008909703 | 8/16/2019 | 1 |
| 162 | OFCCP Posts New Sample AAP Narratives Reflecting Revised 503/4212 Regulations; Non-Mandatory Items Included | 15-117 | 6/19/2015 | 10/28/2020 | TX0008909849 | 4/23/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 163 | Final Diversity Standards for Dodd-Frank Regulated Entities Stress Flexibility and Voluntary Compliance | 15-125 | 6/26/2015 | 10/28/2020 | TX0008909699 | 6/9/2019 | 1 |
| 164 | Update on Recent Actions Taken by Dodd-Frank Law's Offices of Minority and Women Inclusion | 17-043 | 2/24/2017 | 10/22/2020 | TX0008909983 | 3/19/2019 | 1 |
| 165 | OFCCP Jurisdiction Extends to Contracts With "Government Corporations" | 17-087 | 4/21/2017 | 10/22/2020 | TX0008909982 | 4/23/2019 | 1 |
| 166 | EEAC's Analysis of OFCCP's Final Revised "60-2" Affirmative Action Program Regulations | 00-210 | 11/17/2000 | 10/27/2020 | TX0008910098 | 2/26/2019 | 2 |
| 167 | OFCCP's Final Voluntary "Self-Evaluation Guidelines" for Reviewing Compensation Practices | 06-139 | 6/30/2006 | 10/29/2020 | TX0008910051 | 2/4/2019 | 1 |
| 168 | EEAC's Guide to Understanding and Responding to Some of the Most Commonly Requested Reasonable Accomodations | 09-155 | 7/31/2009 | 10/27/2020 | TX0008910180 | 8/30/2019 | 1 |
| 169 | Financial Reform Law Sets Up New Affirmative Action and Diversity Requirements for Regulated Businesses and Contractors | 10-134 | 7/23/2010 | 10/29/2020 | TX0008910107 | 6/10/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 170 | A Recommended Process for Auditing Your Company's Compliance With OFCCP's Internet Applicant Rule | 10-162 | 9/2/2010 | 10/27/2020 | TX0008910449 | 1/30/2020 | 2 |
| 171 | Timing of a Job Seeker's Withdrawal From Consideration Is Relevant for Purposes of Complying With OFCCP's Internet Applicant Rule | 11-195 | 10/7/2011 | 10/29/2020 | TX0008910093 | 1/30/2020 | 1 |
| 172 | EEAC's Written Comments on OFCCP's Proposed Overhaul of Section 503 Regulations, Contending That Benefits Do Not Outweigh Added Costs, Urge Agency To Work With Us To Craft an Effective Alternative | 12-037 | 2/24/2012 | 10/29/2020 | TX0008910073 | 3/2/2020 | 1 |
| 173 | Atypical Selection Practices and OFCCP's Good Faith Efforts Requirements | 12-167 | 8/31/2012 | 10/27/2020 | TX0008910171 | 4/8/2019 | 2 |
| 174 | Atypical Selection Practices and Compliance With OFCCP's Recordkeeping Requirements | 12-196 | 10/12/2012 | 10/27/2020 | TX0008910172 | 3/8/2019 | 3 |
| 175 | This Week's Federal Register Publication of OFCCP's Final Veterans and Disability Rules Officially Triggers Compliance Deadlines | 13-188 | 9/27/2013 | 10/29/2020 | TX0008910074 | 3/2/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 176 | EEAC's New "503/4212 Implementation Guide" | 13-219 | 11/8/2013 | 10/29/2020 | TX0008910096 | 2/13/2020 | 2 |
| 177 | EEAC's Review of Latest OFCCP Settlements Confirms Agency's Aggressive Litigation Enforcement Agenda | 13-224 | 11/15/2013 | 10/29/2020 | TX0008910076 | 3/4/2019 | 1 |
| 178 | EEAC's Guide To "Closing Out" Your Prior Year's AAP | 14-001 | 1/3/2014 | 10/27/2020 | TX0008910191 | 11/16/2018 | 1 |
| 179 | EEAC's Updated Model "Equal Opportunity and Affirmative Action Program Policy Statement" Templates | 14-002 | 1/3/2014 | 10/27/2020 | TX0008910238 | 3/25/2019 | 1 |
| 180 | EEAC's Updated Guide To Setting — or Resetting — Your Annual AAP Cycle | 14-006 | 1/10/2014 | 10/27/2020 | TX0008910185 | 11/16/2018 | 2 |
| 181 | OFCCP Continues To Give Contractors Option of Submitting Either "Incoming" or "Outgoing" AAP AAP When Scheduling Letter Is Received Within 30 Days of Annual Update | 14-007 | 1/10/2014 | 10/27/2020 | TX0008910166 | 2/20/2020 | 2 |
| 182 | EEAC's "Executive Summary" of OFCCP's Revised Veterans and Disability Regulations | 14-016 | 1/24/2014 | 10/27/2020 | TX0008910202 | 7/7/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 183 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations | 14-018 | 1/24/2014 | 10/27/2020 | TX0008910164 | 2/4/2019 | 3 |
| 184 | President Obama Issues Executive Order To Increase Minimum Wage for Employees of Federal Contractors and Subcontractors | 14-048 | 3/7/2014 | 10/27/2020 | TX0008910085 | 2/21/2020 | 2 |
| 185 | EEAC's Guide to Complying With the New 503/4212 Requirement to Document Annual Assessment of Outreach Efforts | 14-050 | 3/14/2014 | 10/27/2020 | TX0008910633 | 3/4/2019 | 4 |
| 186 | EEAC's Model Employment Service Delivery System Notification Template | 14-062 | 3/24/2014 | 10/27/2020 | TX0008910640 | 7/17/2019 | 1 |
| 187 | EEAC's Updated Guide to OFCCP Corporate Management Compliance Evaluations (CMCEs) | 14-068 | 4/4/2014 | 10/27/2020 | TX0008910645 | 7/9/2019 | 2 |
| 188 | EEAC's Updated Primer on the Basic Scope of OFCCP Jurisdiction | 14-113 | 6/6/2014 | 10/27/2020 | TX0008910057 | 4/23/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 189 | OFCCP Posts New Set of FAQs on Corporate Management Compliance Evaluation (CMCE) Process, Overhauling Previous Guidance | 14-144 | 7/18/2014 | 10/27/2020 | TX0008910663 | 7/9/2019 | 2 |
| 190 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements | 14-155 | 8/1/2014 | 10/27/2020 | TX0008910713 | 2/21/2019 | 1 |
| 191 | OFCCP Posts New FAQs on Employer-Employee Relationship To Provide Guidance to Contractors on Who Must Be Included in an AAP | 14-166 | 8/15/2014 | 10/27/2020 | TX0008910693 | 12/5/2019 | 2 |
| 192 | Labor Department Issues Final Rule Raising Minimum Wage on Certain Federal Contracts | 14-205 | 10/10/2014 | 10/27/2020 | TX0008910702 | 4/23/2019 | 2 |
| 193 | EEAC's Model Template for Demonstrating Assessment of Personnel Processes With Respect to Individuals With Disabilities and Veterans | 14-252 | 12/19/2014 | 10/27/2020 | TX0008910058 | 1/23/2019 | 2 |
| 194 | EEAC's Checklist for Reviewing Physical and Mental Qualifications Under New Paragraph 22 of OFCCP's Revised Scheduling Letter | 15-025 | 2/6/2015 | 10/27/2020 | TX0008910711 | 8/29/2019 | 2 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 195 | Understanding the Compliance Risks of "1-to-1" Applicant to Hire Ratios | 15-089 | 5/8/2015 | 10/27/2020 | TX0008910141 | 2/25/2019 | 2 |
| 196 | Close to Half the States Now Have Some Form of Voluntary Private Sector "Veterans' Preference Laws | 15-090 | 5/8/2015 | 10/27/2020 | TX0008910129 | 11/16/2018 | 3 |
| 197 | OFCCP's Compliance Manual Provides Guidance on What Contractors Can Expect During an Agency Discrimination Investigation | 15-148 | 7/31/2015 | 10/22/2020 | TX0008910078 | 2/4/2019 | 1 |
| 198 | The Importance of Employing Good Recordkeeping Practices in the Talent Acquisition Process | 15-177 | 9/4/2015 | 10/22/2020 | TX0008910080 | 3/8/2019 | 1 |
| 199 | How Does OFCCP Calculate Remedies for Discrimination? | 15-190 | 9/25/2015 | 10/22/2020 | TX0008910083 | 3/2/2019 | 1 |
| 200 | EEAC's Written Comments to DOL on Proposed Paid Sick Leave Regulations Urge Clear Exemption for Covered Contractors That Already Comply | 16-079 | 4/22/2016 | 10/22/2020 | TX0008910443 | 4/23/2019 | 1 |
| 201 | DOL-VETS Raises Threshold for Filing VETS-4212 Report From $100,000 to $150,000 Effective October 1, 2015 | 16-094 | 5/13/2016 | 10/22/2020 | TX0008910063 | 7/5/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 202 | Fine for Failure To Post "EEO is the Law" Poster Increased to $525 | 16-115 | 6/10/2016 | 10/22/2020 | TX0008910059 | 4/9/2019 | 1 |
| 203 | Labor Department Issues Final Rule Requiring Covered Federal Contractors To Provide Employees With up to 56 Hours of Paid Sick Leave Annually | 16-201 | 10/14/2016 | 10/22/2020 | TX0008910061 | 4/23/2019 | 1 |
| 204 | EEAC Files Comments With OFCCP Requesting Additional Flexibility Regarding Section 503/4212 Compliance Requirements, Including Use of Self-Identification Form CC-305 | 16-215 | 11/4/2016 | 10/22/2020 | TX0008910444 | 6/11/2019 | 1 |
| 205 | "Big Data" Analytics and Its EEO Implications for Employment Practices | 16-257 | 12/30/2016 | 10/22/2020 | TX0008910045 | 3/8/2019 | 1 |
| 206 | EEAC's "Pay Equity" Legislation Status Report: A Look at Where We Are Today and What May Be Ahead | 17-132 | 6/23/2017 | 10/22/2020 | TX0008910047 | 6/12/2019 | 1 |
| 207 | DOL "All Agency" Memo Regarding Interaction of Benefits Under Service Contract Act Suggests Contractor Paid Sick Leave Rule Is Here To Stay for Now | 17-203 | 9/22/2017 | 10/22/2020 | TX0008910683 | 9/4/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 208 | OFCCP Settlement Update: Latest Cases Show Continuing Focus on Compensation and Steering Claims | 17-237 | 11/10/2017 | 10/22/2020 | TX0008910300 | 1/6/2020 | 1 |
| 209 | EEOC Has Stepped Up Its Equal Pay Act Litigation Activity, and Employers Should Take Notice | 17-257 | 12/8/2017 | 10/22/2020 | TX0008910297 | 6/12/2019 | 1 |
| 210 | MEMBER FEEDBACK REQUESTED: CWC's Guide to the Compliance Implications of Campus Recruiting | 18-048 | 3/9/2018 | 10/22/2020 | TX0008910303 | 11/26/2019 | 1 |
| 211 | USCIS Rolls Out Enhancements to E-Verify Program, Unveils Redesigned Website | 18-088 | 4/27/2018 | 10/22/2020 | TX0008910304 | 11/3/2019 | 1 |
| 212 | MEMBER FEEDBACK REQUESTED: CWC's New Website Offers a Number of Innovative Tools Designed To Help Members Manage Their Workplace Compliance Challenges | 18-106 | 5/25/2018 | 10/22/2020 | TX0008910287 | 7/15/2019 | 1 |
| 213 | OFCCP Litigation Update: Fate of Two Pending High Profile Cases Currently Rests With DOL's Administrative Review Board | 18-109 | 5/25/2018 | 10/22/2020 | TX0008910295 | 12/11/2018 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 214 | CWC Members Are Sharing Best Practices Via Our Online Collaboration Center, "CWC Connect" | 18-129 | 6/22/2018 | 10/22/2020 | TX0008910436 | 7/9/2019 | 1 |
| 215 | MEMBER FEEDBACK REQUESTED: "CWC Reference" Tool Has Been Expanded To Add AAP Requirements for Individuals with Disabilities and Protected Veterans | 18-136 | 7/6/2018 | 10/22/2020 | TX0008910280 | 2/13/2020 | 1 |
| 216 | Most Recent OFCCP Financial Settlements Continue To Wrap Up Years-Old Audits | 18-168 | 8/17/2018 | 10/22/2020 | TX0008910292 | 3/4/2019 | 1 |
| 217 | OFCCP Financial Settlement Update: Focus Continues To Be on Disposal of "Aged" Audits | 18-239 | 11/16/2018 | 10/22/2020 | TX0008910285 | 3/4/2019 | 1 |
| 218 | OFCCP Publishes Three New Directives, Formally Rescinding "Active Case Enforcement" Procedures, Establishing New "Early Resolution Procedures," and Inaugurating Informal Opinion Letters | 18-253 | 12/7/2018 | 10/22/2020 | TX0008910447 | 1/23/2019 | 1 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 219 | OFCCP's FY 2018 Enforcement Numbers Show Completed Audits Dropped by One-Third From Previous Year | 19-002 | 1/4/2019 | 10/22/2020 | TX0008910279 | 3/4/2019 | 1 |
| 220 | Partial Government Shutdown Enters Third Week; EEOC, Immigration Enforcement Agencies Among Those Affected, and E-Verify Has Been Suspended | 19-005 | 1/4/2019 | 10/22/2020 | TX0008910581 | 11/3/2019 | 1 |
| 221 | OFCCP Litigation Update: The Latest on the High Profile Google, Convergys, and Oracle Lawsuits | 19-038 | 2/22/2019 | 10/22/2020 | TX0008910277 | 2/25/2019 | 1 |
| 222 | Conciliation Agreements Negotiated With OFCCP Have Teeth, and the Agency Has Shown Its Intent To Enforce Them | 19-043 | 3/1/2019 | 10/22/2020 | TX0008910575 | 3/1/2019 | 1 |
| 223 | OFCCP's Forthcoming "CSAL" List Will Include Focused Reviews and Compliance Checks in Addition to Standard Compliance Reviews | 19-045 | 3/1/2019 | 10/22/2020 | TX0008910253 | 3/4/2019 | 1 |

40

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 224 | House Labor Committee Approves "Paycheck Fairness Act" on Party-Line Vote; House Passage Likely, But Senate Outlook Is Murky | 19-049 | 3/8/2019 | 10/22/2020 | TX0008910263 | 4/23/2019 | 1 |
| 225 | OFCCP Director Craig Leen Provides Update on Latest Agency Developments, Solicits Feedback from Attendees, During Two Separate at CWC's 2019 Policy Conference | 19-053 | 3/15/2019 | 10/22/2020 | TX0008910284 | 3/16/2019 | 1 |
| 226 | OFCCP Posts Its New Scheduling List Targeting 3,500 Contractor Entities for Compliance Evaluations; Audits To Begin Mid-May 2019 | 19-065 | 3/29/2019 | 10/22/2020 | TX0008910470 | 9/24/2019 | 1 |
| 227 | Factors To Consider When Thinking About Supplementing Applicant Pools With More Diverse Candidates | 12-074 | 4/13/2012 | 10/29/2020 | TX0008911912 | 4/8/2019 | 3 |
| 228 | EEAC's New "OFCCP Desk Audit Submission Checklist" | 15-058 | 3/27/2015 | 10/27/2020 | TX0008911917 | 2/20/2020 | 1 |
| 229 | EEAC's Updated Guide to Responding to OFCCP Requests for Information (RFIs) | 15-083 | 5/1/2015 | 10/27/2020 | TX0008911919 | 2/26/2019 | 4 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 230 | What Are the OFCCP Compliance Implications of Making "Atypical" Selection Decisions? | 12-118 | 6/15/2015 | 10/29/2020 | TX0008911973 | 11/20/2019 | 1 |
| 231 | EEAC's Model AAP Audit and Reporting System Template | 15-048 | 3/13/2015 | 10/27/2020 | TX0008912039 | 1/14/2019 | 3 |
| 232 | EEAC's Updated OFCCP Compliance Evaluation Checklist | 16-083 | 4/29/2016 | 10/22/2020 | TX0008912041 | 1/14/2019 | 1 |
| 233 | OFCCP Compliance Template Series: EEAC's Streamlined Sample AAP Narrative Template for Women and Minorities To Help Facilitate Compliance | 16-246 | 12/16/2016 | 10/22/2020 | TX0008911975 | 4/24/2019 | 1 |
| 234 | Winning or Losing a Discrimination Lawsuit Hinges on Whether Parties Meet Their Burden of Proof; EEAC's New Matrix Maps Out the Basics | 05-278 | 12/23/2005 | 11/11/2020 | TX0008912678 | 3/2/2020 | 1 |
| 235 | EEAC's Guide To Preparing an Effective Response to OFCCP Allegations of Systemic Discrimination | 08-075 | 4/11/2008 | 11/11/2020 | TX0008912681 | 3/2/2020 | 2 |

42

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 236 | Increasing Enforcement Emphasis by OFCCP on Systemic Discrimination Highlights Value of "Mantel-Haenszel" and "Breslow-Day" Tests in Evaluating Selection Patterns | 08-182 | 8/29/2008 | 11/11/2020 | TX0008912671 | 3/2/2020 | 1 |
| 237 | Practicing Affirmative Action Within the Law: An Employer's Guide To Navigating the Continuously Evolving Legal Environment | 08-095 | 5/9/2008 | 11/11/2020 | TX0008912687 | 3/6/2020 | 1 |
| 238 | Affirmative Action Post-Ricci: The Impact of the Supreme Court?s Reverse Discrimination Ruling in Ricci v. DeStefano | 09-228 | 11/13/2009 | 11/11/2020 | TX0008912668 | 3/6/2020 | 1 |
| 239 | EEAC?s Template for Complying With OFCCP?s New Section 503/4212 Vendor and Subcontractor Notification Requirement. | 14-055 | 3/21/2014 | 11/11/2020 | TX0008912694 | 2/27/2020 | 1 |
| 240 | EEAC's Wide Array of "503/4212" Resource Materials and Compliance Templates | 15-053 | 3/20/2015 | 11/11/2020 | TX0008912673 | 2/27/2020 | 1 |
| 241 | OFCCP Grants Temporary Waiver of Written AAP Requirement for California Wildfire Relief Contracts. | 18-246 | 11/30/2018 | 11/11/2020 | TX0008912664 | 3/18/2020 | 1 |

43

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 242 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year. | 19-064 | 3/29/2019 | 11/11/2020 | TX0008912653 | 8/16/2019 | 1 |
| 243 | Ruling by Administrative Law Judge in OFCCP v. Analogic Corp. Hands Victory to Federal Contractor, Finds Agency Failed To Prove Systemic Compensation Discrimination | 19-074 | 4/12/2019 | 11/11/2020 | TX0008912651 | 2/28/2020 | 1 |
| 244 | Federal Contractor Minimum Wage Will Increase From $10.60 to $10.80 an Hour on January 1, 2020 | 19-195 | 9/27/2019 | 11/11/2020 | TX0008912658 | 2/21/2020 | 1 |
| 245 | MEMBER FEEDBACK REQUESTED: CWC's Digest of Local Affirmative Action Requirements | 19-239 | 11/22/2019 | 11/11/2020 | TX0008912659 | 2/27/2020 | 1 |
| 246 | EEAC Sample Executive Order 11246 AAP Narrative for Women & Minorities | N/A | 12/16/2016 | 11/19/2020 | TX0008914767 | 4/24/2019 | 1 |
| 247 | OFCCP Desk Audit Submission Checklist | N/A | 3/27/2015 | 11/19/2020 | TX0008914889 | 2/20/2020 | 1 |
| 248 | Model Audit and Reporting System, Prepared in Accordance with 41 C.F.R. 60-2.17(d) | N/A | 3/13/2015 | 11/19/2020 | TX0008914887 | 1/14/2019 | 3 |

**Exhibit B**
**CWC Copyright Registrations**

| Claim Number | Title of Work | Memo. Number | Date of Publication | Date of Registration | Registration Number | Date of First Infringement | Times Downloaded |
|---|---|---|---|---|---|---|---|
| 249 | Model Audit and Reporting System, Prepared in Accordance with 41 C.F.R. 60-300.44(h), 60-741.44(h) | N/A | 3/13/2015 | 11/19/2020 | TX0008914791 | 1/14/2019 | 3 |
| 250 | EEAC'S UPDATED OFCCP COMPLIANCE EVALUATION CHECKLIST | N/A | 4/29/2016 | 11/19/2020 | TX0008914787 | 1/14/2019 | 1 |
| 251 | EEAC's Guide to Responding to OFCCP Requests for Information | N/A | 5/1/2015 | 11/19/2020 | TX0008914784 | 2/26/2019 | 4 |
| 252 | Practicing Affirmative Action Within the Law | N/A | 4/13/2012 | 11/19/2020 | TX0008914774 | 4/8/2019 | 3 |
| 253 | EEO/AA Compliance in Executive Searches | N/A | 2/29/2012 | 11/19/2020 | TX0008914770 | 11/20/2019 | 1 |

# Exhibit C



# MEMBERSHIP APPLICATION
PAGE 1

**SUBMIT ALL REQUIRED INFORMATION TO:**

**SAMANTHA WITTIE,** Manager of Operations and Member Engagement

PHONE:   202.629.5633          Center for Workplace Compliance
EMAIL:   swittie@cwc.org       1501 M Street, NW | Suite 1000
                               Washington, DC 20005

## MEMBERSHIP ELIGIBILITY

CWC is a national non-profit association of employers from all major U.S. industries and economic sectors, including for-profit corporations, non-profit organizations, and educational institutions. Law firms, consulting firms, and other organizations providing workplace legal and compliance services are not eligible for CWC membership.

CWC membership is organizational, meaning that all of a member employer's HR generalists and discipline specialists (compensation, talent acquisition, compliance, EEO/AA, diversity and inclusion, training and development, etc.), labor and employment attorneys, and other staff can be registered to access and take advantage of membership benefits, services, and privileges. Non-profit organizations and educational institutions that elect to pay CWC's discounted non-profit membership fee may designate up to three (3) staff members for access to membership benefits, services, and privileges.

## ORGANIZATION INFORMATION

ORGANIZATION NAME: _____          FED TAX ID: _____

MAILING ADDRESS: _____   CITY: _____   STATE: _____   ZIP: _____

PHONE: _____   FAX: _____   WEBSITE: _____

CWC members include employers from all major U.S. sectors and industries, including many Fortune 500 organizations. For benchmarking purposes, please use the list on page two to identify the sector and industry that best describe your business.

SECTOR: _____   INDUSTRY: _____

TOTAL NUMBER OF EMPLOYEES REPORTED ON MOST RECENT CONSOLIDATED EEO-1 REPORT (OR TOTAL U.S. HEADCOUNT): _____

## ORGANIZATION CONTACTS

### PRIMARY REPRESENTATIVE

CWC "prime reps" are the individuals designated by each member employer to serve as the principal membership contact. They typically perform senior-level roles in one or more of the following functions: HR leadership and operations, law and compliance, labor and employee relations, EEO/AA compliance, diversity and inclusion, talent acquisition, and compensation. Prime reps ensure that other employees within the organization are aware of their CWC membership, receive "prime-rep-only" communications, vote on proposed changes to CWC bylaws, and manage membership renewals.

PRIMARY REPRESENTATIVE NAME: _____   TITLE: _____

MAILING ADDRESS: _____   CITY: _____   STATE: _____   ZIP: _____

PHONE: _____   EMAIL: _____

### ADDITIONAL CONTACTS (FOR ACCESS TO MEMBERSHIP BENEFITS, SERVICES, AND PRIVILEGES)

**CONTACT 1** NAME: _____   TITLE: _____

MAILING ADDRESS: _____   CITY: _____   STATE: _____   ZIP: _____

PHONE: _____   EMAIL: _____

**CONTACT 2** NAME: _____   TITLE: _____

MAILING ADDRESS: _____   CITY: _____   STATE: _____   ZIP: _____

PHONE: _____   EMAIL: _____



# MEMBERSHIP APPLICATION
PAGE 2

## DUES AND PAYMENT OPTIONS

CWC membership dues are fully deductible as an ordinary and necessary business expense.

| ANNUAL MEMBERSHIP DUES | PAYMENT BY WIRE/ACH | PAYMENT BY CHECK |
|---|---|---|
| **Regular Membership Rate:** $13,500<br>**Non-Profit Membership Rate:** $ 7,500<br>Renewals billed annually in the 4th quarter for the next calendar year. First-year dues prorated to reflect first full month of membership. | Center for Workplace Compliance<br>Eagle Bank<br>2001 K Street, NW \| Suite 502<br>Washington, DC  20006<br>ABA#: 055003298 \| Account#: 200174027 | Center for Workplace Compliance<br>1501 M Street, NW \| Suite 1000<br>Washington, DC  20005 |

## SIGNATURE

CWC bylaws state that all new members must be approved by the association's board of directors.

SIGNATURE: _____

DATE: _____

## INDUSTRY BENCHMARKING INFORMATION

### INDUSTRY SECTORS AND INDUSTRIES

- **Aerospace**
  - » Aerospace and Defense
- **Apparel**
  - » Apparel
- **Business Services**
  - » Advertising, Marketing
  - » Diversified Outsourcing Services
  - » Education
  - » Financial Data Services
  - » Temporary Help
  - » Waste Management
- **Chemicals**
  - » Chemicals
- **Education**
  - » Educational Institution
- **Energy**
  - » Energy
  - » Mining, Crude-Oil Production
  - » Oil and Gas Equipment Services
  - » Petroleum Refining
  - » Pipelines
  - » Utilities: Gas and Electric
- **Engineering and Construction**
  - » Engineering, Construction
  - » Homebuilders

- **Financials**
  - » Commercial Banks
  - » Diversified Financials
  - » Insurance: Life, Health (Mutual)
  - » Insurance: Life, Health (Stock)
  - » Insurance: Property and Casualty (Mutual)
  - » Insurance: Property and Casualty (Stock)
  - » Real Estate
  - » Securities
- **Food and Drug Stores**
  - » Food and Drug Stores
- **Food, Beverages, and Tobacco**
  - » Beverages
  - » Food Consumer Products
  - » Food Production
  - » Tobacco
- **Healthcare**
  - » Health Care: Insurance and Managed Care
  - » Health Care: Medical Facilities
  - » Health Care: Pharmacy and Other Services
  - » Medical Products and Equipment
  - » Pharmaceuticals
- **Hotels, Restaurants and Leisure**
  - » Food Services
  - » Hotels, Casinos, Resorts

- **Household Products**
  - » Home Equipment, Furnishings
  - » Household and Personal Products
- **Industrials**
  - » Construction and Farm Machinery
  - » Electronics, Electrical Equipment
  - » Industrial Machinery
- **Materials**
  - » Building Materials, Glass
  - » Forest and Paper Products
  - » Metals
  - » Packaging, Containers
- **Media**
  - » Entertainment
  - » Publishing, Printing
- **Motor Vehicles and Parts**
  - » Motor Vehicles and Parts
- **Non-Profit**
  - » Non-Profit
- **Retailing**
  - » Automotive Retailing, Services
  - » General Merchandisers
  - » Specialty Retailers: Apparel
  - » Specialty Retailers: Other

- **Technology**
  - » Computer Peripherals
  - » Computer Software
  - » Computers, Office Equipment
  - » Information Technology Services
  - » Internet Services and Retailing
  - » Network and Other Communications Equipment
  - » Scientific, Photographic, and Control Equipment
  - » Semiconductors and Other Electronic Components
- **Telecommunications**
  - » Telecommunications
- **Transportation**
  - » Airlines
  - » Mail, Package, and Freight Delivery
  - » Railroads
  - » Transportation and Logistics
  - » Transportation Equipment
  - » Trucking, Truck Leasing
- **Wholesalers**
  - » Wholesalers: Diversified
  - » Wholesalers: Electronics and Office Equipment
  - » Wholesalers: Food and Grocery
  - » Wholesalers: Health Care
- **Other/Not Sure**

# Exhibit D

# Littler | Press Release

# Littler Adds Shareholder Lance Gibbons in Washington, D.C.

**July 25, 2018**

WASHINGTON, D.C. (July 25, 2018) — Littler, the world's largest employment and labor law practice representing management, is pleased to announce that Lance E. Gibbons has rejoined the firm as a shareholder in the Washington, D.C., office. Previously a partner at NT Lakis, LLP, Gibbons' return to Littler marks the eighth shareholder to join the firm since January.

"Lance is a strong addition to the talented group of shareholders we've added this year, as he offers clients experienced counsel on labor and employment regulatory matters at all levels of government," said Alison N. Davis, Littler's office managing shareholder in Washington, D.C. "His extensive experience before the U.S. Department of Labor's Office of Federal Contract Compliance Programs will deepen Littler's position as the foremost advisor of management on anti-discrimination laws and affirmative action regulations."

With nearly 20 years of experience counseling and representing clients on OFCCP matters, Gibbons advises companies on compliance with the array of employment-related requirements associated with government contracts, as well as in preparing for and resolving OFCCP audits. He also brings extensive experience representing clients on matters before other workplace regulatory and enforcement agencies, including the Equal Employment Opportunity Commission.

"Littler has continued to increase its profile and influence around the globe and here in Washington, and I'm excited to return to the firm," Gibbons said. "In addition to drawing on Littler's robust platform and resources to serve clients, I look forward to supporting the firm's efforts to engage with the government on behalf of employers on labor and employment related developments."

As part of his role, Gibbons will work closely with members of Littler's <u>Workplace Policy Institute®</u> (WPI™), which serves as a resource for employers to ensure that they have a voice in legislative and regulatory developments that impact their workplaces and business strategies.

During his time at NT Lakis, Gibbons also served as assistant general counsel to the Center for Workplace Compliance, where he assisted the association's members in understanding and managing their workplace compliance requirements and risks. Earlier in his career, he served as senior counsel to National Labor Relations Board Member Peter C. Schaumber.

Gibbons received his J.D., with distinction, from Ohio Northern University College of Law and his B.S. from Miami University.

**About Littler**

Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide. Littler represents management in all aspects of employment and labor law and serves as a single-source solution provider to the global employer community. Consistently recognized in the industry as a leading and innovative law practice, Littler has been litigating, mediating and negotiating some of the most influential employment law cases and labor contracts on record for over 75 years. Littler Global is the collective trade name for an international legal practice, the practicing member entities of which are separate and distinct professional firms.

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.

# Exhibit E

# Littler

## Lance E. Gibbons

Shareholder

1650 Tysons Boulevard
Suite 700
Tysons Corner, VA 22102
main: (703) 442-8425
direct: (202) 772-2520
fax: (703) 442-8428
lgibbons@littler.com



## Focus Areas

Affirmative Action/OFCCP Compliance
Investigations
Discrimination and Harassment
Labor Management Relations
Workplace Policy Institute
Government Contractors

## Overview

Lance E. Gibbons focuses his practice on advising clients on the specific workplace implications of federal, state, and local labor and employment laws, with a particular emphasis on the nondiscrimination and affirmative action requirements enforced by the Labor Department's Office of Federal Contract Compliance Programs (OFCCP). Lance reviews every client affirmative action plan to ensure regulatory compliance, accuracy, and strategy, anticipating the larger legal implications of the information contained in the data analyses.

Lance has more than 15 years of experience counseling and representing employers on matters before the OFCCP, the U.S. Equal Employment Opportunity Commission (EEOC), and other federal, state, and local workplace regulatory and enforcement agencies. Lance provides his clients with a full range of advice and counsel on workplace legal and compliance requirements, including:

- Advising and counseling clients on all workplace compliance requirements applicable to federal government contractors
- Preparing OFCCP desk audit submissions and developing strategic responses to requests for additional information
- Preparing, advising, and representing clients during OFCCP on-site audits and negotiating with OFCCP to resolve alleged violations
- Conducting self-critical analyses of compensation data

1

Lance E. Gibbons

- Advising and counseling clients on compliance with the National Labor Relations Act (NLRA)
- Conducting statistical disparity analyses for reductions in force
- Developing training programs for HR professionals and management personnel regarding obligations as government contractors
- Developing and implementing compliant diversity and inclusion programs

He also has significant experience using statistical and data analysis tools in the contexts of employer hiring decisions and applicant tracking, promotions, and terminations.

Prior to joining Littler, Lance was a partner at a Washington, D.C., firm where he advised employers on managing their workplace compliance risks. He also served as assistant general counsel to a related employer association. He previously served as senior counsel to Member Peter C. Schaumber at the National Labor Relations Board from 2004 to 2007. As such, he offered advice on legal issues and policy questions and represented Member Schaumber in agency proceedings.

*Not licensed to practice law in Virginia.*

## Education

J.D., Ohio Northern University College of Law, 1999, *With Distinction*
B.S., Miami University, 1996

## Bar Admissions

District of Columbia
Pennsylvania

## Courts

U.S. Supreme Court
U.S. Court of Appeals, D.C. Circuit

## Publications & Press

**EEOC Provides Additional Guidance on EEO-1 Component 2 Information**
*Littler ASAP*
July 2, 2019

2

**OFCCP Issues Opinion Letter on Whether Pell Grants Trigger Federal Contractor Status for Colleges**

*Littler ASAP*

June 5, 2019

**Big Law Pay Equity Gets Closer Scrutiny by Small Labor Agency**

*Bloomberg Law*

April 26, 2019

**Court Orders EEOC to Collect Compensation Data by September 30, 2019**

*Littler ASAP*

April 25, 2019

**The Latest Developments in Federal Labor Policy**

*Littler Podcast*

April 15, 2019

**EEOC Files Plan to Require EEO-1 Compensation Data Reporting by September 30, 2019**

*Littler ASAP*

April 4, 2019

**EEOC Portal Opens for EEO-1 Filings With No Word on Employee Compensation**

*Littler ASAP*

March 19, 2019

**OFCCP Releases Section 503 Focused Review FAQs**

*Littler ASAP*

March 8, 2019

**Dear Littler: Can We Add New Categories to Our Employment Self-Identification Forms for Sex and Race?**

*Dear Littler*

March 5, 2019

**OFCCP Continues Efforts to Maximize Efficiency and Increase Transparency with Three New Directives**

*Littler ASAP*

December 3, 2018

**Federal Contractors Face Closer Scrutiny**

*IndustryWeek*

September 17, 2018

**A More Modern Approach to OFCCP's Functional Affirmative Action Programs?**

*Littler ASAP*

September 17, 2018

**OFCCP Mails Second Round of CSALs**

*Littler ASAP*

September 10, 2018

**DOL Enforcement Agency Sends Contractor Audit Alerts**

*Bloomberg Law*

September 10, 2018

**Littler's WPI Labor Day Report 2018**

*Littler WPI Report*

August 30, 2018

**Something Old, Something New: Contractor Recognition and AAP Verification on the Horizon at OFCCP**

*Littler ASAP*

August 28, 2018

**2018 VETS-4212 Filing Season is Here; Deadline is September 30**

*Littler ASAP*

August 22, 2018

**OFCCP Focused Reviews Coming in FY 2019**

*Littler ASAP*

August 14, 2018

**OFCCP Acting Director Promises Clear Guidance and Consistency While Laying out a Program of Carrots and Sticks**

*Littler ASAP*

August 6, 2018

**Change at the Top: Ondray Harris Stepping Down as OFCCP Director**

*Littler ASAP*

July 26, 2018

**Littler Adds Shareholder Lance Gibbons in Washington, D.C.**

*Littler Press Release*

July 25, 2018

**Littler Provides In Depth Review of Recent OFCCP Developments**

May 17, 2012

**Littler Rings in New Year with New Shareholders: Leading Labor and Employment Firm Elevates 13 Associates**

*Littler Press Release*

January 4, 2012

**Federal Contractors Get New Scrutiny**

*SHRM Magazine*

November 1, 2011

**OFCCP Issues Final Veterans Regulations for Government Contractors**

*Littler Insight*

August 9, 2007

## Speaking Engagements

**Government Contractor Update | An Energized OFCCP Changes Compliance Requirements and Enforcement Standards**

Tysons Corner, VA

August 20, 2019

**Attention Government Contractors: OFCCP Update**

2019 Mid-Atlantic Employer Conference, Bethesda, MD

June 7, 2019

**Attention Government Contractors: OFCCP Policy Changes**

2019 Contract Security Washington Summit, Washington, DC

June 6, 2019

**Help Wanted: How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance**

2019 Executive Employer Conference, Phoenix, AZ

May 9, 2019

**Federal Contractor Roundtable**

2019 Littler Executive Employer Conference, Phoenix, AZ

May 8, 2019

**The Latest Developments in Federal Labor Policy: A Workplace Policy Institute Briefing**

April 9, 2019

**Preparing for an Increase in OFCCP Audit Activity: CSALs, Focused Reviews, VERPs, and More**

March 20, 2019

**Understanding the Impact of OFCCP's Recent Policy Changes on Federal Contractors**

Association of Builders and Contractors Webinar

March 19, 2019

**Diversity Symposium 2018**

West Virginia University

September 25, 2018

**Federal Contractor Compliance Update**

Pittsburgh ILG – National Industry Liaison Group

September 14, 2017

**OFCCP Compliance Initiatives for 2015**

Space Coast ILG – National Industry Liaison Group

January 28, 2015

**OFCCP Compliance Initiatives for 2015**

Pittsburgh ILG – National Industry Liaison Group

December 9, 2014

**OFCCP's New Compliance Review Scheduling Letter and Attached Itemized Listing**

October 22, 2014

**Revisiting Internet Applicant in 2014**

32nd Annual National Conference – ILG, Washington, DC

August 6, 2014

**The OFCCP's New Veterans and Disability Regulations**

Pittsburgh ILG – National Industry Liaison Group

June 10, 2014

**The Risks and Rewards of Self-Identification**

Ohio ILG – National Industry Liaison Group

May 13, 2014

**OFCCP's Final Regulations for Veterans and Individuals with Disabilities**

March 18, 2014

**OFCCP's New Affirmative Action Regulations for Veterans and Individuals with Disabilities**

Space Coast ILG - National Industry Liaison Group

October 14, 2013


**OFCCP Final Veterans and Disabilities Regulations**

October 10, 2013


**OFCCP Final Veterans and Disabilities Regulations**

October 8, 2013


**Recent Development in OFCCP Compliance**

Greater Houston ILG - National Industry Liaison Group

April 18, 2013


**Manage Hiring Compliance**

Meeting of the Minds 2013 - ADP, Las Vegas, NV

March 17-20, 2013


**Workplace Diversity and Discrimination Claims**

Denver, CO

June 14, 2012


**OFCCP Update: Dealing with an Aggressive Regulatory and Enforcement Agenda**

Littler Mendelson, Scottsdale, AZ

May 11, 2012


**A Littler OFCCP Webinar Series**

March 2, 2010

# Exhibit F



# Littler Adds Chris Gokturk in Northern Virginia

**February 26, 2019**

TYSONS CORNER, Va. (February 26, 2019) — Littler, the world's largest employment and labor law practice representing management, has added Chris Gokturk as a principal in its Tysons Corner, Va., office. Gokturk has more than 20 years of experience in compliance, enterprise risk management and statistical analyses.

"Chris brings a unique skillset in conducting risk assessments, analyzing employment data and advising on compliance with requirements enforced by the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP)," said Michael McIntosh, Littler's office managing shareholder in Tysons Corner. "Her experience and insights will be invaluable for our clients, including those pursuing government contracts as they navigate an ever-evolving landscape of affirmative action regulations and anti-discrimination laws."

Gokturk is a non-attorney consultant who specializes in helping employers understand and mitigate their systemic discrimination risks, and also in the development, implementation and defense of compliant and data-driven affirmative action programs. She is capable of consulting on all phases of the OFCCP compliance review process. Gokturk is also knowledgeable about implementation of applicant tracking and human resources information systems and can provide guidance to clients on issues related to talent acquisition, analyses of compensation data, performance management, diversity and inclusion metrics, workforce planning and restructuring, as well as the systems utilized to manage these functions.

"Chris has a strong technical understanding of the systems companies use to manage employees and how those systems communicate with each other," said Littler shareholder Lance Gibbons, who previously worked with Gokturk. "She's highly respected by her peers and clients, and her

extensive experience advising on OFCCP matters, risk management and analyses of employment data compliments our OFCCP attorneys' work and will further strengthen our capabilities in this area."

With a deep background in analyzing compensation and employment transactions data, as well as extensive experience on pay equity issues, Gokturk will work closely with Littler's data capabilities team, as well as play an integral role in the analyses conducted through the Littler Pay Equity Assessment™.

"Littler's leading role in leveraging technology and data-driven insights to help employers better manage their workforces, as well as its depth of experience counseling government contractors on affirmative action and OFCCP compliance issues, was a perfect fit for me," Gokturk said. "I'm excited about the opportunity Littler's platform offers in risk assessments, pay equity audits and statistical analyses of employment data."

## About Littler

With more than 1,500 labor and employment attorneys in offices around the world, Littler provides workplace solutions that are local, everywhere. Our diverse team and proprietary technology foster a culture that celebrates original thinking, delivering groundbreaking innovation that prepares employers for what's happening today, and what's likely to happen tomorrow.

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.

# Exhibit G

**Littler**

## Chris Gokturk

Principal

1650 Tysons Boulevard
Suite 700
Tysons Corner, VA 22102
main: (703) 442-8425
direct: (703) 286-3159
fax: (703) 442-8428
cgokturk@littler.com



## Focus Areas

Affirmative Action/OFCCP Compliance
Workplace Policy Institute
Robotics, Artificial Intelligence (AI) and Automation

## Overview

Chris Gokturk assists companies in understanding and mitigating their affirmative action and systemic discrimination risks, particularly in the areas of talent acquisition, compensation, performance management, as well as workforce planning and restructuring.

Chris has more than 20 years of professional experience in compliance, enterprise risk management, and statistics. She has helped clients across all major industry groups develop, implement, and defend compliant affirmative action programs.

Chris provides a broad array of services, including:

- Preparing fully compliant, data-driven affirmative action programs
- Managing all phases of the Labor Department's Office of Federal Contract Compliance Programs (OFCCP) compliance evaluation process
- Conducting rigorous self-critical analyses of compensation data
- Designing and executing statistical analyses of employment transactions data
- Developing legally defensible diversity and inclusion metrics
- Assessing organizational compliance with talent acquisition requirements
- Assisting in implementation of applicant tracking and HRIS systems
- Conducting risk assessments in all areas related to human resources and compliance

Littler

- Preparing and evaluating diversity metrics

She is a frequent speaker and trainer on pay equity and the requirements enforced by the OFCCP. In addition to her practice, Chris is also an active participant in Littler's Diversity Group.

*\* Chris is a non-attorney Principal with the firm.*

## Education

B.S., West Georgia College

## Publications & Press

**Texas, NY Top List of States With Most Harassment Charges**

*Bloomberg Law*

April 10, 2019

**Littler Adds Chris Gokturk in Northern Virginia**

*Littler Press Release*

February 26, 2019

## Speaking Engagements

**How AI and Technology are Changing the Talent Acquisition World**

Tysons Corner, VA

October 16, 2019

**Government Contractor Update | An Energized OFCCP Changes Compliance Requirements and Enforcement Standards**

Tysons Corner, VA

August 20, 2019

**EEO-1 Component 2 Reporting: What You Need to Know and How to Get It Done**

July 19, 2019

**Attention Government Contractors: OFCCP Update**

2019 Mid-Atlantic Employer Conference, Bethesda, MD

June 7, 2019

Chris Gokturk

**Littler**

**Help Wanted: How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance**

2019 Executive Employer Conference, Phoenix, AZ

May 9, 2019

3

# Exhibit H

 Press Release

# Littler Adds Healthcare Industry Veteran William Vail

**May 6, 2019**

ATLANTA (May 6, 2019) – Littler, the world's largest employment and labor law practice representing management, has added William C. Vail, Jr. as Special Counsel in its Atlanta office. Vail previously spent seven years at Kindred Healthcare and Kindred at Home. He most recently served as Division Vice President and Deputy Chief Litigation Officer of Kindred at Home, the nation's largest home health and hospice provider.

"Will brings a strong understanding of the issues and challenges facing healthcare employers, along with in-depth knowledge of how governing boards operate across the industry," said L. Traywick Duffie, Littler's Office Managing Shareholder in Atlanta. "Additionally, the insights gleaned from his time as an in-house counsel for the largest post-acute healthcare provider in the country, combined with his previous law firm experience, will greatly benefit our clients as we continue to expand the firm's robust healthcare practice."

At Kindred, Vail advised on employment law compliance across a wide range of areas, including wage and hour, employee benefits, leave administration and disability accommodation, and federal procurement and contract regulations. He has resolved employment disputes across the country involving such issues as discrimination, harassment, retaliation, wage and hour violations, and breaches of noncompete agreements. Vail also has extensive experience conducting internal investigations, drafting employment agreements, policies and handbooks, performing due diligence for employment matters, and managing integration initiatives in mergers and acquisitions.

"I've known Will for a long time and have always enjoyed working with him as a client at Kindred," said Angelo Spinola, shareholder in Littler's Atlanta office and a core member of the firm's Healthcare Practice Group. "His knowledge of the unique ways that employment laws and

government regulation impact the companies in the healthcare sector, particularly home care providers, nursing homes and assisted living facilities, is important for our clients navigating such a highly regulated industry."

"Having worked closely with Littler for several years, I've seen firsthand that it is the gold standard for labor and employment law," Vail said. "The scope of Littler's experience across the healthcare industry, combined with the firm's ability to counsel and defend healthcare employers in an efficient manner on the full range of issues involving the workplace, is unmatched in the industry. I'm excited to work with my new colleagues and to have access to Littler's robust platform and resources, as well as to be a part of such a forward thinking and innovative law firm."

Vail received his J.D., *cum laude,* from the University of Kentucky College of Law and his B.A., *cum laude,* from Washington and Lee University.

## About Littler

*With more than 1,500 labor and employment attorneys in offices around the world, Littler provides workplace solutions that are local, everywhere. Our diverse team and proprietary technology foster a culture that celebrates original thinking, delivering groundbreaking innovation that prepares employers for what's happening today, and what's likely to happen tomorrow.*

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.



# Littler Adds Shareholder Jaime Laurent in Los Angeles

**August 20, 2018**

LOS ANGELES (August 20, 2018) – Littler, the world's largest employment and labor law practice representing management, is pleased to announce that Jaime B. Laurent has joined the firm as a shareholder in Los Angeles. Previously an attorney at the boutique firm Marron Lawyers, Laurent is the ninth shareholder to join Littler since January.

"We're excited to add Jaime to our deep bench of attorneys in Southern California," said Shannon Boyce, office managing shareholder of Littler's Los Angeles offices. "The regulatory landscape in this state poses unique challenges for employers, and Jaime's prior background as a private practice attorney and as an in-house corporate attorney here in Los Angeles make him a terrific addition to our firm."

Laurent regularly defends national and international companies in general and complex civil litigation involving a range of labor and employment claims, including discrimination, misclassification and wage and hour compliance. He has extensive experience representing companies in various industries in independent contractor misclassification litigation and draws on insights gained from successfully resolving numerous litigation matters to help clients manage litigation risks. Laurent also advises clients on proactive risk management at an operational level, including drafting labor agreements and advising on best practices.

"Littler has a great team here in Los Angeles, with a strong reputation that I've come to know well," Laurent said. "But I was also drawn to the firm's robust national and global platform and dedication to innovation in the delivery of legal services. I look forward to advancing my practice though Littler's extensive platform and resources."

Laurent received his J.D. from Pepperdine School of Law. He earned a B.A. in political science

from the University of British Columbia and a B.A. in anthropology from the University of Alberta.

**About Littler**

Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide. Littler represents management in all aspects of employment and labor law and serves as a single-source solution provider to the global employer community. Consistently recognized in the industry as a leading and innovative law practice, Littler has been litigating, mediating and negotiating some of the most influential employment law cases and labor contracts on record for over 75 years. Littler Global is the collective trade name for an international legal practice, the practicing member entities of which are separate and distinct professional firms.

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.



# Littler Mendelson Continues High-Profile Lateral Growth; JoAnna Brooks Joins in San Francisco

**June 17, 2013**

*Seasoned Litigator Brings Extensive Class Action Experience; Follows the Arrival of Multiple Significant Lateral Hires*
SAN FRANCISCO, CA (June 17, 2013) – Littler Mendelson, P.C. (Littler), the world's largest employment and labor law firm representing management, has added JoAnna Brooks as a shareholder in the San Francisco office. Brooks, previously a partner and head of the Class Action Practice in Jackson Lewis LLP's San Francisco office, brings extensive class action litigation experience to the firm. Her arrival reflects Littler's continued attraction of high-profile lateral shareholders. In the past year, the firm has added a number of prominent attorneys to its shareholder ranks, across multiple practice areas and geographic regions to further expand the firm's national and global platform.

"High-profile lateral recruitment is one of the keys to our continued success and we are excited that a top tier labor and employment practitioner of JoAnna's caliber joins several others Littler has recruited over the last year," said Thomas Bender and Jeremy Roth, co-presidents and co-managing directors of Littler, in a joint statement. "Littler's global platform, innovative resources and depth of our subject matter expertise continue to make the firm a sought after destination for prominent lateral candidates."

While head of Jackson Lewis's Class Action Practice in San Francisco, Brooks was involved in more than 50 class action litigation cases in California over the last 10 years. She advises clients both proactively and reactively on employment best practices, and also serves as defense counsel in cases involving harassment, discrimination, breach of contract, wage and hour, and unfair business practices. Her experience includes several complex multi-plaintiff and class action

litigation cases, and she has represented clients before the California Labor Commissioner, California Unemployment Insurance Appeals Board and California Workers' Compensation Appeals Board.

"We are pleased to have JoAnna join as the newest member of the firm and we look forward to her further enhancing the firm's already strong presence in Northern California," said Jennifer Walt, office managing shareholder of the firm's San Francisco office. "Her background, including significant experience in the retail sector, will further strengthen our service offering to that industry."

Brooks' arrival closely follows a high-profile group of laterals in various markets who joined Littler, including Don Prophete and Nikki Howell, top notch employment litigators based in Kansas City, Tamika Nordstrom in Atlanta, and Damon Hart in Boston. Nationally renowned labor attorneys Maury Baskin and Jeff Mintz also joined Littler's Washington, D.C. and Atlanta offices, respectively, earlier this year. And last year, the firm successfully recruited former Jackson Lewis heavyweight Michael Lotito, currently co-chair of Littler's Workplace Policy Institute.

"Littler has consistently been recognized as a leader in the handling of complex labor and employment law matters," Brooks said. "With its expansive attorney roster and deep resources from a knowledge management and innovative technology standpoint, joining a dynamic firm like Littler is a tremendous opportunity for me to serve clients in the most effective, efficient manner possible."

Brooks earned her J.D. from Georgetown University Law Center in 1995 and her B.A. from Purdue University in 1992. She is a member of the Bar Association of San Francisco and received an American Jurisprudence Award, Moot Court honors and Dean's List honors while at Georgetown.

**About Littler Mendelson**

Littler Mendelson is the world's largest labor and employment law firm exclusively devoted to representing management.  With over 980 attorneys and 57 offices throughout the U.S. and globally, Littler has extensive resources to address the needs of U.S.-based and multi-national clients from navigating domestic and international employment laws and labor relations issues to applying corporate policies worldwide. Established in 1942, the firm has litigated, mediated and negotiated some of the most influential employment law cases and labor contracts on record.

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.

# Exhibit I



## Practices

| | | | | |
|---|---|---|---|---|
| Affirmative Action/OFCCP Compliance | Alternative Dispute Resolution | Appellate Practice | Background Checks | Business and Human Rights |
| Business Restructuring and M&A | Class Actions | Corporate Compliance and Ethics | Discrimination and Harassment | eDiscovery |
| Employee Benefits | Employment Practices Audits | Employment Taxes | ERISA and Benefit Plan Litigation | Executive Compensation |
| Global Mobility and Immigration | Hiring, Performance Management and Termination | International Employment Law | Investigations | Labor Management Relations |
| Leaves of Absence and Disability Accommodation | Legislative and Regulatory Practice | Litigation and Trials | Policies, Procedures and Handbooks | Robotics, Artificial Intelligence (AI) and Automation |
| Staffing, Independent Contractors and Contingent Workers | Training - Compliance, Ethics, Leadership | Unfair Competition and Trade Secrets | Wage and Hour | Whistleblowing and Retaliation |
| Workers' Compensation | Workplace Privacy and Data Security | Workplace Safety and Health (OSHA & MSHA) | | |

# Exhibit J

# Unfair Competition and Trade Secrets

A company's trade secrets, proprietary information and business relationships are among its most valuable assets. In today's fluid economy, protecting these essential resources is critical to maintaining a company's competitive edge. Similarly, hiring from the competition in a manner that maximizes legitimate competitive advantage yet minimizes legal risk is just as important.

Our attorneys who practice Unfair Competition and Trade Secrets have a keen understanding of both the legal and business needs to respond quickly and effectively to situations involving intellectual capital and customer relationships. We appreciate that clients confronted with decisions about these critical business issues need a trusted advisor who can provide them with solutions that are both strategic and practical. Our deep subject matter experience, size, and geographic reach, coupled with an intense focus on superior client service and the highest quality work, enable us to handle a wide spectrum of matters, both as advisors and litigators.

## Advisors

We provide strategic advice to employers on all critical aspects of the employment relationship, from initial hiring to maintaining security and monitoring of highly confidential information, to departure. We work closely with clients to draft agreements containing post-employment restrictions that are tailored to their particular needs, with a view towards maximizing the likelihood of multi-jurisdictional enforceability—both nationally and often internationally. We also counsel clients on securing their confidential information and customer relationships when key employees leave the company and join a competitor.

When a company wants to hire an employee from a competitor, we can provide advice on the best approach so that a client can maximize legitimate competitive advantage and minimize litigation risk.

We work with both national and multi-national clients and thus are familiar with the nuances, not only of state and federal laws including, for example, the Computer Fraud and Abuse Act and the Economic Espionage Act, but also of the laws and requirements of key countries around the globe. Littler has its own international offices and also works with affiliated law firms in Europe, Canada, Mexico, Central and South America, Asia and other parts of the world.

## Litigators

A signature of our practice is helping our clients avoid costly litigation through a variety of preventive measures, such as conducting unfair competition and trade secret audits and coordinating forensic examinations and investigations. Yet, when litigation is appropriate and necessary, our lawyers move quickly, whether the matter at hand involves TRO/injunction proceedings, expedited discovery or a full-blown trial on the merits. Thanks to our numbers, our subject matter experience and our geographic footprint, we are able to work with our clients with minimal business interruption on their part to identify the issues, gather the evidence, prepare the necessary court papers, and move quickly to a hearing or trial. We work extensively with forensic, economic and industry consultants and experts and with our own internal eDiscovery attorneys and support personnel to streamline the investigation and discovery process.

We also work closely with clients to reach creative settlements that result in positive business outcomes. We are frequently sought out by the ABA and BNA and other prominent national legal organizations to share our knowledge of unfair competition and trade secret litigation strategies.

## Contact Our Team

Complete the form to see how our attorneys may be able to assist you

REQUEST A PROPOSAL (/REQUEST-PROPOSAL?PRAC_AREA=UNFAIR COMPETITION AND TRADE SECRETS)

VIEW ALL TEAM MEMBERS (/LAWYER-SEARCH?PRAC_AREA=34033)

# Unfair Competition and Trade Secrets Contacts



(/people/james-m-witz)

**James M. Witz (/people/james-m-witz)**
**Shareholder**
**Chicago, IL (/locations/chicago)**
**jwitz@littler.com (mailto:jwitz@littler.com)**
**(312) 795-3246**

Ready to meet the whole team?

**VIEW ALL TEAM MEMBERS (/LAWYER-SEARCH?PRAC_AREA=34033)**

# Related News & Analysis

MORE ⌄

**Virginia Enacts New Legislation Offering Additional Protection to Workers (/publication-press/publication/virginia-enacts-new-legislation-offering-additional-protection-workers)**

April 16, 2020

**Joint DOJ & FTC Antitrust Guidance Warns Employers About Colluding and Sharing Competitive Data During the COVID-19 Crisis (/publication-press/publication/joint-doj-ftc-antitrust-guidance-warns-employers-about-colluding-and)**

April 14, 2020

**Rhode Island Joins the New England Trend with a Law Placing Substantial Limitations on Noncompete Agreements (/publication-press/publication/rhode-island-joins-new-england-trend-law-placing-substantial)**

August 12, 2019

**Ontario, Canada: Enforcing Noncompetition and Nonsolicitation Clauses (/publication-press/publication/ontario-canada-enforcing-noncompetition-and-nonsolicitation-clauses)**

August 12, 2019

MORE ⌄

# Related Press

**Littler, Ogletree Pace Firms As Trade Secret Suits Hold Steady (/publication-press/press/littler-ogletree-pace-firms-trade-secret-suits-hold-steady)**

April 20, 2020

**Ontario: Enforcing Noncompetition and Nonsolicitation Clauses (/publication-press/press/ontario-enforcing-noncompetition-and-nonsolicitation-clauses)**

August 9, 2019

**Who should sign an NDA? (/publication-press/press/who-should-sign-nda)**

July 15, 2019

**The Top Trends in Home Care for 2019 (/publication-press/press/top-trends-home-care-2019)**

January 6, 2019

# Speaking Engagements

**Trade Secrets Theft: Civil Litigation and Criminal Prosecution**

Trade Secrets Protection, Enforcement and Litigation Conference – Sandpiper Partners, New York, NY

February 26, 2019 | Denise E. Backhouse

Ready to work with Littler?

**REQUEST A PROPOSAL (/REQUEST-PROPOSAL?PRAC_AREA=UNFAIR COMPETITION AND TRADE SECRETS)**

**Contact/Terms of Use (https://www.littler.com/contact-terms-use)**

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.

# Hiring a Competitor's Employees: Minimizing Litigation Exposure, Defending Competitor Lawsuits (/hiring-competitor%E2%80%99s-employees-minimizing-litigation-exposure-defending-competitor-lawsuits)

Submitted by Meg Felling on Mon, 03/12/2018 - 08:15
**Littler Lawyer:**
Stephen E. Baumann II
**Event/Organization:**
Strafford Webinar
**Display Date:**
February 28, 2018
**Sort Date:**
Wednesday, February 28, 2018 - 08:15

- 

**Contact/Terms of Use (https://www.littler.com/contact-terms-use)**

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.

FOLLOW

UPDATES: COVID-19

ADVERTISEMENT

02-05-20 | WORKPLACE EVOLUTION

# Before you hire from the competition, read this

Before you recruit a rock-star employee from the competition, be sure to protect your company.



[Photo: Ryan Magsino/Unsplash]

f
t
in
✉

**BY GWEN MORAN**
4 MINUTE READ

In this tight labor market, employees are considering their options. A 2020 report by employee engagement platform Achievers found that roughly two-thirds of employees said they may leave their jobs in 2020.

That's good news for companies on the lookout for talent. However, when hiring employees from competing firms, organizational leadership needs to protect against certain risks.

**We updated our Privacy Policy as of February 24, 2020.** Learn about our personal information collection practices here.

7/24/2021                                                                                                                    Hiring from the Competition? Read This.

Case 1:20-cv-01387-AJT-JFA    Document 37-4   Filed 02/02/21   Page 195 of 214 PageID# 1546

FOLLOW    🔍

And the very reasons an employee may be attractive as a new hire—such as industry expertise and knowledge of the competition's strategies—could be cause for concern. If a new hire shares proprietary information or violates an agreement made with a former employer, your company could face legal consequences. "The law generally prevents a new employer from obtaining trade secrets or proprietary information of a competitor," says employment attorney David Reischer, CEO of LegalAdvice.com, a legal services referral service. "Claims of 'tortious interference' with a business and 'misappropriation' [of trade secrets] are typical causes of action that would be made in a lawsuit."

To help protect your company from inadvertently getting into legal or reputational hot water, be sure you put a few practices in place:

### PREPARE IN ADVANCE

Adrienne Cooper, chief people officer at FitSmallBusiness.com, a business information platform, says you should do some prep work before having even preliminary conversations with a prospective hire from a competitor. "Be very clear about what you want to bring into your organization, both a cultural contribution from that individual, as well as their skill sets and experience, and how that's going to fit in your strategy and evolution, versus framing it as, 'Let's go poach and maybe that'll help us,'" she says. It's also critical to understand employment laws in your state and any issues that may be particular to your industry.

Manchel cautions that even preliminary conversations with a prospective hire from a competing firm can have pitfalls. Let's say you're a high-level employee who just came out of a strategy meeting and, unbeknownst to your current employer, you've got a job interview in which the interviewer asks you, "Where do you see the industry going?" Having a general discussion is one thing. "It's her expertise, it's her vision of the future. But if she layers in what she knows is the next-year strategy for her current company, she's crossed the line," Manchel says. "My advice to anyone who's doing the hiring and anyone who's being recruited is to think very clearly about what's publicly known and what's not."

### ASK ABOUT AGREEMENTS

Before you recruit a talented employee who works at a competitor, ask about the agreements the employee has signed, including a non-compete agreement, a non-disclosure agreement, and a non-solicitation agreement.

These agreements may limit the capacity or role in which the employee can work for a competitor, place restrictions on the information that is shared with an employer, or prevent working with former customers, employees, or others.

Manchel recommends asking for copies of the agreements the prospective employee signed so you have a clear understanding of the restrictions in place. Cooper agrees. "It is not helpful for you if the person has injunctions preventing him/her from doing work after joining your company," she says.

### BEWARE OF PAST BEHAVIOR

The actions employees take—or even signal they intend to take—before leaving an employer could put your company at risk. In addition to whether the prospect will be a good fit, examining if they've behaved improperly is another mitigating factor. "Let's say you're recruiting a salesperson, and she walks in and says, 'Hey, by the way, every one of my clients is ready to move with me.' You need to run away, because this is someone who's pre-solicited her book of business. That is, in every state I'm in, that's a serious violation of the governing wall," Manchel says.

Conversely, learning more about the reason the person wants to or has separated from a previous employer can be enlightening. In some cases, the employer may have acted in such a way that the agreement in place is voided. Consult your legal counsel about such issues, especially if the person is at a high level or has access to sensitive company data.

### IMPROVE YOUR OWN PRACTICES

"It is a good idea to have a written policy in place that warns all employees not to take proprietary info and data received from previous employment," Reischer says. In addition, if you make an offer to the employee, make an explicit claim in the offer letter that employment may be terminated for bringing or using or improperly disclosing confidential or proprietary information from previous employment, he recommends.

Review your practices around data management and make improvements if necessary, he adds. "Bringing a lawsuit for when an employee steals company property is expensive and time-consuming, and always the final resort. The best way to protect company information is to limit access and track access," Reischer says. Be sure employees that you do hire from competitors have proper supervision and that you conduct regular check-ins to be sure they're not using information or engaging in practices that are restricted by past agreements.

ABOUT THE AUTHOR

Gwen Moran writes about business, money and assorted other topics for leading publications and websites. She was named a Small Business Influencer Awards Top 100 Champion in 2015, 2014, and 2012 and is the co-author of *The Complete Idiot's Guide to Business Plans* (Alpha, 2010), and several other books More

**You Might Also Like:**

'I talked to your bankers': Watch Barbara Walters call out Trump for lying in a tense 1990 interview

3 Secrets Of People W   We updated our Privacy Policy as of February 24, 2020. Learn about our personal information collection practices here.

# Littler

## Danielle L. Kitson

Shareholder

1900 Sixteenth Street
Suite 800
Denver, CO 80202
main: (303) 629-6200
direct: (303) 362-2872
fax: (303) 629-0200
dkitson@littler.com



## Focus Areas

ERISA and Benefit Plan Litigation
Class Actions
Unfair Competition and Trade Secrets
Discrimination and Harassment
Hiring, Performance Management and Termination

## Overview

Danielle L. Kitson provides advice and counsel to a wide range of employers, representing their interests in a variety of employment litigation matters in federal and state courts. She handles claims involving:

- Wrongful termination
- Wrongful denial of benefits
- Constructive discharge
- Sexual harassment, discrimination, and retaliation
- Wage and hour claims
- Title VII
- The Age Discrimination in Employment Act
- The Americans with Disabilities Act
- The Employee Retirement Income Security Act
- The Fair Labor Standards Act
- The Occupational Safety and Health Act
- The Family and Medical Leave Act
- Other federal and state employment laws

**Littler**

Prior to joining Littler Mendelson, Danielle worked in-house for a major national railway company where she served as the primary legal advisor to the senior vice president of human resources.  She counseled the company on employment law issues and managed all employment litigation across the 23 western states in which the company operates. She began her career as an associate with the Denver office of another firm focusing on employment advice and litigation, as well as complex securities litigation matters.

During law school, Danielle was a judicial extern for the Honorable Joan Humphrey Lefkow, United States District Court Judge, Northern District of Illinois. She also served as coordinating comment editor for the *Journal of Criminal Law and Criminology*.

## Professional and Community Affiliations

- Member, Colorado Bar Association
- Member, Nebraska Bar Association
- Member, American Bar Association
- Board Member, Denver Kids
- Program Chair, Federal Practice Update , 2014-2018

## Recognition

- Named, Super Lawyer, Colorado, *Super Lawyers*, 2020
- Named, Up and Coming, *Chambers USA*, 2019
- Named, Leading Lawyers for Business, *Chambers USA*, 2017-2018
- Named, Recommended Lawyer, Labor and Employment Disputes in Defense, *Legal 500 United States*, 2016
- Order of the Coif

## Education

J.D., Northwestern University School of Law, 2002, *cum laude*
B.A., Columbia University, 1997, *cum laude*

## Bar Admissions

Colorado
Nebraska

## Courts

U.S. Court of Appeals, 10th Circuit
U.S. District Court, District of Colorado

2

**Littler**

## Publications & Press

**Littler Ranked in 2019 Chambers USA Guide**
*Littler Press Release*
April 25, 2019

**Littler Ranked in 2018 Chambers USA Guide**
*Littler Press Release*
May 15, 2018

**Littler and Its Attorneys Receive Top Rankings in 2017 Chambers USA Guide**
*Littler Press Release*
May 26, 2017

**OSHA's Final Rule on Crystalline Silica Standards**
*Littler Insight*
September 13, 2016

**Littler Ranks in The Legal 500 United States Guide**
*Littler Press Release*
June 20, 2016

**Enviro-Consulting Firm Escapes Damages In Corporate Raiding Case**
*Colorado Law Week*
March 30, 2015

**NewFields Prevails in Corporate Raiding Case**
*Southeast Green*
March 20, 2015

**NewFields Prevails in Corporate Raiding Case**
*Atlanta citybizlist*
March 18, 2015

**EEOC Sanctioned for Failing to Produce Class Claimants' Social Media ESI and Other eDiscovery Misconduct**
*Littler Insight*
March 18, 2013

**Littler Elevates 13 Associates To Shareholder Status**
*Littler Press Release*
January 9, 2013

3

Danielle L. Kitson

**And the Class Certification Battle is Won: A Unanimous Supreme Court Reverses Rule 23(b)(2) Class Certification in Dukes v. Wal-Mart**

*Littler Insight*

June 21, 2011

**Setting the Stage for a Potential Supreme Court Battle in Dukes v. Wal-Mart: A Sharply Divided Ninth Circuit Attempts to Articulate New Standards that Could Impact Employers**

*Littler Insight*

May 7, 2010

## Speaking Engagements

**Socially Acceptable Solicitation: Restrictive Covenants in the Age of Social Media**

2019 Rocky Mountain Employer Conference, Denver, CO

October 4, 2019

**Legal Risks of Hiring Competitors Employees**

Lorman Webinar

April 25, 2019

**Hiring a Competitor's Employees: Minimizing Your Litigation Exposure**

Rocky Mountain Employer Conference

September 21, 2018

**Hiring a Competitor's Employees: Minimizing Litigation Exposure, Defending Competitor Lawsuits**

Strafford Webinar

February 28, 2018

**Conducting Efficient, Effective, and Lawful Workplace Investigations**

2017 Littler Rocky Mountain Employer Conference

October 3, 2017

**Federal Practice Update 2017**

Colorado Bar Association CLE Webinar

June 16, 2017

**Annual Tea and CLE: How To Build a Book of Business**

Colorado Women's Bar Association

November 18, 2016

4

Danielle L. Kitson

**2016 Rocky Mountain Employer Conference**

Denver, CO

September 21, 2016

**The 2016 Defend Trade Secrets Act - Protecting Your Business's Most Valuable Assets**

Littler, Denver, CO

September 21, 2016

**2016 Federal Practice Update**

Colorado Bar Association

June 17, 2016

**2015 Federal Practice Update**

Colorado Bar Association

June 5, 2015

**Strategic Considerations for Big Law Attorneys & Their In-House Counsel Client Representatives**

Denver, CO

July 24, 2014

**2014 Federal Practice Update**

Colorado Bar Association

June 20, 2014

## Books & Book Chapters

- *The Practitioner's Guide to Colorado Employment Law*, Chapter 5, Federal Laws Addressing Discrimination in Employment Based on Disability

# Unfair Competition
# Trade Secrets

ASAP

A Littler Mendelson **Time Sensitive** Newsletter

## in this issue:

APRIL 2005

A recent million dollar plus judgment highlights the importance of hiring people for their skills and not for their confidential business information especially when hiring employees working for direct competitors.

## How *Not* To Hire Employees From A Competitor

*By Paul Kennedy*

A major retailer recently learned the hard way how not to hire a strong-performing employee from a competitor. In a recent decision from a Virginia Circuit Court, *James, Ltd. v. Saks Fifth Avenue, Inc., et al.*, Saks was hit with a $1.6 million judgment for its actions when it hired a sales employee directly from a competitor, disregarding the employee's non-compete obligation.

The case illustrates the pitfalls of attempting to leapfrog the relationship-building process to obtain a competitive advantage.

### Factual Background

Saks sought to boost its high-end sales of men's clothing which had lagged behind sales of women's clothing. To achieve its goal, Saks looked to hire two high-powered salesmen from an exclusive men's clothing store that was located in the same shopping mall. One of the targeted salesmen had generated upward of $1 million in annual sales of mostly custom-made men's clothing. The other salesman had typically generated just shy of $1 million. Both maintained lists of clients that included information such as size measurements and fabric preferences developed over years of selling experience. Both had been long-time employees of James, with one salesman having worked there for more than 15 years.

Mindful of the investment in its client goodwill and relationships, James implemented an employee handbook containing a non-compete provision that precluded for three years employment with any competitor within a one-mile radius of the store location. Each employee who signed an acknowledgement of the handbook agreeing to its terms received additional consideration such as a cash bonus and a clothing allowance.

During Saks' courtship of the two James salesmen, one of them raised a concern about the non-compete obligation and provided the handbook to Saks for review. After Saks' in-house counsel opined that the restriction was not enforceable, the road was cleared for earnest recruitment and hiring of the salesmen. To ease concern about any post-employment restraints, and to induce them to defect, Saks agreed to indemnify them — in writing — in any ensuing litigation. Further, Saks was aware of the manner and timing of the salesmen's resignations from James.

Significantly, during the recruiting phase, the salesmen provided Saks with James' confidential information such as the employee handbook that James had expressly labeled as confidential. Further, while still employed with James, both salesmen physically removed written records regarding their customers from James' premises for the purpose of soliciting the customers when the salesmen became employed with Saks. Saks had knowledge of these actions and looked the other way.

When the time came to announce their departures, one salesman — the million dollar producer — resigned, but James was able to convince the second salesman to stay. Upon commencing his employment with Saks, the million dollar producer began soliciting business from the clientele he developed at James — with considerable success as Saks had hoped.

Two months after his departure and following declining sales, James sued Saks and its former salesman. It brought claims for the breach of the restrictive covenant, breach of the duty of loyalty, tortious interference, conversion and violation of Virginia's business conspiracy statute.

After a bench trial, the court found in James' favor. Concluding that the restrictive covenant was reasonable and enforceable, the court ordered that the salesman be enjoined from working at Saks' location in the same mall as James for a period of three years following the Court's Order. In its decision, the court rejected Saks' argument that the employee

Littler Mendelson is the largest law firm in the United States devoted exclusively to representing management in employment and labor law matters.

**ASAP**™

The National Employment & Labor Law Firm™

1.8   8.  littler    www.littler.com    info@littler.com

handbook — armed with disclaimer language — was not a binding contract insofar as the restrictive covenant was concerned.

Further, the court determined that the former salesman had breached his fiduciary duty to James by disclosing confidential company information to Saks.  Since Saks encouraged and supported the salesman's actions, the court held Saks jointly and severally liable for the salesman's breach of his duty.

In addition, the court found that Saks and the salesman willfully and maliciously conspired to injure James' business.  Among the evidence considered, the court found persuasive several emails illustrating Saks' desire to hire the salesman to obtain James' clients, as well as the possibility that the loss of these two salesmen might cause James to go out of business given the substantial revenue they represented for James.   In the end, the court awarded $548,611 in compensatory damages, an amount that was trebled to $1,654,833 based on Virginia's conspiracy law.  The court also intended to award attorneys' fees to James.

Even if Saks mounts a successful appeal, the decision underscores for all employers the importance of exercising care in hiring an employee from a competitor.  Learning from Saks' mistakes, here are some steps employers can take:

- **Solicit and hire skills and abilities but not client information and relationships**  Saks saw these high-powered salesmen (and more importantly their client lists) as a means to effect its strategy to enhance sales of high-end men's clothing.   The evidence showed that Saks simply wanted the salesmen to transplant their customers.  Employers are well advised in the face of post-employment restrictions to hire based on skills and abilities to generate revenue, and not as a shorthand way to capture a competitor's customers.

- **Get advice from independent counsel**  Saks' in-house counsel's legal opinion about the validity of the non-compete provision was in full display — uncloaked from any privilege — because it was provided to the salesmen before they joined Saks outside of any attorney-client relationship.   Not only did the court disagree with counsel's conclusion, but the opinion showed that Saks had willfully disregarded James' legitimate business interests on the assumption that the non-compete was unenforceable.

- **Set up entry barriers to competitors' trade secrets**  To diffuse claims that a hiring decision was made to siphon a former employer's confidential information, companies should caution new employees to refrain from using their former employer's

information and not bring any such information with them.   Employers should consider adopting policies that the company does not condone or participate in compromising third parties' legitimate business interests or misappropriating anyone's trade secrets.   Employers should ensure that such a policy is set forth in an employee handbook and mention it in offer letters to new employees, who should then provide written acknowledgement of their understanding and agreement to the policy.  Further protection is gained from periodically reiterating the policy.   It is important for a company to create a culture built on respect for the proprietary information of itself and others.

- **Avoid upfront indemnity agreements**  Evidence of Saks' pre-employment agreement to indemnify the departing employee showed its anticipation of, and willingness to deal with, litigation as well as its desire to induce the salesmen to accept the job offer without any financial risk stemming from James' attempt to enforce the non-compete obligation.  Entering into such pre-employment indemnity agreements limited Saks' ability to separate itself from responsibility for condoning the salesmen's misappropriation of James' proprietary information and client relationships.   Thus, pre-employment indemnity agreements create substantial risks both as evidence and as a financial obligation.

- **Document limitations on new employees with restrictive covenants**  Assuming the invalidity of the non-compete provision, Saks took no steps to limit the former James' salesman's activities.  Instead of cautioning him not to capitalize on client relationships developed at James' expense, Saks condoned and even encouraged the salesman to do so.   It gambled and lost in a big way.   A better approach is to limit a new employee's activities in soliciting former customers and build a data trail of new leads for him or her to get started in establishing new relationships.     In this way, a new salesperson's success is best attributable to hard work and ability rather than theft.

- **Avoid the resignation process**  Saks had knowledge of the departing employees' coordination and timing of their resignation from James.   It did so on the heels of the salesmen's representations to Saks that they had taken customer information from James while still employed.   The impact of this evidence was to show that Saks was more interested in the transition of client relationships than the salesmen's skills.  Accordingly, while a company can certainly work with arriving employees to accommodate their start dates, any deeper

involvement in the timing and manner of resignation — particularly with more than one employee going to the same new employer — may smack of conspiracy.

While the *Saks v. James* case demonstrates a worst case scenario, employers are well advised to consider these issues during the hiring and entry phase of any relationship with a new employee coming from a competitor.  The consequences of not doing so, as Saks learned, can be expensive.

---

*Paul Kennedy is a shareholder in Littler Mendelson's Washington, D.C. Office.  If you would like further information, please contact your Littler attorney at 1.888.Littler, info@littler.com, or Mr. Kennedy at pkennedy@littler.com.*

ASAP™ is published by Littler Mendelson in order to review the latest developments in employment law. ASAP™ is designed to provide accurate and informative information and should not be considered legal advice.



RECENT DEVELOPMENT

# Court Finds Texas Company Stole Trade Secrets after Hiring Employee from Competitor

**May 30, 2012**

In late May, after a three-week trial, a Houston federal court jury ruled M3 Technology, Inc. had misappropriated trade secrets from innovative engineering software provider AspenTechnology, Inc., infringed copyrights, and illicitly interfered with AspenTech's non-compete agreement with a former employee, an expert on refinery efficiency and head of AspenTech's R&D Division.

AspenTech sued the former employee and M3 in April 2010, four months after the employee resigned. AspenTech asserted the former employee violated a 1997 non-compete by prematurely joining M3, a direct competitor formed by another former AspenTech employee. The non-compete prohibited "competition" for 12 months post-employment without AspenTech's written permission. Texas law, which has grown increasingly favorable to enforcement of non-competes from 1992 to 2012, governed.

The dispute between AspenTech and the departing employee settled before trial, and included a consent permanent injunction with liquidated damages.

The jury was charged by District Judge David Hittner to consider the evidence for or against tortious interference, misappropriation, and copyright infringement by M3. The trial evidence showed M3 did not possess specific knowledge about a product (PIMS) designed to maximize refinery efficiency before the ex-employee arrived. Aspen claimed it spent $28 million to develop PIMS over 13 years.

Ultimately, AspenTech successfully persuaded the jury that M3 used secrets brought from AspenTech to compete improperly. The jury awarded AspenTech both actual and punitive damages.

This case demonstrates the risks of hiring from competitors without a rigorous risk assessment and protocol for rejecting the use of a prior employer's trade secrets.

**Information contained in this publication is intended for informational purposes only and does not constitute legal advice or opinion, nor is it a substitute for the professional judgment of an attorney.**

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.



# Insight

**IN-DEPTH DISCUSSION**

MAY 2, 2016

# Trade Secrets Finally Get Federal Law Protection

BY SCOTT MCDONALD AND JACKIE JOHNSON

***UPDATE: On May 11, 2016, President Obama signed the Defend Trade Secrets Act into law.***

On April 27, 2016, Congress passed the Defend Trade Secrets Act of 2016 (S.1890)[1] (DTSA) and sent it to President Obama, who has indicated he will sign it into law.[2] The DTSA, which will take effect on the day it is signed, will provide a new federal court civil remedy for acts of trade secret misappropriation occurring on or after the enactment date. The passage of the DTSA means trade secret owners finally have a truly uniform federal law under which to pursue trade secret misappropriation claims.

This article discusses trade secret misappropriation, outlines the provisions of this new law, and offers some practical takeaways for employers.

### Trade Secret Misappropriation – How Big a Problem is it?

*"There are only two categories of companies affected by trade-secret theft: those that know they've been compromised and those that don't know yet…"*

*—Eric Holder, former U.S. Attorney General.[3]*

---

1   S. 1890, 114th Cong. (2016) (enacted), *available at* https://www.congress.gov/bill/114th-congress/senate-bill/1890.

2   The White House, Statement of Administration Policy, S. *1890 – Defend Trade Secrets Act of 2016*, (Apr. 4, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/legislative/sap/114/saps1890s_20160404.pdf.

3   Brian Yeh, "Protection of Trade Secrets: Overview of Current Law and Legislation," The Congressional Research Service, April 22, 2016, *available at* https://www.fas.org/sgp/crs/secrecy/R43714.pdf.



littler.com • 1.888.littler • info@littler.com
©2016 Littler Mendelson, P.C. All rights reserved.

Insight

The cost of intellectual property theft to American businesses has been estimated at more than $300 billion a year.[4] Trade secret theft by employees is a significant part of this problem. It is generally much easier for an employee with access to trade secrets in the course of employment to take and use a company's trade secrets for unauthorized purposes than it is for an outside party to do so. One recent survey indicated that 79% of employees leaving certain positions like finance, sales, and marketing, took data that belonged to their employer without permission, and 56% of the individuals surveyed did not believe there was anything criminal about using a competitor's trade secrets.[5] Statistics like these indicate the issue is one every employer with trade secrets to protect should pay close attention to.

While most states follow the Uniform Trade Secrets Act (UTSA), there are still significant variations in the law and how it is applied from state to state because the states were free to modify the model statute. Many have done so through language changes while others have simply interpreted it differently.[6] And, of even more significance, there are differences in evidentiary standards, discovery rules, and procedural mechanisms for pursuing trade secret claims from state to state.[7]

These differences in trade secret protections among states have created a complicated maze for employers to navigate. Further difficulties often arise when the parties or witnesses are in different states or the misappropriating party destroys the evidence of misappropriation or takes it out of the country.[8] The DTSA will provide a new route for trade secret owners that should help address many of these problems and give employers more options to consider.

The operative provision of the 2016 Defend Trade Secrets Act provides:

> An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.

The DTSA is an amendment to the Economic Espionage Act (EEA), 18 U.S.C. §1831, *et seq.*,[9] which has been around since 1996, but until now was primarily a criminal law enforcement statute that did not provide for a private right of civil action. The DTSA now provides for civil claims and original (but not exclusive) jurisdiction in federal court over claims brought under the statute.

There are several key features to the DTSA of particular interest to employers. The DTSA:

- Provides uniform definitions for "trade secrets" and "misappropriation" that are generally consistent with the Uniform Trade Secrets Act but with a few differences.

---

4   2013 U.S. Report of the Commission on the Theft of American Intellectual Property, *available at* http://www.ipcommission.org/report/ip_commission_report_052213.pdf.

5   Press Release, Symantec (Feb. 6, 2013), *available at* https://www.symantec.com/about/newsroom/press-releases/2013/symantec_0206_01.

6   The UTSA has been adopted in all states except New York, Massachusetts, and arguably North Carolina (which has adopted a very similar law); *see* Malsberger, *Trade Secrets: A State-by-State Survey* (BNA/ABA 5th Edition 2014).

7   David S. Almeling, *Four Reasons to Enact a Federal Trade Secrets Act*, Fordham Intellectual Property, Media & Entertainment Law Journal XIX.3 (2009), at 774; *see also*, S. Rept. 114-220, at 2-3 ("Although the differences between State laws and the UTSA are generally relatively minor, they can prove case-dispositive: they may affect which party has the burden of establishing that a trade secret is not readily ascertainable, whether the owner has any rights against a party that innocently acquires a trade secret, the scope of information protectable as a trade secret, and what measures are necessary to satisfy the requirement that the owner employ 'reasonable measures' to maintain secrecy of the information." *See also*, Yeh, "Protection of Trade Secrets: Overview of Current Law and Legislation," supra note 3, p.9.

8   Yeh, "Protection of Trade Secrets: Overview of Current Law and Legislation," *supra* note 3, p.22, (quoting Senator Coons' comment that "[f]ederal courts are better suited to working across state and national boundaries to facilitate discovery, serve defendants or witnesses, or prevent a party from leaving the country," News Release, *Senators Coons, Hatch Introduce Bill to Combat Theft of Trade Secrets and Protect Jobs* (Apr. 29, 2014.

9   The quoted provisions will be inserted in the EEA at 18 U.S.C. § 1836(b).

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

Insight   littler.com | 1-888.Littler | info@littler.com

- Allows for a civil action in federal courts, providing a uniform set of procedural and evidentiary rules (the Federal Rules of Civil Procedure and Rules of Evidence).
- Allows for the seizure of trade secrets from an alleged misappropriator without notice or an evidentiary hearing in extraordinary circumstances.
- Provides for a variety of different remedies including injunctive relief (for actual and threatened misappropriation), damages (under a variety of different theories), and exemplary damages (up to two times the amount of damages).
- Limits injunctive relief that can be awarded to avoid conflicts with state law limitations regarding noncompete contracts and other restraints of trade.
- Allows a prevailing party to recover attorneys' fees under certain conditions.
- Provides protection from prosecution for whistleblowers and retaliation claimants.
- Requires that employers provide employees notice of the whistleblower protection in order to preserve the ability to recover attorneys' fees or exemplary damages.
- Does not preempt or eliminate state law claims and remedies related to trade secrets, or modify other federal laws on intellectual property or unauthorized computer access.
- Has a three-year statute of limitations that applies a discovery rule.
- Addresses **international** trade secret theft and economic espionage.

## Uniform Definitions

The DTSA retains most of the definition of "trade secrets" used in the Economic Espionage Act, which generally follows the UTSA definition. Under this definition, the term "trade secrets" covers "all forms and types of" information, regardless of how stored, where:

> the owner thereof has taken reasonable measures to keep such information secret; and
>
> the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information;...

The DTSA adds definitions for "misappropriation" and "improper means" to the Economic Espionage Act.

Under the DTSA definition, the term "misappropriation" tracks the UTSA and divides misappropriation into two categories: (1) improper acquisition and (2) improper use or disclosure. More specifically, it provides that "misappropriation" means:

1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2) disclosure or use of a trade secret of another without express or implied consent by a person who

   a) used improper means to acquire knowledge of the trade secret; or

   b) at the time of disclosure or use, knew or had reason to know that his/her knowledge of the trade secret was

      i. derived from or through a person who had utilized improper means to acquire it;

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

ii.  acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

iii.  derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

c)  before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

The DTSA states that "improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means, but does <u>not</u> include reverse engineering, independent derivation, or any other lawful means of acquisition.

## Uniform Procedures and Evidentiary Standards

The DTSA provides that the U.S. district courts have original jurisdiction over civil actions brought under the law. It is notable that this statement of jurisdiction is not exclusive. This may create issues as to whether pleading a claim under the DTSA is compulsory in certain circumstances if it is going to be preserved, even if the party is attempting to litigate only state law claims in state court.[10] This issue aside, employers will still have the ability to capitalize on uniformity advantages of the DTSA because as long as the action is brought in a federal court, the Federal Rules of Civil Procedure and Federal Rules of Evidence will control instead of state procedural and evidentiary rules.

To avoid unnecessary disputes related to discovery protections, the statute expressly states that a court may **not** authorize or direct the disclosure of any information the owner asserts to be a trade secret unless the court allows the owner the opportunity to file a submission under seal that describes the interest of the owner in keeping the information confidential. And, providing information relating to a trade secret to the government or a court in connection with a prosecution under the DTSA constitutes no waiver of trade secret protection unless the trade secret owner expressly consents to such waiver.

## Seizure Feature

A unique feature of the DTSA is its seizure of evidence provisions. The legislature recognized significant concerns over the potential for trade secrets to be compromised through use that destroys the value of its secret nature before an evidentiary hearing can be held, and the possibility of destruction of evidence or its removal from the country by a misappropriator as soon as the person or entity learns legal action is being taken. Consequently, the law provides for the ability of a party to, on an ex parte basis (meaning without notice to the opposing party), apply for and secure an order from a court to have the trade secret material seized by law enforcement authorities (state or federal) – thereby removing the trade secret information from the alleged misappropriator's possession until an evidentiary hearing can be held.

However, the DTSA also expressed the sense of Congress that it is important when applying this seizure mechanism to balance the need to prevent or remedy misappropriation against both (a) legitimate interests of the party accused of wrongdoing and (b) the need to avoid interrupting the business of third parties. The seizure

---

10   *See, e.g., Allied Erecting and Dismantling Co. v. Genesis Equipment & Manufacturing, Inc.,* 805 F.3d 701, 708-709 (6th Cir. 2015) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action.")(quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L.Ed. 2d 103 (1981)); Fed. R. Civ. P. 13(a)(1)–(a)(1)(A) ("A pleading must state as a counterclaim any claim that— *at the time of its service*—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…" (emphasis added)).

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

Insight                                    Audersdom 214a6.flage@uyyeo@nxeo.com

mechanism is an extraordinary remedy and has several safeguards. These safeguards include the requirement to show "extraordinary circumstances" such as evidence that a normal court order would not be complied with by the alleged misappropriator, or that immediate irreparable injury will occur absent seizure, and that the risk of harm to the business is greater than that to the misappropriator or third parties. The entity alleging misappropriation must also show it is likely to prevail on the merits. In addition, the entity cannot have publicized the requested seizure.

The seizure order must contain provisions protecting the confidentiality of the information, provide guidance to law enforcement officials executing the seizure on their scope of authority, and require the applicant to post a bond or other security. An evidentiary hearing is then set to determine whether the seizure order should remain in place. The applicant must prove the elements to sustain the seizure.

The DTSA contains provisions prohibiting publicity of the seizure that might damage the alleged misappropriator. There are special provisions covering materials held in the custody of the court as well, such as rules regarding the storage medium, steps to be taken to protect the confidentiality of the materials seized, and appointment of a special master to handle logistical matters. And, a party or a person who claims to have an interest in the subject matter seized may make a motion at any time, which may be heard *ex parte*, to encrypt any material seized.

Abuse of the seizure mechanism has consequences. A party that can prove it was damaged by a wrongful or excessive seizure order can potentially obtain lost profits, costs of materials, loss of goodwill, punitive/exemplary damages and attorneys' fees.

## Injunctive Relief Standards

The DTSA expressly provides for injunctive relief as a remedy to prevent any actual or threatened misappropriation "on such terms as the court deems reasonable." It allows for an injunction requiring a party to take affirmative actions to protect a trade secret. And, under exceptional circumstances that render an injunction inequitable, the future use of the trade secret can be conditioned on the payment of a reasonable royalty to the trade secret owner for as long a period of time as the misappropriators could have been prohibited from using the trade secret.

However, there are also some unique limitations to injunctive relief under the DTSA. The DTSA provides that an injunction under the statute may not prevent a person from entering into an employment relationship, and any conditions or limitations placed on an individual's employment as a result of an injunction must be based on evidence of threatened misappropriation and not "merely" the fact that the individual knows certain information. This signals a limitation on the use of the inevitable disclosure doctrine as it has been applied in some jurisdictions.

In addition, the injunction cannot conflict with an applicable state law prohibiting restraints on the practice of a lawful profession, trade or business. This is clearly intended to create some deference to state noncompete statutes such as the law in California that would prohibit or put significant limits on actions that restrain an employee's employment options.[11]

---

[11]   Cal. Bus. & Prof. Code § 16600.

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

Insight   littler.com • 1.888.Littler • info@littler.com

## Whistleblower/Retaliation Claim Immunity Protections

The DTSA contains a provision designed to protect whistleblowers. Specifically, it provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made "in confidence" to a federal, state, or local government official, either directly or indirectly, or to an attorney, provided that: it is disclosed "solely for the purpose of" reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding filed under seal so that it is not disclosed to the public.

The law also contains an anti-retaliation provision. Under the DTSA, an individual who files a lawsuit for retaliation stemming from the employer's suspected law violation may disclose the trade secret to his/her attorney and use the trade secret information in the court proceeding, provided the individual files any document containing the trade secret under seal, and does not disclose the trade secret, except pursuant to court order.

## Notice Requirement

The DTSA provides that employers must give notice of the immunity provisions of the law described above in any contract or agreement with an employee that governs the use of a trade secret or other confidential information. An employer will be deemed to be in compliance with this notice requirement if it provides a cross-reference to a policy document provided to the employee that describes the employer's reporting policy for a suspected law violation.

If an employer does not comply with the notice requirement described above, the employer may not be awarded exemplary damages or attorneys' fees under the statute in an action against an employee who misappropriates trade secrets. The notice obligation for contracts applies only to contracts that are entered into or updated after the date of enactment of the DTSA. Consequently, the law does not require employers to replace existing contracts with new ones. However, for existing employees, even if an existing contract is not replaced or modified, notice of a policy amendment applicable to the employee that provides notice of the immunity protection is still advisable.

Notably, the DTSA's definition of "employee" for these protections is expansive. It defines employee to include not only ordinary employees but also "any individual performing work as a contractor or consultant for an employer." This suggests that there is a need to examine not only ordinary employee policy documents for purposes of the statutory notice but also independent contractor and consultant agreements.

## No Preemptive Effect

The DTSA has no preemptive effect on other trade secret protection laws. It is part of the Economic Espionage Act, which already provides that it "shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret, or to affect the otherwise lawful disclosure of information by any Government employee under section 552 of title 5 (commonly known as the Freedom of Information Act)." The DTSA confirms that it retains this limitation by stating that "[n]othing in the amendments made by this section shall be construed to modify the rule of construction under section 1838 of title 18, United States Code, or to preempt any other provision of law."

The DTSA expressly provides that it will not be construed to be "a law pertaining to intellectual property" for purposes of any other act of Congress (presumably intended to distinguish it from federal patent, trademark,

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

and copyright laws). And, while there are whistleblower and retaliation claimant protections in the DTSA, the DTSA is also clear in stating that nothing in its protections will be construed to "authorize, or limit liability for, an act that is otherwise prohibited by law, such as unlawful access of matter by unauthorized means." This would presumably include conduct such as trespass, ordinary theft, or unauthorized access to a computer system that would violate the Federal Computer Fraud and Abuse Act.[12]

## Statute of Limitations

A civil action under the DTSA may not be commenced later than three years after the date on which the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For these purposes, "a continuing misappropriation constitutes a single claim of misappropriation."

This single-claim construction that triggers the running of the statute of limitations is the same construction used in the UTSA. Consequently, there is a considerable body of law to help guide employers on the timing issues it creates. However, this does not mean that the issue is without wrinkles. The knowledge and intent elements in the definition of "misappropriation" have created some difficult issues with the statute of limitations under the UTSA, and those will likely carry through to the DTSA.[13]

## Enhanced Focus on International Trade Secret Theft

A significant part of the congressional focus on trade secret laws that gave birth to the DTSA was concern over international economic espionage.[14] There is no uniformly applicable international law or treaty that specifically addresses the protection of trade secrets, and the protections that do exist within the rules of the World Trade Organization and similar bodies have significant weaknesses.[15] Some have argued that "the United States has not consistently received cooperation from international jurisdictions in protecting trade secrets in part because it does not have its own federal civil statute to reference in encouraging the adoption and enforcement of similar legislation by its treaty partners."[16] The DTSA remedies this problem.

There are also a number of features in the DTSA (beyond the importance of its existence as a *federal* law protecting trade secrets) that are designed to help focus on and address the international theft issue. The seizure feature is expressly designed to be used "in instances in which a defendant is seeking to flee the country…", as well as in other circumstances.[17] And, the DTSA requires the Attorney General to make a biannual report to the House and Senate Judiciary Committees on international trade secret theft affecting U.S. companies. The report is to include recommendations for legislative and executive actions to address the problem along with educational material for U.S. companies to help protect themselves and to provide a means for U.S. companies to report any theft occurring outside the United States.

---

12    18 U.S.C §1030, *et. seq.*

13    *See e.g., Cypress Semiconductor Corp. v. Superior Court,* 163 Cal. App. 4th 575 (2008).

14    *See* Yeh, "Protection of Trade Secrets: Overview of Current Law and Legislation," *supra* note 3, p. 1 (citing *Cyber Espionage and the Theft of U.S. Intellectual Property and Technology: Hearings Before the House Energy & Commerce Comm., Subcomm. on Oversight and Investigations,* 113th Cong. 1st Sess. (2013); *Economic Espionage and Trade Secret Theft: Are Our Laws Adequate for Today's Threats?: Hearings Before the Senate Judiciary Comm., Subcomm. on Crime and Terrorism,* 113th Cong. 2d Sess. (2014); *Trade Secrets: Promoting and Protecting American Innovation, Competitiveness and Market Access in Foreign Markets: Hearings Before the House Judiciary Comm., Subcomm. on Courts, Intellectual Property and Internet,* 113th Cong. 2d Sess. (2014)).

15    *Id.* at 11-15, 16-18 (discussing current administration initiatives to address the international problem).

16    *Trade Secrets: Promoting and Protecting American Innovation, Competitiveness and Market Access in Foreign Markets: Hearings Before the House Judiciary Comm., Subcomm. on Courts, Intellectual Property and Internet,* 113th Cong. 2d Sess. (2014) (statement of Thaddeus Burns, Senior Counsel, General Electric, on behalf of the Intellectual Property Owners Association), see also, Yeh, "Protection of Trade Secrets: Overview of Current Law and Legislation," p. 20.

17    S. Rept. 114-220, at 6.

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.

Insight

**Practical Takeaways**

Employers looking to take advantage of the new options provided under the DTSA should consider the following practical measures:

1. Examine contracts and confidential information protection policies with employees and independent contractors to evaluate the need for notice language regarding the DTSA whistleblower and retaliation claimant protections. Inclusion of this language can help preserve remedies for misappropriation.

2. Examine contracts covering confidential information and/or trade secrets and consider the use of savings clause language to help safeguard rights provided under the DTSA.

3. Examine applicable state law options in the most likely states for a legal action involving your company (e.g., the location of the principal place of business), and identify in advance any substantive and procedural advantages of the state law versus the new federal law (DTSA) so that a decision on which option to pursue (state or federal court action) can be made more quickly when need for injunctive relief arises.

4. Examine hiring and on-boarding procedures to make sure that reasonable steps are being taken to avoid newly hired employees bringing trade secrets of a prior employer into the workplace or using them.

5. Examine employee termination and exit processing procedures to ensure appropriate protocols are in place to secure the return of confidential and trade secret information that might be in a departing employee's possession or control, and to identify criteria indicative of the possible need to pursue a seizure order.

6. Consider establishing an identification process to flag in advance trade secret information that is of the highest priority to protect, and that might require the pursuit of a seizure order if misappropriated.

7. If international theft is a concern, monitor the biannual reports from the Attorney General to Congress and the recommendations and educational materials generated by this process, and evaluate reporting options to be pursued so that the company's industry is appropriately represented in any future congressional evaluations and developments on the issue.

Insight is published by Littler Mendelson in order to review the latest developments in employment law. Insight is designed to provide accurate and informative information and should not be considered legal advice.



RECENT DEVELOPMENT

# Recent Study Reveals Troubling Amount of Employee Misuse and Theft of Company Data

**March 19, 2013**

A recent study by independent data privacy research firm Ponemon Institute of 3,317 individuals in six industrialized countries found that employees are moving intellectual property, including trade secrets, outside their companies in all directions.



Over half of those surveyed admitted they had emailed business documents to their personal email accounts; 41% said they do this at least once a week. The same percentage of respondents confessed they downloaded company IP to personally-owned tablets or smartphones. A majority of those surveyed did not believe this was "wrong." The most common justification for data misuse was that "it's not hurting the company." 59% of U.S. survey respondents believed it would be fine for a software developer to re-use source code he created for a prior employer, even without permission (a higher percentage than in the U.K., France, China, or South Korea). Furthermore, 37% of the employees polled reported they use file-sharing apps (such as Google Docs™ or Dropbox™) in the cloud, without permission from their employers. The majority of survey respondents admitted they did not take any steps to delete the data after transferring it. Thus, when employees leave, they may retain confidential information, without malice or even forethought. Half of the survey respondents admit they left employment with portions of their former employer's confidential information, and 40% say they will use it in their new jobs.

This survey exposes several possible risks for employers, including: (a) as companies lose employees, they may also be losing trade secrets to competitors; and (b) as they hire employees, they may be unwittingly receiving the benefit of unfairly retained trade secrets. 51% of the employees polled reported: "My company doesn't strictly enforce its policies."

Employers can take several steps to attempt to reduce these risks. One way to minimize the risk of losing proprietary information to former employees is to implement—and enforce—formal training policies for management and employees surrounding data security and privacy. Employers should also consider establishing procedures to monitor and regulate employee access privileges. Likewise, having employees sign well-drafted non-disclosure agreements during employment should help employers combat the loss of company data (including trade secrets) after employees depart.

*Photo credit: dra_schwartz*

**Information contained in this publication is intended for informational purposes only and does not constitute legal advice or opinion, nor is it a substitute for the professional judgment of an attorney.**

© 2020 Littler Mendelson P.C.
Littler Mendelson is part of the international legal practice Littler Global which operates worldwide through a number of separate legal entities. Attorney Advertising.