**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| CENTER FOR WORKPLACE COMPLIANCE (f/k/a EQUAL EMPLOYMENT ADVISORY COUNCIL), Plaintiff, | |
| v. | Case No. 1:20-cv-01387-AJT-JFA |
| LITTLER MENDELSON, P.C., LANCE E. GIBBONS, THERESA GOKTURK (a/k/a CHRIS GOKTURK), and DOE DEFENDANTS 1-10, INCLUSIVE, | |
| Defendants. | JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    PARTIES .............................................................................................................. 5

III.   JURISDICTION AND VENUE .......................................................................... 7

IV.    FACTUAL BACKGROUND ............................................................................... 9

    A.    CWC Background ..................................................................................... 9

    B.    CWC Membership .................................................................................... 9

        1.    Application and Approval Process Based on Eligibility
            Requirements ............................................................................... 9

        2.    Law Firms Are Ineligible for Membership ............................. 10

    C.    CWC's Members-Only Site and Resources ........................................... 11

    D.    Former CWC Staff Members Lance E. Gibbons and Chris Gokturk Join
        Littler .................................................................................................... 14

    E.    Unlawful Conduct Using Littler's Infrastructure, Platform and Resources
        to Obtain and Use CWC's Information and Infringe Copyrighted Materials
        Related to Littler's Practice Areas, Business Interests and Profits ...................... 17

    F.    Obtaining and Using CWC Information and Infringing CWC materials to
        Promote Littler's Business Interests and Profits ................................... 23

    G.    Littler Presentations Promoting Littler's Business Interests and Profits ............ 25

    H.    Littler Publications Promoting Littler's Business Interests and Profits .............. 34

    I.    Early Efforts to Obtain CWC's Intellectual Property, Make False and
        Misleading Statements and Ask Others to Engage in Copyright
        Infringement and Violations of Law and the CWC Restrictions to the
        Members-Only Site ............................................................................... 35

    J.    Willfully Pursuing Other Avenues to Obtain Information and Infringe
        Intellectual Property on the CWC Members-Only Site ......................... 38

    K.    False and Misleading Statements, Deceit and Concealment to Obtain
        CWC's Intellectual Property ................................................................. 41

    L.    Password Changes ................................................................................. 44

        1.    Password Change:  June 5, 2019 ............................................. 46

        2.    Password Change:  September 27, 2019 .................................. 47

        3.    Password Change:  February 19, 2020 .................................... 48

    M.    Infringement Committed Willfully and with Intent to Engage in Other
        Unlawful Activity ................................................................................. 49

# TABLE OF CONTENTS
(continued)

**Page**

N.  Littler's Access to the CWC Members-Only Confidential Connect Communications Platform .................................................................. 51

O.  Discovery of the Littler Infringement of the 2017 CWC Pre-Existing Big Data Analytics Presentation .......................................................... 53

V.  COPYRIGHTED WORKS ........................................................................ 60

VI.  COUNT 1: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF WORKS FROM THE CWC MEMBERS-ONLY SITE (Defendants Littler, Gibbons and Does 1-10) ........................................... 61

VII.  COUNT 2: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(2)(C) OBTAINING INFORMATION FROM THE CWC MEMBERS-ONLY SITE (Defendants Littler, Gibbons and Does 1-10) ........................... 65

VIII.  COUNT 3: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(4) COMPUTER FRAUD (Defendants Littler, Gibbons and Does 1-10) ......... 67

IX.  COUNT 4: FRAUD (Defendants Littler, Gibbons and Does 1-10) ............................... 69

X.  COUNT 5: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF THE 2017 CWC PRE-EXISTING BIG DATA ANALYTICS PRESENTATION (Defendants Littler, Gokturk, and Does 1-10) ................................ 72

XI.  COUNT 6: ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202 (Defendants Littler, Gokturk, and Does 1-10) .................................................................................... 75

XII.  COUNT 7: VICARIOUS COPYRIGHT INFRINGEMENT OF CWC WORKS (Defendant Littler and Does 1-10) ......................................................... 76

PRAYER FOR RELIEF .................................................................................. 80

Plaintiff non-profit Center for Workplace Compliance ("CWC," "Association," or "Plaintiff"), by and through their undersigned counsel, brings this action against Defendants Littler Mendelson, P.C. ("Littler"), Defendant Littler Shareholder Lance E. Gibbons ("Gibbons"), and Defendant Littler Principal Theresa Gokturk (a/k/a Chris Gokturk) ("Gokturk" or "Chris Gokturk") (collectively, "Littler Defendants"), on the grounds and seeking the relief as set forth below:

## I.      INTRODUCTION

1.      This case involves the misappropriation of a voluminous amount of CWC's intellectual property and information that was infringed and unlawfully obtained by, and used for the benefit and profit of, Defendant Littler.  As set forth below, the recurring and extensive misappropriation of CWC's intellectual property by the Littler Defendants occurred each and every month during the seventeen months from November 2018 through March 2020.[1]

2.      For more than forty years, Plaintiff non-profit CWC has been serving its member employers by helping them understand and manage their workplace compliance requirements and risks, primarily but not exclusively in the areas of equal employment opportunity and affirmative action.

3.      For just as long, the Association's membership eligibility rules have prohibited law firms, consulting firms, and certain other organizations who provide employers with workplace legal and compliance services from becoming Association members, and from accessing the restricted content from the CWC's password-protected and member-restricted website ("CWC Members-Only Site") generated exclusively for the benefit of CWC's member employers and paid for by their membership dues.[2]

---

[1] *See* Exhibit A (List of CWC Information Obtained by the Littler IP Address), attached hereto and incorporated herein; *see also* Exhibit B (CWC Copyright Registrations), attached hereto and incorporated herein.
[2] *See* Exhibit C (CWC Membership Application), attached hereto and incorporated herein.

4.      Given the Association's clear and longstanding rules prohibiting law firms from accessing its member-restricted content, CWC was surprised to discover that one or more users operating through an IP address belonging to Defendant Littler, self-described as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[3] had been used to download and infringe what was initially believed to be a limited number of member-restricted materials from the CWC Members-Only Site.

5.      The scale and scope of this unlawful conduct from the Littler IP address was extraordinary.  Over the course of approximately seventeen (17) months beginning at least by November 16, 2018, Defendant Littler's servers were used to unlawfully obtain CWC Members-Only Site materials approximately four hundred twenty-six (426) times, and to unlawfully infringe CWC works approximately four hundred and seventeen (417) times.  The period of infringement and obtaining CWC information spanned 489 days.  This misappropriated content consisted of proprietary and member-restricted materials more than 2,100 pages including memoranda, templates, checklists, guides, and other resources that CWC produced for the exclusive use and benefit of its member employers.

6.      Further infringement of other materials was uncovered.  CWC discovered that Defendant Littler's recurring misappropriation of CWC's intellectual property had been facilitated by at least two Littler representatives and agents, both of whom were former CWC staff members: Defendant Littler Shareholder Lance E. Gibbons, who previously served as CWC's Assistant General Counsel, and Defendant Littler Principal Chris Gokturk, who previously served as CWC's Senior Advisor, Compliance Solutions.

---

[3] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018) ("Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020), attached hereto and incorporated herein; *see also* note 11, infra.

7.     As former CWC staff members, both Defendant Gibbons and Defendant Gokturk were familiar with the proprietary nature of the CWC intellectual property, the manner in which the intellectual property was created, and the restrictions on its access and use.

8.     Using Littler's information technology and other resources, Defendants Littler, Gibbons, and Gokturk engaged in an extensive campaign to misappropriate, infringe and use CWC's material and information in at least five distinct ways for the benefit and profit of Littler:

a.     First, Defendants Littler and Littler Shareholder Gibbons, using a Littler IP address,[4] accessed, selected, obtained, viewed, downloaded, retained, printed, used, and/or infringed CWC's information and copyrighted materials from the CWC Members-Only Site, which they were prohibited from doing so.

b.     Second, Defendants Littler and Littler Shareholder Gibbons used the CWC information and copyrighted materials that was infringed, unlawfully obtained, and downloaded to provide Littler clients with oral and written legal services and work product, which Littler billed for.

c.     Third, in 2019 Defendants Littler and Littler Principal Chris Gokturk infringed CWC material by using it to create derivative works, including Littler presentations shown to prospective and current Littler clients.  For example, as further detailed below, Defendants Littler and Defendant Gokturk infringed the copyright in a 2017 CWC Pre-Existing Big Data Analytics Presentation[5] by creating derivative works, including at least one Littler presentation entitled "Technology in Recruiting and Hiring:  Hidden Legal Risks," dated October 18, 2019 ("October 2019 Infringing Littler Presentation").  The infringing 2019 Littler presentation falsely represented Littler as the original author of content copied directly from the 2017 CWC Pre-Existing Big Data Analytics

---

[4] IP address, 199.108.124.252, registered to Littler in 2014 ("Littler IP address"), as further described below.
[5] "Big Data Analytics and Artificial Intelligence:  The Compliance and Diversity Implications Of Automating Early State Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252).

Presentation, and from CWC member-restricted memoranda, and were presented for purposes of engaging prospective and current Littler clients.

d.      Fourth, on March 18, 2020, Defendants Littler and Littler Shareholder Lance E. Gibbons accessed and obtained information from CWC's highly confidential Connect CWC Collaboration Center Communication Platform which is a confidential online community for CWC members, and only CWC members, to share ideas, benchmark, and connect with each other, as described below.

e.      Fifth, CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that all of the Littler Defendants produced an indeterminate number of infringing derivative works in client communications or other work product produced within the course and scope of Defendant Gibbons's and Defendant Gokturk's employment and for the benefit of Littler, with the actual or implied knowledge of Littler, as further described below.

9.      With the explicit or tacit approval of Defendant Littler, Defendants Gibbons and Gokturk engaged in this unlawful conduct while serving as Littler representatives and agents, providing legal and related services, promoting and pursuing the interests and profits of Littler to obtain, infringe, and use CWC's information and copyright protected materials related directly to (1) the practice areas of the Littler Defendants; (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

10.     The Littler Defendants, using the Littler IP address and Littler resources, engaged in fraud to access, select, obtain, view, download, use, and/or infringe CWC's information and copyrighted materials.  For example, as further described below, some or all of the Littler Defendants individually and/or collectively have falsely represented that Littler was the original author of content copied from CWC materials.  The relevant conduct has included a series of false and misleading

4

statements to an organization that was both a Littler client and a CWC member for the purpose of obtaining and retaining use of login credentials of an individual employed by that organizations to access the CWC Members-Only Site without authorization and in violation of CWC's membership policies.  In using the login credentials of another individual, the Defendants falsely represented that the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site.  The Defendants concealing the fact that they were actually making access to the CWC Members-Only Site since they were ineligible to do so.

11.     Plaintiff Center for Workplace Compliance, by and through its undersigned counsel, brings this action to identify, recover, and enjoin the further use of CWC's information and copyrighted materials; to recover appropriate statutory, punitive and other damages and costs suffered as a result of the Defendants' unlawful conduct, including reasonable attorney's fees; and to compel a full accounting of all CWC information and materials, including but not limited to derivative works, within Littler's possession custody or control, and that were provided to any Littler shareholders, associates, attorneys, principals, employees, and/or agents, or that were provided by Littler to clients and any other third parties, along with a full accounting of any monetary or other benefits received by each Defendant as a result of their unlawful acts, as set forth below.

## II.     PARTIES

12.     Plaintiff CWC is a non-profit association incorporated in the District of Columbia, with its principal place of business at 1501 M Street, N.W., Washington, DC 20005.

13.     Defendant Littler is a professional corporation incorporated in the State of California, with a principal office address of 333 Bush Street, 34th Floor, San Francisco, California, 94104. Littler's Workplace Policy Institute® (WPI™) provides guidance on legislative and regulatory workplace issues on local, state and federal labor policy developments.  (Littler and Littler's Workplace Policy Institute® (WPI™) are collectively referred to herein as "Littler").  Among

Littler's many offices are the Littler Washington, DC Office, located at 815 Connecticut Avenue NW, Suite 400, Washington, DC 20006, and the Littler Tysons Corner Office, located at 1650 Tysons Boulevard, Suite 700, Tysons Corner, VA  22102.

14.     Defendant Lance E. Gibbons is an individual residing at 19198 Chartier Drive, Leesburg, Virginia, 20176, and served as a Littler Shareholder during July 25, 2018 to the beginning of April 2020 in the Littler Washington, DC and Tysons Corner Offices, and during June 2007 to July 2015 in Littler's Pittsburgh, PA Office.  From approximately October 1, 2017 to July 20, 2018, Defendant Gibbons served as an Assistant General Counsel of CWC, and in other roles with CWC's affiliated organizations.  During July 25, 2018 to the beginning of April 2020, Defendant Gibbons was acting as a shareholder, representative, and agent of Littler and within the course and scope of his employment with Littler as further described below.

15.     Defendant Chris Gokturk is an individual residing at 4908 Montgomery Street, Annandale, Virginia, 22003, and since February 26, 2019 has served as a Littler Principal in the Littler Tysons Corner Office.  During 2002 to February 2019, Defendant Gokturk served as a staff member of CWC and its affiliated organizations, most recently as a CWC Senior Advisor, Compliance Solutions.  During February 26, 2019 to the present, Defendant Gokturk was acting as a principal, representative and agent of Littler and within the course and scope of her employment with Littler as further described below.

16.     Doe Defendants 1-10 are as-yet-unidentified individuals who are Littler shareholders, associates, attorneys, principals, employees, and/or agents, who participated and aided and abetted in the counts alleged in this Complaint.  CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that each of the Doe Defendants is responsible in some manner for the events and acts alleged herein, or may have engaged in further misappropriation of CWC intellectual

property once the full scope of the conduct is determined, in a scope to be fully determined at trial. CWC will seek leave to amend the Complaint to allege the true names and capacities of Doe Defendants 1 to 10 when their identities are ascertained. At all times relevant, the Doe Defendants were acting as shareholders, associates, attorneys, principals, employees, representatives, or agents of Littler, and acted within the course and scope of their employment with Littler as further described below.

## III. JURISDICTION AND VENUE

17. This is a civil action for damages and injunctive relief against Defendants Littler, Gibbons and Gokturk arising under the Copyright Act, 17 U.S.C. § 101, *et seq*., and against Defendants Littler and Gibbons under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(g), and fraud, and against Defendants Littler and Gokturk under the Alteration or Removal of Copyright Management Information, 17 U.S.C. § 1202, brought due to the infringement of CWC's copyrighted works and the unauthorized access to information.

18. This Court has federal question jurisdiction over Plaintiff's Copyright Act, Computer Fraud and Abuse Act, Alteration or Removal of Copyright Management Information counts pursuant to 28 U.S.C. § 1331, and original jurisdiction over the Copyright Act claim pursuant to 28 U.S.C. § 1338. This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff CWC is a citizen of the District of Columbia, and Defendant Littler, upon information and belief, is a citizen of California, and Defendants Gibbons and Gokturk are citizens of Virginia, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

19. This Court has supplemental jurisdiction over Plaintiff's claim for fraud which arises from the same set of operative facts as at least some of Plaintiff's counts under the Computer Fraud and Abuse Act, such that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Littler because it (1) directly or through its shareholders, associates, attorneys, principals, employees, and/or agents accessed through Littler's computer network infrastructure the servers that host CWC's website, located in Ashburn, Virginia, including the CWC Members-Only Site that are password-protected and restricted only to CWC's members, (2) maintains an office at 1650 Tysons Boulevard, Suite 700, Tysons Corner, Virginia 22102 at which Defendant Gibbons, Defendant Gokturk, and/or Does 1-10, at least in part committed the acts constituting violations of the Copyright Act, Computer Fraud and Abuse Act, Alteration or Removal of Copyright Management Information and fraud alleged in this Complaint, and/or (3) has otherwise established minimum contacts with Virginia and/or this judicial district such that the exercise of personal jurisdiction over Littler would not offend traditional notions of fair play and justice.

21.     This Court has personal jurisdiction over Defendants Gibbons and Gokturk because, as noted, they are both residents of Virginia and of this judicial district, and a substantial part of the events or omissions giving rise to CWC's claims occurred within this district and/or a substantial part of the property that is the subject of the action is situated within this district.

22.     Venue is proper in this Court as to all parties pursuant to 28 U.S.C. § 1391, as each Defendant is subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to this action occurred in this district.  Venue for the Copyright Act and Alteration or Removal of Copyright Management Information counts also is prepare in this Court as to all parties pursuant to 28 U.S.C. § 1400(a),  Pursuant to Local Civil Rule 3 and 28 U.S.C. § 1391, venue is proper as to all parties in the Alexandria Division of the Eastern District of Virginia given that a substantial portion of the events or omissions giving rise to CWC's claims occurred in the Alexandria Division of the Eastern District of Virginia, including at Littler's Tysons Corner office,

and the servers hosting CWC's website are both located in the Alexandria Division, and because
Defendants Gibbons and Gokturk are both residents of the Alexandria Division.

### IV.     FACTUAL BACKGROUND

#### A.     CWC Background

23.     Founded in 1976, CWC is a non-profit association dedicated to helping its member
employers understand and manage their workplace compliance requirements and risks.  CWC is
committed to effective labor and employment compliance, lawful diversity and inclusion efforts, and
the sensible regulation of the U.S. workplace.

24.     Since its founding in 1976, CWC's membership has included and CWC has served
hundreds of the nation's largest employers and organizations of all sizes, including employers from
all major U.S. sectors and industries and many Fortune 500 organizations.

25.     For many years, CWC has held three annual conferences, including an annual Policy
Conference (focusing on labor and employment policy and generally open only to CWC members),
an annual Compliance Conference (concerning compliance and diversity management and generally
open only to CWC members), and a Talent Acquisition Compliance Summit (addressing the unique
requirements affecting talent acquisition and open to both members and non-members).

#### B.     CWC Membership

##### 1.     Application and Approval Process Based on Eligibility Requirements

26.     Prospective CWC members complete an application that confirms eligibility
requirements and provides additional information including name, company, and e-mail address.  The
membership application is reviewed by the membership services team.  The CWC board of directors
reviews and provides final approval of each new membership application before an organization is
permitted to join the Association.

27.     Each CWC member employer designates a Primary Representative (or "Prime Rep") to serve as the principal membership contact for the employer.  Prime Reps receive "prime-rep-only" communications, vote on proposed changes to CWC by-laws, and manage membership renewals.

### 2.     Law Firms Are Ineligible for Membership

28.     Law firms are expressly excluded from membership under the CWC membership guidelines and requirements.  Specifically, CWC's membership eligibility policy states that "[l]aw firms, consulting firms, and other organizations providing workplace legal and compliance services are not eligible for membership."[6]  This policy has existed since the Association's founding in 1976 to prevent law firms and consulting firms from using CWC's proprietary material to provide legal services for their clients and to facilitate the candid and open discussion of workplace compliance and risk management issues by the Association's member employers.

29.     For example, CWC members use CWC's content to promote and manage their workplace compliance requirements and risks.  Active participants employed by CWC's members typically include human resource employees and in-house labor and employment attorneys focused on issues such as compensation, talent acquisition, compliance, equal employment opportunities/affirmative action, diversity and inclusion, training and development, and related topics.

30.     Unlike CWC's member employers, who use the CWC's materials to manage their workplace compliance needs, a law firm's business is focused on providing employment-related legal advice, counsel, services, and representation to employers like those who are members of CWC.

---

[6] *See* Exhibit C (CWC Membership Application).

31.     Defendant Littler, along with its shareholders, associates, attorneys, principals, employees, and agents, as well as Defendants Gibbons and Gokturk, are ineligible from being members of CWC based on the CWC's membership restrictions.

32.     If Littler had applied for membership, Littler would have been denied under the established rules governing membership.  Specifically, the application would have been screened for eligibility, a process that includes review by CWC's board of directors.

33.     As former CWC staff members, both Defendant Gibbons and Defendant Gokturk were familiar with CWC's membership restrictions.  Because Defendants Gibbons and Gokturk were aware of the law firm membership restriction, they knew that Littler was ineligible for CWC membership.

34.     In this case, as described below, the Littler Defendants used CWC's information and materials to profit and benefit in the delivery of Defendant Littler's legal business.  Avoiding this type of unauthorized use of CWC's materials—which undermines its business—is directly contrary to the purpose of CWC's membership restrictions.

**C.     CWC's Members-Only Site and Resources**

35.     For more than twenty (20) years, CWC has provided valued, timely, and proprietary workplace compliance information through the CWC Members-Only Site.  Many of these materials have been provided in the form of weekly memoranda, which in the early years of the CWC Members-Only Site were featured through a service known as "Memos On-Line."  Members use CWC's content to promote workplace compliance.  Members have exclusive access to a substantial amount of CWC intellectual property and other information, including through the following site resources:

a.     **CWC Publications/Memos On-Line**:  Copyright-protected memoranda and other materials providing topical analysis of key compliance and workplace risk issues.  Weekly

11

memoranda provide updates on the latest legal, regulatory, and policy developments affecting employer compliance, diversity, and risk management programs.

(i)     An extensive library of thousands of copyrighted memoranda and other materials, spanning more than 20 years, can be located through a convenient search tool on the Association's online publications page.  The library was previously known as EEAC Memos On-Line.

(ii)     Each memorandum provides notice of the copyright restrictions such as:

> Copyright 2020 by the Center for Workplace Compliance (CWC®). All rights reserved.  Formerly EEAC. No part of this document may be reproduced without permission of CWC.

b.     **CWC "Confidential Connect Communications Platform" or "Platform"**: A confidential online community, available only for CWC members, to share ideas, benchmark, and connect with fellow members at any time.  The communications are made through a secure, password-protected and member-restricted Connect CWC Collaboration Center Communication Platform.  The Platform allows CWC members to privately share information and ask questions on various workplace compliance and diversity issues.  Members communicate with each other and with CWC's staff in a confidential setting that is only viewable by CWC members.  In the Platform's secured communications, the name of the user and their company or organization are identified along with a timestamp of the communication.

c.     **CWC Compliance Tools**:   Copyright-protected checklists, templates, policies, procedures, and guides covering a broad range of workplace compliance and diversity and inclusion issues.  The Compliance Tools are available for the internal use of member organizations.

d.     **CWC Data Center**:  An online hub of compliance and diversity benchmark data, federal enforcement statistics, state-level compliance requirements, and graduate diversity data.

12

Benchmark data examples include workforce demographics, educational attainment demographics, state standards, and enforcement agency performance.

       e.    **CWC Education and Training**:   A comprehensive curriculum of online, classroom, and customized training solutions on workplace compliance issues, made exclusively available for CWC members.

36.    The CWC Members-Only Site, including the information and copyrighted memoranda, is exclusively available to member organizations (including member employers and their designated employees).  CWC members have access to a comprehensive suite of resources to help them manage workplace compliance and risk.

37.    Non-Members do not have access to the intellectual property and information on the password-protected CWC Members-Only Site.  Non-Members may register and attend certain conferences and training programs that are open to non-Members.

38.    As noted, organizations that are not eligible for membership include "[l]aw firms, consulting firms, and other organizations providing workplace legal and compliance services."[7]

39.    Access to the CWC Members-Only Site is restricted to members and their employees through a password-protected, members-only portion of the website located at www.cwc.org.  Login is required to access members-only content.  Access is made by logging in with the member's username and password.

40.    CWC's copyrighted materials, including those available through the CWC Members-Only Site, also confirm that the content may not be reproduced or distributed to anyone outside of the member employer without the express written consent of CWC.

---

[7] *See* Exhibit C (CWC Membership Application).

**D.      Former CWC Staff Members Lance E. Gibbons and Chris Gokturk Join Littler**

41.      Defendants Gibbons and Gokturk, as former CWC staff members, were familiar with the proprietary nature of the CWC intellectual property, the processes used to create and protect CWC's intellectual property, and the limitations on its use including on the CWC Members-Only Site.  After Defendant Gibbons rejoined Littler as a shareholder on July 25, 2018 and Defendant Gokturk joined Littler as a principal on February 26, 2019, they used Littler's "robust platform and resources"[8] to obtain, infringe and/or use CWC's information and copyrighted materials to benefit and profit Littler directly and indirectly and themselves as a Littler shareholder and principal.  As further described below, the former CWC staff members at Littler were acting as a shareholder or principal, representative and agent of Littler and within the course and scope of their employment with Littler.

42.      During July 2015 to July 20, 2018, Defendant Gibbons served as a staff member of CWC, first as Senior Counsel and later as Assistant General Counsel.  As Assistant General Counsel at CWC, Defendant Gibbons was aware of and responsible for helping to manage the Association's policies and practices concerning the protection of CWC's intellectual property.  He also had responsibility for workplace compliance requirements and risks including the Office of Federal Contract Compliance Programs (OFCCP), government contracts, anti-discrimination laws and affirmative action regulations, among other responsibilities.

43.      When Defendant Gibbons resigned and departed CWC on July 20, 2018, his credentials and system access, including access to CWC's computers, its network and the CWC Members-Only Site, were terminated and revoked.  The termination was made consistent with the

---

[8] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020) (Defendant Gibbons noting his plans to use "Littler's robust platform and resources to serve clients").

policy that applied to departing employees and staff members, a policy with which Defendant Gibbons was very familiar.

44. During 2002 to the beginning of February 2019, Defendant Gokturk served as a staff member of CWC and its affiliated organizations. In this position, Defendant Gokturk provided services consistent with her experience in the areas of human resources compliance and data-related services, affirmative action plan preparation, compensation analyses, training, and OFCCP compliance review management.

45. When Defendant Gibbons rejoined Defendant Littler as a shareholder on July 25, 2018, Littler issued a press announcement, "Littler Adds Shareholder Lance Gibbons in Washington, D.C."[9] highlighting Mr. Gibbon's background, practice areas, and experience and his ability to assist Littler clients by using the Littler platform and resources.

    a. The Littler announcement emphasized Defendant Gibbons's "extensive experience before the U.S. Department of Labor's Office of Federal Contract Compliance Programs [OFCCP]" and his ability to assist clients "on anti-discrimination laws and affirmative action regulations," "compliance with the array of employment-related requirements associated with government contracts, as well as in preparing for and resolving OFCCP audits," and "other workplace regulatory and enforcement agencies, including the Equal Employment Opportunity Commission."

    b. In the Littler announcement, Defendant Gibbons stated: "In addition to drawing on Littler's robust platform and resources to serve clients, I look forward to supporting the

---

[9] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020); *see also* Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020), attached hereto and incorporated herein.

firm's efforts to engage with the government on behalf of employers on labor and employment related developments."

        c.      The Littler announcement underscored that "Gibbons will work closely with members of Littler's Workplace Policy Institute® (WPI™), which serves as a resource for employers to ensure that they have a voice in legislative and regulatory developments that impact their workplaces and business strategies."  Defendant Littler listed Defendant Gibbons as a member of the Workplace Policy Institute® (WPI™).

        d.      The Littler announcement highlighted Defendant Gibbons's role at CWC: "Gibbons also served as assistant general counsel to the Center for Workplace Compliance, where he assisted the association's members in understanding and managing their workplace compliance requirements and risks."

        e.      As reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), the CWC information and copyrighted materials that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed, related to the practice areas that the Littler July 25, 2018 press announcement highlighted when Defendant Gibbons returned to Littler.

      46.      Defendant Lance E. Gibbons previously served as a Littler shareholder during June 2007 to July 2015 in Littler's Pittsburgh, PA Office.  As a Littler shareholder, he became familiar with Littler information technology platforms and resources to assist prospective and current Littler client's including how to use those resources to communicate directly with clients, engage in promotional activities, provide legal services to clients, and use information to benefit Littler directly and indirectly.

47.     On February 26, 2019, Littler issued a press announcement, "Littler Adds Chris Gokturk in Northern Virginia,"[10] emphasizing that Defendant Gokturk, as a Littler principal, had "more than 20 years of experience in compliance, enterprise risk management and statistical analyses."

    a.     The Littler announcement noted Defendant Gokturk's background and highlighted her history of assisting clients "on all phases of the OFCCP compliance review process," including reviews of compliance with affirmative action regulations and anti-discrimination laws.

    b.     The Littler announcement stated that Defendant Gibbons previously worked with Defendant Gokturk.  In the Littler announcement, Defendant Gibbons is quoted highlighting Defendant Gokturk's "extensive experience advising on OFCCP matters, risk management and analyses of employment data."

### E.     Unlawful Conduct Using Littler's Infrastructure, Platform and Resources to Obtain and Use CWC's Information and Infringe Copyrighted Materials Related to Littler's Practice Areas, Business Interests and Profits

48.     Established in 1942, Littler describes itself as a law firm with "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[11] and as a firm which provides workplace legal and compliance services.

---

[10] *See* Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020), attached hereto and incorporated herein; *see also* Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020), attached hereto and incorporated herein.
[11] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018) ("Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020); *see also* Exhibit H ("Littler Adds Healthcare Industry Veteran William Vail") (May 6, 2019) (referring to Littler as "the world's largest employment and labor law practice representing management"), accessible at https://www.littler.com/publication-press/press/littler-adds-healthcare-industry-veteran-william-vail (last viewed Nov. 9, 2020); ("Littler Adds Shareholder Jaime Laurent in Los Angeles") (Aug. 20, 2018) (referring to Littler as "the world's largest employment and labor law practice representing management"; "Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide."), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-jaime-laurent-los-angeles (viewed Nov. 9, 2020); ("Littler Mendelson Continues High-Profile Lateral Growth; JoAnna Brooks Joins in San Francisco") (June 17, 2013) (referring to Littler as "the world's largest employment and labor law firm representing management"; "Littler

49.     Littler and Littler's Workplace Policy Institute® (WPI™) compete directly with CWC for the resources of employers seeking guidance concerning workplace legal and compliance requirements and related matters.

50.     Littler's practice areas include:  "Affirmative Action/ Office of Federal Contract Compliance Programs (OFCCP) Compliance"; "Corporate Compliance and Ethics, Discrimination and Harassment, Employment Practices Audits"; "Labor Management Relations, Legislative and Regulatory Practice"; "Robotics, Artificial Intelligence (AI) and Automation"; "Training - Compliance, Ethics, Leadership"; "Unfair Competition and Trade Secrets"; "Workplace Privacy and Data Security"; and "Workplace Safety and Health (Occupational Safety and Health Administration (OSHA) & Mine Safety and Health Administration (MSHA))".[12]

51.     Littler publicly highlights and promotes its "robust platform and resources" that it provides its shareholders, associates, attorneys, principals, employees, and agents to serve clients and provide legal services.[13]  In fact, as described above, in rejoining Littler as a shareholder in July 2018,

---

Mendelson is the world's largest labor and employment law firm exclusively devoted to representing management. With over 980 attorneys and 57 offices throughout the U.S. and globally, Littler has extensive resources to address the needs of U.S.-based and multi-national clients from navigating domestic and international employment laws and labor relations issues to applying corporate policies worldwide. Established in 1942, the firm has litigated, mediated and negotiated some of the most influential employment law cases and labor contracts on record."), accessible at https://www.littler.com/publication-press/press/littler-mendelson-continues-high-profile-lateral-growth-joanna-brooks-joins- (viewed Nov. 9, 2020), attached hereto and incorporated herein.

[12] *See, e.g.*, Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020), attached hereto and incorporated herein.

[13] *See, e.g.*, Exhibit H ("Littler Adds Healthcare Industry Veteran William Vail") (May 6, 2019) (referring to "Littler's robust platform and resources"), accessible at https://www.littler.com/publication-press/press/littler-adds-healthcare-industry-veteran-william-vail (viewed Nov. 9, 2020); "Littler Adds Shareholder Jaime Laurent in Los Angeles" (Aug. 20, 2018) (noting "the firm's robust national and global platform and dedication to innovation in the delivery of legal services"), https://www.littler.com/publication-press/press/littler-adds-shareholder-jaime-laurent-los-angeles (viewed Nov. 9, 2020); "Littler Mendelson Continues High-Profile Lateral Growth; JoAnna Brooks Joins in San Francisco" (June 17, 2013) (describing "Littler's global platform, innovative resources and depth of our subject matter expertise"), accessible at https://www.littler.com/publication-press/press/littler-mendelson-continues-high-profile-lateral-growth-joanna-brooks-joins- (viewed Nov. 9, 2020).

Defendant Gibbons expressly noted that he looked forward to "drawing on Littler's robust platform and resources to serve clients."[14]

52.     Defendants Gibbons and Gokturk used the "robust platform and resources" of Littler to misappropriate and use CWC's intellectual property and commit the unlawful acts described in this Complaint.  For example, Defendants Gibbons and Gokturk used Littler resources in providing legal services and related services, including as their Littler computers, email addresses, telephones, text communications, the Littler IP address and other network resources, printers, staff resources, among other resources to create presentations and communicate with current and prospective Littler clients concerning the content of the CWC materials.  Littler used CWC's materials and information to profit and benefit from the provision of its legal business.

53.     Defendant Littler initially selected, hired, and engaged former CWC staff members Gibbons and Gokturk to serve as a Littler shareholder and a Littler principal, respectively, as well as Littler agents and representatives in Littler's legal business.  Littler provided them with compensation for their services on behalf of Littler, including by providing terms and parameters to generate business and obtain profits for Littler.  Littler retained the ability to discharge them.  Littler established parameters for the delivery of Littler services, exercising control over their services consistent with Littler's standards.

54.     The infringement of CWC's copyrighted materials and unlawful obtaining of CWC's information by Littler shareholder Gibbons and Littler principal Gokturk was incident to the business of Littler in providing legal and related services.  The conduct was committed while Littler shareholder Gibbons and Littler Principal Gokturk were acting in their capacities as a shareholder

---

[14] *See* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020).

and principal respectively, promoting Littler's business with a view to further Littler's interests, and during prospective and existing client solicitations, meetings and communications. This conduct further promoted Littler's interests and profits as Littler clients were charged based on services provided using CWC's information and copyrighted materials.

55.     In particular, as further described in this Complaint, Defendants Gibbons and Gokturk engaged in this conduct while serving as a Littler shareholder and Littler principal respectively, and as Littler representatives and agents, and while providing legal and related services on behalf of Littler, promoting and pursuing the interests and profits of Littler, and using Littler's platforms and resources to obtain, infringe, and use CWC's information and copyrighted materials in the performance of duties directly related to (1) the practice areas of the Littler Defendants;[15] (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC. Illustratively, and among the instances further described below, this includes (A) after being thwarted in his efforts to obtain intellectual property from the CWC Members-Only Site, Defendant Gibbons, acting in his capacity as a Littler shareholder and to generate profits for Littler, made a series of false and misleading statements to an organization that was both a Littler client and CWC member to obtain a user name and password for accessing the CWC Members-Only Site, which he in turn used to infringe and obtain CWC information and copyrighted materials unlawfully; (B) after fraudulently obtaining the credentials of another person to access the CWC Members-Only Site, Defendant Gibbons used the credentials to misappropriate

---

[15] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), previously available at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (last accessed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020); Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

more than 2,100 pages of CWC's information and intellectual property that was infringed and unlawfully obtained and used for the benefit and profit of Littler; (C) Defendant Gibbons and Defendant Gokturk, using Littler resources, infringed CWC information and copyrighted materials relating to particular Littler presentations designed to communicate with prospective and current Littler clients; (D) Defendant Gibbons, using Littler resources, infringed and obtained CWC information and copyrighted materials relating to particular Littler publications designed to communicate with prospective and existing clients and generate business for Littler; (E) Defendant Gibbons and Defendant Gokturk disregarded, altered and removed the CWC copyright notices on CWC materials before using them for Littler; and (F) Defendant Gokturk engaged in copyright infringement of a 2017 CWC Pre-Existing Big Data Analytics Presentation by using it for a 2019 Littler presentation for current prospective and current Littler clients and falsely represented Littler as the original author of content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation, and allowed other Littler shareholders, associates, attorneys and agents to use the infringed CWC material to advance the business interests of Defendant Littler.

56.     One of the primary objectives of the unlawful conduct in this matter was to benefit Littler by generating additional profits, including under 17 U.S.C. § 504(a)(1).

57.     Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed the CWC materials in his practice including to provide legal services to Littler clients, which Littler billed for, to present in Littler presentations to prospective and current Littler clients, and to create infringing derivative works.

58.     Defendant Littler, with "the largest global employment and labor law practice,"[16] advises employers on how to implement safeguards to prevent and detect the misappropriation of

---

[16] *See* note 11 (Littler publications making this statement), *supra*.

intellectual property and information by new employees, and about the "legal risks" of hiring employees from competitors.[17]  Illustrating Littler's subject matter expertise in this area, for example, Littler has warned that "companies should caution new employees to refrain from using their former employer's information and not bring any such information with them."[18]  Littler also has highlighted "the risks of hiring from competitors without a rigorous risk assessment and protocol for rejecting the use of a prior employer's trade secrets,"[19] guidance that applies to other forms of intellectual property and information.  Littler further recommends that employers "[e]xamine hiring and on-boarding procedures to make sure that reasonable steps are being taken to avoid newly hired employees bringing trade secrets of a prior employer into the workplace or using them,"[20] which also applies to other forms of intellectual property and proprietary information.  Littler has advised that "Employers should also consider establishing procedures to monitor and regulate employee access privileges."[21]

59.    Defendant Littler failed to implement appropriate controls and reasonable safeguards including best practices for employers to avoid the recurring and voluminous misappropriation of intellectual property of CWC by Defendant Gibbons and Defendant Gokturk, along with possibly other employees, over a substantial period of time.

---

[17] *See* Exhibit J (Littler Unfair Competition and Trade Secrets) ("When a company wants to hire an employee from a competitor, we can provide advice on the best approach so that a client can maximize legitimate competitive advantage and minimize litigation risk."), accessible at https://www.littler.com/practice-areas/unfair-competition-and-trade-secrets (viewed on Nov. 9, 2020), attached hereto and incorporated herein; *see also* Exhibit J (Legal Risks of Hiring Competitors Employees, Littler Mendelson P.C. (April 25, 2019) (listing presenter Danielle L. Kitson), accessible at accessible at https://www.littler.com/people/danielle-l-kitson (viewed on Nov. 9, 2020).

[18] *See* Exhibit J (Littler News & Analysis Insight, "How Not to Hire Employees from a Competitor," (April 30, 2005), accessible at https://www.littler.com/publication-press/publication/how-not-hire-employees-competitor (viewed on Nov. 9, 2020).

[19] *See* Exhibit J (Littler ASAP, "Court Finds Texas Company Stole Trade Secrets after Hiring Employee from Competitor" (May 30, 2012), accessible at https://www.littler.com/publication-press/publication/court-finds-texas-company-stole-trade-secrets-after-hiring-employee (viewed on Nov. 9, 2020).

[20] *See* Exhibit J (Littler Insight, "Trade Secrets Finally Get Federal Law Protection, (May 2, 2016), accessible at https://www.littler.com/publication-press/publication/trade-secrets-finally-get-federal-law-protection (viewed on Nov. 9, 2020).

[21] *See* Exhibit J (Littler ASAP, "Recent Study Reveals Troubling Amount of Employee Misuse and Theft of Company Data" (March 19, 2013), accessible at https://www.littler.com/publication-press/publication/recent-study-reveals-troubling-amount-employee-misuse-and-theft (viewed on Nov. 9, 2020).

60.     Notwithstanding Littler's sophistication and self-described expertise in employment law, workplace privacy, and data security, Littler failed to prevent and permitted Defendant Gibbons for approximately seventeen (17) months to repeatedly access CWC's secured computer systems without authorization and infringe its copyrighted works.  In this case, Littler failed to implement appropriate safeguards and controls to detect, prevent and monitor the misappropriation of a voluminous amount of CWC's intellectual property.

61.     Defendant Littler's disregard for CWC's intellectual property fits a broader pattern of misappropriation of CWC's information and materials by Littler and its shareholders, associates, attorneys, principals, employees, and agents.  As further described below, in the course of reviewing the misconduct described in this Complaint, CWC discovered that Defendant Littler has also infringed other CWC intellectual property and proprietary content.  As described below, the Littler misappropriation included copyright infringement of at least one CWC presentation by Defendants Littler and Gokturk to create an infringing presentation to promote Littler's services to current and prospective Littler clients.  Defendant Littler failed to prevent and allowed Defendant Gokturk to bring and use CWC materials and information to Littler and on the Littler platform and resources.

62.     The scale and scope of the Littler infringement and misappropriation of CWC information and materials, along with the involvement by other Littler shareholders, associates, attorneys, principals, employees, and agents, and the amount and extent of Littler profits and damages to CWC will be fully determined at trial and following a full accounting.

**F.      Obtaining and Using CWC Information and Infringing CWC materials to Promote Littler's Business Interests and Profits**

63.     As reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), the CWC information and copyrighted materials that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, retained, printed, used,

23

and/or infringed, related to the practice areas of Defendants Littler and Gibbons.[22]  Importantly, as only a few examples, the materials relate to Affirmative Action/OFCCP Compliance, Investigations, Discrimination and Harassment, Labor Management Relations, Workplace Policy Institute, and Government Contractors, which are practice areas of Defendants Littler and Gibbons, and they bill clients for services related to such practice areas.[23]

64.    CWC is informed and believes and, based thereon, alleges, to be fully determined at trial, that Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, retained, printed, used, and/or infringed (including by creating derivative works) CWC's information and copyrighted materials from the CWC Members-Only Site including in communications with prospective and existing Littler clients and other third parties, in providing legal services to Littler clients, and for use in his Littler office while serving as a Littler shareholder and to further Littler's business interests.

65.    Defendants Littler and Gibbons used the CWC information and copyrighted materials that he unlawfully obtained to provide oral and written legal services and work product to Littler clients.  In doing so, Defendant Gibbons and Does 1-10 used the CWC information and copyrighted materials for the benefit of Littler.  Defendant Littler billed clients for Defendant Gibbons's legal services which used the CWC information and infringed CWC materials.

66.    In using the CWC information and copyrighted materials in communications with clients, Defendants Littler and Gibbons sought to insulate these communications from further review under the attorney client privilege, work product doctrine and other legal protections.  However, the Littler Defendants knew or should have known that any legal protections do not cover many, and

---

[22] *See* Exhibit I; Exhibit E; *see also* Exhibit D.
[23] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020).

likely all, of these communications and their efforts to insulate these communications would not be successful.

### G.   Littler Presentations Promoting Littler's Business Interests and Profits

67.    The Defendants obtained and infringed CWC's information and materials which were used for Littler presentations to prospective and current Littler clients and to generate business for Littler.  These presentations were made for and on behalf of Littler using Littler resources and branding materials.

68.    As one example, in 2019 Defendants Littler and Gokturk infringed a CWC presentation entitled "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252), by copying, reproducing, and using the presentation and/or content within the presentation at Littler including for promotional purposes with prospective and current Littler clients and for the benefit and profit of Littler, as further described below.

69.    Defendant Gibbons also presented at several Littler programs and forums and made corresponding downloads of related CWC information and materials to promote Littler's business and practice to prospective and current Littler clients.

a.    Illustratively, among many other examples,[24] on September 13, 2019, Defendants Littler and Defendant Gibbons gave a presentation on Defendant Littler's behalf entitled

---

[24] Several other examples are confirmed based on a comparison of the Littler speaking engagements for Defendant Gibbons with the CWC materials and information that were infringed and obtained through the Littler IP Address prior to the speaking engagements.  *Compare* Exhibit D (listing Speaking Engagements), *with* Exhibit A (List of CWC Information Obtained by the Littler IP Address).

"Government Contractor Update:  What is going on at the OFCCP?" ("2019 Littler Government Contractor Update Presentation"), at the Indiana Industry Liaison Group.[25]

        b.      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials directly related to OFCCP and Federal Contractor matters and the specific topics he presented on, including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 178 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members (No. 19-177) | 09/06/19 |
| 180 | President Obama Issues Executive Order To Increase Minimum Wage for Employees of Federal Contractors and Subcontractors (No. 14-048 ) | 09/04/19 |
| 182 | CWC's Primer on Federal Contractor Obligations Under the McNamara-O'Hara Service Contract Act (No. 17-264) | 09/04/19 |
| 183 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 (No. 18-187) | 09/04/19 |
| 193 | MEMBER FEEDBACK REQUESTED: CWC's Extensive Compliance- Related Resource Materials and Templates To Assist in Preparing for a Section 503 Focused Review (No. 19-090) | 08/30/19 |
| 195 | MEMBER FEEDBACK REQUESTED: OFCCP Proposing Revisions to Its Regulations Governing E.O. 11246's Religious Exemption To Increase Scope of Exemption's Coverage; Changes Are Unlikely To Directly Impact CWC Members (No. 19-177) | 08/30/19 |
| 198 | New OFCCP Opinion Letter Says Federal Contractors Can Submit Pay Analysis Groupings for Review and Agency Feedback (No. 19-152) | 08/27/19 |

---

[25] Exhibit M (Littler Presentation:  "Government Contractor Update:  What is going on at the OFCCP?"), attached hereto and incorporated herein.

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 199 | CWC's Written Comments to OMB Urge Rejection of OFCCP's Burdensome Proposed Changes to "Focused Review" Scheduling Letters (No. 19-158) | 08/27/19 |
| 200 | OFCCP Publishes Compliance Assistance Materials Promised Earlier This Year (No. 19-161) | 08/27/19 |
| 201 | OFCCP Names Ombud, Marcus Stergio, Who Will Now Design, Implement, and Execute Agency's Previously Announced Ombud Service (No. 19-167) | 08/27/19 |
| 203 | Illinois Is First State To Restrict the Use of Artificial Intelligence-Driven Video Interview Systems (No. 19-172) | 08/27/19 |
| 204 | Reviewing Physical and Mental Job Requirements Under OFCCP's Section 503 and Section 4212 Affirmative Action Program Requirements (No. 13-131) | 08/20/19 |
| 205 | EEAC's Checklist for Reviewing Physical and Mental Qualifications Under New Paragraph 22 of OFCCP's Revised Scheduling Letter (No. 15-025) | 08/20/19 |
| 209 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 08/17/19 |
| 210 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year (No. 18-071) | 08/17/19 |
| 212 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% (No. 15-079) | 08/16/19 |
| 213 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year (No. 19-064) | 08/16/19 |
| 232 | OFCCP Gets Approval From OMB To Move Forward With Changes to Functional Affirmative Action Program Designed To Increase Contractor Participation (No. 19-138) | 07/13/19 |

70.     As another example, on August 20, 2019 Defendants Littler and Gibbons gave a Littler presentation entitled "Government Contractor Update | An Energized OFCCP Changes Compliance Requirements and Enforcement Standards," in Tysons Corner, Virginia.

a.      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and

Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC information and copyrighted materials directly related to OFCCP matters including :

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 209 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 08/17/19 |
| 210 | OFCCP Resets Annual Veteran Hiring Benchmark at 6.4%, Down From 6.7% Last Year (No. 18-071) | 08/17/19 |
| 212 | OFCCP Sets Revised Annual Veterans Hiring Benchmark of 7.0% (No. 15-079) | 08/16/19 |
| 213 | OFCCP Resets Annual Veteran Hiring Benchmark at 5.9%, Down From 6.4% Last Year (No. 19-064) | 08/16/19 |
| 215 | OFCCP's New Federal Contract Compliance Manual Sets Agency Protocol for Conducting Individual Discrimination Complaint Investigations (No. 14-018) | 07/19/19 |
| 217 | OFCCP Litigation Watch: EEOC and OFCCP Enter Into Rare "Joint" Conciliation Agreement with Federal Contractor Asbestos Specialists (No. 16-126) | 07/19/19 |
| 218 | OFCCP's Decision To Begin Publishing Complaint Investigation Financial Settlements Sheds Light on a Little Known Area of Agency Enforcement (No. 19-034) | 07/19/19 |
| 219 | OFCCP's Final Jobs for Veterans Act (JVA) Regulations Respond to Concerns Expressed By EEAC About Potential Burden, Will Give Contractors Welcome Flexibility in Complying (No. 07-169) | 07/17/19 |
| 220 | OFCCP Posts FAQ Announcing That Enforcement of New JVA Self- ID Requirements Will Be Delayed Until JVA Reporting Requirements Are Finalized (No. 08-001) | 07/17/19 |
| 221 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule (No. 12-148) | 07/17/19 |
| 222 | Atypical Selection Practices and Compliance With OFCCP's Mandatory Job Listing Rule (No. 12-148) | 07/17/19 |

71.    Other examples involving Littler presentations include the following:

a.    On June 7, 2019, Defendant Gibbons gave a Littler presentation entitled "Attention Government Contractors: OFCCP Update," at the 2019 Mid-Atlantic Employer Conference, in Bethesda, MD.

28

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials directly related to OFCCP matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 269 | EEAC's Guide to OFCCP Notice Posting Requirements (No. 16-109) | 05/23/19 |
| 273 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" (No. 18-162) | 05/23/19 |
| 274 and 278 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions (No. 19-101) | 05/23/19 and 05/22/19 |
| 276 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 15-235) | 05/22/19 |
| 277 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 05/22/19 |
| 281 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) (No. 19-093) | 05/10/19 |

b.      On June 6, 2019, Defendant Gibbons gave a Littler presentation entitled "Attention Government Contractors: OFCCP Policy Changes," at the 2019 Contract Security Washington Summit, in Washington, DC.

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to OFCCP matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 269 | EEAC's Guide to OFCCP Notice Posting Requirements (No. 16-109) | 05/23/19 |
| 273 | CWC's Guide To Maintaining an OFCCP-Compliant Online "Careers Site" (No. 18-162) | 05/23/19 |
| 274 and 278 | MEMBER FEEDBACK REQUESTED: OFCCP Issues Promised Guidance on Compliance Checks by Way of Frequently Asked Questions (No. 19-101) | 05/23/19 and 05/22/19 |
| 276 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 15-235) | 05/22/19 |
| 277 | EEAC's "OFCCP Compliance Primer" Series: Using Data Metrics for Evaluating Your Disability and Veterans AAP Obligations (No. 16-205) | 05/22/19 |
| 281 | MEMBER FEEDBACK REQUESTED: OFCCP Seeking Formal Approval of Revisions to Its Functional Affirmative Action Program (FAAP) (No. 19-093) | 05/10/19 |

      c.       On May 9, 2019, Defendant Gibbons gave a Littler presentation entitled "Help Wanted: How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance," at the 2019 Executive Employer Conference in Phoenix, Arizona.

          (i)       Prior to the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to OFCCP matters including: "Big Data" Analytics and Its EEO Implications for Employment Practices (No. 16-257) (access/download date 03/08/19).

      d.       On May 8, 2019, Defendant Gibbons gave a Littler presentation entitled "Federal Contractor Roundtable," at the 2019 Littler Executive Employer Conference, in Phoenix, Arizona.

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC information and copyrighted material related to Federal Contractor matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 297 | Labor Department Issues Final Rule Requiring Covered Federal Contractors To Provide Employees With up to 56 Hours of Paid Sick Leave Annually (No. 16-201) | 04/23/19 |
| 301 | Federal Contractor Minimum Wage To Increase From $10.35 to $10.60 an Hour on January 1, 2019 (No. 18-187) | 04/23/19 |

e.      On April 9, 2019, Defendant Gibbons gave a Littler presentation entitled "The Latest Developments in Federal Labor Policy: A Workplace Policy Institute Briefing."

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to Federal Labor Policy matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 341 | EEOC Plans To Open 2018 EEO-1 Filing Season Next Week, Even as What Happens Next Is Up in Air After Federal Court Orders Reinstatement of Expanded Obama-Era Revisions (No. 19-054) | 03/16/19 |
| 353 and 355 | EEOC's Proposed Changes to EEO-1 To Add Collection of Pay Data Get Final Approval; Filing Deadline for New Report Is March 31,2018 (No. 16-196) | 03/06/19 and 3/05/19 |

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 356 | OMB Suspends Pay Data Provisions of Expanded EEO-1 Report, Effectively Reinstating Old Report for 2017 Reporting Cycle; Forms Must Be Submitted by March 31, 2018 (No. 17-182) | 03/05/19 |
| 357 | Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report (No. 17-248) | 03/05/19 |

    f.  On March 20, 2019, Defendant Gibbons gave a Littler presentation entitled "Preparing for an Increase in OFCCP Audit Activity: CSALs, Focused Reviews, VERPs, and More."

    (i)  In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted material related to OFCCP Audit matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 344 | A Recommended Process for Auditing Your Company's Compliance With OFCCP's Internet Applicant Rule (No. 10-162) | 03/08/19 |
| 368 | Most Recent OFCCP Financial Settlements Continue To Wrap Up Years-Old Audits (No. 18-168) | 03/04/19 |
| 369 | OFCCP Financial Settlement Update: Focus Continues To Be on Disposal of "Aged" Audits (No. 18-239) | 03/04/19 |
| 370 | OFCCP's FY 2018 Enforcement Numbers Show Completed Audits Dropped by One-Third From Previous Year (No. 19-002) | 03/04/19 |

g.      On March 19, 2019, Defendant Gibbons gave a Littler presentation entitled "Understanding the Impact of OFCCP's Recent Policy Changes on Federal Contractors Association of Builders and Contractors Webinar."

(i)      In the weeks before the presentation, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to OFCCP matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 332 | Department of Labor Finalizes New Rule Requiring Federal Contractors To Inform Employees of Their Union Organizing Rights (No. 10-093) | 03/18/19 |
| 333 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 14-155) | 03/18/19 |
| 338 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations (No. 15-170) | 03/16/19 |
| 342 | OFCCP's Final "Internet Applicant" Regulation Establishes Compliance Framework for Federal Contractors' Electronic Recruitment and Selection Practices (No. 05-227) | 03/08/19 |
| 364 | OFCCP Issues New "Section 503 Checklist" Designed To Assist Contractors in Assessing Compliance With Agency's Revised Disability Regulations (No. 15-170) | 03/04/19 |
| 389 | New OFCCP Directive Signals Agency's Intent To Implement Voluntary Compliance Program for "High-Performing" Contractors (No. 19-039) | 02/25/19 |
| 390 | EEAC's Updated Guide to OFCCP-Enforced Contract Clause Requirements (No. 14-155) | 02/21/19 |
| 391 | OFCCP Gets Approval To Use New Scheduling Letter Identifying Contractors for Section 503 "Focused Reviews" (No. 18-248) | 02/08/19 |

**H.      Littler Publications Promoting Littler's Business Interests and Profits**

72.      The CWC information and copyrighted materials that Defendants Littler and Gibbons accessed, selected, obtained, viewed, downloaded, used, and/or infringed, while using the Littler IP address, also related to particular Littler publications designed to communicate with prospective and current Littler clients.[26]  For example, Defendant Gibbons published articles, promoted on the Littler website and using Littler publications (such as Littler ASAP and Littler Podcast),[27] and made corresponding downloads of related CWC information and materials to promote Littler's business and practice to prospective and current Littler clients:

a.      As one example among many others, on July 2, 2019, Defendant Littler published a Littler ASAP publication authored by Defendant Gibbons, entitled "EEOC Provides Additional Guidance on EEO-1 Component 2 Information."

(i)      In the weeks before the publication, in addition to other materials listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed several CWC information and copyrighted materials related to EEO-1 Component 2 matters including:

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|-----|--------------------------------------------------|----------------------|
| 246 | EEOC Advises Court Overseeing EEO-1 "Component 2" Litigation That Online Filing System May Not Be Fully Operational Until Mid-August, Despite September 30, 2019 Filing Deadline (No. 19-126) | 06/26/19 |

---

[26] Numerous other examples are confirmed based on a comparison of the Littler publications for Defendant Gibbons with the CWC materials and information that were infringed and obtained through the Littler IP Address.  *Compare* Exhibit E (listing Publications & Press of shareholder Gibbons) *with* Exhibit A (List of CWC Information Obtained by the Littler IP Address).

[27] Exhibit E (listing Publications & Press of shareholder Gibbons).

| No. | Title of Copyrighted Work, Information and Number | Access/Download Date |
|---|---|---|
| 256, 264, and 266 | CWC's Tips for Collecting EEO-1 "Component 2" Data (No. 19-116) | 06/12/19, 06/10/19, and 06/07/19 |

I.     **Early Efforts to Obtain CWC's Intellectual Property, Make False and Misleading Statements and Ask Others to Engage in Copyright Infringement and Violations of Law and the CWC Restrictions to the Members-Only Site**

73.     Defendant Gibbons was directly engaged in infringing and obtaining a substantial amount of CWC's information and copyrighted materials from the CWC Members-Only Site for the benefit and profit of Defendant Littler.[28]

74.     Shortly after rejoining Littler, and beginning at a time unknown and at least by September 2018, Defendant Gibbons willfully persisted in making a series of requests for, and attempted to access and obtain, and induce others to provide and engage in the infringement CWC Members-Only Site materials.

75.     For example, on Tuesday, September 4, 2018, Defendant Gibbons used his Littler email address (LGibbons@littler.com) to send an email to an attorney working on behalf of CWC, asking if he could access a specific 50-state affirmative action policy survey.

76.     This request for information from the CWC Members-Only Site related directly to the practice areas of Defendants Littler and Gibbons,[29] and the legal services business of Littler.

---

[28] As noted, the identity and extent of the involvement of DOE Defendants 1 to 10 remains pending confirmation.
[29] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

77.     No response was given to Defendant Gibbons's request for CWC intellectual property. The recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

78.     On Friday, September 7, 2018, Defendant Gibbons, using the Littler IP address, attempted twice to access member-restricted content.  The documents were two CWC Memoranda: (1) "OFCCP Mails First Round of FY 2018 'Advance Notice' Letters; Agency Will Offer Technical Assistance Before Sending Scheduling Letters to the 1,000 Contractor Establishments Flagged for an Audit" (Memo No. 18-026), and (2) "New OFCCP Directive Aims To Resurrect Recognition of Exemplary Contractor Programs" (Memo No. 18-184).  Access was denied.  Member credentials were required to access, obtain, download, and use these restricted memoranda.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

79.     Later that day, Defendant Gibbons, using Littler resources, sent a text message to an attorney at CWC asking for the first of the two copyrighted memoranda noted above.  Defendant Gibbons asked:  "Can you send me memo 18-026?"

80.     Defendant Gibbons was expressly asking the attorney at CWC to at best make an exception to, and at worst violate, CWC restrictions on access to CWC's member-restricted content. Defendant Gibbons was aware that reproducing and distributing CWC copyrighted information to a Non-Member or to a law firm was not in conformance with CWC's policies.  Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

81.     Defendant Gibbons knew that the person he asked to send the memo was not authorized and would not be authorized by CWC to do so.

82.     No response was given to Defendant Gibbons's request for CWC intellectual property. The recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.

83.     On Tuesday, November 13, 2018, Defendant Gibbons, using Littler resources, sent a text message to an attorney at CWC requesting a different member-restricted CWC memorandum, as reproduced below:

| Defendant Gibbons | "Can you track down a memo for me? I don't ask for much." |
|---|---|
| CWC Attorney | "Hey Lance.  Happy to help you out of course … but can't send a memo.  What are you looking for?" |
| Defendant Gibbons | "Killing me.  I wanted the memo that we wrote that talked about steps to audit your AAP in preparation for a new plan year." |
| CWC Attorney | [No response.] |
| Defendant Gibbons | "Don't worry about it.  Don't want to get anyone in trouble." |

84.     Once again, the recipient of Defendant Gibbons's request was unwilling to violate established CWC restrictions or engage in copyright infringement or other violations of law.

85.     In contrast, Defendant Gibbons, while using Littler resources and acting to promote the interests of Littler, showed no reluctance to ask someone else to violate the CWC restrictions and to engage in copyright infringement.  Defendant Gibbons was familiar with the restrictions as a former CWC Assistant General Counsel.

86.     While Defendant Gibbons was initially unable to obtain the CWC intellectual property he requested from the CWC Members-Only Site, by asking a CWC staff member to violate CWC

restrictions, Defendant Gibbons willfully persisted in his efforts to infringe and unlawfully obtain CWC information and materials.

87.     After Defendant Gibbons was unsuccessful in inducing others to violate the Copyright Act and the restrictions to the CWC Members-Only Site, he pursued other avenues to obtain the intellectual property of CWC.

88.     On Wednesday, November 14, 2020, Defendant Gibbons, again using Littler resources, attempted to access CWC copyright-protected memoranda.   Access was not allowed. Defendant Gibbons was redirected to the Login Page.   Without member credentials, Defendant Gibbons was unable to access the intellectual property on the CWC Members-Only Site.   Defendant Gibbons was familiar with these restrictions as a former CWC Assistant General Counsel.

### J.     Willfully Pursuing Other Avenues to Obtain Information and Infringe Intellectual Property on the CWC Members-Only Site

89.     After being denied access to the CWC Members-Only Site, Defendant Gibbons contacted an employee of a company that had been a long-standing CWC member (referred to as "Company A Employee").   Defendant Gibbons had known the Company A Employee for several years.

90.     Defendant Gibbons, using Littler resources, made false and misleading statements to obtain the login credentials of the Company A Employee.   Defendant Gibbons claimed that he needed the credentials of Company A Employee to access and download only a particular CWC memorandum to assist the Company A Employee.   Defendant Gibbons's request for the credentials was made in his capacity as a Littler shareholder and to generate profits for Littler.   In fact, as reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address), Defendant Gibbons used the fraudulently obtained credentials to access, select, obtain, view, download, use, and/or infringe a

voluminous amount of CWC information and copyrighted materials for the benefit and profit of Littler.

91.     As noted, as a former CWC staff member, Defendant Gibbons was familiar with the CWC restrictions which prohibited Non-Members and law firms from accessing the CWC Members-Only Site.  For example, as a former CWC staff member, Defendant Gibbons was familiar with EEAC and CWC's practice of marking EEAC and CWC materials with copyright notices.  Defendant Gibbons had drafted CWC materials that bore these copyright notices.

92.     Defendant Gibbons's other efforts to obtain intellectual property from the CWC Members-Only Site had been thwarted.  Given his continuing objective to obtain access, Defendant Gibbons demonstrated no reluctance in asking the Company A Employee to violate the CWC restrictions on access to intellectual property on the CWC Members-Only Site.

93.     Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the credentials to Defendant Gibbons for the CWC Members-Only Site.

94.     No CWC member employee may share access credentials with any non-members, including employees of law firms, and law firms are not eligible for membership in CWC.

95.     On November 16, 2018, Defendant Gibbons, using the Littler IP address, used the login credentials of the Company A Employee to connect to the CWC Members-Only Site.  During the next 22 minutes, Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed six copyright-protected and member-restricted documents.

96.     In fact, this was only the beginning of the infringement and obtaining of CWC information.  During the 489 days of the period of infringement and obtaining CWC information, from November 16, 2018 to March 18, 2020, the Littler IP address was used to access, select, obtain,

view, download, use, and/or infringe information and copyrighted materials from the CWC Members-Only Site approximately four hundred forty-two (442) times. The CWC materials Defendant Gibbons accessed, selected, obtained, viewed, downloaded, used, and/or infringed beginning on November 16, 2018 through March 18, 2020 related directly to (1) the practice areas of Defendants Littler and Gibbons;[30] (2) the business of Littler and legal services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

97.    For example, Defendants Littler and Gibbons, using Littler resources, accessed, selected, obtained, viewed, downloaded, used, and/or infringed CWC materials and information from the CWC Members-Only Site as follows:

| Total CWC Information Obtained and/or Infringed by the Littler IP Address By Month | | |
|---|---|---|
| No. | Month | Totals (Approx.) |
| 1 | Nov. 2018 | 9 |
| 2 | Dec. 2018 | 5 |
| 3 | Jan. 2019 | 12 |
| 4 | Feb. 2019 | 22 |
| 5 | March 2019 | 56 |
| 6 | April 2019 | 40 |
| 7 | May 2019 | 16 |
| 8 | June 2019 | 23 |
| 9 | July 2019 | 29 |
| 10 | Aug. 2019 | 24 |
| 11 | Sept. 2019 | 31 |
| 12 | Oct. 2019 | 13 |
| 13 | Nov. 2019 | 52 |
| 14 | Dec. 2019 | 9 |
| 15 | Jan. 2020 | 34 |
| 16 | Feb. 2020 | 39 |
| 17 | Mar. 1-18, 2020 | 12 |

---

[30] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

98.     On a number of occasions, Defendants Littler and Gibbons, using the Littler IP address, logged into the CWC Members-Only Site to access, obtain, download, infringe and use the same CWC Title on more than one occasion.   For example, Exhibit B (CWC Copyright Registrations), and Exhibit N (CWC Information Obtained And/Or Infringed By The Littler IP Address on More Than One Occasion), identify approximately ninety-six (96) registered CWC works that were downloaded, obtained and infringed on more than one occasion.

99.     Defendant Gibbons's use of the CWC Members-Only Site to select, obtain, view, download, retain, print, use, and/or infringe (including creating derivative works of) CWC information and materials related directly to the practice areas of Defendants Littler and Gibbons.[31] For example, some of the listed practice areas for Defendant Gibbons include OFCCP matters (including desk audit submissions, on-site audits, responding to requests and negotiating resolutions), compliance with the National Labor Relations Act (NLRA), "all workplace compliance requirements applicable to federal government contractors," analyses of compensation data, "statistical disparity analyses for reductions in force," training concerning government contractor obligations, "[d]eveloping and implementing compliant diversity and inclusion programs."

**K.     False and Misleading Statements, Deceit and Concealment to Obtain CWC's Intellectual Property**

100.     As part of the unlawful conduct in this matter, Defendant Gibbons made a series of false and misleading statements to infringe and obtain CWC information and copyrighted materials unlawfully.

---

[31] *See* Exhibit I (Littler Practices); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (summarizing practice areas); Exhibit E (summarizing practice areas of Shareholder Lance E. Gibbons).

101.    The Login process for the CWC Members-Only Site requires the member to "login with your CWC account."  On the Login Page, the member enters his or her user name and password (not the account of another member or member account holder).  Only CWC members have access to Members-Only content. For visitors who are not members, the Login Page provides information about how to become a member.  The Login Page, accessible from the Sign In Tab, is reproduced below.



102.    After making fraudulent statements to obtain the login credentials of the Company A Employee (as described below), during the login process, Defendant Gibbons falsely represented that he had a CWC member account, that he was the account holder, and that he was entitled to access the CWC Members-Only Site.

103.    Defendant Gibbons concealed his true identity in accessing the CWC account.  As a former CWC staff member, Defendant Gibbons was aware that (1) only members could access

CWC's member-restricted content; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

104.    Having authored a number of CWC memoranda during his tenure as a CWC Assistant General Counsel, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

105.    Additionally, for each CWC memorandum that Defendant Gibbons infringed and unlawfully obtained from the CWC Members-Only Site as a Littler shareholder, he was further aware that each memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

106.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendant Gibbons used and benefitted from the CWC information and copyrighted materials concealed from third parties, including Littler clients, that the information was infringed and obtained by fraud and unlawful conduct and represented the information as Littler's.

107.    The multiple false and misleading statements that Defendant Gibbons made to obtain the CWC information and materials further reflects his intent to violate the Counts in this Complaint and demonstrates his commitment to engage in willful infringement and to promote the interests of Littler.

108.    Based on the frequency of Defendant Gibbons's unauthorized access from Littler's IP address, and the quantity of CWC materials downloaded to and using Littler's computer and network resources, Defendant Littler was or should have been aware of Defendant Gibbons's conduct.

### L.   Password Changes

109.   Since November 2018, the password for the Company A Employee credentials used by Defendant Gibbons changed three times: (1) June 5, 2019, (2) September 27, 2019, and (3) February 19, 2020.

110.   Each time the password was changed, Defendant Gibbons made fraudulent representations to the Company A Employee to request and obtain the new password.  For example, Defendant Gibbons claimed that he solely needed the new password to access and download a particular CWC memorandum to assist the Company A Employee when in fact he accessed, selected, obtained, viewed, downloaded, used, and/or infringed many more CWC copyright-protected memoranda and continued to do so for months after his request for the new password and until the next password change.  Each request for the credentials after the password was changed was made in Defendant Gibbons's capacity as a Littler shareholder and to promote the interests of and generate profits for Littler.

111.   Each time Defendant Gibbons requested the new password he concealed from the Company A Employee that he in fact had been using the prior credentials before the password change to download a substantial amount of CWC intellectual property.  For example, during the period from November 16, 2018 through May 23, 2019, Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed approximately 160 CWC materials from the CWC Members-Only Site.

112.   Defendant Gibbons also concealed from the Company A Employee that he would in fact use the credentials to continue to download a substantial amount of CWC intellectual property.

113.   As Defendant Gibbons was aware, the Company A Employee in fact lacked authorization to provide the credentials to allow him to access and obtain CWC's member-restricted intellectual property.  Defendant Gibbons was aware that (1) only members could access the CWC

Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

114.    Having authored a number of CWC Memos-Online during his tenure as a CWC Assistant General Counsel, and having infringed and unlawfully obtained CWC memoranda and other proprietary and member-restricted content as a Littler shareholder, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

115.    Defendants Littler and Gibbons accessed, obtained, downloaded and used CWC memoranda in (1) the practice areas of Defendants Littler and Gibbons;[32] (2) the business of Littler and legal services provided to prospective and current Littler clients; (3) the areas in which Littler competes with CWC; or (4) for any other purpose.

116.    By using the credentials of someone else, Defendant Gibbons sought to conceal that he in fact was initiating and downloading a substantial amount of CWC intellectual property from the CWC Members-Only Site.  Defendant Gibbons understood that his downloads would point to the user credentials that he was using.  Defendant Gibbons hoped to conceal the fact that he was the one who was initiating and directing the access to obtain the CWC intellectual property.

---

[32] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018), accessible at https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc (viewed on April 5, 2020); Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020).

117.     To bypass these restrictions, Defendant Gibbons devised a fraud scheme to obtain the credentials which he used to unlawfully infringe and obtain a substantial amount of CWC intellectual property for approximately seventeen (17) months.

118.     Defendant Gibbons engaged in fraud, deceit and concealment in order to obtain the new password to gain access to the restricted materials on the CWC Members-Only Site.  Defendant Gibbons was aware that (1) only members could access the CWC's member-restricted content; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

### 1.     Password Change:  June 5, 2019

119.     On June 5, 2019, the Company A Employee initiated a password change.

120.     On June 6, 2019, Defendant Gibbons, using the Littler IP address, unsuccessfully tried to access the Login Page to gain access to restricted content on the CWC Members-Only Site. Because a password change had been made the day before, Defendant Gibbons was unable to access the restricted content on the CWC Members-Only Site.

121.     Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the restricted content on the CWC Members-Only Site.  Defendant Gibbons fraudulently stated that he needed to get access to a particular CWC memorandum to assist the Company A Employee.  Defendant Gibbons concealed that he would continue to use the credentials to continue to access a substantial amount of CWC intellectual property.  Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler.

122.     Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the new password to Defendant Gibbons .

123.    On June 7, 2019, with the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and/or infringed one CWC copyright-protected memorandum.

124.    Defendant Gibbons continued to use the fraudulently obtained credentials to download more CWC copyright-protected memoranda.  For example, from June 9, 2019 to June 26, 2019, Defendant Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and/or infringed approximately twenty-one member-restricted memoranda from the CWC Members-Only Site.  Defendant Gibbons continued to access and download additional memoranda from the restricted portions of CWC Members-Only Site for additional months before the next password change on September 27, 2019.

### 2.    Password Change:  September 27, 2019

125.    On September 27, 2019, the Company A Employee initiated a password change for the CWC Members-Only Site.

126.    On October 8, 2019, Defendant Gibbons, using the Littler IP address, unsuccessfully tried to access the Login Page of the CWC Members-Only Site.  Because a password change had been previously made, Defendant Gibbons was unable to access the CWC Members-Only Site.

127.    Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the CWC Members-Only Site.  Defendant Gibbons fraudulently represented that he needed to access to a particular CWC memorandum to assist the Company A Employee.  Defendant Gibbons concealed that he would continue to use the credentials to access a substantial amount of CWC intellectual property.  Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler

128.    Relying on the fraudulent representations of Defendant Gibbons, the Company A Employee provided the new password to Defendant Gibbons.

47

129.   On October 15, 2019, with the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed six CWC copyright-protected memoranda.

130.   Defendant Gibbons continued to use the credentials to download more CWC copyright-protected memoranda.  For example, during October 18, 2019 through February 13, 2020, Defendants Littler and Gibbons, using the Littler IP address, accessed, selected, obtained, viewed, downloaded, used, and infringed approximately 118 memoranda from the CWC Members-Only Site. Defendant Gibbons continued to access and download additional memoranda from the CWC Members-Only Site for additional months before the next password change on February 19, 2020.

### 3.    Password Change:  February 19, 2020

131.   On February 18, 2020, certain users of CWC's website, including the Company A Employee, received a notification to update their CWC website passwords.  The notification also stated:  "Remember to never share your username and password with anyone outside or even within your organization. If any of your coworkers need access to our members-only content, it's easy for them to setup a new account…."

132.   On February 19, 2020, Defendant Gibbons used the Littler IP address and unsuccessfully attempted to access the CWC Members-Only Site.  Because a required password reset was imposed on February 18, 2020 and the Company A Employee had not reset their password, Defendant Gibbons was unable to access the CWC Members-Only Site

133.   Defendant Gibbons contacted the Company A Employee and told the employee that he was unable to access the CWC Members-Only Site.  Defendant Gibbons fraudulently stated that he needed to get access to a particular CWC memorandum.  Defendant Gibbons concealed that he would use the credentials to continue to access a substantial amount of CWC intellectual property.

Defendant Gibbons's request for the new password was made in his capacity as a Littler shareholder and to generate profits for Littler.

134.   After Defendant Gibbons contacted the Company A Employee, and relying on the fraudulent representations of Defendant Gibbons, the employee used the employee's credentials to access the CWC Members-Only Site and reset the password.  The Company A Employee then provided the new password to Defendant Gibbons.

135.   With the new password, Defendant Gibbons accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed nine CWC copyright-protected memoranda on February 19, 2020.

136.   Defendant Gibbons continued to use the credentials to download more CWC copyright-protected memoranda.  For example, on February 20, 2020 through February 28, 2020, Defendant Gibbons used the Littler IP address to access and download 25 additional memoranda from the CWC Members-Only Site.  Defendant Gibbons continued to access and download additional memoranda from the CWC Members-Only Site through March 18, 2020.

**M.    Infringement Committed Willfully and with Intent to Engage in Other Unlawful Activity**

137.   The acts of infringement of the copyrighted works listed in Exhibits A (List of CWC Information Obtained by the Littler IP Address) and B (List of CWC's registered works) were committed willfully by Defendants Littler and Gibbons under 17 U.S.C. § 504(c)(2).  This same conduct was also committed with the intent to engage in the unlawful activity described in the Complaint.

138.   As a former CWC staff member and Assistant General Counsel, Defendant Gibbons was aware that accessing, selecting, obtaining, viewing, downloading, retaining, printing, using, infringing (including creating derivative works of) the materials from the CWC Members-Only Site

was against CWC's policies, and constituted copyright infringement.  For example, Defendant Gibbons was aware that (1) only members could access restricted content on the CWC Members-Only Site; (2) Defendant Gibbons was not an employee of a CWC member employer and was ineligible to become one based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler as a law firm was ineligible to be a CWC member.

139.    Having authored a number of CWC Memos-Online during his tenure as a CWC Assistant General Counsel, and having infringed and unlawfully obtained CWC materials as a Littler shareholder, Defendant Gibbons was further aware that each CWC memorandum contained a CWC copyright notice noting that all rights were reserved to CWC and no part of the memorandum could "be reproduced without permission of CWC."

140.    Yet, with Defendant Littler's actual or constructive knowledge, Defendant Gibbons continued to access, select, obtain, view, download, use and/or infringe the restricted CWC information and copyrighted works approximately four hundred forty-two (426) times for approximately seventeen (17) months as reflected in Exhibit A (List of CWC Information Obtained by the Littler IP Address).  During this period, CWC copyrighted works were infringed approximately four hundred and twenty (417) times as reflected in Exhibit B (CWC Copyright Registrations).

141.    Furthermore, Defendant Gibbons's early attempts to obtain information and infringe materials from the CWC Members-Only Site directly from CWC staff member were rejected, and in the process Defendant Gibbons acknowledged this behavior had the potential to "get [some]one in trouble."

142.    Defendant Gibbons persisted in trying to obtain restricted content from the CWC Members-Only Site until he was able to obtain the credentials to which he used to access the CWC Members-Only Site by making false and misleading statements to the Company A Employee.

143.    As noted, the password for the user credentials fraudulently used by Defendant Gibbons was reset three times.  Defendant Gibbons made multiple false and misleading statements to obtain the new password each time the password he had obtained from the Company A Employee had been reset.

144.    As further evidence of willfulness and intent to engage in unlawful behavior, Defendant Gibbons committed the conduct for purposes of commercial advantage or private financial gain and also in furtherance of other tortious and criminal acts.  For example, after the initial download and infringement of CWC materials, Defendant Gibbons retained, printed, and used the CWC materials in Littler's practice for the commercial advantage or private financial gain of Littler.  Additionally, CWC is informed and believes and, based thereon, alleges, after the initial downloads and infringement of the CWC materials, Defendant Gibbons engaged in subsequent acts of infringement of CWC materials including by reproducing, copying and creating derivative works from the initial downloaded of the CWC copyrighted material.

**N.    Littler's Access to the CWC Members-Only Confidential Connect Communications Platform**

145.    In addition to infringing the intellectual property and obtaining information from the CWC Members-Only Site, on March 18, 2020 Defendants Littler and Gibbons, using the Littler IP address and Littler's information technology resources, also intentionally accessed the CWC Members-Only Confidential Connect Communications Platform.

146.    The access to the CWC Members-Only Confidential Connect Communications Platform by Defendants Littler and Gibbons was intentional and highly invasive.  The unauthorized access to the Platform by the Littler IP address allowed Littler to access, view, monitor, and observe private member communications on workplace compliance issues.  The members in the platform did not know that someone using the Littler IP address was accessing, viewing, monitoring and observing

51

their confidential communications. This intrusion by the Littler IP address violated the security and privacy that CWC has established for its members to communicate confidentially with one another.

147. As a result of the fraud previously described, Defendants Littler and Gibbons obtained restricted, confidential and private information from the CWC Members-Only Confidential Connect Communications Platform. By accessing the CWC Members-Only Confidential Connect Communications Platform, Defendants Littler and Gibbons had access to view, monitor, and observe confidential communications of CWC Members. The CWC Members were unaware that a member of the Littler law firm could view their private and communications on workplace compliance and risk management issues. The exposure to the private confidential CWC Member communications allowed Defendants Littler and Gibbons to seek business opportunities with potential clients by learning the confidential communications of CWC Members.

148. As a former CWC staff member, Defendant Gibbons was aware that his access to the CWC Members-Only Confidential Connect Communications Platform was unauthorized. Defendant Gibbons was aware that (1) only members could access the CWC Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at the Littler law firm; and (3) Defendant Littler was ineligible to be a member as a law firm.

149. Additionally, on July 9, 2019, Defendant Gibbons, using the Littler IP address, accessed the CWC Members-Only Site and selected, obtained, viewed, downloaded, used, and infringed the following CWC Memorandum: "CWC Members Are Sharing Best Practices Via Our Online Collaboration Center, 'CWC Connect'" (No. 18-129), which described the benefits and options in using the Platform and expressly noted that "CWC Connect is a secure online platform

available only to CWC members and includes a Best Practices community that provides our members the opportunity to directly communicate, benchmark, and share ideas with each other."

### O.   Discovery of the Littler Infringement of the 2017 CWC Pre-Existing Big Data Analytics Presentation

150.   Further infringement of CWC material was uncovered involving Littler and its shareholders, associates, attorneys, principals, employees, representatives and agents including Littler principal Defendant Gokturk.

151.   On May 11-12, 2017, CWC hosted its third annual Talent Acquisition Compliance Summit ("TACS") in Dallas, Texas.

152.   Defendant Gibbons attended and presented at the 2017 TACS as CWC Senior Counsel.  Defendant Gokturk attended and presented as a CWC Senior Advisor.

153.   On May 12, 2017 at TACS, a CWC copyright-protected presentation was made by two CWC Senior Counsel, entitled "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" ("2017 CWC Pre-Existing Big Data Analytics Presentation").

154.   The 2017 CWC Pre-Existing Big Data Analytics Presentation was drafted exclusively for and on behalf of EEAC (now CWC) with the understanding that EEAC (now CWC) would retain the full ownership and the copyright of the 2017 CWC Pre-Existing Big Data Analytics Presentation and any subsequent versions.

155.   As the copyright owner for the 2017 CWC Pre-Existing Big Data Analytics Presentation, only EEAC (now CWC) could provide permission for further use of the work.  EEAC (now CWC) retained full copyright ownership in the work.

156.   The Power Point presentation for the 2017 CWC Pre-Existing Big Data Analytics Presentation bears the copyright notice of CWC's predecessor in the footer of the slides.

a.      As an example, as depicted, the presentation slides bear the footer:

COPYRIGHT 2017 EEAC



157.    The presentation of the 2017 EEAC copyright notice confirmed the copyright ownership by EEAC.

158.    CWC holds the copyright registration to the 2017 CWC Pre-Existing Big Data Analytics Presentation:  Copyright Registration No. TX0008882252.

159.    Defendant Chris Gokturk was familiar with the 2017 CWC Pre-Existing Big Data Analytics Presentation.  She attended the 2017 TACS.

160.    Defendant Gokturk received and obtained a copy of the 2017 CWC Pre-Existing Big Data Analytics Presentation bearing the EEAC copyright notice.

54

161.    Defendant Gokturk was aware of the 2017 EEAC copyright notice on the 2017 CWC Pre-Existing Big Data Analytics Presentation.  As a former CWC staff member, Defendant Gokturk was familiar with EEAC and CWC's practice of marking EEAC and CWC materials with copyright notices.

162.    Defendant Gokturk had no role in creating or presenting the 2017 CWC Pre-Existing Big Data Analytics Presentation.

a.    Defendant Gokturk was not an author of the 2017 CWC Pre-Existing Big Data Analytics Presentation.

b.    Defendant Gokturk did not contribute any content to the 2017 CWC Pre-Existing Big Data Analytics Presentation.

163.    CWC never granted permission to Defendant Littler nor Defendant Gokturk to copy the 2017 CWC Pre-Existing Big Data Analytics Presentation, or any portion, variation or derivative work thereof.

a.    CWC never granted permission to Defendant Littler nor Defendant Gokturk to copy or reproduce the 2017 CWC Pre-Existing Big Data Analytics Presentation with any prospective or current Littler clients or third parties or entities.

164.    In 2019, Defendants Littler and Gokturk infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation by copying and reproducing the presentation at Littler including for promotional purposes for the benefit and profit of Littler.

165.    In May 2020, CWC discovered a Littler presentation entitled "Technology in Recruiting and Hiring:  Hidden Legal Risks," dated October 18, 2019 ("October 2019 Infringing

Littler Presentation"), presented by Littler shareholder Charles (Chad) E. Reis, IV, and Littler associate Lillian T. Manning.[33]

166.    A review of the October 2019 Infringing Littler Presentation confirms that several of the presentation slides infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation.

a.    For example, a side-by-side comparison shows the infringement, including entire phrases and sentences have been copied directly from the CWC presentation into the infringing Littler presentation, with trivial at most modifications:

// // //

---

[33] *See* Exhibit K (Littler Presentation:  "Technology in Recruiting and Hiring:  Hidden Legal Risks" (Oct. 18, 2019)).



167.   The October 2019 Infringing Littler Presentation infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation.

168.    The footer for most of the slides of the October 2019 Infringing Littler Presentation, including slides with infringed content, bears this designation:

© Littler Mendelson, P.C. | 2019 Proprietary and Confidential

169.    The October 2019 Infringing Littler Presentation infringes content from the 2017 CWC Pre-Existing Big Data Analytics Presentation and presents the content in these slides as "Proprietary and Confidential" to Littler along with a Littler copyright notice.   The Littler presentation falsely represents Littler as the original author of content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation.

170.    Defendant Littler, Defendant Gokturk and Doe Defendants removed the EEAC copyright notice from the 2017 CWC Pre-Existing Big Data Analytics Presentation and substituted the Littler copyright notice on the October 2019 Infringing Littler Presentation.

171.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendant Littler has infringed the 2017 CWC Pre-Existing Big Data Analytics Presentation on other occasions.   For example, a presentation, entitled "Technology in Hiring and Recruiting," was made in August 2019 by Littler shareholder Charles (Chad) E. Reis,[34] and another presentation, entitled, "How Artificial Intelligence and Technology Are Changing Talent Acquisition Compliance," was made in May 2019 in Phoenix, Arizona by Defendant Gibbons and Defendant Gokturk,[35] among possibly other presentations.

172.    Defendant Gokturk's acts of infringement of the copyrighted 2017 CWC Pre-Existing Big Data Analytics Presentation were committed willfully under 17 U.S.C. § 504(c)(2).   This same

---

[34] *See* Exhibit L (Littler Bio for Shareholder Charles (Chad) E. Reis), accessible at https://www.littler.com/people/charles-chad-e-reis-iv (viewed on Nov. 9, 2020).
[35] *See* Exhibit E (Littler Bio for Lance E. Gibbons Shareholder), previously available at https://www.littler.com/people/lance-e-gibbons (last accessed on April 2, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

conduct was also committed with the intent to engage in the unlawful activity described in the Complaint.

173.    For example, Defendant Gokturk was required to obtain prior approval before divulging proprietary information to anyone.  Defendant Gokturk was also required to obtain permission before appropriating the proprietary information to any other client, firm, or other entity.

174.    Defendant Gokturk was also prohibited from soliciting, inducing, or attempting to induce any past or current firm clients, or any prospective clients, including CWC.

175.    In 2019, neither Defendant Littler nor Defendant Gokturk sought the prior approval or permission of CWC to divulge and use the 2017 CWC Pre-Existing Big Data Analytics Presentation in (1) the practice areas of Defendants Littler and Gokturk;[36] (2) the business of Littler and legal services provided to prospective and current Littler clients; (3) the areas in which Littler competes with CWC; or (4) for any other purpose.

176.    At no time during her tenure at CWC did Defendant Gokturk contend or claim that she had an ownership interest in the 2017 CWC Pre-Existing Big Data Analytics Presentation.  As noted, Defendant Gokturk had no role in the 2017 CWC Pre-Existing Big Data Analytics Presentation.

177.    By infringing the 2017 CWC Pre-Existing Big Data Analytics Presentation for and on behalf of Defendant Littler, Defendant Gokturk disregarded the copyright notice of EEAC.

178.    By infringing the 2017 CWC Pre-Existing Big Data Analytics Presentation, Defendants Littler and Gokturk falsely represented that Littler was the original author of the content copied from the 2017 CWC Pre-Existing Big Data Analytics Presentation.  In fact, in receiving a

---

[36] *See* Exhibit I (Littler Practices), accessible at https://www.littler.com/practices-industries (viewed Nov. 9, 2020); *see also* Exhibit G (Littler Bio for Chris Gokturk Principal), accessible at https://www.littler.com/people/lance-e-gibbons (viewed on Nov. 9, 2020); Exhibit F ("Littler Adds Chris Gokturk in Northern Virginia") (Feb. 26, 2019), accessible at https://www.littler.com/publication-press/press/littler-adds-chris-gokturk-northern-virginia (viewed on Nov. 9, 2020).

copy of the 2017 CWC Pre-Existing Big Data Analytics Presentation bearing the EEAC copyright notice, she knew and understood that EEAC was the copyright owner of the work.

179. CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler and Gokturk have infringed other CWC presentations and materials in the same manner on other occasions. For example, CWC is informed and believes that former CWC staff members and Defendants Gibbons and Gokturk brought to Defendant Littler other CWC information and materials that were used, copied, reproduced and shared with others at Littler for the benefit and profit of Littler.

## V.    COPYRIGHTED WORKS

180. CWC is the owner of the copyrights to the works identified in Exhibit B (CWC Copyright Registrations), and each of the works have been duly registered with the United States Copyright Office.

181. CWC has the exclusive right to, among other things, reproduce, distribute, publicly display, and create derivative works from CWC's Copyright Works.

182. Exhibit B lists each registered work as follows: (1) Column 1 providing the claim number, (2) Column 2 providing the title of the work infringed, (3) Column 3 providing the CWC Memorandum Number, if any, for the work infringed, (4) Column 4 providing the date of publication, (5) Column 5 providing the date of registration, (6) Column 6 providing the copyright registration number(s) for the work, (7) Column 7 providing the date on which infringement occurred, or CWC believes infringement to have first occurred, and (8) Column 8 providing the number of times each CWC work was downloaded.

183. For each work identified in Exhibit B, on or about the date(s) listed on Column 5, CWC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificates of Registration bearing the number(s) listed on Column 6.

## VI.   COUNT 1: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF WORKS FROM THE CWC MEMBERS-ONLY SITE
### (Defendants Littler, Gibbons and Does 1-10)

184.    CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-183, as though set forth herein in full.

185.    As alleged above, CWC owns registered copyrights for the CWC Copyrighted Works for each of the Claim Numbers listed in Exhibit B (CWC Copyright Registrations).

186.    Beginning at a time unknown, but at least by November 16, 2018 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10, using the Littler IP reproduced, distributed, displayed, and made derivative works of these works, which were located in the CWC Members-Only Site.

187.    The unauthorized reproduction, distribution, display and creation of a derivative work by Defendants Littler, Gibbons, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act.

188.    Each infringement was done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

189.    Each of these discrete acts constitutes infringement of CWC's copyrights in those works, and CWC alleges willful copyright infringement based on these acts for Claim Numbers 1 to 90 and 92 to 253 listed in Exhibit B (CWC Copyright Registrations).

190.    Each act of infringement occurred using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

191.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendants Littler, Gibbons, and Does 1-10 produced an indeterminate number of infringing derivative works based on one or more of the CWC Copyrighted Works for the Claim Numbers listed

in Exhibit B (CWC Copyright Registrations) in client communications or other work product produced for the benefit of Littler.

192.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

193.    The specific acts of copyright infringement alleged in the Complaint have caused and are causing CWC great and incalculable damage.  The scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

194.    The acts of infringement by Defendants Littler, Gibbons, and Does 1-10 were committed "willfully" under 17 U.S.C. § 504(c)(2).

195.    CWC is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), with respect to each applicable work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

196.    The following facts and factors, among others to be proven at trial, are relevant to statutory damages pursuant to 17 U.S.C. § 504(c):

a.    The circumstances of the infringement involve former CWC staff members who were familiar with the proprietary nature of the CWC intellectual property, the manner in which the intellectual property was created, and the restrictions on its use.

b.    The extent and duration of the infringement involves a recurring infringement and of a voluminous amount of CWC material and information over an extended period of time from at least November 2018 through the beginning of March 2020.

c.      The expenses saved by the Defendants by infringing the CWC material and information.

d.      The profits and benefits to the Defendants including to promote (1) the practice areas of the Littler Defendants; (2) the business of Littler and legal and related services provided to prospective and current Littler clients; and (3) the areas in which Littler competes with CWC.

e.      Multiple misleading or false statements made by the Defendants as part of the copyright infringement as noted above, including but not limited to falsely representing that Defendant Littler was the original author of content copied from CWC.

f.      The fact that the CWC materials bore copyright notices which were disregarded or removed in creating and using new Littler materials for the use and profit by Littler.

g.      The fact that Defendant Littler advises employers how to avoid the unlawful conduct that occurred in this case.

h.      The size, resources and revenues[37] of Defendant Littler as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[38] including the ability to pay damages.[39]

i.      The need to deter the Defendants and other potential infringers.[40]

197.   CWC is entitled to its actual damages and disgorgement of any profits of the Defendants with respect to each applicable work infringed, as will be proven at trial, under 17 U.S.C. §§ 504(a), 504(b).

---

[37] The National Law Journal reported that Littler had $590,038,000 in gross revenue in 2019. *See* Law.com Littler Firm Profile, https://www.law.com/law-firm-profile/?id=186&name=Littler-Mendelson (viewed Nov. 9, 2020).

[38] *See* note 11 (Littler publications making this statement), *supra*.

[39] *See, e.g., Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004) (in affirming copyright statutory damages, noting "[t]he wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award") (collecting other cases).

[40] *See, e.g., F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 234 (1952) ("[A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy.").

198.    Defendants Littler, Gibbons and Does 1-10 had knowledge of the infringing activity. For example, each CWC copyrighted work bore a copyright notice identifying Plaintiff as the owner of the copyright protected work.  The copyright notices were removed or disregarded so the CWC content could be used for the benefit and profit of Defendant Littler including the creation and use of derivative works.

199.    Defendant Gibbons also was familiar with the steps taken by CWC to protect its intellectual property.  Defendant Gibbons had drafted CWC materials that bore these copyright notices.

200.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler, Gibbons and Does 1-10 induced, caused or materially contributed to the infringing conduct of another.  For example, once the CWC works were introduced to the Littler infrastructure, platform and resources, the CWC works became available to others either by reproducing, distributing, sharing or making them available to others at Littler.

201.    Defendant Littler facilitated, encouraged and materially contributed to such infringement by continuing to provide its network and the facilities necessary for the recurring and ongoing infringements on the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

202.    Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

203.    CWC is entitled to its costs, including reasonable attorneys' fees, under 17 U.S.C. § 505, where applicable.

204.    The conduct Defendants Littler, Gibbons, and Does 1-10 caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or

measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## VII.   COUNT 2: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(2)(C) OBTAINING INFORMATION FROM THE CWC MEMBERS-ONLY SITE (Defendants Littler, Gibbons and Does 1-10)

205.   CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-204, as though set forth herein in full.

206.   During the period from November 16, 2019 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10 intentionally accessed the CWC Members-Only Site, without authorization, or exceeding authorized access, and thereby obtained information from the protected computer in violation of 18 U.S.C. § 1030(a)(2)(C).

207.   Defendants Littler, Gibbons, and Does 1-10 used Littler's robust platform and resources, including the Littler IP address, to access, select, obtain, view, download, retain, print, and use restricted CWC information and copyrighted materials to benefit Defendant Littler directly and indirectly and themselves as a Littler shareholder.  For example, this included using Littler computers, computers systems and the Littler IP address to access without authorization, and exceeding any authorized access, restricted content on the CWC Members-Only Site.

208.   Defendants Littler, Gibbons, and Does 1-10 used the Littler IP address and resources to obtain the information listed on Exhibit A (List of CWC Information Obtained by the Littler IP Address).

209.   As described above, the intentional access, without authorization or exceeding authorized access, included the highly invasive access on March 18, 2020 to CWC's Connect communications platform, which is a highly confidential online community for CWC members.  The

65

CWC Members did not know that a member of the Littler law firm could view their private and confidential communications on workplace compliance and risk management issues.

210.    Each unauthorized access occurred using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

211.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

212.    Defendant Gibbons was aware that his access to the CWC Members-Only Site was unauthorized.  Defendant Gibbons was aware that (1) only members could access the CWC Members-Only Site; (2) Defendant Gibbons was not a member and was ineligible to become a member based on his work as a shareholder and attorney at Defendant Littler; and (3) Defendant Littler as a law firm was ineligible to be a member.

213.    Consequently, Defendant Gibbons asked others to obtain CWC member-restricted information for him.

214.    Defendant Gibbons recognized that asking others to obtain for his and Defendant Littler's benefit CWC member-restricted content may cause "trouble."

215.    Undeterred, Defendant Gibbons sought to use the credentials of another individual who was employed at Company A to obtain restricted content from the CWC Members-Only Site. Defendant Gibbons on multiple occasions made false and misleading statements to obtain the login credentials of the Company A Employee.

216.    CWC's proprietary and other information are stored on the CWC Members-Only Site to make those materials accessible to its members through a password-protected portion of its

66

website.  The CWC Members-Only Site is a "protected computer," under 18 U.S.C. § 1030(e)(2)(B), in that the computer is used in or affecting interstate or foreign commerce or communication and is connected to the Internet.

217.    As a result, CWC has suffered a "loss", under 18 U.S.C. § 1030(e)(11), which exceeds $5,000 based on reasonable costs including the cost of responding to the offense, investigating the incident, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.  For example, CWC and external resources were committed to respond to the offense, investigate the incident, conduct a damage assessment and restore the system and information.  CWC initiated an internal investigation and engagement of outside resources to determine who was responsible for the unauthorized access to information and materials on the CWC Members-Only Site, and the scope of the information accessed and obtained.

218.    The loss to CWC or more persons during any one-year period aggregating at least $5,000 in value, under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

219.    Pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, CWC is entitled to compensatory damages, injunctive relief or other equitable relief, attorney's fees and costs, where applicable, and all other appropriate relief.

### VIII.   COUNT 3: COMPUTER FRAUD AND ABUSE ACT UNDER 18 U.S.C. § 1030(a)(4) COMPUTER FRAUD (Defendants Littler, Gibbons and Does 1-10)

220.    CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-219, as though set forth herein in full.

221.    During the period from November 16, 2019 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10 knowingly and with intent to defraud accessed the CWC Members-Only Site, a protected computer, without authorization, or exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained anything of value, that is the information

reflected in Exhibit A (List of CWC Information Obtained by the Littler IP Address), in violation of 18 U.S.C. § 1030(a)(4).

222.    The intended fraud included during each unauthorized access to the CWC Members-Only Site, Defendants Littler, Gibbons, and Does 1-10 falsely represented that the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site.

223.    The intended fraud included during each unauthorized access to the CWC Members-Only Site, Defendants Littler, Gibbons, and Does 1-10 in using the credentials of the Company A Employee, falsely represented that the Company A employee was accessing the CWC Members-Only Site and concealing the fact that the Defendants were actually making unauthorized access to the CWC Members-Only Site.

224.    The intended fraud included making fraudulent statements to obtain the login credentials of the Company A Employee.

225.    As a result of the fraud, Defendants Littler and Gibbons obtained restricted information from the CWC Members-Only Site which they used to benefit and profit Littler.

226.    The value of the information substantially exceeded $5,000.  For example, the cost of development or production of the information exceeds $5,000.

227.    Defendants Littler and Gibbons recognized the value of the information as they used it in their legal services with clients and other third parties.

228.    Defendants Littler and Gibbons used Littler's robust platform and resources to access, obtain, download, infringe and use restricted CWC information and copyrighted materials to benefit Defendant Littler directly and indirectly and themselves as a Littler shareholder and principal.  For example, this included using Littler computers, computers systems and the Littler IP address.

229.   As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

230.   The CWC Members-Only Site is a "protected computer," under 18 U.S.C. § 1030(e)(2)(B), in that the computer is used in or affecting interstate or foreign commerce or communication and is connected to the Internet.

231.   As a result, CWC has suffered a "loss", under 18 U.S.C. § 1030(e)(11), which exceeds $5,000 based on reasonable costs including the cost of responding to the offense, investigating the incident, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.  For example, CWC and external resources were committed to respond to the offense, investigate the incident, conduct a damage assessment and restore the system and information.  CWC initiated an internal investigation and engagement of outside resources to determine who was responsible for the unauthorized access to information and materials on the CWC Members-Only Site, and the scope of the information accessed and obtained.

232.   The loss to CWC or more persons during any one-year period aggregating at least $5,000 in value, under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

233.   Pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, CWC is entitled to compensatory damages, injunctive relief or other equitable relief, attorney's fees and costs, where applicable, and all other appropriate relief.

### IX.   COUNT 4: FRAUD
### (Defendants Littler, Gibbons and Does 1-10)

234.   CWC re-alleges and incorporates by reference paragraphs 1-67, 69-149, 180-233, as though set forth herein in full.

235.     During the period from November 16, 2019 through March 18, 2020, for each and every access to the CWC Members-Only Site Defendants Littler, Gibbons, and Does 1-10 intentionally and knowingly, and with the intent to mislead, made false representations of a material fact that (1) the Defendants had a CWC member account, were the account holder, and were entitled to access the CWC Members-Only Site; and (2) in using the credentials of the Company A Employee, representing that the Company A employee was accessing the CWC Members-Only Site and concealing the fact that the Defendants were actually making access to the CWC Members-Only Site.

236.     The dates of each fraudulent access to the CWC Members-Only Site are reflected on Exhibit A (List of CWC Information Obtained by the Littler IP Address).

237.     The Defendants made these false statements of a material fact for the purpose of accessing, selecting, obtaining, viewing, downloading, retaining, printing, and using information and materials from the CWC Members-Only Site

238.     At the time the false statements of a material fact were made, the Defendants knew them to be false, and did so with the intent to deceive and mislead CWC.

239.     The false representations and concealed facts were material.  Defendants Littler, Gibbons, and Does 1-10 would not have been allowed access to the CWC Members-Only Site had CWC known the true identity since the Defendants were ineligible for CWC membership.

240.     CWC relied on the false representations of a material fact understanding that the access was based on the Company A employee and not on Defendants Littler, Gibbons, and Does 1-10.  CWC understood the credentials were used by a CWC member when in fact the credentials were used by individuals associated with a law firm that was ineligible for CWC membership.

241.     As part of the intent to defraud and intent to mislead, as described above, Defendant Gibbons made fraudulent statements to obtain the login credentials of the Company A Employee.  By

70

using the credentials of another individual, Defendant Gibbons sought to bypass the restriction that law firms and its shareholders "are not eligible for [CWC] membership"[41] or to access and obtain information and copyright materials from the CWC Members-Only Site.

242.    The fraud by Defendants Littler, Gibbons, and Does 1-10 resulted in damages to CWC as a voluminous amount of CWC's intellectual property and information was misappropriated and obtained by, and used for the benefit and profit of, Defendant Littler.

243.    The Defendants benefitted at the expense of CWC by obtaining, using and the CWC information and materials.  The Defendants were unjustly enriched by obtaining the value of the information, including based on the production costs of CWC to create the content.

244.    The Defendants acted under circumstances amounting to a willful and wanton disregard for CWC's rights.  As noted above, Defendant Gibbons made repeated false statements to obtain the credentials from the Company A employee which he used to access the CWC Members-Only Site.  After obtaining the credentials, he used them repeatedly over seventeen (17) months to fraudulently access, download and/or infringe CWC restricted content which he used to benefit and profit Defendant Littler.  CWC is informed and believes and, based thereon, he reproduced and created derivative works from the CWC materials, used the CWC information and materials in Littler's legal business with Littler clients and others.  As a result of the fraud, Defendants Littler and Gibbons obtained restricted information from the CWC Members-Only Site which they used to benefit and profit Littler.

245.    As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

---

[41] *See* Exhibit C (CWC Membership Application).

246.    CWC has suffered damages as a direct and proximate result of the misleading and fraudulent statements.

247.    CWC is entitled to recover appropriate damages, interest, costs and attorney's fees, where applicable, from the Defendants.

248.    CWC is entitled to punitive damages against the Defendants to be determined by the jury in its sole discretion.

249.    CWC seeks equitable relief, including disgorgement of profits, as the court deems appropriate.

## X.    COUNT 5: DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF THE 2017 CWC PRE-EXISTING BIG DATA ANALYTICS PRESENTATION (Defendants Littler, Gokturk, and Does 1-10)

250.    CWC re-alleges and incorporates by reference paragraphs 1-68, 150-183, as though set forth herein in full.

251.    In 2019, Defendants Littler, Gokturk, and Does 1-10 infringed (including creating derivative works of) the 2017 CWC Pre-Existing Big Data Analytics Presentation, a copyrighted work listed in Exhibit B (CWC Copyright Registrations),[42] attached hereto and incorporated herein.

252.    The unauthorized reproduction, distribution, display and creation of a derivative work by Defendants Littler, Gokturk, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act.

253.    These acts were done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

---

[42] "Big Data Analytics and Artificial Intelligence: The Compliance and Diversity Implications Of Automating Early Stage Recruitment" (presented on May 12, 2017) ("2017 CWC Pre-Existing Big Data Analytics Presentation") (Copyright Registration No. TX0008882252).

254.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, Defendants Littler, Gokturk, and Does 1-10 produced an indeterminate number of infringing derivative works based on one or more of the 2017 CWC Pre-Existing Big Data Analytics Presentation in client communications or other work product produced for the benefit of Littler.  Thus, Defendants Littler, Gokturk, and Does 1-10 have committed and/or are liable for copyright infringement.

255.    Defendants Littler, Gokturk and Does 1-10 had knowledge of the infringing activity. For example, each CWC copyrighted work bore a copyright notice identifying Plaintiff as the owner of the copyright protected work.  The copyright notices were removed or disregarded so the CWC content could be used for the benefit and profit of Defendant Littler including the creation and use of derivative works.

256.    Defendant Gokturk also was familiar with the steps taken by CWC to protect its intellectual property.  Defendant Gokturk had drafted CWC materials that bore these copyright notices.

257.    CWC is informed and believes and, based thereon, alleges, and to be fully determined at trial, that Defendants Littler, Gokturk and Does 1-10 induced, caused or materially contributed to the infringing conduct of another.  For example, once the CWC works were introduced to the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), the CWC works became available to others either by reproducing, distributing, sharing or making them available to others at Littler.

258.    Defendant Littler facilitated, encouraged and materially contributed to such infringement by continuing to provide its network and the facilities necessary for the recurring and

ongoing infringements on the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials).

259.     Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

260.     The specific acts of copyright alleged in the Complaint, as well as Defendants Littler, Gokturk, and Does 1-10's entire course of conduct, have caused and are causing CWC great and incalculable damage.  To date, despite CWC's attempt to receive a complete accounting from Littler of any and all potential derivative uses of the works listed in Exhibit B (CWC Copyright Registrations), the scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

261.     As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

262.     As previously described, Defendants Littler, Gokturk, and Does 1-10's acts of infringement were committed willfully.

263.     CWC is entitled to actual damages and any additional profits of Defendants under 17 U.S.C. § 504(a).

264.     Defendants Littler, Gokturk, and Does 1-10's conduct caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent

injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## XI.   COUNT 6: ALTERATION OR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION UNDER 17 U.S.C. § 1202
### (Defendants Littler, Gokturk, and Does 1-10)

265.     CWC re-alleges and incorporates by reference paragraphs 1-68, 150-183, 250-264, as though set forth herein in full.

266.     The 2017 CWC Pre-Existing Big Data Analytics Presentation contained copyright notices identifying Plaintiff as the owner of the copyright protected presentation.

267.     The inclusion of a copyright notice, including the identity of Plaintiff, constitutes "copyright management information" as defined in 17 U.S.C. § 1202(c).

268.     Defendants Littler, Gokturk, and Does 1-10 without authority of Plaintiff or the law, intentionally removed and/or altered and has caused and induced others to remove and/or alter such copyright management information from Plaintiff's subject works, and has thereafter distributed the improperly modified works, having reasonable grounds to know that such acts will induce, enable, facilitate or conceal an infringement of copyright in violation of 17 U.S.C. § 1202(b)(l) and (3).

269.     Defendants Littler, Gokturk, and Does 1-10's removal or alteration of copyright management information from Plaintiff's subject works, and its subsequent distribution of the improperly modified, works was, and is, willful and intentional, and was, and is, executed with full knowledge of Plaintiff's rights under copyright law, and in disregard of Plaintiff's rights.

270.     As set forth above, in committing each of these acts in this count, the Littler Defendants were acting as a representative and agent of Littler and within the course and scope of their employment and for the benefit of Littler, with the actual or implied knowledge of Littler.

271.     Plaintiff is entitled to recover its actual damages suffered as a result of the violation and any profits of Defendants Littler, Gokturk, and Does 1-10 attributable to the violation and not

taken into account in computing actual damages, or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 1203(c).

272.    Plaintiff is entitled to recover costs and attorneys' fees from the Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5).

273.    Defendants Littler, Gokturk, and Does 1-10's violations of 17 U.S.C. §§ 1202(b)(l) and (3) have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Plaintiff not fully compensable in monetary damages. Pursuant to 17 U.S.C. § 1203(b)(l), Plaintiff is entitled to a preliminary and permanent injunction enjoining Defendants Littler, Gokturk, and Does 1-10 from further such violations.

### XII.    COUNT 7:  VICARIOUS COPYRIGHT INFRINGEMENT
### OF CWC WORKS
### (Defendant Littler and Does 1-10)

274.    CWC re-alleges and incorporates by reference all of the foregoing paragraphs, as though set forth herein in full.

275.    As alleged above, CWC owns registered copyrights for the CWC Copyrighted Works for each of the Claim Numbers listed in Exhibit B (CWC Copyright Registrations).

276.    Beginning at a time unknown, but at least by November 16, 2018 through March 18, 2020, Defendants Littler, Gibbons, and Does 1-10, using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), reproduced, distributed, displayed, and made derivative works of these works, which were located in the CWC Members-Only Site, and as otherwise described above.  The unauthorized reproduction, distribution, display, and/or creation of a derivative work by Defendants Littler, Gibbons, and Does 1-10 infringes CWC's exclusive rights in violation of the Copyright Act. This conduct constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq*.

277.    The copyright infringement in this case was voluminous, persistent, and extensive, involving different forms of infringement as described above and spanning over 489 days during the period of infringement from November 16, 2018 through March 18, 2020.

278.    Each infringement of CWC's copyrighted works constitutes a separate and distinct act of infringement.

279.    Each infringement was done without CWC's permission, contrary to CWC's stated policies, and despite copyright notices attached to those documents.

280.    Under a claim of vicarious copyright infringement, knowledge of the infringing conduct is not required.[43]  Instead, the focus is on whether the defendant profited directly from the infringement and had the *right* and *ability* to supervise the infringing activity as described in this First Amended Complaint.

281.    Defendant Littler had the right and ability to supervise, control and terminate the voluminous and extensive infringing conduct described in this First Amended Complaint, as further described below, that took place using the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials), and is liable as a vicarious copyright infringer for the direct infringements described above.

282.    Defendant Littler controls and supervises the day-to-day activities taking place in the Littler law firm and owns and operates the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials) through which each act of the copyright infringement took place in this case for the benefit and profit of Defendant Littler.

---

[43] *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 n.9 (2005) (noting the vicarious copyright liability theory "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, *even if the defendant initially lacks knowledge of the infringement*") (emphasis added).

283.    Defendant Littler had a supervisory and controlling relationship over Defendants Gibbons, Gokturk and Does 1-10 concerning the legal and other services they provide on behalf of Littler, as agents and representatives of Litter, and their interactions and communications with current and prospective Littler clients.

284.    For example, Defendant Littler had the right and ability to supervise and control the infringing conduct for the benefit and profit of, Defendant Littler, in the name or on behalf of Defendant Littler or using the resources of Defendant Littler through a variety of means including (1) by hiring, promoting, providing bonuses and determining compensation for its shareholders, associates, attorneys, principals or employees, or other agents; (2) through employment and other agreements with its shareholders, associates, attorneys, principals or employees, or other agents; (3) by providing, permitting, conditioning, restricting or limiting access to the Littler infrastructure, platform and resources (including the use of Littler's IP address, computing and network resources, and branding and other materials); (4) by allowing and blocking access to a particular environment or site for any reason; (5) through financial and staff support to its shareholders, associates, attorneys, principals or employees, or other agents in the performance of their duties and the delivery of legal services to current and prospective clients; (6) through policies that apply to its shareholders, associates, attorneys, principals or employees, or other agents; (7) by establishing parameters for the delivery of Littler services, exercising control over the services consistent with Littler's standards; (8) by providing terms and parameters to generate business and obtain profits for Littler; (9) by establishing processes and procedures to review and approve client invoices and oversee other financial aspects in which Littler manages its business and the provision of legal services; (10) through the ability to discharge, terminate or modify Defendant Littler's relationship with its shareholders, associates, attorneys, principals or employees, or other agents; and (11) through the

ability to monitor and supervise the conduct of its shareholders, associates, attorneys, principals or employees, or other agents in the performance of their duties.

285.   Defendant Littler, self-described as "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide," provides employers with legal advice on how to avoid the type of infringement of copyrighted content along with other forms of the misappropriation of intellectual property that occurred in this case.  Defendant Littler also provides legal guidance to employers about the legal risks in hiring employees from competitors.

286.   As described above, Defendant Littler possessed an obvious and direct financial interest in the infringing activity.  The infringement of CWC works was conducted by Defendants Gibbons, Gokturk and Does 1-10 using the name and resources of Defendant Litter, promoting the legal business of Defendant Littler, and billing for legal serves on behalf of Defendant Littler.

287.   Defendant Littler benefitted financially since the availability of the infringing materials was made and used to draw and maintain current or prospective clients.

288.   Defendant Littler billed Littler clients using the infringed CWC works in this case in providing legal and other services.

289.   Defendant Littler derived revenues by using the infringed CWC works in this case in providing legal and other services.

290.   The specific acts of copyright infringement alleged in the Complaint have caused and are causing CWC great and incalculable damage.  The scope of Littler's infringement, potential republication of infringing materials, or other potentially ongoing acts of infringement has yet to be determined.  Unless this Court provides injunctive relief, any ongoing infringement would be an irreparable injury for which CWC would have no adequate remedy at law.

291.     As described above, the acts of infringement by Defendants Littler, Gibbons, and Does 1-10 were committed "willfully" under 17 U.S.C. § 504(c)(2).

292.     CWC is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), with respect to each applicable work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

293.     CWC is entitled to its actual damages and disgorgement of any profits of the Defendants with respect to each applicable work infringed, as will be proven at trial, under 17 U.S.C. §§ 504(a), 504(b).

294.     CWC is entitled to its costs, including reasonable attorneys' fees, under 17 U.S.C. § 505, where applicable.

295.     The conduct Defendants Littler, Gibbons, and Does 1-10 caused and, unless enjoined by this Court, will continue to cause CWC irreparable injury which cannot be fully compensated or measured in monetary terms. CWC has no adequate remedy at law and is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, or other use or exploitation of the Copyrighted materials, under 17 U.S.C. § 502.

## PRAYER FOR RELIEF

WHEREFORE, CWC requests that the Court grant the following relief:

A.     Enter judgment in CWC's favor on each count;

B.     Enter judgment against Defendant Littler that it is has infringed CWC's copyrighted works, violated the Computer Fraud and Abuse Act, engaged in the Alteration or Removal of Copyright Management Information, and engaged in Fraud;

C.     Enter judgment against Defendant Gibbons that he has infringed CWC's copyrighted works, violated the Computer Fraud and Abuse Act, and engaged in Fraud;

D.      Enter judgment against Defendant Gokturk that she has infringed CWC's copyrighted works, and engaged in the Alteration or Removal of Copyright Management Information;

E.      An order for an accounting (1) to identify, recover and return all misappropriated CWC information and material, including but not limited to derivative works, in the possession, custody and control of the Defendants and any third parties that the Defendants provided, reproduced, or shared CWC information and material, (2) of any monetary benefits, and (3) other benefits received by each Defendant as a result of their unlawful acts;

F.      Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, from (i) making any unauthorized access to any CWC protected computer system, (ii) all further unauthorized reproduction of any works published by CWC, display of works published by CWC, and distribution of copies of works published by CWC or preparation of derivative works from works published by CWC, and (iii) assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ii) above; and (b) ordering Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, to permanently delete and destroy any of CWC's copyrighted works within their possession with a signed affidavit certifying completion of such deletion/destruction;

G.      Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successor and assigns, and all persons in active concert or participation with them, from (i) directly or indirectly continuing to violate 17 U.S.C. §§ 1202(b)(1) and (3), and (ii) assisting, aiding, or abetting any other

person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) above;

H.      Order the impounding of all copies made or derivative works of CWC's copyrights in violation of the exclusive rights of CWC and records documenting the manufacture, sale, or receipt of things involved in any such violation, under 17 U.S.C. § 503(a);

I.      Order the "destruction or other reasonable disposition of all copies" that were "made or used in violation of" CWC's exclusive copyright rights, under 17 U.S.C. § 503(b);

J.      Enter judgment against Defendants and in favor of CWC for compensatory damages;

K.      An award of statutory damages of $1.65 million as a result of Defendants' willful infringement of CWC's copyrighted works;

L.      An award of statutory damages as a result of the Alteration or Removal of Copyright Management Information;

M.      Order the Defendants to file with the Court and serve upon CWC, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which each Defendant has complied with the provisions set forth in Paragraphs F, G, H, and I of this Prayer for Relief;

N.      An award for the costs of this action, including reasonable attorneys' fees, where applicable, pursuant to 17 U.S.C. § 505, 18 U.S.C. § 1030, 17 U.S.C. § 1203, and other applicable laws;

O.      Enter judgment against Defendants and in favor of CWC for pre-judgment and post-judgment interest and costs; and

P.      Any such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all claims and issues so triable by right to a jury in accordance with Rule 38 of the Federal Rules of Civil Procedure.

Dated:  February 3, 2021                              Respectfully submitted,

                                                      MORGAN LEWIS & BOCKIUS LLP
                                                      By:        /s/ Mark L. Krotoski
                                                                 /s/ J. Kevin Fee
                                                        Mark L. Krotoski (*pro hac vice*)
                                                        J. Kevin Fee (Virginia Bar. No. 88376)
                                                        Rachel E. Fertig (*pro hac vice*)
                                                        Jane W. Wise (*pro hac vice*)
                                                        1111 Pennsylvania Ave. NW
                                                        Washington, DC 20004-2541
                                                        Telephone: +1.202.739.3000
                                                        Facsimile:  +1.202.739.3001

                                                        Thomas Y. Nolan (*pro hac vice*)
                                                        1400 Page Mill Road
                                                        Palo Alto, CA  94304
                                                        Telephone: +1.650.843.4000
                                                        Facsimile:  +1.650.843.4001
                                                        mark.krotoski@morganlewis.com
                                                        kevin.fee@morganlewis.com
                                                        thomas.nolan@morganlewis.com
                                                        rachel.fertig@morganlewis.com
                                                        jane.wise@morganlewis.com

                                                        *Attorneys for Plaintiff Center for Workplace Compliance*