**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| CENTER FOR WORKPLACE COMPLIANCE (f/k/a EQUAL EMPLOYMENT ADVISORY COUNCIL),<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>LITTLER MENDELSON, P.C., LANCE E. GIBBONS, THERESA GOKTURK (a/k/a CHRIS GOKTURK), and<br>DOE DEFENDANTS 1-10, INCLUSIVE,<br><br>    Defendants and Counterclaimants. | Case No. 1:20-cv-01387-AJT-JFA |

**PLAINTIFF CENTER FOR WORKPLACE COMPLIANCE'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

                                                          **Page**

TABLE OF AUTHORITIES ................................................................................................... i
INTRODUCTION ................................................................................................................. 1
STATEMENT OF FACTS .................................................................................................... 2
ARGUMENT ......................................................................................................................... 4
I.     A TWO-TIERED APPROACH IS WARRANTED GIVEN THE SENSITIVITY OF THE DOCUMENTS SOUGHT AND TO BE PRODUCED IN THIS CASE ....................... 4
II.    CWC'S PROPOSED PROTECTIVE ORDER ADDRESSES ANY CONCERNS THAT A TWO-TIERED APPROACH WOULD IMPEDE THE CASE ............................. 9
III.   CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown Bag Software v. Symantec Corp.*
  920 F.2d 1465 (9th Cir. 1992) ...................................................................................... 4

*Compass Minerals Am. Inc. v. Gaia Ents., Inc.*,
  No. 16-cv-2175, 2017 WL 3498900 (D. Kan. Aug. 16, 2017) ...................................... 8

*GTE Prods. Corp. v. Gee*,
  112 F.R.D. 169 (D.Mass. 1986) ................................................................................. 10

*Heriot v. Byrne*,
  No. 8-cv-2272 (N.D. Ill.) .............................................................................................. 9

*Kannan v. Apple Inc.*,
  2019 WL 3037591 (N.D. Cal. July 11, 2019) .............................................................. 7

*S2 Automation LLC v. Micron Semiconductor Israel Ltd.*,
  283 F.R.D. 671 (D.N.M. 2012) .................................................................................... 8

*Stewart v. Apple, Inc.*,
  No. 2:10-cv-01012 (W.D. Wash.) ................................................................................ 8

*Suture Exp., Inc. v. Cardinal Health, 200, LLC*,
  No. 12-cv-2760, 2013 WL 6909158 (D. Kan. Dec. 31, 2013) ................................. 8, 9

*U.S. Steel Corp. v. United States*,
  730 F.2d 1465 (Fed. Cir. 1984) ................................................................................... 4

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rules of Civil Procedure Rule 26 ........................................................................ 1

## INTRODUCTION

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, Plaintiff Center for Workplace Compliance ("CWC") respectfully requests a protective order to govern the treatment of confidential information and documents sought and produced for discovery in this case, which is of particular importance as the parties begin the process of producing responsive documents.

Production of documents commences next week for all parties. No protective order is in place given the inability of the parties to agree on a protective order after numerous meet and confer sessions. The parties are reaching an agreement on an interim protective order agreement.

The primary dispute is whether a one or two-tier protective order is needed to protect Confidential and Highly Confidential Information already requested and expected in this case. Copyright cases regularly use a two-tiered approach. In this case, Defendants have requested Highly Confidential Information which warrants higher protection.

Counsel have met and conferred on a number of occasions, and after repeated attempts by counsel for CWC to compromise to reach consensus on a stipulated protective order, Defendants have refused to agree to CWC's request for a provision allowing certain information and documents to be designed as "Highly Confidential" and treated with heightened precautions over information and documents designated as merely "Confidential." CWC has suggested that the two-tiered approach from copyright cases involving Defendant's counsel can be used in this case. Counsel for Littler and Gokturk has been unable to answer why this language should not apply in this case.

As explained in detail below, the nature of this case and the discovery sought by the parties compels an order with a flexigble, two-tiered approach to allow for added protections for highly sensitive information.

## STATEMENT OF FACTS

This is a case about a recurring and extensive pattern of misappropriation of CWC's intellectual property and other valuable, restricted information by a former insider, in addition to other acts of copyright infringement, for the benefit and profit of Defendant Littler Mendelson, P.C. ("Littler"). *See* Dkt. No. 39 (CWC's Second Amended Complaint) ("SAC"). CWC's intellectual property, for example in the form of weekly memoranda, is made available to members of CWC through a members-only, password protected portion of its website. *See* SAC at ¶ 35. Defendant Lance E. Gibbons was Assistant General Counsel of CWC from approximately October 1, 2017 to July 20, 2018, after previously serving since July 2015 as Senior Counsel for CWC. SAC at ¶¶ 14, 42. During his time working on behalf of CWC, Mr. Gibbons was aware of and responsible for helping to manage CWC's policies and practices concerning the protection of CWC's intellectual property. *Id*. at ¶ 42. From its inception, CWC's membership eligibility rules have prohibited law firms, consulting firms, and certain other organizations who provide employers with workplace legal and compliance services from becoming members, and from accessing the member-restricted conted from CWC's password-protected website. *Id*. at ¶ 3.

When Mr. Gibbons resigned and departed from his service to CWC on July 20, 2018, his credentials and system access, including access to CWC's network and member-restricted resources, were revoked. *Id*. at ¶ 43. At least by September and November 2018, Mr. Gibbons attempted to access and obtain CWC's member-restricted content, and attempted to induce others to facilitate his unlawful access and infringement. *Id*. at ¶¶ 73-88. After those attempts were unsuccessful, Mr. Gibbons contacted an employee of a company that had been a long-standing CWC member, and made false and misleading statements to obtain that employee's individual login credentials for the member-restricted website. *Id*. at ¶¶ 89-108. Beginning on November 16, 2018, using those improperly obtained credentials, Mr. Gibbons used Littler's servers and resources to

unlawfully obtain access to member-restricted documents and information on at least four hundred twenty-six (426) occasions. *Id*. at ¶¶ 5, 140. The period of infringement and unlawful access lasted for 489 days, and consisted of more than 2,100 pages of documents including memoranda, templates, checklists, and guides, among other resources, that CWC produced for the exclusive use and benefit of its member employers. *Id*. at ¶ 5.

This Court issued an Order on January 21, 2021 directing that "[d]iscovery may begin as of receipt of this Order." Dkt. No. 32. On the same day, Defendants Littler and Teresa Gokturk (also known as Chris Gokturk) served CWC with a First Set of Requests for Production, a First Set of Requests for Admission, and a First Set of Interrogatories. *See* Krotoski Decl., Exs. A-B. Lance E. Gibbons also served CWC with a First Set of Requests for Production. *See* Krotoski Decl., Exs. C. After CWC filed its complaint, beginning in November and continuing until the filing of the present Motion, the parties have negotiated on the terms for a proposed protective order to govern the treatment of confidential information sought and to be produced by the parties. *See* Krotoski Decl., ¶¶ 4-11. The main point of disagreement, which prompted the filing of the present Motion, is a dispute between the parties: (1) CWC's position is that a two-tiered designation system, which allows for heightened treatment of certain "Highly Confidential" documents, is appropriate given the specific needs of this case and the nature of the documents sought by the parties, and (2) Defendants have refused to compromise, insisting that a "Highly Confidential" designation is unnecessary. *Id*. at ¶¶ 6-7. CWC has offered to compromise to accommodate Defendants' concerns regarding the two-tiered approach, but have not been able to obtain Defendants' consent to this approach despite multiple attempts. *Id*. at ¶¶ 8-9.

**ARGUMENT**

I.  **A TWO-TIERED APPROACH IS WARRANTED GIVEN THE SENSITIVITY OF THE DOCUMENTS SOUGHT AND TO BE PRODUCED IN THIS CASE**

CWC seeks the entry of a protective order that will safeguard and limit the disclosure of documents and information designated as "Highly Confidential," on the basis that they disclose sensitive competitive information, to outside counsel only. This two-tiered approach is justified in this case given that documents and information relevant to the parties' discovery requests— including Defendants pending requests of CWC—are directed to highly sensitive documents that bear on competitive decision making and proprietary or financial documents. Courts have long recognized that "where in-house counsel are involved in competitive decision making," it may be appropriate to limit the disclosure of certain sensitive, confidential information made available through discovery to being viewed only by outside counsel. *See, e.g., U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984). "[C]ompetitive decision-making" is a "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions … made in light of similar or corresponding information about a competitor." *Id*. at 1467 n.3; *see also Brown Bag Software v. Symantec Corp.* 920 F.2d 1465, 1470 (9th Cir. 1992) (competitive decision making involves "advising on decisions about pricing … in light of similar or corresponding information about a competitor").

Littler, which calls itself "the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide,"[1] provides workplace compliance guidance to

---

[1] Second Amended Complaint ¶ 4 n.3 (See Exhibit D ("Littler Adds Shareholder Lance Gibbons in Washington, D.C.") (July 25, 2018) ("Littler is the largest global employment and labor law practice, with more than 1,500 attorneys in 80 offices worldwide.").https://www.littler.com/publication-press/press/littler-adds-shareholder-lance-gibbons-washington-dc

management-side companies. CWC is a small non-profit association that assists member employers "by helping them understand and manage their workplace compliance requirements and risks, primarily but not exclusively in the areas of equal employment opportunity and affirmative action." Second Amended Complaint ¶ 2.

While CWC is not a law firm and does not offer legal services, it shares common members with Littler. Like a Venn Diagram, there is a substantial area of overlap between the legal services offered by Littler and guidance provided by CWC on workplace compliance issues. CWC possesses competitive, proprietary documents and information that bear on sensitive areas of competitive decision making regarding workplace compliance.

Additionally, counsel for Gibbons has subpoenaed highly confidential documents from NT Lakis, an employment law firm that directly competes with Littler, and provides legal services to CWC.

Documents containing workplace compliance analyses, such as those created by CWC and made available for its members, *can* be used in the provision of legal services like those provided by Littler.[2]

In this case, Littler has requested Highly Confidential Information. For example, this includes the following categories:

Requests for sensitive financial information including projections, forecasts, payroll registers and financial statements:

- Littler's Request for Production No. 81 seeks "[a]ll documents comprising, consisting of or including **projections, forecasts and/or budgets with revenue and**

---

[2] Indeed, any suggestion that CWC's research and analysis memoranda are not competitively sensitive and related to Littler's legal services is belied by the fact that Mr. Gibbons, over the course of years, accessed CWC's member-restricted content on hundreds of occasions while acting within the scope of his employment by Littler.

5

**cost projections** from January 1, 2015 to the present." *See* Krotoski Decl., Ex. A at 18 (emphasis added).

- o CWC's projections and forecasts are Highly Confidential Information that are not public and limited to persons on a need to know basis. This internal information should be limited to a select group of individuals during the litigation.

- Littler's Request for Production No. 71 seeks "[d]ocuments sufficient to show CWC employee labor costs … e.g**. payroll registers**." *See id*. at 16 (emphasis added). These and other non-public sources of information and documents sought by Littler could, in the wrong hands, provide an unfair competitive advantage with the potential to cause significant harm to CWC's ability to serve its dues-paying members.

- Littler's Request for Production No. 80 requests "From January 1, 2015 to the present, **all financial statements**, including, but not limited to the following, for each calendar month, quarter, and/or year: audited financial statements, **balance sheets, income statements, statements of cash flows, statements of functional expenses, statements of financial position**, statements of activities, and annual reports." *Id*. at 17 (emphasis added).

  - o CWC's financial statements contain non-public, highly sensitive information. This internal information should be limited to a select group of individuals during the litigation.

Requests for lists of members of CWC which is non-public information and their access activity to the CWC Member's-Only Site:

- Gibbons' Request for Production No. 23 asks for documents identifying "**every person or entity who was a member** of Plaintiff from January 1, 2015 to present." *See* Krotoski Decl., Ex. C at 5 (emphasis added).

- Littler's Request for Production No. 14 asks for documents sufficient "to identify all CWC members from January 1, 2015 to the present and showing annual membership dues received by CWC from each member." *See* Krotoski Decl., Ex. A at 7.

- Littler's Request for Production No. 78 seeks sensitive documents including "records and analyses related to intangible assets, including, but not limited to, goodwill, **customer lists**, trademarks, patents, copyrights, and any items that the CWC deems proprietary from January 1, 2015 to the present." *See id*. at 17 (emphasis added).

  - o CWC's membership list is not public. This information should be limited to a narrow group of attorneys during the course of the litigation.

- Membership lists are often treated as proprietary information.

Requests for internal confidential communications with member representatives:

- Littler's Request for Production No. 12 seeking "Each of your "**Prime-rep-only** **communications**." *Id*. at 6 (emphasis added).

  - Primary Representatives (or "Prime Rep") "serve as the principal membership contact for the employer. Prime Reps receive 'prime-rep-only' communications, vote on proposed changes to CWC by-laws, and manage membership renewals." Second Amended Complaint ¶ 27.

Requests for intellectual property or proprietary information:

- Littler's Request for Production No. 78 seeks sensitive documents including "records and analyses related to intangible assets, including, but not limited to, **goodwill**, customer lists**, trademarks, patents, copyrights**, and **any items** that the CWC deems **proprietary** from January 1, 2015 to the present." *See* Krotoski Decl., Ex. A at 17 (emphasis added).

  - The request for intellectual property and proprietary information is the type of information that warrants heightened protection in intellectual property cases.

Requests for confidential personnel files and information:

- Littler's Request for Production Nos. 2 & 3, request "**personnel file(s)** or other service records" for Gibbons and Gokturk. *Id*. at 5 (emphasis added)

  - Information in personnel files is treated has private and highly confidential.

  - The court recognize that personnel information should be subject to Attorney's Eyes Only.[3]

- Gibbons' Request for Production No. 23, seeks information about

Information relating to the board of directors. *See* Krotoski Decl., Ex. C at 5.

---

[3] *See, e.g.*, *Kannan v. Apple Inc.*, 2019 WL 3037591, *3 (N.D. Cal. July 11, 2019) ("The Court concludes that the appropriate balance here requires permitting Apple to produce confidential employee-specific records on an attorneys' eyes only basis. In other words, Apple may produce responsive records reflecting the personal and confidential information of other employees to Mr. Kannan's counsel, and Mr. Kannan's counsel may not share the contents of those records with Mr. Kannan.").

- Littler's Request for Production No. 11: The minutes of each CWC board of directors meeting for the period January 1, 2015 to the present. *See* Krotoski Decl., Ex. A at 6.
  - CWC board minutes are considered confidential documents and are not distributed to any third parties other than the board.

In cases such as this, where there is a significant risk that sensitive, confidential documents may otherwise be disclosed to designated in-house counsel or others involved in competitive decision making, Courts have found that a two-tiered approach allowing the designation of certain materials as "Highly Confidential" or "Attorneys' Eyes Only" are appropriate. *See, e.g., S2 Automation LLC v. Micron Semiconductor Israel Ltd.*, 283 F.R.D. 671, 684-85 (D.N.M. 2012) (noting that a two-tiered approach "is not an uncommon feature in protective orders in modern complex commercial litigation" and that such provisions "are as much a protection for the party receiving the documents as for the party producing the documents"); *Compass Minerals Am. Inc. v. Gaia Ents., Inc.*, No. 16-cv-2175, 2017 WL 3498900, *3 (D. Kan. Aug. 16, 2017) (finding that "good cause exists for a two-tiered protective order in this case" for designating materials as either "confidential" or "highly confidential-attorneys' eyes only"); *Suture Exp., Inc. v. Cardinal Health, 200, LLC*, No. 12-cv-2760, 2013 WL 6909158, *3 (D. Kan. Dec. 31, 2013) (finding good cause for a two-tiered protective order as "both practical and a cost-effective way to protect the parties' interests in their most sensitive information from a competitor by allowing the good faith designation of certain materials as 'Highly Confidential' while the parties still comply with their discovery obligations").

Other copyright cases have used a two-tiered approach. In fact, Littler's counsel of record, David S. Elkins, has used comparable language in copyright cases. *See, e.g.,* Krotoski Decl., Ex. D (stipulated protective order entered in *Stewart v. Apple, Inc.*, No. 2:10-cv-01012, (W.D. Wash.)), Ex. E (stipulated protective order entered in *Heriot v. Byrne*, No. 8-cv-2272 (N.D. Ill.)). When Mr.

Elkins represented Mitch Waite Group LLC and Mitchell Waite in a lawsuit for copyright infringement in the Western District of Washington, the two-tiered protective order protected highly sensitive materials, in that case as "RESTRICTED INFORMATION":

> For a designation of Discovery Material as RESTRICTED INFORMATION, the Designating Party must **additionally** believe in good faith that the information must be protected from **disclosure to the Parties themselves** (and to any Non-Party) in this litigation and must be subject to the **restricted disclosure** provided for below. The RESTRICTED INFORMATION designation should be reserved for **extremely sensitive information** that constitues or relates to: (i) confidential business plans (including **financial projections, competitive strategy, and business or financial models**); (ii) personal financial or investment information; (iii) confidential financial information (including nonpublic revenues, costs, expentitures, compensation, and profits); (iv) details of confidential business relationships (including bids, proposals, offers, licenses, and contractual terms subject to non-disclosure provisions); (v) confidential technical information …; or (vi) confidential government filings.

Ex. D at 3 (emphasis added); *see also* Ex. E at 9 (providing similar heightened protections for materials designated as "Highly Confidential – Attorneys' Eyes Only"). Like when Mr. Elkins appeared in the above-cited cases, and stipulated to protective orders that would allow for heightened protection for sensitive documents including financial and competitive strategy information, CWC merely seeks similar protections over similar documents sought by Littler in this case. The two-tiered language in these cases can and should work in this case.

## II. CWC'S PROPOSED PROTECTIVE ORDER ADDRESSES ANY CONCERNS THAT A TWO-TIERED APPROACH WOULD IMPEDE THE CASE

In preparing its proposed protective order—and in its negotiations with Defendants—CWC has been mindful that "courts must balance the risk of inadvertant disclosure to competitors against the risk of prejudice to the other party's ability to prosecute or defend the action." *See Sutute Exp., Inc.*, 2013 WL 6909158, *7. With that understanding in mind, and in order to ensure that the parties are adequately equipped to develop their cases and assist their outside counsel as necessary, CWC's proposed protective order allows for disclosure of materials designated as "Highly Confidential" to "one person designated by each party as the party elects with a need to know the

9

information in connection with alternative dispute resolution proceedings, settlement negotiations, discovery, preparation for trial, or trial, and whose assistance is reasonably necessary to assist counsel in this action (including an individual party to this action)." Proposed Order at § 4(a)(2). Although there is no legal requirement that a party have confidential information of another produced to it, in addition to its outside counsel, CWC has proposed this provision as a compromise aimed at ensuring that any difficulties presented by the two-tiered protective order are ameliorated. *See GTE Prods. Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986) ("In short, I find no basis in law for the defendants' contention that they have the right to have confidential commercial information of competitors disclosed to them in addition to having the information disclosed to their attorneys."). Throughout the negotiation, CWC has solicited other potential compromises from Defendants in the hopes that the parties could reach agreement on a two-tiered protective order. These efforts have not been successful.

## III. CONCLUSION

For the foregoing reasons, CWC respectfully requests that the Court adopt the two-tiered protective order to protect Highly Confidential and Confidential Information in this case, and grant its Motion.

Dated: February 19, 2021

Respectfully submitted,

MORGAN LEWIS & BOCKIUS LLP

By:   /s/ Mark L. Krotoski
      /s/ J. Kevin Fee
Mark L. Krotoski (*pro hac vice*)
J. Kevin Fee (Virginia Bar. No. 88376)
Rachel E. Fertig (*pro hac vice*)
Jane W. Wise (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004-2541
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001

Thomas Y. Nolan (*pro hac vice*)
1400 Page Mill Road
Palo Alto, CA  94304
Telephone: +1.650.843.4000
Facsimile:  +1.650.843.4001
mark.krotoski@morganlewis.com
kevin.fee@morganlewis.com
thomas.nolan@morganlewis.com

*Attorneys for Plaintiff Center for Workplace Compliance*

## CERTIFICATE OF SERVICE

       I hereby certify that on February 19, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of filing to all counsel of record:[4]

                                          By:    */s/ J. Kevin Fee*
                                                     J. Kevin Fee

---

[4] A courtesy copy will be delivered to chambers within twenty-four hours in accordance with the Alexandria Division's chambers-copy rules.